## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| JUNO USA, LP, *et al.*,[1] | Case No. 19-12484 (MFW) |
| Debtors. | (*Joint Administration Requested*) |
| | **Related Docket No. 14** |

### *INTERIM* ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL, (III) MODIFYING THE AUTOMATIC STAY, AND (IV) GRANTING RELATED RELIEF

This matter coming before the Court upon the *Motion of the Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Secured Financing, (II) Authorizing the Debtors to Obtain Postpetition Secured Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief* (the "**Motion**"),[2] pursuant to sections 105(a), 362, 364(c)(2), 364(d) and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004, and 9014, and Local Rules 4001-2 and 9013-1, seeking entry of an Interim Order and a Final Order (collectively, "**DIP Orders**") (a) authorizing the Debtor, as borrower, to obtain secured postpetition financing (the "**DIP Financing**" or the "**DIP Facility**") from GT Gettaxi Limited (the "**DIP Lender**") pursuant to that certain *Senior Secured Superpriority Debtor-in-Possession Financing Term Sheet* (the "**DIP Term Sheet**[3]," and with the DIP Orders, the "**DIP Facility Documents**"), (b) authorizing the use of Cash Collateral, (c)

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number, are: Juno USA, LP (5772); Sabo One LLC (2759); Juno Oregon LLC (4462); Vulcan Cars LLC (4733); GT Forge, Inc. (1093); and Omaha LLC (8656). The mailing address for the Debtors listed above is 74 West Long Lake Road, Suite 205, Bloomfield Hills, Michigan 48304.

[2] Capitalized terms used but not defined specifically in this Interim Order shall have the meanings ascribed to them in the Motion.

[3] A copy of the DIP Term Sheet is attached hereto as **Exhibit 1**.

modifying the automatic stay, (d) scheduling a final hearing (the "**Final Hearing**"), and (e) granting related relief; and upon consideration of the First Day Declaration; and this Court having found that (i) this Court has jurisdiction to consider the Motion and the relief requested therein under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012, (ii) this Court may enter a final order consistent with Article III of the United States Constitution, (iii) this is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (iv) venue of this proceeding and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409, and (v) the Debtors' notice of the Motion and opportunity for a hearing were adequate and appropriate under the circumstances; and this Court having reviewed the Motion; and this Court having determined that the legal and factual bases set forth in the Motion and the First Day Declaration establish just cause for the relief granted herein; and this Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors' estates, their creditors and other parties in interest; and after due deliberation and sufficient cause appearing therefor,

**NOW, THEREFORE, IT IS HEREBY FOUND AND CONCLUDED THAT:**

A.    <u>Petition Date</u>:  On November 12, 2019, each of the Debtors filed a voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "**Court**"), commencing these chapter 11 cases.

B.    <u>Debtor in Possession</u>:  The Debtors are continuing in the management of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Chapter 11 Cases.

C. <u>Committee Formation</u>: As of the date hereof, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") has not appointed any statutory committee (each a "**Committee**") in these Chapter 11 Cases.

D. <u>Findings Regarding Postpetition Financing and Use of Cash Collateral</u>:

 i. *Good Cause.* Good cause has been shown for the entry of this Interim Order.

 ii. *Request for Postpetition Financing and Use of Cash Collateral.* The Debtors seek authority to borrow funds under the DIP Facility Documents.  The DIP Lender shall have no obligation to make loans or advances under the DIP Facility except to the extent required under the DIP Facility Documents and shall have no obligation to waive any conditions required thereunder.  The Debtors also seek authority to use Cash Collateral on the terms described herein, and in accordance with the Approved Budget, attached hereto as **Exhibit 2**, (the "**Approved Budget**") to administer these Chapter 11 Cases and fund the Debtors' restructuring efforts.

 iii. *Need for Postpetition Financing and Use of Cash Collateral.* The Debtors' need to use Cash Collateral and obtain credit as set forth in the DIP Term Sheet is immediate and critical in order to enable the Debtors to swiftly and efficiently liquidate their B2C operations and reorganize around Debtor GT Forge, Inc.  The absence of immediate access to funds under the DIP Facility would immediately and irreparably harm the Debtors, their estates and their creditors.  The Debtors do not have sufficient available sources of working capital and financing to effectuate their strategic chapter 11 goals and pay all administrative expenses.  Consummating the financing contemplated by the DIP

Term Sheet pursuant to the terms of this Interim Order therefore is in the best interest of the Debtors, their estates, and stakeholders.

iv. *No Credit Available on More Favorable Terms.* Based on the representations in the First Day Declaration, the record of the hearing on the Motion (the "**Interim Hearing**"), given the Debtors' financial condition and capital structure: (i) the Debtors are unable to reasonably obtain postpetition financing from sources other than the DIP Lender on terms more favorable than those set forth in the DIP Facility Documents; (ii) the Debtors have been unable to reasonably obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense; (iii) alternative postpetition secured financing was not available to the Debtors; and (iv) the DIP Lender is unwilling to extend DIP Financing without being granted perfected security interests in, and liens on (each as provided herein), all of the Debtors' existing and after-acquired assets with the priorities set forth herein and the other protections set forth in this Interim Order.

v. *Use of Proceeds.*

    a.  As a condition to entry into the DIP Facility Documents and the extension of credit under the DIP Facility, the DIP Lender requires, and the Debtors have agreed, that proceeds of the DIP Facility shall be used in accordance with the terms of the DIP Facility Documents, including the Approved Budget, attached hereto as **Exhibit 2**, which shall be subject to (x) reasonable variances, permitted by the DIP Lender (the "**Permitted Variance**"), (y) this Interim Order (or the Final Order as applicable), and (z) the Carve-Out.

    b.  The Debtors shall not directly or indirectly pay any expense or other disbursement other than those set forth in the Approved Budget (other than expenses with respect to the Carve-Out) unless in compliance with the Permitted Variance or otherwise permitted or directed by an order of the Court.

    c.  The proceeds of the DIP Facility shall be used solely as provided in the DIP Term Sheet, including, to the extent provided therein, to fund the (i) administration of the Chapter 11 Cases, (ii) orderly

winding down of operations and liquidation of the assets of the Liquidating Debtors, (iii) Reorganizing Debtor's business in the ordinary course during the Chapter 11 Cases, and (iv) payment of Administrative Expense Claims (including professional fee claims and 503(b)(9) claims), Priority Tax Claims, and Other Priority Claims (as such terms are defined in the Approved Plan).

vi. *Willingness to Provide Financing*. The DIP Lender has indicated a willingness to provide financing to the Debtors subject to the entry of this Interim Order, and conditioned upon the entry of the Final Order, including findings that such financing is essential to the Debtors' estates, that the DIP Lender is extending credit to the Debtors as set forth in the DIP Facility Documents in good faith, and that the DIP Lender's claims, security interests, liens, rights, and other protections will have the protections provided in section 364(e) of the Bankruptcy Code. As a condition to the entry into the DIP Facility Documents and the extension of credit under the DIP Facility, the Debtors and the DIP Lender have agreed that proceeds of the Collateral and all payments and collections received by the Debtors shall be applied solely as set forth in the DIP Facility Documents.

vii. *Business Judgment and Good Faith Pursuant to Section 364(e)*. Based on the representations in the First Day Declaration, the record of the Interim Hearing, the extension of credit under the DIP Facility and the DIP Facility Documents, including the DIP Term Sheet, is fair, reasonable, and the best available to the Debtors under the circumstances, reflects the Debtors' sound exercise of their business judgment, is supported by reasonably equivalent value and consideration, and was entered into at arms' length, under no duress, and without undue influence. Based on the representations in the First Day Declaration, the record of the Interim Hearing, the DIP Facility and the DIP Facility Documents, including the DIP Term Sheet, were negotiated in good faith and at arms'-length between the Debtors and the DIP Lender, with respect to all actions taken by them

in connection with or related in any way to negotiation, implementing, documenting, or obtaining the requisite approvals of the DIP Facility, including with respect to the granting of the DIP Liens, any challenges or objections to the DIP Facility and all documents related to any and all transactions contemplated by the foregoing.  Any credit to be extended as set forth in the DIP Facility Documents shall be deemed to have been so allowed, advanced, made, used, or extended in good faith, and for valid business purposes and uses, within the meaning of section 364(e) of the Bankruptcy Code, and the DIP Lender is therefore entitled to the protections and benefits of section 364(e) of the Bankruptcy Code and this Interim Order.

viii.  *Marshaling*.  Subject to the entry of the Final Order, in light of the Approved Budget covering all administrative costs projected by the Debtors, the DIP Lender is entitled to a waiver of the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral.

ix.  *Final Hearing*.  At the Final Hearing, the Debtors will seek final approval of the proposed DIP Financing pursuant to the Final Order, which shall be in the form and substance acceptable to the DIP Lender.  Notice of the Final Hearing and Final Order shall be approved in accordance with this Interim Order and no other or further notice, except as provided by this Interim Order, shall be required.

x.  *Immediate Entry*.  The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2) and Local Rule 4001-2(b).  The authorization granted herein on an interim basis to enter into the DIP Facility Documents, and to borrow under the DIP Facility is necessary to avoid immediate and irreparable harm to the Debtors and their estates during the period (the "**Interim Period**") beginning on the

date herein through and including the earliest to occur of (i) the date of the entry of the Final Order by this Court and (ii) the Termination Date (as defined below). This Court concludes that the entry of this Interim Order is in the best interests of the Debtors, their estates, and their creditors because it will, among other things, allow the Debtors to maximize the value of their assets.

xi. *Notice*. Notice of the Interim Hearing and the emergency relief requested in the Motion has been provided by the Debtors, whether by facsimile, email, overnight courier, or hand delivery, to certain parties in interest, including: (i) the Office of the United States Trustee for the District of Delaware; (ii) the United States Attorney for the District of Delaware; (iii) the parties included on the Debtors' consolidated list of twenty (20) largest unsecured creditors; (iv) the Internal Revenue Service; (v) the Securities and Exchange Commission; (vi) Sberbank and its counsel; (vii) counsel to the proposed DIP Lender; (viii) all known holders of liens in the Debtors' assets; and (ix) the Debtors' landlords. The notice given by the Debtors of the Motion, the relief requested therein and the Interim Hearing complies with Bankruptcy Rule 4001(c) and the applicable Local Rules, and no other or further notice of the relief granted herein is necessary or required.

Based upon the foregoing findings and conclusions, the Motion and the record before the Court with respect to the Motion, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.    Motion Granted. The Motion is GRANTED on an interim basis in accordance with the terms of this Interim Order.

2.     <u>Objections Overruled</u>.  All objections to and reservations of rights with respect to the Motion and to the entry of this Interim Order to the extent not withdrawn or resolved are hereby overruled on the merits in their entirety or, to the extent applicable, deferred to the Final Hearing.

**DIP Facility Authorization**

3.     <u>Authorization of the DIP Facility Documents</u>.  The Debtors are hereby authorized to execute, issue, deliver, enter into, and adopt, as the case may be, the DIP Term Sheet and the other DIP Facility Documents (including entering into the guaranties) to be delivered pursuant hereto or thereto or in connection herewith or therewith.  The Borrower is hereby authorized to borrow money under the DIP Term Sheet, on an interim basis, and request extensions of credit under the DIP Facility in accordance with the terms of this Interim Order and the DIP Term Sheet, *provided that* during the Interim Period, an aggregate principal of up to $1,000,000 may be borrowed.

4.     <u>Authorized Action</u>.  In furtherance of the foregoing and without further approval of this Court, the Debtors are authorized to perform all acts, to make, execute, and deliver all instruments and documents that may be necessary or required for performance by the Debtors under the DIP Term Sheet and the other DIP Facility Documents and the creation and perfection of the DIP Liens described in, provided for, and perfected by this Interim Order, the DIP Term Sheet and the DIP Facility Documents. Subject to paragraph 11, the Debtors are hereby authorized to pay, in accordance with this Interim Order, the principal, interest, expenses, and other amounts described in the DIP Facility Documents as such become due and without need to obtain further Court approval, including, without limitation, the fees and disbursements of the DIP Lender's attorneys, advisors, accountants, and other consultants. All fees, if any, shall be fully earned upon entry of this Interim Order and payable in accordance with the DIP Facility Documents.

5.    <u>Validity of DIP Obligations</u>.  Upon entry of this Interim Order, the DIP Term Sheet shall represent valid and binding obligations of the Debtors, enforceable against the Debtors and their estates in accordance with its terms, and subject to the terms of this Interim Order.  The DIP Term Sheet and this Interim Order constitute and evidence the validity and binding effect of the obligations thereunder of the Debtors, which obligations shall be enforceable, jointly and severally, against the Debtors, their estates, and any successors thereto, including, without limitation, any trustee or other estate representative appointed in the Chapter 11 Cases or any case under chapter 7 of the Bankruptcy Code upon the conversion of the Chapter 11 Cases (a "**Successor Case**").  No obligation, payment, transfer, or grant of a security or other interest to the DIP Lender under the DIP Facility Documents or this Interim Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or any applicable law (including, without limitation, under section 502(d) of the Bankruptcy Code), or subject to any defense, reduction, set-off, recoupment, or counterclaim.  The obligations of the DIP Facility include all loans and other indebtedness or obligations, contingent or absolute, now existing or hereafter arising, which may from time to time be or become owing by the Debtor to the DIP Lender under the DIP Facility Documents, including, without limitation, all principal, interest, costs, fees, expenses, and other amounts owed pursuant to the DIP Facility Documents.

6.    <u>No Obligation to Extend Credit</u>.  The DIP Lender shall have no obligation to make loans or advances under the DIP Facility until the conditions precedent to the closing and the making of such extensions of credit under the DIP Term Sheet or the other DIP Facility Documents have been satisfied in full or waived.

7.    <u>Use of DIP Facility Proceeds</u>.  From and after the Petition Date, the Debtors are authorized to use the extensions of credit under the DIP Facility only for the purposes set forth in

this Interim Order, the DIP Facility Documents, and in compliance with the Approved Budget. The Debtors authorized, subject to the satisfaction of the conditions set forth in the DIP Facility Documents, to use proceeds of the Collateral, subject to the Carve-Out, and to draw upon to DIP Facility to fund the (i) administration of the Chapter 11 Cases[4], (ii) orderly winding down of operations and liquidation of the assets of the Liquidating Debtors, (iii) Reorganizing Debtor's business in the ordinary course during the Chapter 11 Cases, and (iv) payment of Administrative Expense Claims (including professional fee claims and 503(b)(9) claims), Priority Tax Claims, and Other Priority Claims (as such terms are defined in the Approved Plan).

**DIP Liens and Collateral**

8.     *DIP Lien Priority.*   Effective immediately upon entry of this Interim Order, pursuant to sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, and without the necessity of the execution by the Debtors (or recordation or other filing or notice) of security agreements, control agreements, pledge agreements, financing statements, mortgages, schedules, or other similar documents, or the possession or control by the DIP Lender of any Collateral, subject only to the Carve-Out, the DIP Lender is hereby granted, *nunc pro tunc* to the Petition Date, a continuing valid, binding, enforceable, non-avoidable, and automatically and properly perfected, priming first priority, postpetition security interests in and liens on (collectively, the "**DIP Liens**") any and all of the Property (as defined in the Motion) (the "**Collateral**"), including, without limitation, subject to the entry of a Final Order, avoidance actions brought pursuant to claims and causes of actions under Sections 502(d), 544, 545, 547, 548, 549, 550, 551, 553, 732(2) or 742(2) of the Bankruptcy Code.

---

[4]   This shall include the payment of any and all fees due under 28 U.S.C. § 1930(a)(6).

9.    *Superpriority Claims*.  Upon entry of this Interim Order, the DIP Lender shall be granted, pursuant to section 364(c)(1) of the Bankruptcy Code, an allowed superpriority administrative expense claim in each of the Chapter 11 Cases and any Successor Case (collectively, the "**DIP Superpriority Claims**") for all DIP Liens: (a) subject only to the Carve-Out, having priority over any and all administrative expense claims and unsecured claims against the Debtors or their estates in any of the Chapter 11 Cases and any Successor Case, at any time existing or arising, of any kind or nature whatsoever, including administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 364, 365, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 726, 1113, and 1114 of the Bankruptcy Code, and other provision of the Bankruptcy Code, as provided under section 364(c)(1) of the Bankruptcy Code; and (b) which shall at all times be senior to the rights of the Debtors and their estates, and any successor trustee or other estate representative to the extent permitted by law, subject only to the Carve-Out.

10.    *Treatment of DIP Liens*.  For the avoidance of doubt, and other than as set forth herein, the DIP Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereafter granted in the Chapter 11 Cases or any Successor Case.  The DIP Liens shall be valid and enforceable against any trustee or other estate representative appointed in the Chapter 11 Cases or any Successor Case, upon the conversion of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or upon the dismissal of the Chapter 11 Case or any Successor Case.  The DIP Liens shall not be subject to challenge under sections 510, 549, or 550 of the Bankruptcy Code.  No lien or interest avoid and preserved for the benefit of the Debtors' estates pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the DIP Liens.

11.    <u>Costs, Fees and Expenses</u>.

(a)    The Debtors are authorized to pay any and all reasonable out-of-pocket expenses of the DIP Lender in connection with the DIP Facility, whether incurred before or after the Petition Date and whether or not the transactions contemplated hereby are consummated or such fees and expenses are set forth in the Approved Budget, including, without limitation, fees and expenses, subject to the Carve-Out, incurred in connection with (i) the preparation, negotiation, and execution of the DIP Facility Documents; (ii) the funding of the DIP Facility; (iii) the creation, perfection, or protection of the liens under the DIP Facility Documents (including all search, filing, and recording fees); (iv) the ongoing administration of the DIP Facility Documents (including the preparation, negotiation, and execution of any amendments, consents, waivers, assignments, restatements, or supplements thereto) and the Chapter 11 Cases; (v) the enforcement of the DIP Facility Documents; (vi) any refinancing or restructuring of the DIP Facility in the nature of a "work-out" or in connection with any exit financing provided by the DIP Lender or any of its affiliates; and (vii) any legal proceeding relating to or arising out of the DIP Facility or any other transactions contemplated by the DIP Facility Documents, including the Chapter 11 Cases. Payment of all such professional fees and expenses shall not be subject to allowance by the Court. Notwithstanding the foregoing, at the same time such invoices are delivered to the Debtors, the professionals for the DIP Lender shall deliver a copy of its invoices to counsel for any statutory Committee and the U.S. Trustee.  The invoices for such fees and expenses shall not be required to comply with any with any particular format, may be in summary form only, and shall not be subject to application or allowance by the Court but shall include a reasonably-detailed statement of services rendered, time expended and expenses incurred in support of the amounts requested.  Any objections raised by the Debtors, the U.S. Trustee or any statutory Committee with respect to such

invoices within ten (10) Business Days of receipt thereof will be resolved by the Court (absent prior consensual resolution thereof). Pending such resolution, the undisputed portion of any such invoice shall be paid promptly by the Debtors. Such fees and expenses shall not be subject to any offset, defense, claim, counterclaim, or diminution of any type, kind, or nature whatsoever.

**Provisions Common to DIP Financing Authorizations**

12. <u>Carve-Out</u>.

(a) *Carve-Out*. As used in this Interim Order and the DIP Facility Documents, the term "**Carve-Out**" shall mean the sum of: (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses incurred by a trustee under Section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses (the "**Allowed Professional Fees**") incurred by persons or firms retained by the Debtors or the Committee pursuant to Sections 327, 328, 363 or 1103 of the Bankruptcy Code (the "**Retained Professionals**") at any time before or on the first business day following delivery by the DIP Lender of a Carve Out Trigger Notice (as defined below), whether allowed by the Bankruptcy Court prior to or after delivery of a Carve Out Trigger Notice; and (iv) Allowed Professional Fees of Retained Professionals in an aggregate amount not to exceed $50,000 incurred after the first business day following delivery by DIP Lender of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "**Post-Carve Out Trigger Notice Cap**"). For purposes of the foregoing, "**Carve Out Trigger Notice**" shall mean a written notice (including

email or other electronic means) by the DIP Lender to the Debtors, their lead restructuring counsel, and the U.S. Trustee, which notice may be delivered following the occurrence and during the continuation of an Event of Default and acceleration of the obligations under the DIP Facility, stating that the Post-Carve Out Trigger Notice Cap has been invoked.

(b)     *No Direct Obligation to Pay Allowed Professional Fees; No Waiver of Right to Object to Fees*.  Other than the funding of the Carve-Out with the proceeds of the DIP Facility as provided herein and in the DIP Facility Documents, the DIP Lender shall not be responsible for the payment or reimbursement of any fees or disbursements of any professional incurred in connection with the Chapter 11 Cases, any Successor Case, or otherwise.  Nothing in this Interim Order or otherwise shall be construed: (i) to obligate the DIP Lender, in any way, to pay compensation to, or to reimburse expenses of, any professional or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement, other than the Carve-Out; (ii) to increase the Carve-Out if incurred or Allowed Professional Fees are higher in fact that the fees and disbursements to the professional set forth in the Approved Budget after the delivery by the DIP Lender of the Carve Out Trigger Notice; (iii) as consent to the allowance of any fees and expenses of any professional; or (iv) to affect the rights of the DIP Lender or any other party in interest to object to the allowance and payment of such fees and expenses.

(c)     *Payment of Compensation*.  Nothing herein shall be construed as a consent to the allowance of any professional fees or expenses of any professional or shall affect the right of the DIP Lender to object to the allowance and payment of such fees and expenses.  So long as no Termination Event has occurred and is continuing, the Debtors shall be permitted to pay fees and expenses allowed and payable by order (that has not been vacated or stayed, unless the stay has been vacated) under sections 330 and 331 of the Bankruptcy Code, as the same may be due

and payable, solely to the extent set forth in the Approved Budget and not to exceed the amounts set forth in the Approved Budget, *provided that* any such payments shall be subject to entry of a final order of the Court on final application for the allowance of fees and expenses to be filed for each professional.

13.    <u>Drafting, Execution and Modification of DIP Facility Documents</u>.  The Debtors and the DIP Lender are hereby authorized to implement, in accordance with the terms of the DIP Term Sheet, any non-material modifications of the DIP Term Sheet without further order of the Court; *provided, however*, that copies of such modifications will be provided to the U.S. Trustee and any statutory Committee.  Upon entry of this Interim Order, all material modifications or amendments to the DIP Term Sheet shall only be permitted pursuant to an order of this Court on notice pursuant to Local Rule 2002-1(b) and a hearing.  Except as otherwise provided herein, no waiver, modification, or amendment of any of the provisions of the DIP Term Sheet shall be effective unless set forth in writing, signed on behalf of the Debtors and the DIP Lender.

14.    <u>Use of Proceeds; Budget Maintenance</u>.  The proceeds of the DIP Facility shall be used solely in accordance with the terms of the DIP Term Sheet, including the Approved Budget (subject to the Permitted Variance and the Carve-Out), and this Interim Order.  The Approved Budget shall be updated, modified, or supplemented (with the consent of and/or at the request of the DIP Lender) from time to time, solely in accordance with the DIP Term Sheet.

15.    <u>Modification of Automatic Stay</u>.  The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this Interim Order, including, without limitation, to permit the Debtors to grant the DIP Liens.

16.    <u>Automatic Perfection of DIP Liens</u>.

(a)    This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of all liens granted herein, including the DIP Liens, without the necessity of filing or recording financing statements, intellectual property filings, mortgages, notices of lien or similar instruments in any jurisdiction, taking possession of or control over, or the taking of any other action (including, for the avoidance of doubt, entering into any deposit control agreement) to validate to perfect (in accordance with applicable non-bankruptcy law) the DIP Liens, or to entitle the DIP Lender to the priorities granted herein.

(b)    Notwithstanding the foregoing, the DIP Lender is hereby authorized to file or record financing statements, intellectual property filings, mortgages, notices of lien, or similar instruments in any jurisdiction, take possession of or control over, or take any other action, as they may elect, in order to validate and perfect the liens and security interests granted to them hereunder. Whether or not the DIP Lender chooses to file such financing statements, intellectual property filings, mortgages, notices of lien, or similar instruments in any jurisdiction, take possession of or control over, or otherwise perfect the liens and security interests granted to it hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable, and not subject to challenge, dispute, or subordination immediately upon entry of this Interim Order.

(c)    The Debtors are authorized to execute and deliver promptly upon demand to the DIP Lender, all such financing statements, mortgages, control agreements, notices, and other documents as the DIP Lender may reasonably request to evidence, confirm, validate, or perfect the DIP Liens.

(d)    The DIP Lender, in its discretion, may file a photocopy of this Interim Order as a financing statement with any filing or recording office or with any registry of deeds or similar

office, and accordingly, each officer is authorized, to the extent permitted under applicable law, to accept and record the photocopy of this Interim Order, in addition to or in lieu of such financing statements, notices of lien, or similar instruments.

17.    Proceeds of Subsequent Financing.  If the Debtors, any trustee, any examiner with enlarged powers, any responsible officer, or any other estate representative subsequently appointed in the Chapter 11 Cases or any Successor Case shall obtain credit or incur debt in breach of the DIP Facility Documents at any time prior to the repayment in full of all obligations under the DIP Facility, including subsequent to the confirmation of any plan of reorganization or liquidation with respect to the Debtors and their estates, then all cash proceeds derived from such credit or debt shall be turned over immediately to the DIP Lender to be applied in accordance with this Interim Order and the DIP Term Sheet.

18.    Maintenance of Collateral/Cash Management.  Until the payment in full in cash of all obligations of the DIP Facility, and the termination of the obligation of the DIP Lender to extend credit under the DIP Facility, the Debtors are authorized to (a) maintain and insure the Collateral in amounts, for the risks, and by the entities as required under the DIP Facility Documents and (b) maintain their cash management system as in effect as of the Petition Date, (i) subject to any order of this Court with respect to the Debtors' cash management system, as may be modified, with the prior written consent of the DIP Lender, by any order than may be entered by this Court; and (ii) in a manner which, in any event, shall be reasonably satisfactory to the DIP Lender.  Other than as required expressly pursuant to the DIP Facility Documents, any order of this Court with respect to the Debtors' cash management system, or this Interim Order, no modifications to the Debtors' cash management system existing as of the Petition Date may be made without the prior written approval of the DIP Lender.

19.    <u>Termination Event</u>. The occurrence of an Event of Default under the DIP Facility Documents is referred to herein as a "**Termination Event**."

20.    <u>Rights and Remedies Following Termination Event</u>.

(a)    *Termination.* Immediately upon the occurrence and during the continuation of a Termination Event, the DIP Lender, without further action of this Court, may notify the Debtors in writing that a Termination Event has occurred and is continuing (such notice, a "**Termination Notice**" and the date of any such notice, the "**Termination Notice Date**").

(b)    *Notice of Termination.* Any Termination Notice shall be provided by electronic mail (or other electronic means) to counsel to the Debtors, counsel to any statutory Committee (if one has been formed, or if one has not been formed, the Debtors' consolidated twenty (20) largest creditors) and the U.S. Trustee. The Remedies Notice Period shall commence on the Termination Notice Date and shall expire five (5) business days after the Termination Notice Date (the "**Remedies Notice Period**" and the date of the expiration of the Remedies Notice Period, the "**Termination Date**").

(c)    Without limiting the rights and remedies of the DIP Lender under the DIP Term Sheet, the DIP Lender may immediately (i) upon the occurrence of and during the continuing of a Termination Event following the issuance of a Termination Notice or (ii) the Termination Date, *inter alia*, (a) declare (x) subject to the Remedies Notice Period, all obligations owing under the DIP Facility Documents to be due and payable immediately, without presentment, demand, protest, or other notice of any kind, all of which are expressly waived by the Debtors, (y) the termination, reduction, or restriction of any further commitment to extend credit to the Borrower to the extent any such commitment remains, and (z) terminate the DIP Facility and the DIP Facility Documents as to any future liability or obligation of any DIP Lender, but without affecting any of

the liens or the obligations (any of the actions set forth in the foregoing (x), (y), and (z), a "**Termination**"); and (b) unless the Court orders otherwise during the Remedies Notice Period, exercise all other rights and remedies provided in the DIP Facility Documents and applicable law.

(d)    During the Remedies Notice Period, any party in interest shall be entitled to seek an emergency hearing with this Court for the purpose of contesting a Termination, including whether a Termination Event has occurred and/or is continuing.  During the Remedies Notice Period, the Debtors may continue to use the Collateral in the ordinary course of business and consistent with the most recent Approved Budget (subject to the Permitted Variance), but may not enter into any transactions or arrangements (including, without limitation, the incurrence of indebtedness or liens, investments, restricted payments, asset sales or transactions with non-Debtor affiliates) that are not in the ordinary course of business or otherwise in furtherance of the administration of the Chapter 11 Cases.

21.    <u>Good Faith</u>.

(a)    *Good Faith Under Section 364 of the Bankruptcy Code; No Modification or Stay of this Interim Order*.  The DIP Lender has acted in good faith in connection with this Interim Order and its reliance on this Interim Order is in good faith.  Based on the findings set forth in this Interim Order, the record made during the Interim Hearing, and in accordance with section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Interim Order are hereafter modified, amended, or vacated by a subsequent order of the Court, or any other court of competent jurisdiction, the DIP Lender is entitled to the protections provided by section 364(e) of the Bankruptcy Code.

22.    <u>Proofs of Claim</u>.  Subject to entry of the Final Order, any order entered by the Court establishing a bar date for any claims (including, without limitation, administrative claims) in the

Chapter 11 Cases or any Successor Case shall not apply to the DIP Lender (solely in its capacity as such). Subject to entry of the Final Order, the DIP Lender (solely in its capacity as such) shall not be required to file proofs of claim or requests for approval of administrative expenses authorized by this Interim Order in the Chapter 11 Case or any Successor Case, and the provisions of this Interim Order, and, upon the entry thereof, the Final Order, relating to the amount of the obligations under the DIP Facility and the DIP Liens shall constitute a timely proof of claim and/or administrative expense request.

23.    <u>Rights of Access and Information</u>.    The Debtors shall provide the DIP Lender and/or its representatives, agents, and/or employees, reasonable access to the Debtors' premises, knowledgeable officers, and their books and records, and shall reasonably cooperate, consult with, and provide to such persons all such information as may be reasonably requested.

24.    <u>Prohibited Use of DIP Facility, Collateral, Carve-Out, etc.</u>    Except as may be ordered otherwise, without the prior written consent of the DIP Lender, the DIP Facility, and the Collateral may not be used:

    (a)    for the payment of interest and principal with respect to any prepetition indebtedness of the Borrower, except for: (i) the Carve-Out; (ii) prepetition employee wages, benefits, and related employee taxes as of the Petition Date; (iii) prepetition sales, use, and real property taxes; (iv) prepetition amounts due with respect to any insurance financings, premiums, and brokerage fees; (v) payment of fees and expenses (including fees and expenses of professionals) of the DIP Lender, and subject to the limitations set forth in the Approved Budget; (vi) other "first day" interim and final orders permitting payment of prepetition claims; (vii) cure amounts reasonably acceptable to the DIP Lender under any leases or executory contracts assumed with approval of the Court; and (viii) other prepetition indebtedness to the extent authorized by the Court and set forth in the Approved Budget;

    (b)    subject to this Interim Order (or Final Order, when applicable) in connection with or to finance in any way any action, suit, arbitration, proceeding, application, motion, or other litigation of any type adverse to the rights, remedies, claims, or defenses of the DIP Lender under the DIP Term Sheet,

this Interim Order (or, where applicable, the Final Order), including preventing, hindering, or otherwise delaying the exercise of any rights, remedies, claims, or defenses by the DIP Lender under the DIP Term Sheet, this Interim Order (or, when applicable, the Final Order) the purpose of which is to seek, or the result of which would be to obtain, any order, judgment, determination, declaration, or similar relief (a) invalidating, setting aside, avoiding, or subordinating, in whole or in part, the obligations of the DIP Facility or DIP Liens; (b) for monetary, injunctive or other affirmative relief against the DIP Lender or the Collateral; or (c) preventing, hindering, or otherwise delaying the exercise by the DIP Lender of any rights and remedies under this Interim Order or the Final Order, the DIP Facility Documents, or applicable law, or the enforcement or realization (whether by foreclosure, further order of the Court, or otherwise) by the DIP Lender upon any of its Collateral.

(c)     to make any distribution under a plan of reorganization in the Chapter 11 Cases.

(d)     to make any payment in settlement of any claim, action, or proceeding, before any court, arbitrator, or other governmental body, without prior written consent of the DIP Lender, unless otherwise set forth in the Approved Budget, or unless otherwise ordered by the Court;

(e)     to object to, contest, or interfere with, in any way, the DIP Lender's enforcement or realization upon any of the Collateral once a Termination Event has occurred, except as provided for in this Interim Order or the Final Order;

(f)     to use or seek to use any insurance or tax refund proceeds constituting Collateral other than solely in accordance with the Approved Budget and the DIP Facility Documents;

(g)     to incur indebtedness other than in accordance with the Approved Budget or the DIP Facility Documents without the prior consent of the DIP Lender;

(h)     to object to or challenge in any way the claims, liens, or interests held by or on behalf of the DIP Lender;

(i)     to assert, commence, prosecute, or support any claims or causes of action whatsoever, including, without limitation, any Avoidance Action, against the DIP Lender;

(j)     to prosecute an objection to, contest in any manner, or raise any defenses to, the validity, extent, amount, perfection, priority, or enforceability of, or seeking equitable relief from, any of the obligations under the DIP Facility, the DIP Liens, or any other rights or interests of the DIP Lender;

(k)    to sell or otherwise dispose of the Collateral other than as contemplated by the DIP Term Sheet; or

(l)    for any purpose otherwise limited by the DIP Term Sheet.

25.    <u>No Third-Party Rights</u>. Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

26.    <u>Section 552(b)</u>. Subject to the entry of the Final Order, the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the DIP Lender with respect to proceeds, products, offspring, or profits of any of the Collateral. *Subject to the* ☉

27.    <u>No Marshaling/Application of Proceeds</u>. ~~Upon~~ /entry of the Final Order, the DIP Lender shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Collateral. *Subject to the* ☉

28.    <u>505(c) Waiver</u>. ~~Upon~~ entry of the Final Order, the Debtors shall irrevocably waive and shall be prohibited from asserting any surcharge claim, under section 506(c) of the Bankruptcy Code or otherwise, for any costs and expenses incurred in connection with the preservation, protection, or enhancement of, or realization by the DIP Lender upon the Collateral.

29.    <u>Discharge Waiver</u>. The Debtors expressly stipulate, and the Court finds and adjudicates, that none of the obligations under the DIP Facility or the DIP Liens shall be discharged by the entry of an order confirming any plan of reorganization or liquidation, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless the obligations under the DIP Facility have been paid in full in cash on or before the effective date of a confirmed plan of reorganization or liquidation. Except as otherwise agreed to by the DIP Lender, the Debtors shall not propose or support any plan or sale of all or substantially all of the Debtors' assets or entry of

- 22 -

any confirmation order or sale order that is not conditioned upon the payment in full, in cash, of all obligations under the DIP Facility without the express written consent of the DIP Lender.

30.    <u>Rights Preserved</u>.  Other than as expressly set forth in this Interim Order, any other rights, claims or privileges (whether legal, equitable, or otherwise) of the DIP Lender are preserved.

31.    <u>Release</u>.  Subject to the entry of the Final Order, the Debtors, on behalf of themselves and their estates (including any successor trustee or other estate representative in the Chapter 11 Cases or any Successor Case) and any party acting by or through the Debtors or their estates, hereby stipulate and agree that they forever and irrevocably (a) release, discharge, waive, and acquit the DIP Lender, and each of their respective participants and each of their respective affiliates, and each of their respective former, current, or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, successors, assigns, and predecessors in interest (collectively, and in each case in their capacities as such, the "**Released Parties**"), from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness, and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, continent, pending, or threatened, including, without limitation, all legal and equitable theories of recovery, arising under common law, statute, or regulation, or by contract, of every nature and description, arising out of, in connection with, or relating to the negotiation, documentation, or execution of the DIP Facility, the DIP Term Sheet, the DIP Facility Documents, or the transactions contemplated hereunder or thereunder, including, without limitation, (i) any so-

called "lender liability" or equitable subordination claims or defenses, (ii) any and all claims and causes of action arising under the Bankruptcy Code, and (iii) any and all claims and causes of action regarding the validity, priority, perfection, or avoidability of the liens or secured claims of the DIP Lender, and (b) waive any and all defenses (including, without limitation, offset and counterclaims of any nature or kind) as to the validity, perfection, priority, enforceability, and nonavoidability of the obligations under the DIP Facility and the DIP Liens.

32.    No Waiver by Failure to Seek Relief.  Immediately upon entry by the Court (notwithstanding any applicable law or rule to the contrary) and the occurrence of the DIP Closing Date, the terms and the provisions of this Interim Order, including the liens granted herein shall, *nunc pro tunc* to the Petition Date, become valid and binding upon and inure to the benefit of the Debtors, the DIP Lender, all other creditors of the Debtors, any statutory Committee or any other duly appointed committee in the Chapter 11 Cases, the U.S. Trustee, and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in the Chapter 11 Cases, any Successor Case, or upon dismissal of the Chapter 11 Cases or any Successor Case.

33.    Interim Order Control.  This Interim Order shall constitute this Court's findings of fact and conclusions of law based upon the record of the Chapter 11 Cases at the Interim Hearing and shall, upon its entry by this Court, take effect and be fully enforceable *nunc pro tunc* to the Petition Date.  There shall be no stay of execution or effectiveness of this Interim Order, notwithstanding anything to the contrary in the Bankruptcy Rules or other applicable law; any applicable stay is hereby waived.  In the event of any inconsistency between the terms and conditions of the DIP Term Sheet, the DIP Facility Documents, or this Interim Order, the provisions of this Interim Order shall govern and control.

34.    <u>Survival</u>.  The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any plan of reorganization in the Chapter 11 Cases; (b) converting the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code; (c) dismissing the Chapter 11 Cases or any Successor Case; or (d) pursuant to which the Court abstains from hearing the Chapter 11 Cases or any Successor Case. The terms and provisions of this Interim Order, including the claims, liens, security interests, and other protections granted by the DIP Lender pursuant to this Interim Order, notwithstanding the entry of any such order, shall continue in the Chapter 11 Cases, in any Successor Case, or following dismissal of the Chapter 11 Cases or any Successor Case, and shall maintain their priority as provided by this Interim Order until all obligations under the DIP Facility have been paid in full.

35.    <u>Cooperation Among the Parties</u>.  Except in the event not reasonably practicable, the Debtors shall provide copies of all substantive motions, applications, other pleadings, and proposed forms of order with respect thereto (all of which shall be in form and substance reasonably acceptable to the DIP Lender) to the DIP Lender prior to the filing of any such substantive motions, applications, other pleadings, and proposed forms of order with respect thereto with the Court.

36.    <u>Preservation of Rights Granted Under this Interim Order</u>.

(a)    Except as provided expressly herein or in the DIP Term Sheet, no claim or lien having a priority senior to or *pari passu* with that granted by this Interim Order to the DIP Lender shall be granted while any portion of the obligations under the DIP Facility remains outstanding, and the DIP Liens shall not be subject to or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy

Code or subordinate to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise.

(b)     Unless all obligations under the DIP Facility shall have been indefeasibly paid in full, the Debtors shall not seek, and it shall constitute an Event of Default under the DIP Term Sheet, if the Debtors seek, or if there is entered (i) any stay, vacatur, rescission, or modification of this Interim Order or the Final Order without the prior written consent of the DIP Lender, and no such consent shall be implied by any other action, inaction, or acquiescence by the DIP Lender, (ii) an order converting the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code or dismissing any of these Chapter 11 Cases, or (iii) unless otherwise approved by the DIP Lender, an order granting a change of venue with respect to the Chapter 11 Cases or any related adversary proceeding. If an order dismissing the Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, (x) the DIP Liens shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all obligations under the DIP Facility shall have been paid and satisfied in full, and shall, notwithstanding such dismissal, remain binding on all parties in interest, and (y) this Court shall retain jurisdiction, to the extent it has jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens, and security interests referred to in clause (x) above.

(c)     The DIP Lender shall be entitled to all of the rights, remedies, privileges, and benefits granted in section 364(e) of the Bankruptcy Code, this Interim Order, and pursuant to the DIP Term Sheet and the DIP Facility Documents with respect to all such uses of the Collateral and all obligations under the DIP Facility.

(d)     Nothing contained in this Interim Order shall limit the Debtors' fiduciary duties.

37.    <u>Final Hearing</u>.  The Final Hearing to consider entry of the Final Order and approval of the DIP Facility on a final basis is scheduled for **December 18, 2019 at 10:30 a.m. (*prevailing Eastern Time*)** before The Honorable Mary F. Walrath, United States Bankruptcy Judge, at the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, Fifth Floor, Court Room 4, Wilmington, Delaware 19801.

38.    <u>Notice of Final Hearing</u>.  Within three (3) Business Days of the date of the entry of this Interim Order, the Debtors shall serve, by the United States mail, first-class postage prepaid, a copy of the Motion and this Interim Order upon: (i) the Office of the United States Trustee for the District of Delaware; (ii) the United States Attorney for the District of Delaware; (iii) the parties included on the Debtors' consolidated list of twenty (20) largest unsecured creditors; (iv) the Internal Revenue Service; (v) the Securities and Exchange Commission; (vi) Sberbank and its counsel; (vii) counsel to the proposed DIP Lender; and (viii) all known holders of liens in the Debtors' assets; (ix) the Debtors' landlords.

39.    <u>Objection Deadline</u>.  Objections, if any, to the relief sought in the Motion, on a final basis, shall be in writing, shall be set forth with particularity the grounds for such objections or other statements of position, shall be filed with the clerk of the Court, and personally served upon: (a) proposed counsel to the Debtors; (b) the U.S. Trustee; (c) proposed counsel to any statutory Committee; and (d) counsel to the DIP Lender, so that such objections are filed with the Court and received by said parties **on or before 4:00 p.m., *prevailing* Eastern Time on December 11, 2019** with respect to entry of the Final Order.

40.    <u>Retention of Jurisdiction</u>.  This Court shall retain jurisdiction relating to and arising out of the interpretation, implementation, or enforcement of this Interim Order.

Dated: November 21, 2019
      Wilmington, Delaware

                                 Honorable Kevin Gross
                                 United States Bankruptcy Court