**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| JUNO USA, LP, *et al.*,[1] | Case No. 19-12484 (MFW) |
| Debtors. | (Jointly Administered) |

---

**DISCLOSURE STATEMENT FOR THE DEBTORS' JOINT PLAN OF
REORGANIZATION AND LIQUIDATION UNDER CHAPTER 11 OF THE
BANKRUPTCY CODE**

---

**CHIPMAN BROWN CICERO & COLE, LLP**
William E. Chipman, Jr. (No. 3818)
Mark L. Desgrosseilliers (No. 4083)
Mark D. Olivere (No. 4291)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Telephone:    (302) 295-0191
Facsimile:    (302) 295-0199
Email:    chipman@chipmanbrown.com
    desgross@chipmanbrown.com
    olivere@chipmanbrown.com

*Proposed Counsel to the Debtors and
Debtors-In-Possession*

---

**THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THE DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BY THE BANKRUPTCY COURT, BUT SUCH APPROVAL HAS NOT BEEN GRANTED TO DATE. THIS DISCLOSURE STATEMENT MAY BE REVISED TO REFLECT EVENTS THAT OCCUR AFTER THE DATE HEREOF BUT PRIOR TO BANKRUPTCY COURT APPROVAL.**

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number, are: Juno USA, LP (5772); Sabo One LLC (2759); Juno Oregon LLC (4462); Vulcan Cars LLC (4733); GT Forge, Inc. (1093); and Omaha LLC (8656). The mailing address for the Debtors listed above is 74 West Long Lake Road, Suite 205, Bloomfield Hills, Michigan 48304.

**THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS 5:00 P.M. (EST) ON [●], 2020, UNLESS EXTENDED BY THE DEBTORS.  THE VOTING RECORD DATE FOR DETERMINING WHICH HOLDERS OF CLAIMS OR INTERESTS MAY VOTE ON THE PLAN IS [●], 2020.**

**TABLE OF CONTENTS**

Page

ARTICLE I. EXECUTIVE SUMMARY ........................................................................................ 3

    A.    Plan Overview.................................................................................................... 4
    B.    Plan Sponsorship............................................................................................... 6
    C.    Solicitation Procedures ..................................................................................... 6
    D.    Plan Confirmation ............................................................................................. 7
    E.    Consummation of the Plan ................................................................................ 8
    F.    Risk Factors ...................................................................................................... 8

ARTICLE II. INTRODUCTION................................................................................................... 9

ARTICLE III. OVERVIEW OF CHAPTER 11 .......................................................................... 10

ARTICLE IV. DEBTORS' OPERATIONS AND FINANCIAL DATA ........................................ 10

    A.    Prepetition Operational Background and Structure.......................................... 10
    B.    Regulatory Impact on the Debtors' Business .................................................. 11
    C.    Prepetition Financial Performance, Capital Structure and Debt Obligations ............................... 12
    D.    Prepetition Restructuring Efforts .................................................................... 13
    E.    Plan Sponsorship............................................................................................. 14
    F.    Reorganization of GT Forge and Future Operations....................................... 14

ARTICLE V. SIGNIFICANT EVENTS DURING THE CHAPTER 11 CASES .......................... 15

    A.    Commencement of Chapter 11 Cases and First Day Motions ......................... 15
    B.    Plan Sponsorship Bidding and Bid Deadline .................................................. 17
    C.    Second Day Motions....................................................................................... 17
    D.    Appointment of Creditors' Committee ........................................................... 18

ARTICLE VI. SUMMARY OF THE PLAN ............................................................................... 18

    A.    Treatment of Administrative Claims ............................................................... 19
    B.    Classification and Treatment of Classified Claims and Interests ..................... 21
    C.    Special Provision Governing Unimpaired Claims .......................................... 23
    D.    Voting Classes; Presumed Acceptance by Non-Voting Classes ..................... 23
    E.    Controversy Concerning Impairment .............................................................. 24
    F.    Confirmation Under Section 1129(a)(10) and Section 1129(b) of the Bankruptcy Code ............ 24
    G.    Subordinated Claims ....................................................................................... 24
    H.    Elimination of Vacant Classes ........................................................................ 24

ARTICLE VII. MEANS FOR IMPLEMENTATION OF THE PLAN ........................................ 24

    A.    Substantive Consolidation................................................................................ 24
    B.    Waiver of Gett Claims .................................................................................... 25
    C.    Continued Corporate Existence of the Reorganized Debtor ........................... 25
    D.    Corporate Action and Dissolution of the Liquidating Debtors ....................... 26
    E.    Plan Sponsor Contribution .............................................................................. 26
    F.    Establishment of Settlement Trust and Vesting of Settlement Trust Assets ..................... 27
    G.    Purpose of the Settlement Trust ...................................................................... 27
    H.    Settlement Trustee........................................................................................... 28
    I.    U.S. Federal Income Tax Treatment of Disputed Ownership Funds ............... 30
    J.    Retained Causes of Action of the Debtors ...................................................... 31
    K.    Payment of Plan Expenses .............................................................................. 31
    L.    Dissolution of Official Committees ................................................................ 31
    M.    Final Decree .................................................................................................... 32

ARTICLE VIII. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ...................... 32

    A.    Assumption of Executory Contracts and Unexpired Leases ........................... 32

**TABLE OF CONTENTS**

(Continued)

Page

B.      Cure of Defaults; Assignment of Executory Contracts and Unexpired Leases...........................33
C.      Claims on Account of the Rejection of Executory Contracts or Unexpired Leases....................34
D.      Extension of Time to Assume or Reject.................................................34
E.      Modifications, Amendments, Supplements, Restatements, or Other Agreements........................34
F.      Reservation of Rights....................................................................35
G.      Nonoccurrence of Effective Date.........................................................35

ARTICLE IX. PROVISIONS GOVERNING DISTRIBUTIONS ................................................. 35

A.      Timing and Calculation of Amounts to Be Distributed.....................................35
B.      Delivery of Distributions ...............................................................35
C.      Manner of Payment.......................................................................37
D.      No Postpetition or Default Interest on Claims ..........................................37
E.      Setoffs and Recoupments.................................................................37
F.      Rights and Powers of Distribution Agent ................................................37
G.      Payment of Fees and Expenses ...........................................................37
H.      Compliance with Tax Requirements........................................................38

ARTICLE X. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED
          CLAIMS ...................................................................................39

A.      Allowance of Claims and Interests ......................................................39
B.      Claims Administration Responsibilities..................................................39
C.      Prosecution of Objections to Claims and Interests.......................................39
D.      Estimation of Claims and Interests .....................................................39
E.      Deadline to File Objections to Claims ..................................................40
F.      Adjustment to Claims Without Objection..................................................40
G.      Disallowance of Certain Claims .........................................................40
H.      No Distributions Pending Allowance .....................................................40
I.      Distributions After Allowance ..........................................................41
J.      No Interest.............................................................................41

ARTICLE XI. CONDITIONS PRECEDENT TO THE EFFECTIVE DATE ......................................... 41

ARTICLE XII. RELEASE, DISCHARGE, INJUNCTION AND RELATED PROVISIONS ............................. 41

A.      General.................................................................................41
B.      Release of Claims and Causes of Action .................................................42
C.      Waiver of Statutory Limitations on Releases ............................................45
D.      Discharge of GT Forge ..................................................................45
E.      Exculpation ............................................................................45
F.      Preservation of Causes of Action .......................................................46
G.      Injunction .............................................................................47
H.      Binding Nature of the Plan..............................................................48
I.      Protection Against Discriminatory Treatment ............................................48
J.      Integral Part of Plan ..................................................................48
K.      Preservation of Privilege and Defenses..................................................48

ARTICLE XIII. RETENTION OF JURISDICTION ........................................................ 49

ARTICLE XIV. MODIFICATION, REVOCATION, OR WITHDRAWAL OF PLAN.................................... 51

A.      Modification of Plan ...................................................................51
B.      Effect of Confirmation on Modifications.................................................51
C.      Revocation of Plan .....................................................................51

ARTICLE XV. MISCELLANEOUS PROVISIONS ........................................................... 51

A.      Immediate Binding Effect................................................................51
B.      Additional Documents ...................................................................52

**TABLE OF CONTENTS**
(Continued)

Page

C.    Substantial Consummation ............................................................................... 52
D.    Payment of Statutory Fees; Post-Effective Date Fees and Expenses ............. 52
E.    Conflicts ........................................................................................................... 52
F.    Successors and Assigns .................................................................................... 53
G.    Reservation of Rights ....................................................................................... 53
H.    Further Assurances ........................................................................................... 53
I.    Severability ...................................................................................................... 53
J.    Service of Documents ...................................................................................... 53
K.    Governing Law ................................................................................................. 54
L.    Tax Reporting and Compliance ....................................................................... 54
M.    Schedules .......................................................................................................... 54
N.    No Strict Construction ...................................................................................... 55
O.    Entire Agreement ............................................................................................. 55
P.    Closing of Chapter 11 Cases ........................................................................... 55
Q.    2002 Notice Parties .......................................................................................... 55
R.    Section 1125(e) Good Faith Compliance ........................................................ 55

ARTICLE XVI. VOTING PROCEDURES ..................................................................... 55

A.    Voting Procedures ............................................................................................ 55
B.    Ballots Not Counted ......................................................................................... 56

ARTICLE XVII. CONFIRMATION ................................................................................ 57

A.    The Confirmation Hearing ............................................................................... 57
B.    Confirmation .................................................................................................... 57
C.    Consummation ................................................................................................. 61

ARTICLE XVIII. CERTAIN FACTORS AFFECTING THE DEBTORS ..................... 62

A.    Risk Factors Relating to the Chapter 11 Cases ............................................... 62
B.    Additional Factors to Be Considered ............................................................... 65
C.    Basis for Substantive Consolidation ................................................................ 66

ARTICLE XIX. CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ............ 66

A.    U.S. Federal Income Tax Consequences to the Debtors ................................. 68
B.    U.S. Federal Income Tax Consequences to Creditors ..................................... 68

ARTICLE XX. ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN ............. 72

A.    Liquidation Under Chapter 7 ........................................................................... 72
B.    Alternative Plan ............................................................................................... 73

ARTICLE XXI. CONCLUSION AND RECOMMENDATION ...................................... 73


EXHIBIT A      Plan
EXHIBIT B      Disclosure Statement Order (without exhibits)
EXHIBIT C      Liquidation Analysis

Nothing contained in this Disclosure Statement shall constitute an offer, acceptance, or a legally binding obligation of the Debtors, any of the Debtors' affiliates or any other person. This Disclosure Statement is subject to approval by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") and other customary conditions. Absent approval by the Bankruptcy Court, this Disclosure Statement is not a solicitation of acceptances or rejections of the *Debtors' Joint Plan of Reorganization and Liquidation Under Chapter 11 of the Bankruptcy Code* (the "Plan"), as the same may be amended or modified from time to time in accordance with the terms thereof, a copy of which is attached to this Disclosure Statement as Exhibit A. Acceptances or rejections with respect to the Plan may not be solicited until this Disclosure Statement has been approved by the Bankruptcy Court. Such a solicitation will only be made in compliance with applicable provisions of securities and/or bankruptcy laws. Future developments relating to the matters described herein may require modifications, additions, or deletions to this Disclosure Statement.

## IMPORTANT NOTICE

Only documents, including this Disclosure Statement and its related documents that are approved by the Bankruptcy Court under section 1125(b) of title 11 of the United States Code (the "Bankruptcy Code") may be used in connection with soliciting votes on the Plan. No statements have been authorized by the Bankruptcy Court concerning Juno USA, LP ("Juno") and those of its affiliates and subsidiaries that are debtors and debtors in possession (collectively, the "Debtors") or the value of their assets, except as explicitly set forth in this Disclosure Statement.

Please refer to the Plan (or, where indicated, certain motions filed with the Bankruptcy Court) for definitions of the capitalized terms that are used but not defined in this Disclosure Statement.

The Debtors reserve the right to file amendments to the Plan and Disclosure Statement from time to time. The Debtors urge you to read this Disclosure Statement carefully for a discussion of voting instructions; recovery information; classification of claims; the history of the Debtors and the Chapter 11 Cases; the Debtors' prepetition business operations, properties, and historical financial data; and a summary and analysis of the Plan.

The Plan and this Disclosure Statement are not required to be prepared in accordance with the requirements of federal or state securities laws or other applicable non-bankruptcy law. This Disclosure Statement has been approved by the Bankruptcy Court as containing "adequate information" and does not constitute endorsement of the Plan by the Bankruptcy Court.

This Disclosure Statement contains only a summary of the Plan and certain other documents. It is not intended to replace a careful and detailed review and analysis of the Plan and other documents, but only to aid and supplement such review. This Disclosure Statement is qualified in its entirety by reference to the Plan, the Disclosure Statement Order, any supplements to the Plan filed with the Bankruptcy Court subsequent to the filing date of this Disclosure Statement (collectively, the "Plan Supplement") and the exhibits

attached hereto and thereto and the agreements and documents described herein and therein.  If there is a conflict between the Plan and this Disclosure Statement, the provisions of the Plan will govern.  You are encouraged to review the full text of the Plan and the Plan Supplement and to read carefully the entire Disclosure Statement, including all exhibits hereto, before deciding how to vote with respect to the Plan.

Except as otherwise indicated, the statements in this Disclosure Statement are made as of the date on which this Disclosure Statement was filed, and the delivery of this Disclosure Statement does not imply that the information contained in this Disclosure Statement is or will continue to be correct at any time after such date.  Any estimates of claims or interests in this Disclosure Statement may vary from the final amounts of claims or interests allowed by the Bankruptcy Court.

You should not construe this Disclosure Statement as providing any legal, business, financial or tax advice, and you should consult with your own legal, business, financial and tax advisors regarding the transactions contemplated by the Plan.

As to contested matters, adversary proceedings and other actions or threatened actions, this Disclosure Statement is not, and is in no event to be construed as, an admission, or stipulation of the Debtors.  Instead, this Disclosure Statement is, and is for all purposes to be construed as, solely and exclusively a statement made by the Debtors in settlement negotiations.

---

**EACH OF THE DEBTORS URGE HOLDERS OF CLAIMS AND INTERESTS TO VOTE TO ACCEPT THE PLAN.**

---

# ARTICLE I.

## EXECUTIVE SUMMARY

Juno USA, LP ("**Juno**") and certain of its affiliates and subsidiaries, as debtors and debtors in possession (each a "**Debtor**" and, collectively, the "**Debtors**" or the "**Company**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), submit this Disclosure Statement pursuant to section 1125 of the Bankruptcy Code, in connection with the solicitation of votes on the *Debtors' Joint Plan of Reorganization and Liquidation Under Chapter 11 of the Bankruptcy Code*, dated December [●], 2019 (the "**Plan**," attached hereto as **Exhibit A** and as the same may be amended from time to time).[2]    As described in this Disclosure Statement (as amended, and including all exhibits, the "**Disclosure Statement**"), the Debtors commenced these Chapter 11 Cases following regulatory changes within the highly competitive ride-hailing marketplace that, compounded with a rising number of litigation claimants, resulted in mounting losses for the Debtors and an unsustainable financial future.

The Confirmation Hearing on the Plan is scheduled to commence at [●]:00 a.m. (EST) on [●], 2020 before the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**").  A copy of the Plan is attached hereto as **Exhibit A**.

Prior to soliciting votes on a proposed plan of reorganization, section 1125 of the Bankruptcy Code requires debtors to prepare a disclosure statement containing information of a kind, and in sufficient detail, to enable a hypothetical reasonable investor to make an informed judgment regarding acceptance or rejection of the plan of reorganization.  As such, this Disclosure Statement is being submitted in accordance with the requirements of section 1125 of the Bankruptcy Code.

This executive summary is being provided as an overview of the material items addressed in the Disclosure Statement and the Plan, which is qualified by reference to the entire Disclosure Statement and by the actual terms of the Plan (and including all exhibits attached hereto and to the Plan), and should not be relied upon for a comprehensive discussion of the Disclosure Statement and/or the Plan.  This Disclosure Statement includes, without limitation, information about:

- the Debtors' prepetition operating and financial history;

- the events leading up to the commencement of the Chapter 11 Cases;

- significant events during the Chapter 11 Cases;

- the procedures for selecting the Plan Sponsor;

- the solicitation procedures for voting on the Plan;

---

[2]    All capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan.  To the extent that a definition of a term in the text of this Disclosure Statement and the definition of such term in the Plan are inconsistent, the definition included in the Plan shall control and govern.

- the Confirmation process and the voting procedures that Holders of Claims and Interests who are entitled to vote on the Plan must follow for their votes to be counted;

- the terms and provisions of the Plan, including certain effects of confirmation of the Plan, certain risk factors relating to the Debtors or the Reorganized Debtor, the Plan and the manner in which distributions will be made under the Plan; and

- the proposed organization, operations and financing of the Reorganized Debtor if the Plan is confirmed and becomes effective.

### A. Plan Overview

The following is a brief overview of the material provisions of the Plan and is qualified in its entirety by reference to the full text of the Plan.

The Plan effectuates the reorganization of GT Forge, Inc. ("**GT Forge**" or the "**Reorganized Debtor**", as applicable) and the liquidations of (i) Juno, (ii) Juno Oregon LLC, (iii) Omaha LLC, (iv) Sabo One LLC, and (v) Vulcan Cars LLC (collectively, the "**Liquidating Debtors**"). As set forth in <u>Article IV.F</u> below, the Plan seeks to preserve the net operating losses accrued by Debtor GT Forge to facilitate the Reorganized Debtor's re-entry into the market as a business-to-business ("**B2B**") provider.

Under the Plan, the Plan Sponsor will provide the Plan Sponsor Contribution for the purpose of making payments under the Plan, including distributions for Holders of General Unsecured Claims. With the exception of GT Forge, which will emerge from these Chapter 11 Cases as the Reorganized Debtor and commence new business operations, the assets of the Debtors will be vested in the Settlement Trust and will be liquidated for the benefit of Holders of General Unsecured Claims under the supervision of the Settlement Trustee.

The Plan provides that all Holders of Allowed Administrative Claims and Allowed Other Priority Claims will be paid in full. Such payments will be funded by the proceeds of the DIP Facility, which, in turn, will be repaid in full with the proceeds of the Plan Sponsor Contribution. The Plan proposes to fairly and efficiently restructure the Debtors' liabilities and distribute the Debtors' assets in a manner that will allow these Chapter 11 Cases to conclude promptly.

The Plan provides for the classification and treatment of Claims against and Interests in the Debtors. The Plan designates five (5) Classes of Claims and two (2) Classes of Interests. Classes 2 and 3 are Impaired, Voting Classes. Class 2 is Impaired due to the significantly reduced collateral pool available to secure the guaranty underlying the Secured Guaranty Claims. Class 3 is Impaired due to the proposed recovery amounting to less than the full value of Claims in Class 3. The following table provides a summary of the classification and treatment of Claims and Interests under the Plan. Amounts below are estimated. Actual Claims and distributions will vary depending on, among other things, recoveries on Distributable Assets.

| Class | Description | Treatment | Estimated Recovery Percentage |
|---|---|---|---|
| 1 | Other Secured Claims | Except to the extent that a Holder of an Allowed Other Secured Claim agrees to less favorable treatment, in exchange for full and final satisfaction, settlement, release, and discharge of each Other Secured Claim, each Holder of an Allowed Other Secured Claim shall receive payment in full in Cash equal to the amount of such Allowed Other Secured Claim. | 100% |
| 2 | Secured Guaranty Claims | Except to the extent that a Holder of an Allowed Secured Guaranty Claim agrees to less favorable treatment, in exchange for full and final satisfaction, settlement, release, and discharge of each Secured Guaranty Claim, each Holder of an Allowed Secured Guaranty Claim shall receive the reinstatement of its guaranty by the Reorganized Debtor, secured only by the assets of the Reorganized Debtor. | [100%] |
| 3 | General Unsecured Claims | Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to less favorable treatment with the Plan Sponsor, in exchange for full and final satisfaction, settlement, release, and discharge of such Holder's rights with respect to and under such Allowed General Unsecured Claim, on the Effective Date, each Holder of an Allowed General Unsecured Claim shall receive (i) its Pro Rata share of the GUC Settlement Amount and (ii) its Pro Rata share of the Settlement Trust Amount. | [TBD] |
| 4 | Subordinated Claims | On the Effective Date, Holders of Subordinated Claims shall receive no distributions on account of such Claims and such Claims shall be extinguished. | 0% |
| 5 | Intercompany Claims | On the Effective Date, Holders of Intercompany Claims shall receive no distributions on account of such Claims and such Claims shall be extinguished. | 0% |
| 6 | GT Forge Interests | On the Effective Date, if the Proposed Plan Sponsor is the Plan Sponsor, Holders of GT Forge Interests shall have left unaltered the legal, equitable, and contractual rights to which each such Holder is entitled on account of such interest.  If the Plan Sponsor is a Person other than the Proposed Plan Sponsor, the GT Forge Interests will be canceled, released and extinguished as of the Effective Date, and will be of no further force or effect. | 100% or 0% |
| 7 | Liquidating Debtor Interests | On the Effective Date, Holders of interests in the Liquidating Debtors shall receive no distributions or recoveries on account of such interests and such interests shall be extinguished. | 0% |

### B. Plan Sponsorship

The Plan provides that the Plan Sponsor shall provide new value in the form of the Plan Sponsor Contribution, in Cash, and that such funds shall be used for the purpose of funding payments under the Plan. In return, the Plan Sponsor, or its designee, shall receive the equity interests of the Reorganized Debtor under the Plan. The right to serve as Plan Sponsor will be "market-tested" through a competitive bidding and auction process. If a Person other than the Proposed Plan Sponsor (or an affiliate thereof) is approved by the Bankruptcy Court to serve as Plan Sponsor, the Reorganized Debtor shall issue new common stock to the Plan Sponsor in accordance with procedures set forth in the Plan Supplement.

### C. Solicitation Procedures

#### 1. Voting Procedures

On [●], 2020, the Bankruptcy Court entered the Disclosure Statement Order [Docket No. ●] which, among other things, (a) approved the dates, procedures and forms applicable to the process of soliciting votes on and providing notice of the Plan, as well as certain vote tabulation procedures and (b) established the deadline for filing objections to the Plan and scheduling the hearing to consider confirmation of the Plan.

**The discussion of the procedures below is a summary of the solicitation and voting process**. Detailed voting instructions will be provided with each ballot and are also set forth in greater detail in Disclosure Statement Order.

---

**PLEASE REFER TO THE INSTRUCTIONS ATTACHED TO THE BALLOT THAT YOU HAVE RECEIVED FOR MORE DETAILED INFORMATION REGARDING THE VOTING REQUIREMENTS, RULES AND PROCEDURES APPLICABLE TO VOTING YOUR CLAIM.**

---

#### a. The Voting and Claims Agent

On November 27, 2019, the Debtors filed an *Application of the Debtors for Entry of an Order Appointing Omni Agent Solutions, Inc.* ("**Omni**"*) as Administrative Agent for the Debtors Nunc Pro Tunc to the Petition Date* [Docket No. 51]. On December [●], 2019 the Bankruptcy Court entered an order approving the retention of Omni to, among other things, provide administrative services in relation to the solicitation, balloting and tabulation and calculation of votes in Omni's capacity as the Debtors' Voting and Claims Agent [Docket No. [●]].

Specifically, the Voting and Claims Agent will assist the Debtors with: (a) mailing Confirmation Hearing Notice (as defined in the Disclosure Statement Order); (b) mailing the Solicitation Package (as defined in the Disclosure Statement Order and as described below); (c) soliciting votes on the Plan; (d) receiving, tabulating, and reporting on ballots cast for or against the Plan by Holders of Claims against the Debtors; (e) responding to inquiries from creditors and stakeholders relating to the Plan, the Disclosure Statement, the Ballots and matters related thereto, including, without limitation, the procedures and requirements for voting to accept or reject the

Plan and objecting to the Plan; and (f) if necessary, contacting creditors regarding the Plan and their Ballots.

Holders of Claims and Interests entitled to vote on the Plan are advised to read the Disclosure Statement Order, which sets forth in greater detail the voting instructions summarized herein.

### b.  The Voting Deadline

The Bankruptcy Court has approved [●]:00 p.m. (EST) on [●], 2020 as the Voting Deadline.  The Voting Deadline is the date by which all Ballots must be properly executed, completed and delivered to the Voting and Claims Agent in order to be counted as votes to accept or reject the Plan.

### c.  Holders of Claims and Interests Entitled to Vote on the Plan

Under the provisions of the Bankruptcy Code, only holders of claims against and equity interests in a Debtor situated in "impaired" Classes are entitled to vote on the Plan (unless the Class receives no compensation or payment, in which event the Class is conclusively deemed to have rejected the Plan).  A Class is Impaired if legal, equitable or contractual rights attaching to the Claims or Interests in the Class are modified, other than by curing defaults and reinstating maturities.  Under the Plan, Administrative Claims and Priority Tax Claims are unclassified and are not entitled to vote.  Classes 1 and 6 (if the Proposed Plan Sponsor is the Plan Sponsor) are Unimpaired and are therefore conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Classes 4, 5, 6 (if the Plan Sponsor is a Person other than the Proposed Plan Sponsor) and 7 receive nothing under the Plan and are therefore conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Classes 2 and 3 are Impaired and entitled to vote to accept or reject the Plan.

Only those votes cast by Holders of Allowed Claims shall be counted in determining whether a sufficient number of acceptances have been received to obtain Plan Confirmation.  **If no Holder of a Claim or Interest eligible to vote in a particular Class timely votes to accept or reject the Plan, the Debtors will seek to have the Plan deemed accepted by the Holders of such Claims or Interests in such Class for purposes of section 1129(b) of the Bankruptcy Code.**

### D.  Plan Confirmation

### 1.  The Confirmation Hearing

The Confirmation Hearing will commence at [●]:00 a.m. (EST) on [●], 2020 before the Honorable Mary F. Walrath, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Delaware, located at 824 Market Street, 5th Floor, Courtroom No. 4, Wilmington, Delaware 19801.  The Confirmation Hearing may be continued from time to time by the Bankruptcy Court or the Debtors without further notice other than by such adjournment being announced in open court or by filing a notice indicating such adjournment with the Bankruptcy Court.  Moreover, the Plan may be modified or amended, if necessary, pursuant to section 1127 of

the Bankruptcy Code, prior to, during or as a result of the Confirmation Hearing, without further notice to parties-in-interest.

## 2. The Deadline for Objecting to Confirmation of the Plan

Any objection to confirmation must be made in writing and specify in detail the name and address of the objector, all grounds for the objection and the amount and description of the Claim and/or Interest held by the objector.  Any such objection must be filed with the Bankruptcy Court and served in accordance with the Disclosure Statement Order on or before [●], 2020 at 4:00 p.m. (EST).  Objections to confirmation of the Plan are governed by Bankruptcy Rule 9014.

## 3. Effect of Confirmation of the Plan

Article IX of the Plan contains certain provisions relating to (a) the compromise and settlement of Claims, (b) the release of the Released Parties by the Debtors and certain Holders of Claims and Interests, and each of their respective Related Persons, and (c) exculpation of certain parties.  **It is important to read such provisions carefully so that you understand the implications of these provisions with respect to your Claim such that you may cast your vote accordingly**.

THE PLAN SHALL BIND ALL HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTORS TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, NOTWITHSTANDING WHETHER OR NOT SUCH HOLDER (A) WILL RECEIVE OR RETAIN ANY PROPERTY OR INTEREST IN PROPERTY UNDER THE PLAN, (B) HAS FILED A PROOF OF CLAIM OR INTEREST IN THE CHAPTER 11 CASES OR (C) FAILED TO VOTE TO ACCEPT OR REJECT THE PLAN OR VOTED TO REJECT THE PLAN.

## E. Consummation of the Plan

It will be a condition to confirmation of the Plan that all provisions, terms and conditions of the Plan are approved in the Confirmation Order unless otherwise satisfied pursuant to the provisions of Article VIII of the Plan.  Following confirmation, the Plan will be consummated on the Effective Date.

## F. Risk Factors

**PRIOR TO DECIDING WHETHER AND HOW TO VOTE ON THE PLAN, EACH HOLDER OF A CLAIM OR INTEREST IN THE VOTING CLASSES SHOULD CONSIDER CAREFULLY ALL OF THE INFORMATION SET FORTH IN OR INCORPORATED INTO THIS DISCLOSURE STATEMENT, INCLUDING THE FACTORS DESCRIBED IN ARTICLE XVIII HEREIN.**

# ARTICLE II.

# INTRODUCTION

The Debtors submit this Disclosure Statement under section 1125 of the Bankruptcy Code to Holders of Claims against and Interests in the Debtors in connection with: (1) the solicitation of acceptances of the Plan filed by the Debtors with the Bankruptcy Court; and (2) the hearing to consider confirmation of the Plan (the "**Confirmation Hearing**"), scheduled to commence on [●], 2020 at [●]:00 a.m. (EST).  **Unless otherwise indicated or defined herein, all capitalized terms have the meanings ascribed to them in the Plan.**

Attached as exhibits to this Disclosure Statement are:

- The Plan (**Exhibit A**);

- Order of the Bankruptcy Court (the "**Disclosure Statement Order**"), which, among other things, approves this Disclosure Statement and establishes certain procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan (without exhibits, **Exhibit B**);

- Liquidation Analysis (**Exhibit C**).

In addition, unless otherwise noted, a ballot for the acceptance or rejection of the Plan is enclosed with each copy of this Disclosure Statement that is submitted to the Holders of Claims and Interests that are entitled to vote to accept or reject the Plan.

On [●], 2020, after notice and a hearing, the Bankruptcy Court entered the Disclosure Statement Order, approving this Disclosure Statement as containing adequate information of a kind, and in sufficient detail, to enable hypothetical, reasonable persons typical of the Debtors' creditors and equity holders to make an informed judgment regarding the Plan.  **APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT, HOWEVER, CONSTITUTE A DETERMINATION BY THE BANKRUPTCY COURT AS TO THE FAIRNESS OR MERITS OF THE PLAN.**

The Disclosure Statement Order sets forth in detail the deadlines, procedures and instructions for voting to accept or reject the Plan and filing objections to confirmation of the Plan, the record date for voting purposes and the applicable standards for tabulating votes.  In addition, detailed voting instructions accompany each ballot.  Each Holder of a Claim or Interest entitled to vote on the Plan should read this Disclosure Statement, the Plan, the Plan Supplement, and the exhibits attached to all of the foregoing documents, and the agreements and documents described herein therein, the Disclosure Statement Order and the instructions accompanying the ballot in their entirety before voting on the Plan.  These documents contain, among other things, important information concerning the classification of Claims and Interests for voting purposes and the tabulation of votes.  No solicitation of votes to accept the Plan may be made except under section 1125 of the Bankruptcy Code.

# ARTICLE III.

# OVERVIEW OF CHAPTER 11

Chapter 11, the principal business reorganization chapter of the Bankruptcy Code, permits a debtor to reorganize or liquidate its business for the benefit of itself, its creditors, and equity interest holders.  In addition to the rehabilitation or liquidation of a debtor, another goal of chapter 11 is to promote equality of treatment for similarly situated creditors and equity interest holders in the distribution of a debtor's assets.  The commencement of a chapter 11 case creates an estate comprised of all of the legal and equitable interests of the debtor as of the date the chapter 11 petition is filed.  The Bankruptcy Code provides that the debtor may continue to operate its business and remain in possession of its property as a "debtor in possession."

The consummation of a plan is the principal objective of a chapter 11 case.  A plan of reorganization or a plan of liquidation both set forth the means for satisfying claims against and equity interests in a debtor.  Confirmation of a plan by the bankruptcy court binds the debtor, any person acquiring property under the plan, any creditor or equity interest holder of a debtor, and any other person or entity subject to the terms of the Plan.  Subject to certain limited exceptions, the order approving confirmation of a plan of reorganization discharges a debtor from any debt, equity interest, or other claim that arose prior to the date of confirmation of the plan and substitutes in place of such debts and other claims the obligations specified in the confirmed plan.

Certain holders of claims against, and sometimes equity interests in, a debtor are permitted to vote to accept or reject the plan.  Before soliciting acceptances of the proposed plan, section 1125 of the Bankruptcy Code requires a debtor to prepare a disclosure statement containing adequate information of a kind, and in sufficient detail, to enable a hypothetical, reasonable claimant or holder of an equity interest to make an informed judgment regarding the plan.  The Debtors are submitting this Disclosure Statement, under section 1125 of the Bankruptcy Code, to holders of Claims against the Debtors that are entitled to vote to accept or reject the Plan.

# ARTICLE IV.

# DEBTORS' OPERATIONS AND FINANCIAL DATA

## A.  Prepetition Operational Background and Structure

Juno was a ride-hailing, mobile application-based service that operated in New York, New York.  Juno launched its mobile application and began offering its for-hire vehicle services in early 2016.  Juno's former parent, Juno, Inc., an unaffiliated, non-Debtor entity, offered drivers particularly attractive commission structures and economic incentives (including restricted stock units, or "RSU"s) as compared to its several competitors, with the expectation that such an approach would result in an overall enhanced driving experience for drivers and, in turn, riders.

In its first year, Juno's business grew substantially, and its success attracted GT Gettaxi Limited ("**Gett**"), a leading global transportation network company and former competitor in the New York ride-hailing market through GT Forge (then doing business as "Gett"), to seek to acquire Juno.  To that end, in April 2017, Gett purchased Juno and certain of its Debtor and non-Debtor

10

affiliates from unaffiliated non-Debtor Juno, Inc.  GT Forge holds a general partnership interest in Juno.

Juno's employee base remained entirely intact, and with the addition of two of Gett's employees, Juno emerged from the acquisition with 34 New York-based employees to handle marketing, onboarding, finance and general operations.  As part of the acquisition, unaffiliated non-Debtor Juno Inc. bought out all drivers' RSUs, ceasing that compensation program entirely; Juno did, however, continue to offer one of the most competitive commission structures in the marketplace and, as such, continued to onboard drivers, at one point contracting with over 50,000 individuals.

Vulcan, which is wholly owned by Juno, served as the contract counterparty for the individual driver contracts prior to Gett's acquisition of Juno (whereas Juno served as the contract counterparty for driver contracts entered into thereafter).  Vulcan also served as Juno's physical "dispatch base" entity, fulfilling a requirement of New York City's Taxi and Limousine Commission ("**TLC**").  Omaha, which is also wholly owned by Juno, served as a "backup base" to Vulcan, in the unlikely scenario in which Vulcan might be suspended by the TLC.

Prior to Gett's acquisition of Juno, Sabo One, which is wholly owned by GT Forge, served as the "dispatch base" entity for GT Forge.  That entity, however, has since been dormant.  Prior to the filing of these Chapter 11 Cases, Juno utilized two customer service centers: Juno Lab Ltd., a non-debtor Israeli entity ("**Juno Israel**"), operated as the primary center, while Juno Oregon, which is 100% owned by GT Forge, operated a "night shift."  Together, Juno Israel and Juno Oregon were able to provide 24/7 customer service coverage between the temporally removed time zones.

Juno's research and development was undertaken by Juno Lab LLC, a Belarussian non-debtor affiliate, with all intellectual property utilized by the Debtors in connection with their prepetition operations being owned by Gett.

## B.  Regulatory Impact on the Debtors' Business

Juno's financial challenges have been significantly amplified by local legislative forces. New York City's recent wage legislation, which was approved by the TLC in December 2018 and implemented in February 2019, instituted a "pay floor" for ride-hail drivers, who—as independent contractors—are not otherwise governed by minimum-wage legislation.  The new rules require that drivers receive a minimum of $17.22 per hour, regardless of the number of rides performed or revenue generated during that time.  The TLC also imposed a one-year moratorium on new driver licenses.  Additionally, in certain "congestion zone" areas, the TLC imposed an additional $2.75 fee on riders.

The impact of these rule changes was drastic for the Company.  Not only did ridership decrease as a result of necessary increased pricing—for example, in 2017, Juno facilitated approximately 47,000 rides per day, whereas immediately prior to filing these Chapter 11 Cases, rides had decreased to fewer than 25,000 per day—but average hourly driver earnings also decreased.  Whereas certain competitors responded to these challenges by capping the number of drivers who could access their application at any given time, Juno refused to implement this approach, given its core driver-centric values.  This resulted in increased exposure to the "pay

floor" rules. Moreover, Juno was forced to stop onboarding drivers altogether under the new rules, thus halting any hopes for near-term growth. Consequently, Juno—which operated only in New York—faced an unsustainable financial future in the business-to-consumer ("B2C") marketplace.

### C. Prepetition Financial Performance, Capital Structure and Debt Obligations

Juno succeeded in growing revenue during its first two years of operations. By year-end of 2017, the Company had generated over $218 million in gross revenues; that number increased in 2018 when gross revenues reached approximately $269 million, representing approximately 23% annual growth. Following the implementation of New York City's wage legislation in 2019, Juno's financial performance suffered. Juno generated only $133 million in revenue through September 30, 2019, an annualized gross revenue decline of 34%.

Juno's operating costs and expenses—including for salaries, rent, vendor payments, and legal fees—were funded entirely by Gett, which has infused a significant amount of capital into the Debtors since its 2017 acquisition of Juno. These operating expenses were typically funded on a monthly basis. As set forth in Article IV.B of the Plan, all Claims by Gett relating to such prepetition funding shall be deemed waived and released on the Effective Date.

Consequently, the Company has virtually no secured debt. The Company's debt obligations consisted primarily of real property lease obligations, significant legal defense costs in connection with several expensive causes of action, and trade debt, each as described in further detail below. In addition, Sberbank Investments ("**Sberbank**"), as security agent, holds a perfected, first priority, all-asset lien against GT Forge—which includes an interest in Forge's subsidiary holdings, including its partnership interest in Juno—based on a secured guaranty granted by Forge in connection with Gett's secured financing facility.

### 1. Real Property Lease Obligations

Juno maintained two primary nonresidential real property leases for operations: (i) for the Company's primary marketing, onboarding and financial operations, office space at the World Trade Center in New York, New York, under which the Debtors paid approximately $74,000 in monthly rent; and (ii) for the Company's US-based customer support team, office space in Portland, Oregon, under which the Debtors paid approximately $24,000 in monthly rent. On the Petition Date, the Debtors filed a motion to reject these leases [Docket No. 17]; consistent therewith, the Debtors vacated these premises as of November 30, 2019. As credit support for these leases, the Company is obligated on two letters of credit for which it maintains collateral in the form of money market accounts in the respective amounts of $414,419 and $375,000.

GT Forge also leases, and in turn sublets, certain office space in Long Island City, New York, under which the Company pays the landlord $13,163 in monthly rent, but also receives $10,071 in monthly rent from its sublessee. The Debtors intend to file a motion to reject this lease and the sublease in the near future. Finally, GT Forge leased a corporate apartment for which the Debtors filed a motion to reject the lease effective as of the Petition Date [Docket No. 16].

### 2. Litigation

The Company faces four different fronts of litigation: (i) a putative class-action lawsuit brought by drivers in connection with the terminated RSU program, among other things; (ii) three patent infringement lawsuits; (iii) multiple personal injury lawsuits brought by riders, the majority of whom allege to have been passengers in an automobile accident while riding with a Juno driver; and (iv) multiple unemployment insurance suits brought by drivers, under which the drivers seek a determination that they are employees, not independent contractors, and are thus allegedly entitled to certain unemployment benefits. The Company contests the allegations in each of the aforementioned lawsuits and actions, and has vigorously defended itself against these lawsuits.

### 3. Trade Debt

As of the Petition Date, the Company estimates that approximately $300,000 was due and owing to holders of prepetition trade claims. The claimants are primarily vendors who provide digital marketing, software and web-services.

### D. Prepetition Restructuring Efforts

Prior to filing these Chapter 11 Cases, the Company explored various alternatives in lieu of filing for chapter 11. Earlier in 2019, Gett attempted to sell the Juno ride-hailing business (including the Debtors, non-Debtor affiliates and related assets held by Gett) as a going concern. Gett hired a leading investment banking firm which solicited interest from approximately fifty investors. Six parties signed non-disclosure agreements, however, none of the parties performed in-depth due diligence. Only one offer was received, which would have required Juno to make payment to the potential purchaser to complete the sale. The offer was not considered viable.

Ultimately, despite having implemented austere cost cutting measures, the Company and its advisors determined that there was no viable, long-term path to achieve a going concern sale or sustain operations as a B2C company and that its stakeholders would be best served by the liquidation of the Company's B2C operations and the restructuring GT Forge. On October 24, 2019, the Company retained Mackinac Partners LLC as restructuring advisor to provide certain advisory services in connection with the Company's evaluation, development and implementation of strategic alternatives to address its financial performance and capital structure.

Upon recognizing that the Company could not continue in its current form, prior to the filing of these Chapter 11 Cases, the Company informed its employees that it would be shutting down operations. Under the Wages Motion (as defined below) the Debtors seek to honor all severance obligations and any "stub" payments that were not processed prior to the filing. With respect to the non-employee, independent contractor drivers, each driver received final payment for all rides prior to the Juno application's shutdown.

Prior to filing these Chapter 11 Cases, the Debtors also received a debtor-in-possession financing commitment from Gett, as more fully described in the DIP Motion (*as defined below*), and a commitment from the Proposed Plan Sponsor to fund and support the Debtors' Plan. Given these parties' affiliations, prior to the filing of these Chapter 11 Cases, the Debtors conducted a thorough search and interview process and hired Mr. David Eaton to serve as the independent director, (the "**Independent Director**") and sole director of the Company. The Independent

Director is authorized to approve any decisions with respect to the Proposed Plan Sponsor, and has already approved the proposed DIP financing (subject to Court approval).

### E. Plan Sponsorship

Prior to filing these Chapter 11 Cases, the Debtors received a commitment from the Proposed Plan Sponsor to provide new value in the form of the Plan Sponsor Contribution in return for the equity interests of the Reorganized Debtor.

The Plan Sponsor Contribution is essential to the success of the Plan due to the limited assets of the Debtors available to fund payment to creditors. Without the Plan Sponsor Contribution, the Debtors would be unable to offer any meaningful recovery to creditors.

As set forth in additional detail in Article V.B below, the right to serve as Plan Sponsor will be "market-tested" through a competitive bidding and auction process. If the Proposed Plan Sponsor serves as Plan Sponsor, the Holders of GT Forge Interests shall retain the equity interests of the Reorganized Debtor. If a Person other than the Proposed Plan Sponsor is approved by the Bankruptcy Court to serve as Plan Sponsor, the Reorganized Debtor shall issue new common stock in accordance with procedures set forth in the Plan Supplement.

### F. Reorganization of GT Forge and Future Operations

The reorganization of GT Forge allows the Company to leverage its existing relationships and reputation as an innovative player in the ride-hailing market while shifting its focus from B2C efforts to B2B partnerships and services. Refocusing on the B2B sector will enable increased collaboration between the Reorganized Debtor and Juno's former competitors and allow the Reorganized Debtor to operate largely free from the regulatory burdens imposed on B2C operations, as discussed below. Moreover, the Plan seeks to preserve the net operating losses accrued by GT Forge prior to the commencement of these Chapter 11 Cases to facilitate the Reorganized Debtor's re-entry into the market as a B2B provider.

Gett has already demonstrated success in pivoting to B2B operations in the U.S. and internationally. Through the Reorganized Debtor, Gett will pursue U.S.-based partnerships with ride-hailing companies targeting the corporate transportation sector. The Reorganized Debtor's refocused business model will allow it to expand beyond the Company's previous geographical limits, and pursue opportunities across the U.S.

The Reorganized Debtor will be governed by a board of directors comprising at least one member, as set forth in the Plan Supplement. The Reorganized Debtor will emerge from these Chapter 11 Cases with limited assets, and accordingly, as with Juno prior to these Chapter 11 Cases, the operating costs and expenses of the Reorganized Debtor will be funded entirely by Gett.

# ARTICLE V.

## SIGNIFICANT EVENTS DURING THE CHAPTER 11 CASES

### A.  Commencement of Chapter 11 Cases and First Day Motions

On the Petition Date, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.  The Chapter 11 Cases were assigned to the Honorable Mary F. Walrath and are being jointly administered for administrative convenience.

The Debtors sought approval from the Bankruptcy Court of certain motions and applications (collectively, the "**First Day Motions**"), which the Debtors filed simultaneously with, or around the same time as, their voluntary petitions.  The Debtors sought this relief to establish procedures in the Chapter 11 Cases regarding the administration of the Chapter 11 Cases and to facilitate the Debtors' reorganization efforts.  Specifically, the First Day Motions and other critical motions during the Chapter 11 Cases addressed the following issues, among others:

### 1.  Joint Administration

The Debtors are affiliated entities and, therefore, on the Petition Date, filed the Debtors' *Motion for Order Directing the Joint Administration of the Debtors' Chapter 11 Cases* [Docket No. 4] (the "**Joint Administration Motion**").  The Joint Administration Motion sought authority to utilize a single general docket for these cases and combine notices to creditors of the Debtors' respective estates and other parties in interest, which would result in significant savings to the Estates.  On November 21, 2019, the Bankruptcy Court entered its order directing joint administration of these Chapter 11 Cases [Docket No. 22].

### 2.  Claims and Noticing Agent

On the Petition Date, the Debtors filed the *Application of the Debtors for Entry of an Order Appointing Omni Agent Solutions, Inc. as Claims and Noticing Agent* [Docket No. 8].  Omni's retention was approved by the Bankruptcy Court by order entered on November 21, 2019 [Docket No. 26].  Omni maintains the claims register in these Chapter 11 Cases and will serve as the balloting agent to receive and tabulate the ballots on the Plan.

### 3.  Cash Management

On the Petition Date, the Debtors filed the *Motion of the Debtors for Entry of Interim and Final Orders (A) Authorizing the Continued Use of the Debtors' Cash Management System, (B) Authorizing Continued Transfers Among Debtors and Non-Debtor Affiliates, and (C) Scheduling a Final Hearing on the Motion* (the "**Cash Management Motion**") [Docket No. 5].  The prepetition cash management system utilized by the Debtors was a network of six bank accounts maintained at Citibank N.A. or JP Morgan Chase Bank N.A. that facilitated the timely and efficient collection, management and disbursement of funds used in the Debtors' prepetition business operations.

The Bankruptcy Court entered its interim order granting the relief requested by the Debtors in the Cash Management Motion on November 21, 2019 [Docket No. 23]. [The Bankruptcy Court entered its final order approving the Cash Management Motion on [●] [Docket No. ●].]

### 4.  Employee Wages

On the Petition Date, the Debtors filed the *Motion of the Debtors for Interim and Final Orders (I) Authorizing the Debtors to Pay Certain Prepetition Wages and Compensation, (II) Authorizing the continuation of Employee Benefit Programs, (III) Authorizing Banks to Honor and Process Checks and Transfers Related to Such employee Obligations, and (IV) Granting Related Relief* [Docket No. 15] (the "**Wages Motion**").

On November 21, 2019, the Bankruptcy Court entered its interim order granting the relief requested by the Debtors [Docket No. 30]. [The Bankruptcy Court entered its final order approving the Wages Motion on [●] [Docket No. ●].]

### 5.  DIP Financing and Cash Collateral

On the Petition Date, the Debtors sought authority to use cash collateral and approval of postpetition financing (the "**DIP Financing**") by filing the *Motion of the Debtors for Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Secured Financing, (II) Authorizing the Use of Cash Collateral, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, (V) and Granting Related Relief* (the "**DIP Motion**") [Docket No. 14].

Prior to the Petition Date, the Debtors' operations were funded on an unsecured basis by Gett (the "**DIP Lender**") through intercompany transfers. Sberbank, as security agent pursuant to a secured guaranty granted by GT Forge in connection with Gett's secured financing facility, holds a perfected, first-priority all asset lien against GT Forge, including its partnership interest in Juno (the "**Sberbank Lien**"). In addition, Juno maintains a money market account at Citibank N.A., which collateralizes two letters of credit covering Juno's corporate leases in New York, New York and Portland, Oregon. The Debtors have no other secured financing obligations.

Sberbank has consented to having the Sberbank Lien primed by the proposed DIP Financing. Sberbank has also consented to the Debtors' use of its Cash Collateral at GT Forge. The other Debtors' Cash Collateral is otherwise unencumbered.

The DIP Financing and use of Cash Collateral is critical to effectuating the Debtors' goals in these Chapter 11 Cases and beyond. [The Bankruptcy Court entered its final order approving the DIP Financing and use of cash collateral on [●] [Docket No. ●].]

### 6.  Prepetition Taxes

On the Petition Date, the Debtors filed the *Motion of the Debtors for Entry of an Order (I) Authorizing the Debtors to Pay Certain Prepetition Taxes and (II) Granting Related Relief* [Docket No. 11] (the "**Tax Motion**"). On November 21, 2019, the Bankruptcy Court entered its interim order approving the payment of specified taxes [Docket No. 28]. [The Bankruptcy Court entered its final order approving the Tax Motion on [●] [Docket No. ●].]

### 7.  Insurance

On the Petition Date, the Debtors filed the *Motion of the Debtors for Entry of an Order Authorizing to Continue Their Insurance Policies and Pay Prepetition and Postpetition Obligations in Respect Thereof* [Docket No. 10].  On November 21, 2019, the Bankruptcy Court entered its order approving the payment of specified taxes [Docket No. 27].

### B.  Plan Sponsorship Bidding and Bid Deadline

The Debtors believe that it is in the best interests of the Debtors' estates and their stakeholders to subject the right to serve as Plan Sponsor and obtain the equity interests in the Reorganized Debtor to an open-market bidding process.  Moreover, the Proposed Plan Sponsor is an insider of the Debtors and will retain the equity interests in the Reorganized Debtor if it serves as Plan Sponsor.  To avoid exclusively offering to vest equity interests of the Reorganized Debtor in the Proposed Plan Sponsor, and in accordance with *Bank of America National Trust and Savings Association v. 203 North LaSalle Street Partnership Bank*, 526 U.S. 434 (1999), the Debtors will extend the opportunity to compete for the right to serve as Plan Sponsor.

Contemporaneously herewith, the Debtors have filed the *Motion for Entry of an Order (I) Approving Debtors' Disclosure Statement, (II) Establishing Sponsorship Bid Deadline, (III) Determining Dates, Procedures, and Forms Applicable to the Solicitation Process, (IV) Establishing Vote Tabulation Procedures, and (V) Establishing Objection Deadline and Scheduling Hearing to Consider Confirmation of the Plan* [Docket No. ●] (the "**Disclosure Statement Motion**").  Under the Disclosure Statement Motion, the Debtors propose, among other things, certain procedures relating to the competitive bidding process for the right to serve as Plan Sponsor, including: (i) that any Person interested in acting as Plan Sponsor, providing the Plan Sponsor Contribution and obtaining the equity interests in the Reorganized Debtor submit a bid in writing which must exceed $[●] (a "**Sponsorship Bid**") to counsel for the Debtors, with a copy to the DIP Lender, prior to 5:00 p.m. (EST) on [●], 2020 (the "**Sponsorship Bid Deadline**");  (ii) that each Person submitting a Sponsorship Bid must demonstrate that it has the financial ability to meet its Sponsorship Bid either in cash on hand or financing commitment in a form reasonably acceptable to the Debtors and the DIP Lender; and (iii) to the extent a Sponsorship Bid is received, the Debtors will seek approval of the Bankruptcy Court to schedule an auction and establish auction procedures.

### C.  Second Day Motions

On November 27, 2019, the Debtors filed additional motions and applications seeking typical second day relief (the "**Second Day Relief**").  The Second Day Relief included, among other things:

    i.    *Motion of Debtors for Entry of an Order Pursuant to Bankruptcy Rule 3003(c)(3) and Local Rule 2002-1(e) Establishing Bar Dates and Related Procedures for Filing Proofs of Claim (Including for Administrative Expense Claims Arising Under Section 503(b)(9) of the Bankruptcy Code) and Approving the Form and Manner of Notice Thereof* [Docket No. 50];

ii.  *Motion of Debtors for Entry of an Order (i) Extending the Deadline to File Schedules of Assets and Liabilities and Statements of Financial Affairs, and (ii) Granting Related Relief* [Docket No. 49];

iii.  *Application of the Debtors for Entry of an Order Authorizing the Retention and Employment of Chipman Brown Cicero & Cole, LLP as Counsel to the Debtors Nunc Pro Tunc to the Petition Date* [Docket No. 46];

iv.  *Debtors' Motion for an Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Docket No. 48];

v.  *Motion for an Order, Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code, Authorizing the Debtors to Retain Mackinac Partners, LLC as Their Restructuring Advisor and Designating Melissa S. Kibler as Chief Restructuring Officer for the Debtors Nunc Pro Tunc to the Petition Date, and Approving the Agreement Related Thereto* [Docket No. 52]; and

vi.  *Debtors' Motion for Authority to Retain, Employ and Compensate Certain Professionals Used in the Ordinary Course of Business* [Docket No. 47]

A hearing on the Second Day Relief is scheduled for December 18, 2019.

### D. Appointment of Creditors' Committee

Under section 1102(a)(1) of the Bankruptcy Code, on December 3, 2019, the U.S. Trustee appointed the Creditors' Committee, comprising the following creditors: (i) Mohammad A. Siddique; (ii) Mohammad N. Islam; and (iii) Mohammad Razzak [Docket No. 57]. Arent Fox LLP and Morris James LLP are proposed counsel to the Creditors' Committee.

### ARTICLE VI.

### SUMMARY OF THE PLAN

**This Disclosure Statement contains only a summary of the Plan, a copy of which is included herein as <u>Exhibit A</u>. It is not intended to replace the careful and detailed review and analysis of the Plan, but only to aid and supplement such review. This Disclosure Statement is qualified in its entirety by reference to the Plan, the Plan Supplement and the exhibits attached thereto and the agreements and documents described therein. If there is a conflict between the Plan and this Disclosure Statement, the provisions of the Plan will govern. You are encouraged to review the full text of the Plan and the Plan Supplement and to read carefully the entire Disclosure Statement, including all exhibits, before deciding how to vote with respect to the Plan.**

Under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, and controversies resolved under the Plan.

### A.  Treatment of Administrative Claims

#### 1.  General Administrative Claims

Subject to the provisions of sections 328, 330(a), and 331 of the Bankruptcy Code and except to the extent that a Holder of an Allowed General Administrative Claim and the applicable Debtor before the Effective Date or the Reorganized Debtor after the Effective Date, the Plan Sponsor, and DIP Facility Lender have agreed in writing to such other less favorable treatment, each Holder of an Allowed General Administrative Claim will be paid the full unpaid amount of such Allowed General Administrative Claim in Cash:  (a) if such Allowed General Administrative Claim is based on liabilities that the Debtors incurred in the ordinary course of business after the Petition Date, in accordance with the terms and conditions of the particular transaction giving rise to such Allowed General Administrative Claim and without any further action by any Holder of such Allowed General Administrative Claim; (b) if such Allowed General Administrative Claim is due, on the Effective Date, or, if such Allowed General Administrative Claim is not due as of the Effective Date, on the date that such Allowed General Administrative Claim becomes due or as soon as reasonably practicable thereafter; (c) if a General Administrative Claim is not Allowed as of the Effective Date, on the date that is no later than sixty (60) days after the date on which an order allowing such General Administrative Claim becomes a Final Order of the Bankruptcy Court or as soon as reasonably practicable thereafter; or (d) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court.

#### 2.  Accrued Professional Compensation Claims

##### a.  Final Fee Applications

All final requests for Accrued Professional Compensation Claims shall be Filed no later than forty-five (45) days after the Effective Date.  The amount of Accrued Professional Compensation Claims owed to the Retained Professionals shall be paid in Cash to such Retained Professionals from funds held in the Professional Fee Escrow Account after such Claims are Allowed by a Final Order.  To the extent that funds held in the Professional Fee Escrow Account are unable to satisfy the amount of Accrued Professional Compensation Claims owed to the Retained Professionals, such Retained Professionals shall have an Allowed Administrative Claim for any such deficiency, which shall be satisfied in accordance with <u>Article II.A.1</u> of the Plan.  After all Allowed Accrued Professional Compensation Claims have been paid in full, any excess amounts remaining in the Professional Fee Escrow Account shall be returned to the Reorganized Debtor.

##### b.  Professional Fee Escrow Account

On the Effective Date, the Debtors or the Reorganized Debtor, as applicable, shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Reserve Amount.  The Professional Fee Escrow Account shall be maintained in trust solely for the Retained Professionals.  Such funds shall not be considered property of the Estates of the Debtors or the Reorganized Debtor.

### c. Professional Fee Reserve Amount

To receive payment for unbilled fees and expenses incurred through the Effective Date, the Retained Professionals shall estimate in good faith their Accrued Professional Compensation Claims (taking into account any retainers) prior to and as of the Effective Date and shall deliver such estimate to the Debtors at least three (3) calendar days prior to the Effective Date; provided that such estimate shall not be considered a limitation with respect to the fees and expenses of such Retained Professional. If a Retained Professional does not provide such estimate, the Reorganized Debtor may estimate the unbilled fees and expenses of such Retained Professional; provided that such estimate shall not be considered an admission or limitation with respect to the fees and expenses of such Retained Professional. The total amount so estimated as of the Effective Date by the Retained Professionals or the Debtors, as applicable, shall comprise the Professional Fee Reserve Amount.

### d. Post-Effective Date Fees and Expenses

Upon the Effective Date, any requirement that Retained Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate. Each Debtor or Reorganized Debtor, as applicable, may employ and pay any fees and expenses of any professional, including any Retained Professional, in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court, including with respect to any transaction, reorganization, or success fees payable by virtue of the Consummation of the Plan.

### e. Substantial Contribution Compensation and Expenses

Except as otherwise specifically provided in the Plan, any Entity that requests compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases under sections 503(b)(3), (4), and (5) of the Bankruptcy Code must File an application and serve such application on counsel for the Debtors or Reorganized Debtor, as applicable, and counsel for the Creditors' Committee, if any, as required by the Bankruptcy Court, the Bankruptcy Code, and the Bankruptcy Rules on or before ten (10) Business Days after the Confirmation Date.

### 3. Priority Tax Claims

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in exchange for full and final satisfaction, settlement, release, and discharge of each Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim due and payable on or prior to the Effective Date shall be treated under section 1129(a)(9)(C) of the Bankruptcy Code. To the extent any Allowed Priority Tax Claim is not due and owing on or before the Effective Date, such Claim shall be paid in full in Cash in accordance with the terms of any agreement between the Debtors and such Holder or as may be due and payable under applicable non-bankruptcy law or in the ordinary course of business.

### 4. DIP Facility Claims

On the Effective Date, all Claims and other required payments, including, without limitation, all fees, costs and expenses due and owing under the DIP Facility shall be indefeasibly paid in Cash in full to the DIP Facility Lender from the proceeds of the Plan Sponsor Contribution.

### 5. United States Trustee Statutory Fees

The Debtors and the Reorganized Debtor, as applicable, will pay fees payable under 28 U.S.C § 1930(a), including fees, expenses, and applicable interests payable to the United States Trustee, for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.

### 6. Other Priority Claims

Subject to <u>Article VIII</u> of the Plan, on, or as soon as reasonably practicable after (i) the Initial Distribution Date, if such Other Priority Claim is an Allowed Other Priority Claim as of the Effective Date, or (ii) the date on which such Other Priority Claim becomes an Allowed Other Priority Claim, each Holder of an Allowed Other Priority Claim shall receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Other Priority Claim, at the election of the Debtors or the Distribution Agent, as applicable: (A) Cash equal to the amount of such Allowed Other Priority Claim; (B) such other less favorable treatment as to which the Plan Sponsor, DIP Facility Lender, and the Holder of such Allowed Other Priority Claim shall have agreed upon in writing; or (C) such other treatment such that it will not be Impaired; *provided*, *however*, that Other Priority Claims incurred by any Debtor in the ordinary course of business may be paid in the ordinary course of business by such Debtor in accordance with the terms and conditions of any agreements relating thereto without further notice to or order of the Bankruptcy Court.

## B. Classification and Treatment of Classified Claims and Interests

### 1. Summary

The Plan is premised upon the substantive consolidation of the Debtors, as set forth in more detail below, solely for the purposes of voting, determining which Claims have accepted the Plan, Confirmation of the Plan, and the resultant treatment of Claims and Interests and distributions under the terms of the Plan. Accordingly, the Plan shall serve as a motion for entry of a Bankruptcy Court order approving the substantive consolidation of the Debtors for these limited purposes. In accordance with section 1123(a)(1) of the Bankruptcy Code, the Debtors have not classified Administrative Claims and Priority Tax Claims, as described in <u>Article II</u> of the Plan.

The categories of Claims and Interests listed below classify Claims and Interests for all purposes, including voting, Confirmation, and distribution pursuant hereto and under sections 1122 and 1123(a)(1) of the Bankruptcy Code. The Plan deems a Claim or Interest to be classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class. A Claim or an

Interest is in a particular Class only to the extent that any such Claim or Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

| Class | Claim | Status | Voting Rights |
|-------|-------|--------|---------------|
| 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 2 | Secured Guaranty Claims | Impaired | Entitled to Vote |
| 3 | General Unsecured Claims | Impaired | Entitled to Vote |
| 4 | Subordinated Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 5 | Intercompany Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 6 | GT Forge Interests | Unimpaired or Impaired | Not Entitled to Vote (Deemed to Accept or Reject) |
| 7 | Liquidating Debtor Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

## 2. Classification and Treatment of Claims and Interests

### a. Class 1: Other Secured Claims

Except to the extent that a Holder of an Allowed Other Secured Claim agrees to less favorable treatment, in exchange for full and final satisfaction, settlement, release, and discharge of each Other Secured Claim, each Holder of an Allowed Other Secured Claim shall receive payment in full in Cash equal to the amount of such Allowed Other Secured Claim.

### b. Class 2: Secured Guaranty Claims

Except to the extent that a Holder of an Allowed Secured Guaranty Claim agrees to less favorable treatment, in exchange for full and final satisfaction, settlement, release, and discharge of each Secured Guaranty Claim, each Holder of an Allowed Secured Guaranty Claim shall receive the reinstatement of its guaranty by the Reorganized Debtor, secured only by the assets of the Reorganized Debtor.

### c.  Class 3:  General Unsecured Claims

Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to less favorable treatment with the Plan Sponsor, in exchange for full and final satisfaction, settlement, release, and discharge of such Holder's rights with respect to and under such Allowed General Unsecured Claim, on the Effective Date, each Holder of an Allowed General Unsecured Claim shall receive its Pro Rata share of the Settlement Trust Amount.

### d.  Class 4: Subordinated Claims

On the Effective Date, Holders of Subordinated Claims shall receive no distributions on account of such Claims and such Claims shall be extinguished.

### e.  Class 5:  Intercompany Claims

On the Effective Date, Holders of Intercompany Claims shall receive no distributions on account of such Claims and such Claims shall be extinguished.

### f.  Class 6:  GT Forge Interests

On the Effective Date, if the Proposed Plan Sponsor is the Plan Sponsor, Holders of GT Forge Interests shall have left unaltered the legal, equitable, and contractual rights to which each such Holder is entitled on account of such interest.  If the Plan Sponsor is a Person other than the Proposed Plan Sponsor, the GT Forge Interests will be canceled, released and extinguished as of the Effective Date, and will be of no further force or effect.

### g.  Class 7:  Liquidating Debtor Interests

On the Effective Date, Holders of interests in the Liquidating Debtors shall receive no distributions or recoveries on account of such interests and such interests shall be extinguished.

### C.  Special Provision Governing Unimpaired Claims

Except as otherwise provided under the Plan, nothing under the Plan shall affect or limit the Debtors' or the Reorganized Debtor's rights and defenses (whether legal or equitable) in respect of any Unimpaired Claims, including, without limitation, all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims.

### D.  Voting Classes; Presumed Acceptance by Non-Voting Classes

If a Class contains Claims or Interests eligible to vote, and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Plan shall be deemed accepted by the Holders of such Claims or Interests in such Class.

### E.  Controversy Concerning Impairment

If a controversy arises as to whether any Claims or Interests or any Class thereof is Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

### F.  Confirmation Under Section 1129(a)(10) and Section 1129(b) of the Bankruptcy Code

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by an Impaired Class of Claims.  The Debtors shall seek Confirmation under section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.

### G.  Subordinated Claims

The allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan shall take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Under section 510 of the Bankruptcy Code, the Debtors or the Reorganized Debtor, as applicable, reserve the right to re-classify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

### H.  Elimination of Vacant Classes

Any Class of Claims that is not occupied as of the commencement of the Confirmation Hearing by an Allowed Claim or a claim temporarily allowed under Bankruptcy Rule 3018, or as to which no vote is cast, shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class under section 1129(a)(8) of the Bankruptcy Code.

## ARTICLE VII.

## MEANS FOR IMPLEMENTATION OF THE PLAN

### A.  Substantive Consolidation

Except as expressly provided in the Plan, each Debtor shall continue to maintain its separate corporate existence for all purposes other than the treatment of Claims under the Plan and distributions hereunder.  On the Effective Date, (i) all Intercompany Claims among the Debtors shall be eliminated and there shall be no distributions on account of such Intercompany Claims; (ii) each Claim Filed or to be Filed against more than one Debtor shall be deemed Filed only against one consolidated Debtor and shall be deemed a single Claim against and a single obligation of the Debtors, and (iii) any joint or several liability of the Debtors shall be deemed one obligation of the Debtors, with each of the foregoing effective retroactive to the Petition Date.  Except as otherwise set forth in the Plan, on the Effective Date all Claims based upon guarantees of

collection, payment or performance made by one Debtor as to the obligations of another Debtor shall be released and of no further force and effect. Such substantive consolidation shall not (other than for purposes relating to the Plan) affect the legal and corporate structure of the Reorganized Debtor or the Liquidating Debtors.

In the event the Bankruptcy Court does not approve the substantive consolidation of all of the Estates for the purposes set forth herein, the Plan shall be treated as a separate plan of reorganization for each Debtor not substantively consolidated.

The Plan shall serve as, and shall be deemed to be, a motion for entry of an order substantively consolidating the Chapter 11 Cases for the limited purposes set forth in the Plan. If no objection to substantive consolidation is timely Filed and served by any Holder of an Impaired Claim on or before the deadline to object to the confirmation of the Plan, or such other date as may be fixed by the Bankruptcy Court and the Debtors meet their burden of introducing evidence to establish that substantive consolidation is merited under the standards of applicable bankruptcy law, the Confirmation Order, which shall be deemed to substantively consolidate the Debtors for the limited purposes set forth in the Plan, may be entered by the Court. If any such objections are timely Filed and served, a hearing with respect to the substantive consolidation of the Chapter 11 Cases and the objections thereto shall be scheduled by the Bankruptcy Court, which hearing shall coincide with the Confirmation Hearing.

## B.  Waiver of Gett Claims

On the Effective Date, Gett shall be deemed to have conclusively, absolutely, unconditionally and irrevocably waived, and released each of the Debtors from, any Claim by Gett relating to any debts, obligations, rights, suits, damages, actions, remedies and liabilities whatsoever, existing as of the Effective Date, that relate to the prepetition funding of the Debtors' business operations. Any cancellation of debt income resulting from such waiver and release shall be contributed as capital to the Reorganized Debtor.

## C.  Continued Corporate Existence of the Reorganized Debtor

On and after the Effective Date, the Reorganized Debtor will continue to exist as a separate corporation and shall retain all of the powers of corporations under applicable non-bankruptcy law, and without prejudice to any right to amend its charter, dissolve, merge or convert into another form of business entity, or to alter or terminate its existence.

Except as otherwise provided in the Plan, on and after the Effective Date, all property of GT Forge and its Estate, including any "net operating losses" or similar tax attributes, will vest in the Reorganized Debtor free and clear of all Claims, Liens, charges, other encumbrances and Interests.

On and after the Effective Date, the Reorganized Debtor shall be permitted to conduct its business without supervision by the Bankruptcy Court and free of any restrictions under the Bankruptcy Code or the Bankruptcy Rules. The Reorganized Debtor shall be authorized, without limitation, to use and dispose of the Distributable Assets of GT Forge and its Estate, to acquire and dispose of other property, and to otherwise administer its affairs.

### D.  Corporate Action and Dissolution of the Liquidating Debtors

On the Effective Date, the matters under the Plan involving or requiring corporate, partnership or limited liability company action of the Debtors, including but not limited to actions requiring a vote or other approval of the board of directors, shareholders, managers or members of the Debtors or the execution of any documentation incident to or in furtherance of the Plan, shall be deemed to have been authorized by the Confirmation Order and to have occurred and be in effect from and after the Effective Date without any further action by the Bankruptcy Court or the officers, directors, managers or members of the Debtors.

On the Effective Date, all then-incumbent officers and directors of the Liquidating Debtors shall be deemed to have been removed as of such date and replaced with the Settlement Trustee as sole officer and representative for the purpose of winding-up the Liquidating Debtors consistent with the Plan.  The Debtors' charters shall be amended to include a provision prohibiting the issuance of nonvoting equity securities and such other provisions as may be required pursuant to section 1123(a)(6) of the Bankruptcy Code.  The Debtors may prepare, execute and/or file with the relevant governmental authorities having jurisdiction over the Debtors such amendments of their respective charters as may be necessary or appropriate under applicable non-bankruptcy law to fully effectuate such amendments.

From and after the Effective Date, the Holders of Interests in the Reorganized Debtor may take any and all necessary or appropriate actions to appoint directors, officers, and managers of the Reorganized Debtor consistent with the charter, articles of incorporation, and/or by-laws of the Reorganized Debtor, subject to any limitations in applicable non-bankruptcy law.

Neither the occurrence of the Effective Date, nor the effectiveness of the Plan, nor any provision of applicable non-bankruptcy law requiring the dissolution of any business entity upon the cancellation or extinguishment of all equity interests or the termination of the sole remaining equity interest holder, shall cause a dissolution of GT Forge, which shall be continued as a corporation immediately following the Effective Date.

On the first Business Day following the Effective Date, the Liquidating Debtors shall each be dissolved without need for further action by any board of directors, shareholders, managers or members.  In connection with the Effective Date, the Settlement Trustee is authorized to (a) execute, acknowledge and/or file with the relevant governmental authorities having jurisdiction over the Liquidating Debtors, any certificate of dissolution for the Liquidating Debtors as may be necessary or appropriate under applicable non-bankruptcy law to cause the dissolution of the Liquidating Debtors to occur and (b) execute any election to dissolve or other instrument as may be necessary or appropriate under applicable non-bankruptcy law to cause the dissolution of the Liquidating Debtors to occur.  Notwithstanding anything to the contrary in the Plan, the Settlement Trustee shall not be liable as a result of any action taken in accordance with the provisions of the Plan.

### E.  Plan Sponsor Contribution

On the Effective Date, the Plan Sponsor shall distribute the Plan Sponsor Contribution. The Plan Sponsor Contribution shall be distributed: first, to the Distribution Agent to fund (i) all Allowed DIP Facility Claims, and (ii) all outstanding Allowed Administrative Claims (including

any Accrued Professional Compensation Claims), Priority Tax Claims, and Other Priority Claims not otherwise paid from the proceeds of the DIP Facility; and second, to the Settlement Trust, to the extent of the balance of the Plan Sponsor Contribution.

If a Person other than the Proposed Plan Sponsor is approved by the Bankruptcy Court to serve as Plan Sponsor, the Reorganized Debtor shall issue new common stock to the Plan Sponsor in accordance with procedures set forth in the Plan Supplement.

### F. Establishment of Settlement Trust and Vesting of Settlement Trust Assets

On the Effective Date, the Debtors shall take any and all actions as may be necessary or appropriate to establish a Settlement Trust and, except as otherwise provided in the Plan, to cause the transfer and assignment of (i) solely with respect to the Liquidating Debtors, such Liquidating Debtor's Distributable Assets, (ii) any rights to the commencement, compromise or settlement of any Cause of Action, and (iii) the Relevant Books and Records, (clauses (i), (ii) and (iii) of the foregoing, collectively being the "**Settlement Trust Assets**") to the Settlement Trust. Upon the Effective Date, the Settlement Trust shall be vested with all right, title and interest in the respective Settlement Trust Assets, and such property shall become the property of the Settlement Trust free and clear of all Claims, Liens, charges, other encumbrances and interests. It is intended that the Settlement Trust qualifies as a liquidating trust for federal income tax purposes.

The sole beneficiaries of the Settlement Trust shall be the Holders of Allowed General Unsecured Claims. The proceeds of the Settlement Trust Assets (the "**Settlement Trust Amount**") shall be held in trust by the Settlement Trustee and shall not be considered property of the Settlement Trust or of any Debtor's Estate. The Settlement Trustee shall be obligated to distribute the Settlement Trust Assets to the Holders of Allowed General Unsecured Claims until such Holders are repaid in full. The Settlement Trust Assets may be used by the Settlement Trustee to fund the expenses of the Settlement Trust as determined by the Settlement Trustee in his or her sole discretion.

For federal income tax purposes, the beneficiaries of the Settlement Trust shall be treated as the grantors of the Settlement Trust and deemed to be the owners of the Settlement Trust Assets, and the transfer of Settlement Trust Assets to the Settlement Trust shall be deemed a transfer to such beneficiaries by the Debtors followed by a deemed transfer by such beneficiaries to the Settlement Trust.

### G. Purpose of the Settlement Trust

The Settlement Trust shall be established for the primary purpose of liquidating and distributing the Settlement Trust Assets in accordance with Treasury Regulation section 301.7701-4(d). In particular, this includes: (i) reviewing and reconciling, including where appropriate objecting to, the Claims of Holders General Unsecured Claims, (ii) reviewing, litigating, settling, dismissing or releasing any Causes of Action; and (iii) distributing the Settlement Trust Assets in accordance with the Plan. The Settlement Trust shall have no objective to continue or engage in the conduct of a trade or business and shall not be deemed a successor-in-interest of any Debtor or Estate for any purpose other than as specifically set forth in the Plan.

### H. Settlement Trustee

#### 1. Generally

The initial Settlement Trustee shall be designated by the Plan Sponsor, following consultation with the Creditors' Committee, if any, prior to the Confirmation Hearing. Any successor Settlement Trustee shall be appointed pursuant to the Settlement Trust Agreement and subject to the approval of the Bankruptcy Court. On the Effective Date, the Settlement Trustee shall be the sole authorized representative and signatory of the Settlement Trust, with authority to render any and all services necessary to effectuate the terms of the Plan as they relate to the Settlement Trust. From and after the Effective Date, the Settlement Trustee shall be deemed to have been appointed as the representative of each of the Liquidating Debtors' Estates by the Bankruptcy Court pursuant to section 1123(b)(3)(B) of the Bankruptcy Code for purposes of the Settlement Trust Assets. The powers, authority, responsibilities and duties of the Settlement Trustee shall be governed by the Plan, the Confirmation Order, and the Settlement Trust Agreement. The Settlement Trustee may execute, deliver, file or record such documents, instruments, releases and other agreements, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan as they relate to the Settlement Trust.

#### 2. Responsibilities and Authority of the Settlement Trustee

The responsibilities and authority of the Settlement Trustee shall include (a) calculating and implementing all distributions from the Settlement Trust in accordance with the Plan; (b) filing all required tax returns and paying taxes and all other obligations on behalf of the Settlement Trust from funds held by that Settlement Trust; (c) periodic reporting to the beneficiaries of the Settlement Trust as frequently as the Settlement Trustee reasonably believes is appropriate; (d) distributing the Settlement Trust Assets in accordance with the provisions of the Plan; (e) retaining and paying at normal and customary rates (or on a contingency fee basis) professionals in connection with the Settlement Trustee's duties; (f) reconciling and, if appropriate, objecting to Claims with authority to settle any objections; (g) establishing a reserve for Disputed Claims; (h) analyzing Causes of Action and deciding whether to abandon, pursue, litigate, or settle such claims; and (i) such other responsibilities as may be vested in the Settlement Trustee pursuant to the Plan, the Settlement Trust Agreement or the Confirmation Order or as may be necessary and proper to carry out the provisions of the Plan. The Settlement Trust and the Settlement Trustee shall not be required to post a bond in favor of the United States.

#### 3. Powers of the Settlement Trustee

The powers of the Settlement Trustee to administer the Settlement Trust shall, without any need for approval of the Bankruptcy Court in each of the following instances, include *inter alia,* (a) the power to invest Settlement Trust funds as permitted in the Settlement Trust Agreement, withdraw funds, make distributions and pay taxes and other obligations owed by the Settlement Trust from funds held by the Settlement Trustee in accordance with the Plan and the Settlement Trust Agreement, (b) the power to engage and compensate, without prior Bankruptcy Court order or approval, employees and professionals to assist the Settlement Trustee with respect to his or her responsibilities, (c) the power to prosecute, compromise and settle Claims, (d) the power to

abandon, pursue, litigate, or settle any Cause of Action, (e) the power to abandon or destroy any of the Relevant Books and Records when they are no longer necessary to administer the Settlement Trust, and (f) such other powers as may be vested in or assumed by the Settlement Trustee pursuant to the Plan, the Settlement Trust Agreement, order of the Bankruptcy Court, or as may be necessary and proper to carry out the provisions of the Plan. The Settlement Trustee shall have absolute discretion to pursue or not to pursue any and all objections to Claims and any and all Causes of Action, as he or she determines is in the best interests of the beneficiaries and consistent with the purposes of the Settlement Trust, and shall have no liability for the outcome of his or her decision, other than those decisions constituting gross negligence or willful misconduct. Any determination by the Settlement Trustee as to what actions are in the best interests of the Settlement Trust shall be conclusive. For the avoidance of doubt, on the Effective Date, the Settlement Trustee, on behalf of the Settlement Trust, shall have standing as the representative of each Liquidating Debtor's Estate pursuant to section 1123(b)(3)(B) of the Bankruptcy Code to commence and prosecute any Cause of Action and/or objections to Claims on behalf of the Debtors' Estates without need for notice or order of the Bankruptcy Court.

### 4. Compensation of the Settlement Trustee and Professionals

The Settlement Trustee shall serve on the terms, conditions and rights set forth in the Plan, the Confirmation Order and the Settlement Trust Agreement. The compensation for the Settlement Trustee shall be set forth in the Settlement Trust Agreement or otherwise disclosed in a filing with the Bankruptcy Court. The Settlement Trustee shall have the right to retain the services of attorneys, accountants, and other professionals and agents in the discretion of the Settlement Trustee to assist and advise the Settlement Trustee in the performance of his or her duties and compensate such professionals from the Settlement Trust Assets. Any professionals retained by the Settlement Trustee shall not be required to file a Fee Application to receive compensation.

### 5. Limitations on the Settlement Trustee

The Settlement Trustee, in such capacity, shall not at any time: (a) enter into or engage in any trade or business (other than the management and disposition of the Settlement Trust Assets), and no part of the Settlement Trust Assets or the proceeds, revenue or income therefrom shall be used or disposed of by the Settlement Trust in furtherance of any trade or business, or (b) except as provided below, reinvest any Settlement Trust Assets.

The Settlement Trustee may only invest funds held in the Settlement Trust consistent with the requirements of the Settlement Trust Agreement, the Bankruptcy Code or any order of the Bankruptcy Court modifying such requirements and, provided that the Settlement Trustee does so, he or she shall have no liability in the event of insolvency of any institution in which he or she has invested any funds of the Settlement Trust. Notwithstanding the above, the Settlement Trustee may only invest funds in the Settlement Trust in investments permitted to be made by a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings, or other controlling authorities.

Other than as provided in the Plan and the Settlement Trust Agreement, the Settlement Trustee is not empowered to incur indebtedness.

The Settlement Trustee shall hold, collect, conserve, protect and administer the Settlement Trust in accordance with the provisions of the Plan and the Settlement Trust Agreement, and pay and distribute amounts as set forth in the Plan for the purposes set forth in the Plan and the Settlement Trust Agreement.  Any determination by the Settlement Trustee as to what actions are in the best interests of the Settlement Trust shall be conclusive.

### 6.   U.S Federal Income Tax Treatment of Settlement Trust

The Settlement Trust (other than the portion which is treated as a disputed ownership fund, which may be subject to different treatment, as described in <u>Article IV.I</u> of the Plan) is intended to qualify as a liquidating trust for federal income tax purposes, treated for federal income tax purposes as a "grantor" trust.  The Settlement Trust has been structured with the intention of complying with such general criteria.  Pursuant to the Plan, all parties (including the Settlement Trustee, and the holders of beneficial interests in the Settlement Trust, as applicable) are required to treat for federal income tax purposes, the Settlement Trust as a grantor trust of which the Holders of Allowed General Unsecured Claims are the owners and grantors.

After the Effective Date, any amount a Holder receives as a distribution from a Settlement Trust in respect of its beneficial interest in such trust should not be included, for federal income tax purposes, in the Holder's amount realized in respect of its Allowed Claim but should be separately treated as a distribution received in respect of such Holder's beneficial interest in the Settlement Trust.

For all federal income tax purposes, all parties (including the Settlement Trustee and the Holders of beneficial interests in the Settlement Trust) shall treat the transfer of assets to the Settlement Trust as a transfer of those assets directly to the Holders of Allowed General Unsecured Claims followed by the transfer of such assets by such Holders to the Settlement Trust.  All parties shall treat the Settlement Trust as a grantor trust of which such Holders are to be owners and grantors.  Thus, such Holders (and any subsequent Holders of interests in the Settlement Trust) shall be treated as the direct owners of an undivided beneficial interest in the Settlement Trust Assets for all federal income tax purposes.  Accordingly, each Holder of a beneficial interest in the Settlement Trust will be required to report on its federal income tax return(s) the Holder's allocable share of all income, gain, loss, deduction or credit recognized or incurred by the Settlement Trust.

The Settlement Trust's taxable income will be allocated to the Holders Allowed General Unsecured Claims as holders of the beneficial interests in the Settlement Trust in accordance with each Holder's Pro Rata share of the Settlement Trust.  The Settlement Trustee will file with the IRS returns for the Settlement Trust as a grantor trust pursuant to Treasury Regulations section 1.671-4(a).  The Settlement Trustee will also send to each Holder of a beneficial interest in the Settlement Trust a separate statement setting forth the Holder's share of items of income, gain, loss, deduction or credit and will instruct the Holder to report such items on its federal income tax return.

### I.   U.S. Federal Income Tax Treatment of Disputed Ownership Funds

Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt by the Settlement Trustee of an IRS private letter ruling, if the

Settlement Trustee so requests one), or the receipt of an adverse determination by the IRS upon audit if not contested by the Settlement Trustee, the Settlement Trustee will (a) elect to treat any the Settlement Trust Assets allocable to, or retained on account of, Disputed Claims (the "**Trust Claims Reserve**") as a "disputed ownership fund" governed by Treasury Regulation Section 1.468B-9, and (b) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes. Accordingly, the Trust Claims Reserve will be subject to tax annually on a separate entity basis on any net income earned with respect to the Settlement Trust Assets in such reserves, and all distributions from such reserves will be treated as received by Holders in respect of their Claims as if distributed by the Trust Claims Reserve. All parties (including, without limitation, the Settlement Trustee, as applicable, and the Holders of beneficial interests in the Settlement Trust) will be required to report for tax purposes consistently with the foregoing. References to the Settlement Trust in Article IV.H of the Plan shall be interpreted to refer only to that portion of the Settlement Trust that is not treated as a "disputed ownership fund" as described in this paragraph to the extent inconsistent with treatment under this paragraph.

### J.  Retained Causes of Action of the Debtors

Unless a Cause of Action of any Debtor (including the right to object to any Claim asserted against the Estates) is, in writing, expressly waived, relinquished, released, assigned, compromised, or settled in the Plan, or in a Final Order, all rights of each Debtor's Estates from and after the Effective Date with respect to the Retained Causes of Action are expressly preserved for the benefit of, assigned to, and fully vested in, the Settlement Trust.

The Settlement Trustee, on behalf of the Settlement Trust, shall have standing as the representative of the Debtors' Estates pursuant to section 1123(b)(3)(B) of the Bankruptcy Code to pursue, or decline to pursue, the Retained Causes of Action and objections to Claims, as appropriate, in the business judgment of the Settlement Trustee, on behalf of the Settlement Trust. The Settlement Trustee, subject to the limitations set forth in Article IV.H.5 of the Plan, may settle, release, sell, assign, otherwise transfer, or compromise, Retained Causes of Action, Avoidance Actions, and/or objections to Claims without need for notice or order of the Bankruptcy Court.

### K.  Payment of Plan Expenses

The Settlement Trustee may pay all reasonable Plan Expenses of the Settlement Trust consistent with the Budget without further notice to any Holders of Claims or Interests or approval of the Bankruptcy Court. The payment of Plan Expenses that are not contemplated by the Budget shall require the consent of the Plan Sponsor.

### L.  Dissolution of Official Committees

As of the Effective Date, all official committees appointed pursuant to section 1102 of the Bankruptcy Code, if any, shall be dissolved. Notwithstanding such dissolution, any professionals retained by such committees may seek payment of any unpaid Accrued Professional Compensation Claims pursuant to the Plan.

### M. Final Decree

At any time following the Effective Date, the Settlement Trustee shall be authorized to file a motion for the entry of a final decree closing any or all of the Chapter 11 Cases pursuant to section 350 of the Bankruptcy Code.

## ARTICLE VIII.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A. Assumption of Executory Contracts and Unexpired Leases

On the Effective Date, all Executory Contracts and Unexpired Leases of the Debtors will be rejected by the Debtors in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, except for those Executory Contracts and Unexpired Leases that:

(i)    have already been assumed or rejected by the Debtors by prior order of the Bankruptcy Court;

(ii)    are the subject of a separate assumption motion or motion to reject Filed by the Debtors pending on the Effective Date;

(iii)    are the subject of a pending objection regarding assumption, cure, or "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code); or

(iv)    are assumed or assumed and assigned by the Debtors (with the written consent of the Plan Sponsor) pursuant to the terms of the Plan and Filed as a schedule as part of the Plan Supplement.

Without amending or altering any prior order of the Bankruptcy Court approving the assumption or rejection of any Executory Contract or Unexpired Lease, entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumptions or rejections pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

To the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan or any prior order of the Bankruptcy Court (including, without limitation, any "change of control" provision) prohibits, restricts or conditions, or purports to prohibit, restrict or condition, or is modified, breached or terminated, or deemed modified, breached or terminated by, (i) the commencement of these Chapter 11 Cases or the insolvency or financial condition of any Debtor at any time before the closing of its respective Chapter 11 Case, (ii) any Debtor's or the Reorganized Debtor's assumption or assumption and assignment (as applicable) of such Executory Contract or Unexpired Lease or (iii) the Confirmation or Consummation of the Plan, then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-debtor party thereto to modify or terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights or remedies with respect thereto, and any required consent under any such contract or lease shall be deemed satisfied by the Confirmation of the Plan.

Each Executory Contract and Unexpired Lease assumed by GT Forge pursuant to the Plan shall revest in and be fully enforceable by the Reorganized Debtor or the applicable assignee in accordance with its terms and conditions, except as modified by the provisions of the Plan, any order of the Bankruptcy Court approving its assumption and/or assignment, or applicable law.

The inclusion or exclusion of a contract or lease on any schedule or exhibit shall not constitute an admission by any Debtor that such contract or lease is an Executory Contract or Unexpired Lease or that any Debtor has any liability thereunder.

### B. Cure of Defaults; Assignment of Executory Contracts and Unexpired Leases

On the Effective Date, any defaults under each Executory Contract and Unexpired Lease to be assumed, or assumed and assigned, pursuant to the Plan shall be satisfied by payment of the Cure Claim Amount.

The Debtors shall File, as part of the Plan Supplement, if necessary, a schedule of assumed contracts and a list of each applicable Cure Claim Amount, if any.

Any objection by a counterparty to an Executory Contract or Unexpired Lease to a Cure Claim Amount must be Filed, served and actually received by the Debtors on or prior to the later of (i) the Objection Deadline or (ii) seven (7) days after the Filing and service of a Plan Supplement that first identifies such Executory Contract or Unexpired Lease. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed Cure Claim Amount will be deemed to have consented to such matters and will be deemed to have forever released and waived any objection to such Cure Claim Amount. The Confirmation Order shall constitute an order of the Bankruptcy Court approving each proposed assumption, or proposed assumption and assignment, of Executory Contracts and Unexpired Leases pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.

In the event of a dispute regarding (a) the amount of any Cure Claim Amount, (b) the ability of any Debtor or assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or assumed and assigned or (c) any other matter pertaining to assumption or assignment, the applicable payment of the Cure Claim Amount required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving the dispute and approving such assumption, or assumption and assignment. If such objection is sustained by Final Order of the Bankruptcy Court, the Debtors may reject such Executory Contract or Unexpired Lease in lieu of assuming it. The Debtors, the Reorganized Debtor or the Settlement Trustee, as applicable, shall be authorized to effect such rejection by filing a written notice of rejection with the Bankruptcy Court and serving such notice on the applicable counterparty within thirty (30) days of the entry of such Final Order.

Subject to any cure claims Filed with respect thereto, assumption or assumption and assignment of any Executory Contract or Unexpired Lease pursuant to the Plan shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired

Lease at any time prior to the effective date of assumption or assumption and assignment, in each case as provided in section 365 of the Bankruptcy Code.  Any Proofs of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed or assumed and assigned by Final Order shall be deemed disallowed and expunged (subject to any cure claims Filed with respect thereto), without further notice to or action, order, or approval of the Bankruptcy Court.

### C.  Claims on Account of the Rejection of Executory Contracts or Unexpired Leases

All Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be filed with the Bankruptcy Court within thirty (30) days after service of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection.

Any Entity that is required to file a Proof of Claim arising from the rejection of an Executory Contract or an Unexpired Lease that fails to timely do so shall be forever barred, estopped and enjoined from asserting such Claim, and such Claim shall not be enforceable, against the Debtors, the Reorganized Debtor, or their Estates, and the Debtors, the Reorganized Debtor, and their Estates and their respective assets and property shall be forever discharged from any and all indebtedness and liability with respect to such Claim unless otherwise ordered by the Bankruptcy Court or as otherwise provided in the Plan.  All such Claims shall, as of the Effective Date, be subject to the permanent injunction set forth in Article IX.G of the Plan.

### D.  Extension of Time to Assume or Reject

Notwithstanding anything to the contrary set forth in Article V of the Plan, in the event of a dispute as to whether a contract is executory or a lease is unexpired, the right of the Reorganized Debtor to move to assume or reject such contract or lease shall be extended until the date that is thirty (30) days after entry of a Final Order by the Bankruptcy Court determining that the contract is executory or the lease is unexpired.

### E.  Modifications, Amendments, Supplements, Restatements, or Other Agreements

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed by the Debtors or the Reorganized Debtor pursuant to the Plan shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing has been previously rejected or repudiated or is rejected or repudiated hereunder.  Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

### F.  Reservation of Rights

Nothing contained in the Plan or the Plan Supplement shall constitute an admission by the Debtors or any other party that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Reorganized Debtor has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption, the Debtors or the Reorganized Debtor, as applicable, shall have thirty (30) calendar days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease, including by rejecting such contract or lease *nunc pro tunc* to the Confirmation Date.

### G.  Nonoccurrence of Effective Date

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases under section 365(d)(4) of the Bankruptcy Code, unless such deadline(s) have expired.

## ARTICLE IX.

## PROVISIONS GOVERNING DISTRIBUTIONS

### A.  Timing and Calculation of Amounts to Be Distributed

Except as otherwise provided in the "Treatment" sections in <u>Article III</u> of the Plan or as ordered by the Bankruptcy Court, initial distributions to be made on account of Claims that are Allowed Claims as of the Effective Date or GT Forge Interests shall be made on the Initial Distribution Date or as soon thereafter as is practicable.  Any payment or distribution required to be made under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day.  Distributions on account of Disputed Claims that first become Allowed Claims after the Effective Date shall be made under <u>Article VII</u> of the Plan.

### B.  Delivery of Distributions

#### 1.  Delivery of Distributions by the Distribution Agent

Other than as specifically set forth below, the Settlement Trustee or other Distribution Agent shall make all distributions required to be distributed under the Plan.  The Distribution Agent may employ or contract with other entities to assist in or make the distributions required by the Plan and may pay the reasonable fees and expenses of such entities and the Distribution Agents in the ordinary course of business.  No Distribution Agent shall be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

From and after the Effective Date, any Distribution Agent, solely in its capacity as Distribution Agent, shall be exculpated by all Persons and Entities, including, without limitation, Holders of Claims and Interests and other parties in interest, from any and all claims, Causes of Action, and other assertions of liability arising out of the discharge of the powers and duties conferred upon such Distribution Agent by the Plan or any order of the Bankruptcy Court entered under or in furtherance of the Plan, or applicable law, except for actions or omissions to act arising

out of the Distribution Agent's gross negligence, willful misconduct, fraud, malpractice, criminal conduct, or *ultra vires* acts. No Holder of a Claim or Interest or other party in interest shall have or pursue any claim or Cause of Action against a Distribution Agent, solely in its capacity as Distribution Agent, for making payments in accordance with the Plan or for implementing provisions of the Plan, except for actions or omissions to act arising out of such Distribution Agent's gross negligence, willful misconduct, fraud, malpractice, criminal conduct, or *ultra vires* acts.

### 2.  Minimum Distributions

Notwithstanding anything in the Plan to the contrary, the Distribution Agents shall not be required to make distributions or payments of less than $100 (whether Cash or otherwise) and shall not be required to make partial distributions or payments of fractions of dollars. With respect to any Impaired Claims, whenever any payment or distribution of a fraction of a dollar would otherwise be called for, the actual payment or distribution will reflect a rounding of such fraction to the nearest whole dollar, with half dollars or less being rounded down.

### 3.  Distribution Record Date

At the close of business on the Distribution Record Date, the Claims Register shall be closed. Accordingly, neither the Debtors nor Distribution Agent will have any obligation to recognize the assignment, transfer or other disposition of, or the sale of any participation in, any Allowed Claim or GT Forge Interest that occurs after the close of business on the Distribution Record Date, and will be entitled for all purposes in the Plan to recognize and distribute securities, property, notices and other documents only to those Holders of Allowed Claims or GT Forge Interests who are Holders of such Claims or Interests, or participants therein, as of the close of business on the Distribution Record Date. The Distribution Agent shall be entitled to recognize and deal for all purposes under the Plan with only those record holders stated on the Claims Register, or their books and records, as of the close of business on the Distribution Record Date.

### 4.  Delivery of Distributions in General

Except as otherwise provided in the Plan, the Distribution Agent shall make distributions to Holders of Allowed Claims or Interests (to the extent set forth in the Plan), or in care of their authorized agents or designated affiliates as designated before the Effective Date, as appropriate, at the address for each such Holder or agent as indicated on the Distribution Agent's books and records as of the date of any such distribution; <u>provided</u>, that the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in the latest Proof of Claim Filed by such Holder under Bankruptcy Rule 3001 as of the Distribution Record Date unless otherwise specified by such Holder.

### 5.  Undeliverable Distributions

If any distribution to a Holder of an Allowed Claim or Interest made in accordance herewith is returned to the Distribution Agent as undeliverable, no further distributions shall be made to such Holder unless and until the Distribution Agent is notified in writing of such Holder's then-current address or other necessary information for delivery, at which time such undelivered distribution shall be made to such Holder within ninety (90) days of receipt of such Holder's then-

current address or other necessary information; *provided*, *however*, that any such undelivered distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six (6) months from the later of (a) the Effective Date and (b) the date of the initial attempted distribution.  After such date, all unclaimed property or interests in property shall revert to the Settlement Trust automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable non-bankruptcy escheat, abandoned, or unclaimed property laws to the contrary), and the right, title, and interest of any Holder to such property or interest in property shall be discharged and forever barred.

### C.  Manner of Payment

At the option of the Distribution Agent, any Cash payment to be made under the Plan may be made by check or wire transfer or as otherwise required or provided in applicable agreements.

### D.  No Postpetition or Default Interest on Claims

Unless otherwise specifically provided for in the Plan or the Confirmation Order and notwithstanding any documents that govern the Debtors' prepetition indebtedness to the contrary, (1) postpetition and/or default interest shall not accrue or be paid on any Claims, and (2) no Holder of a Claim shall be entitled to (a) interest accruing on or after the Petition Date on any such Claim or (b) interest at the contract default rate, each as applicable.

### E.  Setoffs and Recoupments

Each Debtor or the Reorganized Debtor, as applicable, or such Entity's designee, may, under section 553 of the Bankruptcy Code or other applicable nonbankruptcy law, offset or recoup against any Allowed Claim and the distributions to be made under the Plan on account of such Allowed Claim any and all Claims, rights, and Causes of Action that such Debtor or Reorganized Debtor or its successors may hold against the Holder of such Allowed Claim; *provided*, *however* that neither the failure to effect a setoff or recoupment nor the allowance of any Claim hereunder will constitute a waiver or release by a Debtor or the Reorganized Debtor or its successor of any Claims, rights, or Causes of Action that the Reorganized Debtor or its successor or assign may possess against such Holder.

### F.  Rights and Powers of Distribution Agent

The Distribution Agent shall be empowered to  (i) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (ii) make all applicable distributions or payments provided for under the Plan; (iii) employ professionals to represent it with respect to its responsibilities; and (iv) exercise such other powers (A) as may be vested in the Distribution Agent by order of the Bankruptcy Court (including any order issued after the Effective Date) or under the Plan or (B) as deemed by the Distribution Agent to be necessary and proper to implement the provisions of the Plan.

### G.  Payment of Fees and Expenses

Except as otherwise ordered by the Bankruptcy Court, subject to the Budget, the amount of any reasonable fees and expenses incurred by the Distribution Agent on or after the Effective

Date (including taxes) and any reasonable compensation and expense reimbursement Claims (including for reasonable attorneys' and other professional fees and expenses) made by the Distribution Agent shall be paid in Cash from the Settlement Trust. The payment of any fees and expenses incurred by the Distribution Agent that are not contemplated by the Budget shall require the consent of the Plan Sponsor.

## H. Compliance with Tax Requirements

In connection with the Plan, to the extent applicable, the Debtors, Reorganized Debtor, Settlement Trustee, Distribution Agent, and other applicable withholding and reporting agents shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Debtors, the Reorganized Debtor, Distribution Agent, and other applicable withholding and reporting agents shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Debtors, Reorganized Debtor, Settlement Trustee, Distribution Agent, and other applicable withholding agents reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support and other spousal awards, liens, and encumbrances. For tax purposes, distributions in full or partial satisfaction of Allowed Claims shall be allocated first to the principal amount of Allowed Claims, with any excess allocated to unpaid interest that accrued on such Claims.

Notwithstanding the above, each Holder of an Allowed Claim that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any Governmental Unit, including income, withholding, and other tax obligations, on account of such distribution. The Distribution Agent shall have the right, but not the obligation, to not make a distribution until such Holder has made arrangements satisfactory to any issuing or distribution party for payment of any such tax obligations.

The Distribution Agent may require, as a condition to receipt of a distribution, that the Holder of an Allowed Claim provide any information necessary to allow the distributing party to comply with any such withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority. If the Distribution Agent makes such a request and the Holder fails to comply before the date that is 180 days after the request is made, the amount of such distribution shall irrevocably revert to the Settlement Trust and any Claim in respect of such distribution shall be discharged and forever barred from assertion against the Reorganized Debtor, the Settlement Trust, or its respective property.

# ARTICLE X.

## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS

### A. Allowance of Claims and Interests

After the Effective Date, the Settlement Trustee shall have and retain any and all rights and defenses applicable to the Debtors with respect to any Claim or Interest immediately prior to the Effective Date (unless such Claim is deemed Allowed pursuant to the Plan or the Confirmation Order). All settled Claims approved prior to the Effective Date by a Final Order of the Bankruptcy Court under Bankruptcy Rule 9019 or otherwise shall be binding on all parties.

### B. Claims Administration Responsibilities

Except as otherwise specifically provided in the Plan, after the Effective Date, the Settlement Trustee shall have the sole authority to (1) file, withdraw, or litigate to judgment, any objections to Claims or Interests and (2) settle or compromise any Disputed Claim or Interest without any further notice to or action, order, or approval by the Bankruptcy Court. For the avoidance of doubt, except as otherwise provided in the Plan, from and after the Effective Date, the Settlement Trustee shall have and retain any and all rights and defenses of the applicable Debtors immediately prior to the Effective Date with respect to any Disputed Claim or Interest, including the Causes of Action retained under the Plan.

### C. Prosecution of Objections to Claims and Interests

Before or after the Effective Date, the Debtors or the Settlement Trustee, as applicable, shall have the authority to File objections to Claims and Interests (other than Claims or Interests that are Allowed under the Plan) and settle, compromise, withdraw or litigate to judgment objections to any and all such Claims or Interests, regardless of whether such Claims are in an Unimpaired Class or otherwise; *provided*, *however*, this provision shall not apply to Accrued Professional Compensation Claims, which may be objected to by any party-in-interest in these Chapter 11 Cases. From and after the Effective Date, the Settlement Trustee may settle or compromise any Disputed Claim or Interest without any further notice to or action, order or approval of the Bankruptcy Court. The Debtors or the Settlement Trustee, as applicable, shall have the sole authority to administer and adjust the Claims Register and their books and records to reflect any such settlements or compromises without any further notice to or action, order or approval of the Bankruptcy Court.

### D. Estimation of Claims and Interests

Before or after the Effective Date, the Debtors, the Reorganized Debtor or the Settlement Trustee, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim or Interest that is contingent or unliquidated under section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest or during the appeal relating to such

objection.  Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged but that either is subject to appeal or has not been the subject of a Final Order shall be deemed to be estimated at zero ($0.00) dollars unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim or Interest, that estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under the Plan (including for purposes of distributions), and the Reorganized Debtor or Settlement Trustee, as applicable, may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim or Interest.

### E.  Deadline to File Objections to Claims

Any objections to Claims shall be Filed by no later than the Objection Deadline; provided that nothing contained in the Plan shall limit the right of the Settlement Trustee to object to Claims, if any, Filed or amended after the Objection Deadline.  Moreover, notwithstanding the expiration of the Objection Deadline, the Settlement Trustee shall continue to have the right to amend any claims or other objections and to File and prosecute supplemental objections and counterclaims to a Disputed Claim until such Disputed Claim is or becomes Allowed by Final Order of the Bankruptcy Court.

### F.  Adjustment to Claims Without Objection

Any duplicate Claim or Interest or any Claim or Interest that has been paid, satisfied, amended, or superseded may be adjusted or expunged by the Reorganized Debtor or Settlement Trustee without the Reorganized Debtor or Settlement Trustee having to file an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest, and without any further notice to or action, order, or approval of the Bankruptcy Court.

### G.  Disallowance of Certain Claims

Any Claims held by Entities from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be deemed disallowed under section 502(d) of the Bankruptcy Code unless expressly Allowed under the Plan, and Holders of such Claims may not receive any distributions on account of such Claims and Interests until such time as such Causes of Action against that Entity have been settled or a Final Order of the Bankruptcy Court with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Settlement Trust.

### H.  No Distributions Pending Allowance

Notwithstanding any other provision hereof, if any portion of a Claim or Interest is a Disputed Claim or Interest, as applicable, no payment or distribution provided hereunder shall be made on account of such Claim or Interest unless and until such Disputed Claim or Interest becomes an Allowed Claim or Interest.

### I. Distributions After Allowance

To the extent that a Disputed Claim or Interest ultimately becomes an Allowed Claim or Interest, distributions (if any) shall be made to the Holder of such Allowed Claim or Interest in accordance with the provisions of the Plan.  As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim or Interest becomes a Final Order, the Distribution Agent shall provide to the Holder of such Claim or Interest the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any interest to be paid on account of such Claim or Interest.

### J. No Interest

Interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Disputed Claim if and when such Disputed Claim becomes an Allowed Claim.

## ARTICLE XI.

## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

The following are conditions precedent to the Effective Date that must be satisfied:

1.    the Bankruptcy Court shall have approved the Disclosure Statement as containing adequate information with respect to the Plan within the meaning of section 1125 of the Bankruptcy Code;

2.    the Confirmation Order shall have been entered and shall be in full force and effect and such Confirmation Order shall be a Final Order;

3.    all Accrued Professional Compensation Claims and expenses of Retained Professionals required to be approved by the Bankruptcy Court shall have been paid in full or amounts sufficient to pay such fees and expenses after the Effective Date shall have been placed in the Professional Fee Escrow Account pending approval by the Bankruptcy Court, in accordance with Article II.A.2 of the Plan; and

4.    the Debtors and the Reorganized Debtor, as applicable, shall have implemented the restructuring in a manner consistent in all respects with the Plan.

## ARTICLE XII.

## RELEASE, DISCHARGE, INJUNCTION AND RELATED PROVISIONS

### A. General

Under section 1123 of the Bankruptcy Code, and in consideration for the classification, distributions, releases and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and Interests and controversies resolved under the Plan.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims,

Interests and controversies, as well as a finding by the Bankruptcy Court that any such compromise or settlement is in the best interests of the Debtors, their Estates, and any Holders of Claims and Interests and is fair, equitable and reasonable.

Notwithstanding anything contained in the Plan to the contrary, the allowance, classification and treatment of all Allowed Claims and Interests and their respective distributions (if any) and treatments hereunder, takes into account the relative priority and rights of the Claims and the Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code or otherwise. As of the Effective Date, any and all contractual, legal and equitable subordination rights, whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code or otherwise, relating to the allowance, classification and treatment of all Allowed Claims and Interests and their respective distributions (if any) and treatments hereunder, are settled, compromised, terminated and released pursuant hereto; *provided*, *however*, that nothing contained in the Plan shall preclude any Person or Entity from exercising their rights under and consistent with the terms of the Plan and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with the Plan.

### B. Release of Claims and Causes of Action

#### 1. Release by the Debtors and Their Estates.

**Under section 1123(b) and any other applicable provisions of the Bankruptcy Code, and except as otherwise expressly provided in the Plan, effective as of the Effective Date, for good and valuable consideration provided by each of the Released Parties, the adequacy and sufficiency of which is hereby confirmed, the Debtors and the Reorganized Debtor, in their respective individual capacities and as debtors in possession, and on behalf of themselves and their respective Estates, including, without limitation, any successor to the Debtors or any Estate representative appointed or selected under section 1123(b)(3) of the Bankruptcy Code (collectively, the "<u>Debtor Releasing Parties</u>") and their respective assets and properties will be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full discharge, waiver and release to each of the Released Parties (and each such Released Party so released shall be deemed forever released, waived and discharged by the Debtor Releasing Parties) (the "<u>Debtor Release</u>") from any and all Claims, Causes of Action and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, whether directly or derivatively held, existing as of the Effective Date or thereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to any of (i) the Debtors, the Chapter 11 Cases, the marketing of any of the Debtors' assets, the Disclosure Statement, the Plan and the Restructuring Documents, (ii) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, (iii) the business or contractual arrangements between any Debtor and any Released Parties, (iv) the negotiation, formulation or preparation of the Plan, the Disclosure Statement, the Restructuring**

42

Documents, or related agreements, instruments or other documents, (v) the restructuring of Claims or Interests prior to or during the Chapter 11 Cases, (vi) the purchase, sale, or rescission of the purchase or sale of any Claim or Interest of the Debtors or the Reorganized Debtor, and/or (vii) the Confirmation or Consummation of the Plan or the solicitation of votes on the Plan that such Debtor Releasing Party would have been legally entitled to assert (whether individually or collectively) or that any Holder of a Claim or Interest or other Entity would have been legally entitled to assert for, or on behalf or in the name of, any Debtor, its respective Estate or the Reorganized Debtor (whether directly or derivatively) against any of the Released Parties; *provided*, *however*, that the foregoing provisions of this Debtor Release shall not operate to waive, release or otherwise impair:  (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Released Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction and/or (ii) the rights of such Debtor Releasing Party to enforce the Plan and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with the Plan or assumed under the Plan or assumed under Final Order of the Bankruptcy Court.

The foregoing release shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person and the Confirmation Order will permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action or liabilities released under this Debtor Release.  Notwithstanding the foregoing, nothing in Article IX.B of the Plan shall or shall be deemed to prohibit the Debtors or the Reorganized Debtor from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Person that is based upon an alleged breach of a confidentiality or non-compete obligation owed to the Debtors or the Reorganized Debtor, unless otherwise expressly provided for in the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, under Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is:  (i) in exchange for the good and valuable consideration provided by the Released Parties; (ii) a good faith settlement and compromise of the Claims released by the Debtor Release; (iii) in the best interest of the Debtors and their Estates; (iv) fair, equitable and reasonable; and (v) given and made after due notice and opportunity for hearing.

2. **Release by Third Parties.**

Except as otherwise expressly provided in the Plan, effective as of the Effective Date, to the fullest extent permitted by applicable law, for good and valuable consideration provided by each of the Released Parties, the adequacy and sufficiency of which is hereby confirmed, and without limiting or otherwise modifying the scope of the Debtor Release provided by the Debtor Releasing Parties above, each Non-Debtor Releasing Party (together with the Debtor Releasing Parties, the "Releasing Parties") will be deemed to have

conclusively, absolutely, unconditionally, irrevocably, and forever provided a full discharge, waiver and release to each of the Released Parties (and each such Released Party so released shall be deemed forever released, waived and discharged by the Non-Debtor Releasing Parties) (the "<u>Third Party Release</u>") from any and all Claims, Causes of Action and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, whether directly or derivatively held, existing as of the Effective Date or thereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to any of (i) the Debtors, the Chapter 11 Cases, the marketing of any of the Debtors' assets, the Disclosure Statement, the Plan and the Restructuring Documents, (ii) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, (iii) the business or contractual arrangements between any Debtor and any Released Parties, (iv) the negotiation, formulation or preparation of the Plan, the Disclosure Statement, the Restructuring Documents, or related agreements, instruments or other documents, (v) the restructuring of Claims or Interests prior to or during the Chapter 11 Cases, (vi) the purchase, sale or rescission of the purchase or sale of any Claim or Interest of the Debtors or the Reorganized Debtor, and/or (vii) the Confirmation or Consummation of the Plan or the solicitation of votes on the Plan that such Non-Debtor Releasing Party would have been legally entitled to assert (whether individually or collectively) against any of the Released Parties; *provided*, *however*, that the foregoing provisions of this Third Party Release shall not operate to waive, release or otherwise impair:  (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Released Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; (ii) any of the indebtedness and obligations of the Debtors and/or the Reorganized Debtor incurred under the Plan and the contracts, instruments, releases, indentures, and other agreements and documents delivered under or in connection with the Plan or assumed under the Plan or assumed under Final Order of the Bankruptcy Court; (iii) the rights of such Non-Debtor Releasing Party to enforce the Plan and the contracts, instruments, releases, indentures, and other agreements and documents delivered under or in connection with the Plan or assumed under the Plan or assumed under Final Order of the Bankruptcy Court; and/or (iv) any objections with respect to any Retained Professional's final fee application or Accrued Professional Compensation Claims in these Chapter 11 Cases.

The foregoing release shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person and the Confirmation Order will permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action or liabilities released under this Third Party Release.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Third Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's

**finding that the Third Party Release is: (i) in exchange for the good and valuable consideration provided by the Released Parties; (ii) a good faith settlement and compromise of the Claims released by the Third Party Release; (iii) in the best interest of the Debtors and all Holders of Claims and Interests; (iv) fair, equitable and reasonable; and (v) given and made after due notice and opportunity for hearing.**

## C. Waiver of Statutory Limitations on Releases

Each of the Releasing Parties in each of the releases contained above expressly acknowledges that although ordinarily a general release may not extend to Claims which the Releasing Party does not know or suspect to exist in its favor, which if known by it may have materially affected its settlement with the party released, they have carefully considered and taken into account in determining to enter into the above releases the possible existence of such unknown losses or claims. Without limiting the generality of the foregoing, each Releasing Party expressly waives any and all rights conferred upon it by any statute or rule of law which provides that a release does not extend to claims which the claimant does not know or suspect to exist in its favor at the time of providing the release, which if known by it may have materially affected its settlement with the Released Party. The releases contained in the Plan are effective regardless of whether those released matters are presently known, unknown, suspected or unsuspected, foreseen or unforeseen.

## D. Discharge of GT Forge

To the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code, except as otherwise expressly provided by the Plan or the Confirmation Order, effective as of the Effective Date, all consideration distributed under the Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims, Interests and Causes of Action of any kind or nature whatsoever against GT Forge or any of its respective assets or properties, including any interest accrued on such Claims or Interests from and after the Petition Date, and regardless of whether any property shall have been abandoned by order of the Bankruptcy Court, distributed or retained under the Plan on account of such Claims, Interests or Causes of Action.

Except as otherwise expressly provided by the Plan or the Confirmation Order, upon the Effective Date, GT Forge shall be deemed discharged and released under and to the fullest extent provided under sections 524 and 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code from any and all Claims of any kind or nature whatsoever, including, but not limited to, demands and liabilities that arose before the Confirmation Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code. Such discharge shall void any judgment obtained against GT Forge or the Reorganized Debtor at any time, to the extent that such judgment relates to a discharged Claim.

## E. Exculpation

Effective as of the Effective Date, the Exculpated Parties shall neither have nor incur any liability to any Entity for any claims or Causes of Action arising prior to or on the Effective Date for any act taken or omitted to be taken in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming or effecting the Confirmation

or Consummation of the Plan, the Disclosure Statement, the Restructuring Documents or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan or any other postpetition act taken or omitted to be taken in connection with the liquidation or restructuring, as applicable, of the Debtors, the Disclosure Statement or Confirmation or Consummation of the Plan; *provided*, *however*, that the foregoing provisions of this exculpation shall not operate to waive, release or otherwise impair:  (i) any Causes of Action expressly set forth in and preserved by the Plan or the Plan Supplement; (ii) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Exculpated Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; (iii) any of the indebtedness or obligations of the Debtors and/or the Reorganized Debtor incurred under the Plan and the contracts, instruments, releases, indentures, and other agreements and documents delivered under or in connection with the Plan or assumed under the Plan or assumed under Final Order of the Bankruptcy Court, (iv) the rights of any Entity to enforce the Plan and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with the Plan or assumed under the Plan or assumed under Final Order of the Bankruptcy Court; and/or (v) any objections with respect to any Retained Professional's final fee application or Accrued Professional Compensation Claims in these Chapter 11 Cases; *provided*, *further*, that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning its respective duties under, or in connection with, the above-referenced documents, actions or inactions.

The foregoing exculpation shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person.  Notwithstanding the foregoing, nothing in Article IX.E of the Plan shall or shall be deemed to prohibit the Debtors or the Reorganized Debtor or the Settlement Trustee, as applicable, from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Person that is based upon an alleged breach of a confidentiality or non-compete obligation owed to the Debtors or the Reorganized Debtor, in each case unless otherwise expressly provided for in the Plan.

### F.  Preservation of Causes of Action

#### 1.  Maintenance of Causes of Action

Except as otherwise provided in Article IX or elsewhere in the Plan or the Confirmation Order, after the Effective Date, the Settlement Trust shall retain all rights to commence, pursue, litigate or settle, as appropriate, any and all Causes of Action, whether existing as of the Petition Date or thereafter arising, in any court or other tribunal including, without limitation, in an adversary proceeding Filed in the Chapter 11 Cases; *provided*, *however*, that the foregoing shall not be deemed to include any claims or Causes of Action (i) released under Article IX.B.1 of the Plan or (ii) exculpated under Article IX.E of the Plan to the extent of any such exculpation.  The Settlement Trust, as the successor-in-interest to the Debtors, shall have the exclusive right to, enforce, sue on, settle, compromise, transfer or assign (or decline to do any of the foregoing) any or all of such Causes of Action, in each case solely to the extent of the Debtors' or their Estates' interest therein, without notice to or approval from the Bankruptcy Court.  Notwithstanding the foregoing, the Settlement Trust shall retain all claims and defenses to any Allowed Claims that are

Reinstated or Unimpaired pursuant to the Plan.  A further description of the retained causes of action shall be filed with the Plan Supplement.

### 2.  Preservation of All Causes of Action Not Expressly Settled or Released

The Debtors expressly reserve all Causes of Action for later adjudication by the Settlement Trust (including, without limitation, Causes of Action not specifically identified or of which the Debtors may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time or facts or circumstances that may change or be different from those the Debtors now believe to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such Causes of Action upon or after the Confirmation or Consummation of the Plan based on the Disclosure Statement, the Plan or the Confirmation Order, except in each case where such Causes of Action have been expressly waived, relinquished, released, compromised or settled in the Plan, the Confirmation Order or any other Final Order, including, without limitation or any other claims or Causes of Action (i) released under Article IX.B.1 of the Plan or (ii) exculpated under Article IX.E of the Plan to the extent of any such exculpation.  In addition, the Settlement Trust expressly reserves the right to pursue or adopt any claims alleged in any lawsuit in which any of the Debtors are a plaintiff, defendant or an interested party, against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

### G.  Injunction

**EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, FROM AND AFTER THE EFFECTIVE DATE, ALL PERSONS AND ENTITIES ARE, TO THE FULLEST EXTENT PROVIDED UNDER SECTION 524 AND OTHER APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE, PERMANENTLY ENJOINED FROM (I) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY SUIT, ACTION OR OTHER PROCEEDING; (II) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING IN ANY MANNER ANY JUDGMENT, AWARD, DECREE, OR ORDER; (III) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE; (IV) ASSERTING A SETOFF OR RIGHT OF SUBROGATION OF ANY KIND; OR (V) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND, IN EACH CASE ON ACCOUNT OF OR WITH RESPECT TO ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, EQUITY INTEREST, OR REMEDY RELEASED OR TO BE RELEASED, SETTLED OR TO BE SETTLED OR DISCHARGED OR TO BE DISCHARGED UNDER THE PLAN OR THE CONFIRMATION ORDER AGAINST ANY PERSON OR ENTITY SO RELEASED OR DISCHARGED (OR THE PROPERTY OR ESTATE OF ANY PERSON OR ENTITY SO RELEASED, DISCHARGED).  ALL INJUNCTIONS OR STAYS PROVIDED FOR IN THE CHAPTER 11 CASES UNDER SECTION 105 OR SECTION 362 OF THE BANKRUPTCY CODE, OR OTHERWISE, AND IN EXISTENCE ON THE**

**CONFIRMATION DATE, SHALL REMAIN IN FULL FORCE AND EFFECT UNTIL THE EFFECTIVE DATE.**

### H.  Binding Nature of the Plan

**ON THE EFFECTIVE DATE, AND EFFECTIVE AS OF THE EFFECTIVE DATE, THE PLAN SHALL BIND, AND SHALL BE DEEMED BINDING UPON, THE DEBTORS, THE REORGANIZED DEBTOR, ANY AND ALL HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTORS, ALL PERSONS AND ENTITIES THAT ARE PARTIES TO OR ARE SUBJECT TO THE SETTLEMENTS, COMPROMISES, RELEASES, DISCHARGES, AND INJUNCTIONS DESCRIBED IN THE PLAN, EACH PERSON ACQUIRING PROPERTY UNDER THE PLAN, ANY AND ALL NON-DEBTOR PARTIES TO EXECUTORY CONTRACTS AND UNEXPIRED LEASES WITH THE DEBTORS AND THE RESPECTIVE SUCCESSORS AND ASSIGNS OF EACH OF THE FOREGOING, TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, AND NOTWITHSTANDING WHETHER OR NOT SUCH PERSON OR ENTITY (I) WILL RECEIVE OR RETAIN ANY PROPERTY, OR INTEREST IN PROPERTY, UNDER THE PLAN, (II) HAS FILED A PROOF OF CLAIM OR INTEREST IN THE CHAPTER 11 CASES OR (III) FAILED TO VOTE TO ACCEPT OR REJECT THE PLAN, AFFIRMATIVELY VOTED TO REJECT THE PLAN OR IS CONCLUSIVELY PRESUMED TO REJECT THE PLAN.**

### I.  Protection Against Discriminatory Treatment

To the extent provided by section 525 of the Bankruptcy Code and the Supremacy Clause of the United States Constitution, all Persons and Entities, including Governmental Units, shall not discriminate against the Reorganized Debtor or deny, revoke, suspend or refuse to renew a license, permit, charter, franchise or other similar grant to, condition such a grant to, discriminate with respect to such a grant, against the Reorganized Debtor, or another Person or Entity with whom the Reorganized Debtor have been associated, solely because GT Forge has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtors are granted or denied a discharge) or has not paid a debt that is dischargeable in the Chapter 11 Cases.

### J.  Integral Part of Plan

Each of the provisions set forth in the Plan with respect to the settlement, release, discharge, exculpation, and injunction of, for or with respect to Claims and/or Causes of Action are an integral part of the Plan and essential to its implementation.  Accordingly, each Entity that is a beneficiary of such provision shall have the right to independently seek to enforce such provision and such provision may not be amended, modified, or waived after the Effective Date without the prior written consent of such beneficiary.

### K.  Preservation of Privilege and Defenses

No action taken by the Debtors or Reorganized Debtor in connection with the Plan shall be (or be deemed to be) a waiver of any privilege or immunity of the Debtors or Reorganized Debtor, as applicable, including any attorney-client privilege or work-product privilege attaching to any

documents or communications (whether written or oral).  The Confirmation Order shall provide that, notwithstanding the Reorganized Debtor providing any privileged information to the Distribution Agent or any party or person associated with the Distribution Agent, such privileged information shall be without waiver in recognition of the joint and/or successorship interest in prosecuting any Claim or Cause of Action on behalf of the Estates and shall remain privileged. The Debtors or the Reorganized Debtor retain the right to waive their own privileges.  The Distribution Agent shall have no right to any privileged information or analysis of the Debtors or the Reorganized Debtor.

## ARTICLE XIII.

## RETENTION OF JURISDICTION

Under sections 105(c) and 1142 of the Bankruptcy Code and notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, on and after the Effective Date, retain exclusive jurisdiction over the Chapter 11 Cases and all Entities with respect to all matters related to the Chapter 11 Cases, the Debtors and the Plan as legally permissible, including, without limitation, jurisdiction to:

1. Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest, including, without limitation, the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of any such Claim or Interest;

2. Decide and resolve all matters related to the granting or denial, in whole or in part, of any applications for allowance of compensation or reimbursement of expenses authorized under the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date; *provided*, *however*, that, from and after the Effective Date, the Reorganized Debtor and Settlement Trustee shall pay Retained Professionals in the ordinary course of business for any work performed after the Effective Date and such payment shall not be subject to the approval of the Bankruptcy Court;

3. Resolve any matters related to the assumption, assignment or rejection of any Executory Contract or Unexpired Lease and to adjudicate and, if necessary, liquidate, any Claims arising therefrom, including, without limitation, those matters related to any amendment to the Plan after the Effective Date to add Executory Contracts or Unexpired Leases to the list of Executory Contracts and Unexpired Leases to be assumed or rejected (as applicable);

4. Resolve any issues related to any matters adjudicated in the Chapter 11 Cases;

5. Ensure that distributions to Holders of Allowed Claims are accomplished under the provisions of the Plan;

6. Decide or resolve any motions, adversary proceedings, contested or litigated matters and any other Causes of Action that are pending as of the Effective Date or that may be commenced in the future, and grant or deny any applications involving the Debtors that may be pending on the Effective Date or instituted by the Reorganized Debtor or Settlement Trustee after the Effective Date, *provided*, *however*, that the Reorganized

Debtor and Settlement Trustee shall reserve the right to commence actions in all appropriate forums and jurisdictions;

7. Enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all other contracts, instruments, releases, indentures and other agreements or documents adopted in connection with the Plan, the Plan Supplement or the Disclosure Statement;

8. Resolve any cases, controversies, suits or disputes that may arise in connection with the Consummation, interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

9. Hear and determine all Causes of Action that are pending as of the Effective Date or that may be commenced in the future, except for those claims or Causes of Action (i) released under Article IX.B.1 of the Plan or (ii) exculpated under Article IX.E of the Plan to the extent of any such exculpation;

10. Issue injunctions and enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

11. Enforce the terms and conditions of the Plan, the Confirmation Order, and the Restructuring Documents;

12. Resolve any cases, controversies, suits or disputes with respect to the Release, the Exculpation, and any other provisions contained in Article IX of the Plan and enter such orders or take such others actions as may be necessary or appropriate to implement or enforce all such provisions;

13. Enter and implement such orders or take such other actions as may be necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

14. Resolve any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any release or exculpation adopted in connection with the Plan; and

15. Enter one or more final decrees closing the Chapter 11 Cases.

Notwithstanding the foregoing, if the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Cases, including the matters set forth in this Article, the provisions of this Article X of the Plan shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

# ARTICLE XIV.

# MODIFICATION, REVOCATION, OR WITHDRAWAL OF PLAN

## A.  Modification of Plan

Subject to the limitations contained in the Plan, the Debtors reserve the right, in accordance with the Bankruptcy Code, the Bankruptcy Rules (1) to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code, and (2) after the entry of the Confirmation Order, the Debtors, the Reorganized Debtor, or the Settlement Trustee, as the case may be, may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

## B.  Effect of Confirmation on Modifications

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved under section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

## C.  Revocation of Plan

Subject to the conditions to the Effective Date, the Debtors reserve the right to revoke or withdraw the Plan prior to the entry of the Confirmation Order and to File subsequent plans of reorganization.  If the Debtors revoke or withdraw the Plan, or if the Effective Date does not occur, then (1) the Plan shall be null and void in all respects, (2) any settlement or compromise embodied in the Plan, assumption of Executory Contracts or leases effected by the Plan, and any document or agreement executed pursuant hereto shall be deemed null and void, and (3) nothing contained in the Plan shall (a) constitute a waiver or release of any claims by or against or any Interests in such Debtor or any other Entity, (b) prejudice in any manner the rights of the Debtors or any other Entity, or (c) constitute an admission of any sort by the Debtors or any other Entity.

# ARTICLE XV.

# MISCELLANEOUS PROVISIONS

## A.  Immediate Binding Effect

Notwithstanding Bankruptcy Rules 3020(e), 6004(g), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the documents and instruments contained in the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtor, and any and all Holders of Claims and Interests (irrespective of whether such Holders of Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan and any and all non-Debtor parties to Executory Contracts and Unexpired Leases.  The Confirmation Order

shall contain a waiver of any stay of enforcement otherwise applicable, including under Bankruptcy Rule 3020(e), 6004(g), and 7062.

## B. Additional Documents

On or before the Effective Date and in accordance with Article I.B of the Plan, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors or the Reorganized Debtor, as applicable, and all Holders of Claims or Interests receiving distributions under the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

## C. Substantial Consummation

"Substantial Consummation" of the Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

## D. Payment of Statutory Fees; Post-Effective Date Fees and Expenses

All fees due and payable under section 1930 of title 28 of the U.S. Code prior to the Effective Date shall be paid by the Debtors. On and after the Effective Date, the Reorganized Debtor and Settlement Trustee shall, as applicable, pay any and all such fees when due and payable, and shall file with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the United States Trustee. Except as provided in Article II.D of the Plan, each Debtor shall remain obligated to pay quarterly fees to the United States Trustee until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code.

The Reorganized Debtor and the Settlement Trustee shall, as applicable, subject to the Budget, pay the liabilities and charges that they incur on or after the Effective Date for Retained Professionals' fees, disbursements, expenses, or related support services (including reasonable fees, costs and expenses incurred by Retained Professionals relating to the preparation of interim and final fee applications and obtaining Bankruptcy Court approval thereof) in the ordinary course of business and without application or notice to, or order of, the Bankruptcy Court, including, without limitation, the reasonable fees, expenses, and disbursements of the Distribution Agent and the fees, costs and expenses incurred by Retained Professionals in connection with the implementation, enforcement and Consummation of the Plan and the Restructuring Documents. The payment of any fees and expenses incurred by the Settlement Trustee or Distribution Agent that are not contemplated by the Budget shall require the consent of the Plan Sponsor.

## E. Conflicts

In the event that a provision of the Restructuring Documents or the Disclosure Statement (including any and all exhibits and attachments thereto) conflicts with a provision of the Plan or the Confirmation Order, the provision of the Plan and the Confirmation Order (as applicable) shall govern and control to the extent of such conflict. In the event that a provision of the Plan conflicts

with a provision of the Confirmation Order, the provision of the Confirmation Order shall govern and control to the extent of such conflict.

### F.  Successors and Assigns

The Plan shall be binding upon and inure to the benefit of the Debtors, the Reorganized Debtor, all present and former Holders of Claims and Interests, other parties-in-interest, and their respective heirs, executors, administrators, successors, and assigns.  The rights, benefits, and obligations of any Person or Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Person or Entity.

### G.  Reservation of Rights

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order and the Plan is consummated.  Neither the Filing of the Plan, any statement or provision contained in the Plan, nor the taking of any action by the Debtors or any other Entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of:  (1) the Debtors with respect to the Holders of Claims or Interests or other Entity; or (2) any Holder of a Claim or an Interest or other Entity prior to the Effective Date.

### H.  Further Assurances

The Debtors or the Reorganized Debtor, as applicable, all Holders of Claims receiving distributions hereunder and all other Entities shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

### I.  Severability

If, prior to the Confirmation Date, any term or provision of the Plan is determined by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order will constitute a judicial determination and will provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable under its terms.

### J.  Service of Documents

Any notice, direction or other communication given to the Debtors regarding the matters contemplated by the Plan (each, a "**Notice**") must be in writing, sent by personal delivery, electronic mail, or courier and addressed as follows:

*Juno USA, LP*
Attn: Melissa S. Kibler
74 W. Long Lake Road, Suite 205
Bloomfield Hills, Michigan 48304

with a copy to:

*Chipman Brown Cicero & Cole, LLP*
Attn: William E. Chipman, Jr.
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801

A Notice is deemed to be given and received (a) if sent by personal delivery or courier, on the date of delivery if it is a Business Day and the delivery was made prior to 4:00 p.m. (local time in place of receipt) and otherwise on the next Business Day, or (b) if sent by electronic mail, when the sender receives an email from the recipient acknowledging receipt, provided that an automatic "read receipt" does not constitute acknowledgment of an email for purposes of Article XII.J of the Plan.  Any party may change its address for service from time to time by providing a Notice in accordance with the foregoing.  Any element of a party's address that is not specifically changed in a Notice will be assumed not to be changed.  Sending a copy of a Notice to a party's legal counsel as contemplated above is for information purposes only and does not constitute delivery of the Notice to that party.  The failure to send a copy of a Notice to legal counsel does not invalidate delivery of that Notice to a party.

### K.  Governing Law

Except to the extent that the Bankruptcy Code, the Bankruptcy Rules or other federal law is applicable, or to the extent that a Restructuring Document or an exhibit or schedule to the Plan provides otherwise, the rights, obligations, construction and implementation of the Plan and any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan, shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflicts of law of such jurisdiction that would require or permit the application of the law of another jurisdiction.

### L.  Tax Reporting and Compliance

The Reorganized Debtor is hereby authorized to request an expedited determination under section 505(b) of the Bankruptcy Code of the tax liability of the Debtors for all taxable periods ending after the Petition Date through and including the Effective Date.

### M. Schedules

All exhibits and schedules to the Plan, including the Exhibits and Plan Schedules, are incorporated in the Plan and are a part of the Plan as if set forth in full.

### N.  No Strict Construction

The Plan is the product of extensive discussions and negotiations between and among, *inter alia*, the Debtors and their respective professionals.  Each of the foregoing was represented by counsel of its choice who either participated in the formulation and documentation of, or was afforded the opportunity to review and provide comments on, the Plan, the Disclosure Statement, the Exhibits and the Plan Schedules, and the agreements and documents ancillary or related thereto.  Accordingly, unless explicitly indicated otherwise, the general rule of contract construction known as "*contra proferentem*" or other rule of strict construction shall not apply to the construction or interpretation of any provision of the Plan, the Disclosure Statement, the Exhibits or the Plan Schedules, or the documents ancillary and related thereto.

### O.  Entire Agreement

Except as otherwise provided in the Plan or the Restructuring Documents, the Plan and the Restructuring Documents supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan and the Restructuring Documents.

### P.  Closing of Chapter 11 Cases

The Settlement Trustee shall, promptly after the full administration of the Chapter 11 Cases, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases.

### Q.  2002 Notice Parties

After the Effective Date, the Reorganized Debtor and the Settlement Trustee, as applicable, are authorized to limit the list of Entities receiving documents under Bankruptcy Rule 2002 to those Entities who have Filed a renewed request after the Confirmation Hearing to receive documents under Bankruptcy Rule 2002.

### R.  Section 1125(e) Good Faith Compliance

The Debtors, the Reorganized Debtor and the Creditors' Committee, if any, and each of their respective Related Persons shall be deemed to have acted in "good faith" under section 1125(e) of the Bankruptcy Code.

## ARTICLE XVI.

## VOTING PROCEDURES

### A.  Voting Procedures

**The Voting Record Date is [●], 2020.**  The Disclosure Statement Order established the Voting Record Date for purposes of determining, among other things, which Holders of Claims and Interests are eligible to vote on the Plan and whether Claims have been properly assigned or transferred under Bankruptcy Rule 3001(e) such that an assignee can vote as the Holder of a Claim.

**The Voting Deadline is [●], 2020 at 5:00 p.m. (EST).**  The Disclosure Statement Order also established the Voting Deadline as the deadline for submitting Ballots, as applicable.  To have votes to accept or reject the Plan counted, every registered Holder of a Claim or Interest must properly execute, complete, and deliver the Ballot by (i) first-class mail, (ii) overnight courier, (iii) personal delivery, or (iv) electronically via the E-Ballot system, in each case so that Omni **actually receives** the Ballot no later than the Voting Deadline.  Holders of Claims or Interests, or their Voting Nominees, should send their Ballots to Omni on or before the Voting Deadline, as indicated in below.  Delivery of a Ballot by facsimile will render the corresponding vote invalid.  It is important to follow the specific instructions provided on each Ballot.  Except as provided in the Disclosure Statement Order or your Ballot, Ballots should be sent to:

<u>By first class mail, overnight courier or hand delivery</u>:

*Juno USA, LP Claims Processing*
**c/o Omni Agent Solutions, Inc.**
**5955 De Soto Avenue, Suite 100**
**Woodland Hills, California 91367**

<u>By electronic, online submission</u>:
Please visit https://[●].  Click on the "Submit E-Ballot" section of the Debtors' website and follow the directions to submit your E-Ballot.  If you choose to submit your Ballot via the E-Ballot system, you should not also return a hard copy of your Ballot.

<u>Ballots submitted by facsimile or e-mail will not be counted</u>.

### B.  Ballots Not Counted

Except as otherwise provided by the Disclosure Statement Order, no Ballot will be counted toward Confirmation if, among other things: (i) it is illegible or contains insufficient information to permit the identification of the Holder of the Claim or Interest; (ii) it was transmitted by facsimile; (iii) it was cast by an entity that is not entitled to vote on the Plan; (iv) it was cast for a Claim listed in the Schedules as contingent, unliquidated, or disputed for which the applicable bar date has passed and no proof of claim was timely filed; (v) it was cast for a Claim or Interest that is subject to an objection pending as of the Voting Record Date (unless temporarily allowed in accordance with the Disclosure Statement Order); (vi) it was sent to the Debtors, the Debtors' agents (other than Omni), the Debtors' financial or legal advisors; (vii) it is unsigned, except with respect to Ballots submitted electronically, in accordance with the procedures set forth in the Disclosure Statement Order; (viii) it is not clearly marked to either accept or reject the Plan or it is marked both to accept and reject the Plan; or (ix) it is not received by Omni before the Voting Deadline.

**IF YOU HAVE ANY QUESTIONS ABOUT THE SOLICITATION OR VOTING PROCESS, PLEASE CONTACT OMNI TOLL-FREE AT (818) 906-8300.**

## ARTICLE XVII.

## CONFIRMATION

### A.  The Confirmation Hearing

Before the Debtors may implement the Plan, the Bankruptcy Code requires that the Bankruptcy Court, after notice, hold a confirmation hearing with respect to the Plan if the required majorities have approved after solicitation.  The Confirmation Hearing in respect of the Plan has been scheduled to commence on **[●], 2020 at [●]:00 a.m. (EST)** before the Honorable Mary F. Walrath, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Delaware, located at 824 Market Street, 5th Floor, Courtroom No. 4, Wilmington, Delaware 19801.  The Confirmation Hearing may be adjourned from time to time by the Debtors without further notice except for an announcement of the adjourned date made at the Confirmation Hearing.  Any objection to confirmation must be made in writing and specify in detail the name and address of the objector, all grounds for the objection and the amount and description of the Claim and/or Interest held by the objector.  Any such objection must be filed with the Bankruptcy Court and served in accordance with the Disclosure Statement Order on or before [●], 2020 at 5:00 p.m. (EST).  Objections to confirmation of the Plan are governed by Bankruptcy Rule 9014.

### B.  Confirmation

Notwithstanding the fact that the Plan is a single document, the Plan constitutes a separate Plan for each Debtor for the resolution of outstanding Claims and Interests under the Bankruptcy Code.  Subject to the satisfaction of the conditions set forth in Article VIII of the Plan, the Debtors may choose to confirm and consummate all or less than all of such plans of reorganization without any further amendment of the Plan.

At the confirmation hearing, the Bankruptcy Court will confirm the Plan only if all of the requirements of section 1129 of the Bankruptcy Code are satisfied.  Among the requirements for confirmation of a plan are that the plan is: (i) accepted by all impaired classes of claims and equity interests or, if rejected by an impaired class, that the plan "does not discriminate unfairly" and is "fair and equitable" as to such class; (ii) feasible; and (iii) in the "best interests" of creditors and stockholders that are impaired under the plan.

#### 1.  Acceptance

Acceptance of the Plan need only be solicited from holders of Claims whose Claims belong to a Class that is impaired and not deemed to have accepted or rejected the Plan.

If any impaired Class of Claims entitled to vote does not accept the Plan by the requisite statutory majority provided in sections 1126(c) and (d) of the Bankruptcy Code, the Debtors reserve the right to amend the Plan in accordance with section 1127 of the Bankruptcy Code or to seek Bankruptcy Court confirmation of the Plan under section 1129(b) of the Bankruptcy Code (a procedure known as "cram down"), or both.  The determination as to whether to seek confirmation of the Plan under such circumstances will be announced before or at the Confirmation Hearing. With respect to Impaired Classes of Claims or Interests that are deemed to reject the Plan, the

Debtors will request that the Bankruptcy Court confirm the Plan under section 1129(b) of the Bankruptcy Code.  See Section Article XVII.B.3, entitled "Cram Down."

## 2.  Confirmation Standards

### a.  Overview

At the Confirmation Hearing, the Bankruptcy Court will determine whether the requirements of section 1129(a) of the Bankruptcy Code have been satisfied with respect to the Plan.  Confirmation of a plan under section 1129(a) of the Bankruptcy Code requires, among other things, that:

- the plan complies with the applicable provisions of the Bankruptcy Code;

- the proponent of the plan has complied with the applicable provisions of the Bankruptcy Code;

- the plan has been proposed in good faith and not by any means forbidden by law;

- any payment made or to be made by the proponent under the plan for services or for costs and expenses in, or in connection with, the chapter 11 case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the bankruptcy court as reasonable;

- the proponent has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the debtor, an affiliate of the debtor participating in the plan with the debtor, or a successor to the debtor under the plan.  The appointment to, or continuance in, such office of such individual, must be consistent with the interests of creditors and equity security holders and with public policy, and the proponent must have disclosed the identity of any insider that the reorganized debtor will employ or retain and the nature of any compensation for such insider;

- with respect to each impaired class of claims or interests, either each Holder of a claim or interest of such class has accepted the plan, or will receive or retain under the plan on account of such claim or interest, property of a value, as of the effective date of the plan, that is not less than the amount that such Holder would receive or retain if the debtor were liquidated on such date under chapter 7 of the Bankruptcy Code;

- each class of claims or interests has either accepted the plan or is not impaired under the plan;

- except to the extent that the Holder of a particular claim has agreed to a different treatment of such claim, the plan provides that allowed administrative expenses and priority claims (other than priority tax claims) will be paid in full on the Effective Date (except that if a class of priority claims has voted to accept the plan, Holders of such claims may receive deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amounts of such claims) and that Holders of priority tax claims may receive on account of

such claims deferred cash payments, over a period not exceeding six years after the date of assessment of such claims, of a value, as of the effective date, equal to the allowed amount of such claims;

- if a class of claims is impaired, at least one impaired class of claims has accepted the plan, determined without including any acceptance of the plan by any insider holding a claim in such class; and

- confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

Subject to receiving the requisite votes in accordance with section 1129(a)(8) of the Bankruptcy Code and the "cram down" of Classes not receiving any distribution under the Plan, the Debtors believe that:

- the Plan satisfies all of the statutory requirements of chapter 11 of the Bankruptcy Code;

- the Debtors have complied or will have complied with all of the requirements of chapter 11 of the Bankruptcy Code; and

- the Plan has been proposed in good faith.

Set forth below is a more detailed summary of the relevant statutory confirmation requirements.

### b.  Best Interests of Holders of Claims and Interests

The "best interests" standard requires that the Bankruptcy Court find either:

- that all members of each Impaired Class have accepted the Plan; or

- that each Holder of an Allowed Claim or Interest of each Impaired Class of Claims will receive or retain on account of such Claim or Interest, property of a value, as of the Effective Date of the Plan, that is not less than the amount that such Holder would so receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.

The first step in ascertaining whether the Debtors meet this standard is to determine the dollar amount that would be generated from the liquidation of the Debtors' assets and properties in a chapter 7 liquidation case. The gross amount of cash available in such a liquidation would be the sum of the proceeds from the disposition of the Debtors' assets and the cash held by the Debtors at the time of the commencement of the chapter 7 case. This gross amount would be reduced by the amount of any Allowed Claims secured by such assets, the costs and expenses of the liquidation, and such additional administrative expenses and priority claims that may result from the liquidation of the Debtors' business and the use of chapter 7 for the purposes of liquidation. Any remaining net cash would be allocated to creditors and shareholders in strict accordance with the order of priority of claims contained in section 726 of the Bankruptcy Code.

As discussed in the Debtors' Liquidation Analysis attached to this Disclosure Statement as **Exhibit D**, the Debtors have determined that confirmation of the Plan will provide each creditor and interest holder with a recovery that is not less than it would receive under a liquidation of the Debtors under chapter 7 of the Bankruptcy Code. *See* **Exhibit D** for a further discussion of how the Plan satisfies the "best interests" test.

### c.  Financial Feasibility

Section 1129(a)(11) of the Bankruptcy Code requires that confirmation is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtors or any successor to the Debtors unless such liquidation or reorganization is proposed in the Plan.

As of the Effective Date, the Debtors believe they will have sufficient funds to satisfy Claims under the treatment set forth in the Plan as well as to implement the Plan.

### 3.  Cram Down

**The Debtors intend to seek to cram down the Plan on any Class of Claims in Impaired Classes that vote against or are deemed to reject the Plan.**

The Bankruptcy Code contains provisions for confirmation of a plan even if the plan is not accepted by all impaired classes, as long as at least one impaired class of claims has accepted the plan.  The "cram down" provisions of the Bankruptcy Code are set forth in section 1129(b) of the Bankruptcy Code.

Under the "cram down" provisions, on the request of a plan proponent the bankruptcy court will confirm a plan despite the lack of acceptance by an impaired class or classes if the bankruptcy court finds that:

- the plan does not discriminate unfairly with respect to each non-accepting impaired class;

- the plan is fair and equitable with respect to each non-accepting impaired class; and

- at least one impaired class has accepted the plan.

These standards ensure that Holders of junior interests, such as common stockholders, cannot retain any interest in the debtor under a plan of reorganization that has been rejected by a senior impaired class of claims or interests unless the claims or interests in that senior impaired class are paid in full.

As used by the Bankruptcy Code, the phrases "discriminate unfairly" and "fair and equitable" have narrow and specific meanings unique to bankruptcy law.  A plan does not discriminate unfairly if claims or interests in different classes but with similar priorities and characteristics receive or retain property of similar value under a plan.  By establishing separate Classes for the Holders of each type of Claim or Interest and by treating each Holder of a Claim or Interest in each Class similarly, the Plan has been structured in order to satisfy the "unfair discrimination" test of section 1129(b) of the Bankruptcy Code.

The Bankruptcy Code sets forth different standards for establishing that a plan is "fair and equitable" with respect to a dissenting class, depending on whether the class is comprised of secured claims, unsecured claims.  In general, section 1129(b) of the Bankruptcy Code permits confirmation of a plan despite non-acceptance by an impaired class if that class and all junior classes are treated in accordance with the "absolute priority" rule.  This rule requires that the dissenting class be paid in full before a junior class may receive anything under the plan.  The Bankruptcy Code establishes "cram down" tests for secured creditors, unsecured creditors and equity holders as follows:

- Secured Creditors.  Either: (1) each impaired secured creditor retains its liens securing its secured claim and receives on account of its secured claim deferred cash payments having a present value equal to the amount of its allowed secured claim; (2) each impaired secured creditor realizes the "indubitable equivalent" of its allowed secured claim; or (3) the property securing the claim is sold free and clear of liens with such liens to attach to the proceeds of the sale and the treatment of such liens on proceeds to be as described in clauses (1) and (2) above.

- Unsecured Creditors.  Either: (1) each impaired unsecured creditor receives or retains under the plan property of a value equal to the amount of its allowed claim; or (2) the holders of claims and interests that are junior to the claims of the dissenting class will not receive any property under the plan.

- Interests.  Either:  (1) each holder of an equity interest will receive or retain under the plan property of a value equal to the greater of the fixed liquidation preference to which such holder is entitled, or the fixed redemption price to which such Holder is entitled or the value of the interest; or (2) the holder of an interest that is junior to the nonaccepting class will not receive or retain any property under the plan.

**In addition, the Bankruptcy Code requires that a debtor demonstrate that no class senior to a non-accepting impaired class will receive more than payment in full on its claims.**

If all of the applicable requirements for confirmation of the Plan are satisfied as set forth in sections 1129(a)(1) through (13) of the Bankruptcy Code, except that one or more Classes of Impaired Claims have failed to accept the Plan under section 1129(a)(8) of the Bankruptcy Code, the Debtors will request that the Bankruptcy Court confirm the Plan under the "cram down" procedures in accordance with section 1129(b) of the Bankruptcy Code.  The Debtors believe that the Plan satisfies the "cram down" requirements of the Bankruptcy Code, but there can be no assurance that the Bankruptcy Court will determine that the Plan meets the requirements of section 1129(b) of the Bankruptcy Code or that at least one Impaired Class of Claims will vote to accept the Plan, as required for confirmation of a Plan under the "cram down" procedures.  The Debtors have retained the right to exclude one or more Debtors from the Plan, which they may choose to do in the event that they are unable to "cram down" a dissenting Class.

### C.  Consummation

The Plan will become effective and be consummated on the Effective Date.  As used in this Disclosure Statement, the "**Effective Date**" means the first Business Day on or after the

Confirmation Date specified by the Debtors on which the conditions precedent to the effectiveness of the Plan, as set forth in Section VIII of the Plan, have been satisfied.

From and after the occurrence of the Effective Date, the Plan will be implemented under its terms, consistent with the provisions of the Bankruptcy Code.

## ARTICLE XVIII.

## CERTAIN FACTORS AFFECTING THE DEBTORS

**Before voting to accept or reject the Plan, Holders of Claims against the Debtors should read and consider carefully the following factors, all other information set forth in this Disclosure Statement, the Plan and all other documents delivered with or incorporated by reference in this Disclosure Statement and the Plan.  These factors should not, however, be regarded as constituting the only risks involved in connection with the Plan, its implementation, or the Reorganized Debtor's business and operations following the Effective Date.**

### A.  Risk Factors Relating to the Chapter 11 Cases

The occurrence or non-occurrence of any or all of the following contingencies, and any others, could affect distributions available to Holders of Allowed Claims under the Plan but will not necessarily affect the validity of the vote of the Impaired Classes to accept or reject the Plan or necessarily require a re-solicitation of the votes of Holders of Claims in such Impaired Classes. If the Plan is not consummated, any settlement, compromise, or release embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims), the assumption or rejection of executory contracts or unexpired leases affected by the Plan, and any document or agreement executed under the Plan, shall be null and void.

### 1.  Parties in Interest May Object to the Plan's Classification of Claims and Interests

Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an equity interest in a particular class only if such claim or equity interest is substantially similar to the other claims in such class.  The Debtors believe that the classification of the Claims and Interests under the Plan complies with the requirements set forth in the Bankruptcy Code because the Debtors created Classes of Claims and Interests, each encompassing Claims and Interests that are substantially similar to the other Claims and Interests in each such Class.  Nevertheless, there can be no assurance that the Bankruptcy Court will reach the same conclusion.

### 2.  Failure to Satisfy Vote Requirements

If votes are received in number and amount sufficient to enable the Bankruptcy Court to confirm the Plan, the Debtors intend to seek, as promptly as practicable thereafter, confirmation of the Plan.  In the event that sufficient votes are not received, the Debtors may seek to confirm an alternative chapter 11 plan.  There can be no assurance that the terms of any such alternative chapter 11 plan would be similar or as favorable to the Holders of Allowed Claims and Allowed Interests as those proposed in the Plan.

### 3.  The Debtors May Not Be Able to Secure Confirmation of the Plan

Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation of a chapter 11 plan and requires, among other things, a finding by the Bankruptcy Court that: (a) such plan "does not unfairly discriminate" and is "fair and equitable" with respect to any non-accepting classes; (b) confirmation of such plan is not likely to be followed by a liquidation or a need for further financial reorganization unless such liquidation or reorganization is contemplated by the plan; and (c) the value of distributions to non-accepting Holders of claims within a particular class under such plan will not be less than the value of distributions such Holders would receive if the debtors were liquidated under chapter 7 of the Bankruptcy Code.

There can be no assurance that the requisite acceptances to confirm the Plan will be received.  Even if the requisite acceptances are received, there can be no assurance that the Bankruptcy Court will confirm the Plan.  A non-accepting Holder of an Allowed Claim or an Allowed Interest might challenge either the adequacy of this Disclosure Statement or whether the balloting procedures and voting results satisfy the requirements of the Bankruptcy Code or Bankruptcy Rules.  Even if the Bankruptcy Court determined that this Disclosure Statement, the balloting procedures and voting results were appropriate, the Bankruptcy Court could still decline to confirm the Plan if it found that any of the statutory requirements for Confirmation had not been met.  If the Plan is not confirmed, it is unclear what distributions, if any, Holders of Allowed Claims and Allowed Interests would receive with respect to their Allowed Claims and Allowed Interests.

The Debtors, subject to the terms and conditions of the Plan, reserve the right to modify the terms and conditions of the Plan as necessary for Confirmation.  Any such modifications could result in a less favorable treatment of any Class than the treatment currently provided in the Plan.  Such less favorable treatment could include a distribution of property to the Class affected by the modification of a lesser value than currently provided in the Plan or no distribution of property whatsoever under the Plan.  Changes to the Plan may also delay the confirmation of the Plan and the Debtors' emergence from bankruptcy.

### 4.  Nonconsensual Confirmation

In the event that any impaired class of claims or interests does not accept a chapter 11 plan, a bankruptcy court may nevertheless confirm a plan at the proponents' request if at least one impaired class has accepted the plan (with such acceptance being determined without including the vote of any "insider" in such class), and, as to each impaired class that has not accepted the plan, the bankruptcy court determines that the plan "does not discriminate unfairly" and is "fair and equitable" with respect to the dissenting impaired classes.  The Debtors believe that the Plan satisfies these requirements, and the Debtors may request such nonconsensual confirmation in accordance with subsection 1129(b) of the Bankruptcy Code.  Nevertheless, there can be no assurance that the Bankruptcy Court will reach this conclusion.  In addition, the pursuit of nonconsensual Confirmation of the Plan may result in, among other things, increased expenses and the expiration of any commitment to provide support for the Plan, financially or otherwise.

### 5.  The Debtors May Object to the Amount or Classification of a Claim

Except as otherwise provided in the Plan, the Debtors reserve the right to object to the amount or classification of any Claim under the Plan.  The estimates set forth in this Disclosure Statement cannot be relied upon by any Holder of a Claim where such Claim is or may be subject to an objection.  Any Holder of a Claim that is or may be subject to an objection thus may not receive its expected share of the estimated distributions described in this Disclosure Statement.

### 6.  Risk of Non-Occurrence of the Effective Date

The occurrence of the Effective Date is subject to certain conditions precedent as described in <u>Article VIII</u> of the Plan, including, among others, those relating to consummation of the Plan, as well as the receipt of any necessary regulatory approvals.  If such conditions are not met or waived in accordance with the Plan, the Effective Date will not occur could result in the Plan not being consummated or the Confirmation Order being vacated.

### 7.  Contingencies Could Affect Votes of Impaired Classes to Accept or Reject the Plan

The distributions available to Holders of Allowed Claims and Allowed Interests under the Plan can be affected by a variety of contingencies, including, without limitation, whether the Bankruptcy Court orders certain Allowed Claims and Allowed Interests to be subordinated to other Allowed Claims and Allowed Interests.  The occurrence of any and all such contingencies, which could affect distributions available to Holders of Allowed Claims and Allowed Interests under the Plan, will not affect the validity of the vote taken by the Impaired Classes to accept or reject the Plan or require any sort of revote by the Impaired Classes.

### 8.  The Actual Amount of Allowed Claims May Differ From the Estimated Claims and Adversely Affect the Percentage Recovery of Claims

The estimated Claims and creditor recoveries set forth in this Disclosure Statement are based on various assumptions, and the actual Allowed amounts of Claims may significantly differ from the estimates.  Should one or more of the underlying assumptions ultimately prove to be incorrect, the actual Allowed amounts of Claims may vary from the estimated Claims contained in this Disclosure Statement.  Moreover, the Debtors cannot determine with any certainty at this time, the number or amount of Claims that will ultimately be Allowed.  Such differences may materially and adversely affect, among other things, the percentage recoveries to Holders of Allowed Claims under the Plan.

### 9.  Release, Injunction, and Exculpation Provisions May Not Be Approved

<u>Article IX</u> of the Plan provides for certain releases, injunctions, and exculpations.  All of the releases, injunctions, and exculpations provided in the Plan are subject to objection by parties in interest and may not be approved.  If they are not approved, the Plan likely cannot be confirmed and likely cannot go effective.

### 10. Certain Liabilities May Not Be Fully Extinguished as a Result of the Confirmation of the Plan

If an Impaired Class of Claims entitled to vote does not vote to accept the Plan, the Debtors may choose to exclude the Debtor group to which such Class relates or one or more Debtors in such Debtor group from the Plan.  If one or more Debtors are excluded from the Plan, none of the creditors of such Debtors would receive a distribution under the Plan.  The exclusion of a Debtor could have a material adverse effect on the creditors of such Debtor, would prolong the Chapter 11 Case as it related to such entity, and would delay the distribution to such Debtor's creditors.

### 11. Certain Tax Implications of the Chapter 11 Cases

Holders of Claims and Interests should carefully review Article XIX hereof to determine how the tax implications of the Plan and the Chapter 11 Cases may adversely affect the Reorganized Debtor and certain Holders of Claims and Interests.

### 12. Confirmation and Consummation May Be Delayed if the Debtors Have to Resolicit.

If the Debtors resolicit acceptances of the Plan from the parties entitled to vote thereon, the confirmation of the Plan could be delayed and possibly jeopardized.  Non-confirmation of the Plan could result in an extended chapter 11 proceeding.

## B.  Additional Factors to Be Considered

### 1.  Debtors Have No Duty to Update

The statements contained in this Disclosure Statement are made by the Debtors as of the date hereof, unless otherwise specified herein, and the delivery of this Disclosure Statement after that date does not imply that there has been no change in the information set forth herein since that date.  The Debtors have no duty to update this Disclosure Statement unless otherwise ordered to do so by the Bankruptcy Court.

### 2.  No Representations Outside this Disclosure Statement are Authorized

No representations concerning or related to the Debtors, the Chapter 11 Cases, or the Plan are authorized by the Bankruptcy Court or the Bankruptcy Code, other than as set forth in this Disclosure Statement.  Any representations or inducements made to secure acceptance or rejection of the Plan that are other than those contained in, or included with, this Disclosure Statement should not be relied upon in making the decision to accept or reject the Plan.

### 3.  No Legal or Tax Advice is Provided by this Disclosure Statement

The contents of this Disclosure Statement should not be construed as legal, business, or tax advice.  Each Holder of a Claim or Interest should consult their own legal counsel and accountant as to legal, tax, and other matters concerning their Claim or Interest.  This Disclosure Statement is not legal advice.  This Disclosure Statement may not be relied upon for any purpose other than to determine how to vote on the Plan or object to confirmation of the Plan.

### C.  Basis for Substantive Consolidation

Substantive consolidation of the Debtors is an important element of the Debtors' successful implementation of a chapter 11 plan.  The Debtors' substantive consolidation structure is supported by the applicable legal standards, practical considerations, and available information regarding the Debtors' prepetition financial affairs.

Substantive consolidation is an equitable remedy that a bankruptcy court may apply in the chapter 11 cases of affiliated debtors, among other instances.  When debtors are substantively consolidated, the assets and liabilities of such debtors are pooled and essentially treated as the assets and liabilities of a single debtor.  The United States Court of Appeals for the Third Circuit (the "**Third Circuit Court of Appeals**"), the circuit in which the Chapter 11 Cases are pending, articulated a test in *In re Owens Corning*, 419 F.3d 195 (3d Cir. 2005) for determining whether substantive consolidation is warranted.  In setting forth the test, the Third Circuit Court of Appeals looked to five principles behind substantive consolidation: (i) limiting the cross-creep of liability by respecting entity separateness is a fundamental ground rule; (ii) the harms substantive consolidation addresses are nearly always those caused by debtors; (iii) mere benefit of administration of the case is hardly a harm calling for substantive consolidation into play; (iv) substantive consolidation should be a rare remedy and one of last resort after considering and rejecting other remedies; and (v) while substantive consolidation may be used defensively to remedy the identifiable harms caused by entangled affairs, it may not be used offensively.  Id. at 211.  Based on these principles, the Third Circuit Court of Appeals held that, in the Third Circuit, the party calling for substantive consolidation must prove: (i) that prepetition, the entities to be consolidated disregarded separateness so significantly that their creditors relied on the breakdown of entity borders and treated them as one legal entity or (ii) that postpetition, their assets and liabilities are so scrambled that separating them is prohibitive and hurts all creditors.  Id.  Substantive consolidation is appropriate if either factor is justified.  Id.

The Debtors believe that the substantive consolidation provided for under the Plan is appropriate under the standards set forth by the Third Circuit Court of Appeals in the Owens Corning case, for several reasons, among others.  First, the Debtors believe that, prepetition, many of their creditors effectively treated the Debtors as a single entity.  Second, the Debtors believe that while they did observe appropriate corporate formalities and separateness during the prepetition period, as a practical matter the Debtors' business was operated as an integrated enterprise.  Third, while the Plan provides certain benefits for creditors, those benefits are available to creditors only to the extent that the substantive consolidation provided for in the Plan occurs.  Fourth, to the extent that individual Debtors have little or no assets, individual restructurings of these Debtors would not be a viable option.  Accordingly, the Debtors believe that the Plan's substantive consolidation structure is beneficial to creditors.

## ARTICLE XIX.

## CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

The following discussion summarizes certain federal income tax consequences of the implementation of the Plan to the Debtors and certain Holders of Claims.  The discussion only addresses such consequences to the Holders entitled to vote on the Plan.  It does not address the federal income tax consequences of the implementation of the Plan to Holders of Interests.  Holders

of Interests should consult their own tax advisors regarding the U.S. federal income tax consequences resulting from the implementation of the Plan.

The following summary is based on the Internal Revenue Code of 1986, as amended (the "**Tax Code**"), Treasury Regulations promulgated thereunder, judicial decisions and published administrative rules and pronouncements of the Internal Revenue Service (the "**IRS**") as in effect on the date hereof. Changes in such rules or new interpretations thereof may have retroactive effect and could significantly affect the federal income tax consequences described below.

The federal income tax consequences of the Plan are complex and are subject to significant uncertainties. The Debtors have not requested a ruling from the IRS with respect to any of the tax aspects of the Plan. Thus, no assurance can be given as to the interpretation that the IRS or a court of law will adopt. In addition, this summary does not generally address foreign, state, local or non-U.S. estate or gift-tax consequences of the Plan, nor does it purport to address the federal income tax consequences of the Plan to special classes of taxpayers (such as Non-U.S. Holders, broker dealers, banks, mutual funds, insurance companies, financial institutions, small business investment companies, regulated investment companies, tax-exempt organizations and investors in pass-through entities). This summary assumes that Holders of Claims hold such Claims as "capital assets" within the meaning of Section 1221 of the Tax Code. In addition, this discussion does not address the U.S. alternative minimum tax rules.

For purposes of this summary, a "U.S. Holder" means a Holder of a Claim that, in any case, is, for U.S. federal income tax purposes: (i) an individual that is a citizen or resident of the United States; (ii) a corporation, or other entity treated as a corporation for U.S. federal income tax purposes, created or organized in or under the laws of the United States, any state thereof or the District of Columbia; (iii) an estate, the income of which is subject to U.S. federal income taxation regardless of its source; or (iv) a trust, if (a) a court within the United States is able to exercise primary supervision over its administration and one or more U.S. persons have the authority to control all of the substantial decisions of such trust, or (b) it has a valid election in effect under applicable Treasury regulations to be treated as a U.S. person. A "Non-U.S. Holder" means a Holder of a Claim that is not a U.S. Holder and is, for U.S. federal income tax purposes, an individual, corporation (or other entity treated as a corporation for U.S. federal income tax purposes), estate or trust.

If an entity taxable as a partnership for U.S. federal income tax purposes holds a Claim, the U.S. federal income tax treatment of a partner (or other owner) of the entity generally will depend on the status of the partner (or other owner) and the activities of the entity. Such partner (or other owner) should consult an independent tax advisor as to the tax consequences of the Plan.

**The following summary of certain federal income tax consequences is for informational purposes only and is not a substitute for careful tax planning and advice based upon the individual circumstances pertaining to a Holder of a Claim or an Interest.**

**All Holders of Claims should seek tax advice based on their particular circumstances from an independent tax advisor regarding the federal, state, local, and other tax consequences of the transactions contemplated by the Plan.**

## A.  U.S. Federal Income Tax Consequences to the Debtors

Generally, a corporation will recognize cancellation of debt ("**COD**") income upon satisfaction of its outstanding indebtedness for total consideration less than the amount of such indebtedness.  The amount of COD income, in general, is the excess of (a) the adjusted issue price of the indebtedness satisfied,  (generally, the amount received upon incurring the obligation plus the amount of any previously amortized original issue discount ("**OID**") and less the amount of any previously amortized bond premium), over (b) the sum of (x) the amount of cash paid, and (y) the issue price of any new indebtedness of the taxpayer issued and (z) the fair market value of any other new consideration (including stock of the debtor) given in satisfaction of such indebtedness at the time of the exchange.

In accordance with Section 108(e)(2) of the Tax Code, a corporation will not, however, be required to include any amount of COD income in gross income to the extent that payment of the liability would have given rise to a deduction.  Also, COD income is not recognized by a taxpayer that is a debtor in a title 11 (bankruptcy) case if a discharge is granted by the court or under a plan approved by the court (the "bankruptcy exception").

The Tax Code provides that where COD income is excluded because of the bankruptcy exception, the debtor must reduce certain of its tax attributes—such as NOLs, current year losses, tax credits and tax basis in property—by the amount of any excluded COD income after the determination of the federal income tax for the year of the discharge of the debt.  To the extent the amount of COD income exceeds the tax attributes available for reduction; the remaining COD income will generally not result in further current or future tax cost to the debtor.

Pursuant to Section 301.7701-2(a) of the Treasury Regulations, an entity that is treated as a disregarded entity for U.S. federal income tax purposes is treated in the same manner as a sole proprietorship, branch or division of such entity's owner.  Thus, assets and liabilities owned, or owed, by a disregarded entity should generally be treated as owned by, or liabilities of, the disregarded entity's owner.  Pursuant to Section 301.7701-1 of the Treasury Regulations, a classification as a disregarded entity applies for all U.S. federal tax purposes.  A discharge of a disregarded entity's indebtedness should, therefore, be treated as the discharge of debt owed by such disregarded entity's owner.

Accordingly, it is expected that certain COD Income that is recognized by the Liquidating Debtors will be attributed for federal income tax purposes to the Reorganized Debtor.  As a result of the bankruptcy exception, it is expected that any COD Income attributed to the Reorganized Debtor will be excluded from income.

Under the terms of the Plan, the Debtors will transfer certain assets to the Settlement Trust in a potentially taxable disposition.  It is anticipated that existing tax attributes, including tax basis and net operating losses, will be sufficient to avoid the Reorganized Debtor incurring any material federal or State income taxes upon disposition.

## B.  U.S. Federal Income Tax Consequences to Creditors

As of the Effective Date, the Settlement Trust shall be established for the benefit of all Holders of Allowed General Unsecured Claims.  The Settlement Trustee will make a good faith

valuation of the Settlement Trust Assets.  All parties (including, without limitation, the Settlement Trustee and the Holders of Claims) must consistently use such valuation for all federal income tax purposes.  The tax consequences of the Plan are subject to uncertainties due to the lack of interpretative authority regarding certain changes in the tax law.

Allocations of taxable income of the Settlement Trust (other than taxable income allocable to the Settlement Trust's claims reserve) among holders of Claims shall be determined by reference to the manner in which an amount of cash equal to such taxable income would be distributed (were such cash permitted to be distributed at such time) if, immediately prior to such deemed distribution, the Settlement Trust had distributed all of its assets (valued at their tax book value, and other than assets allocable to the Settlement Trust claims reserve) to the holders of the beneficial interests in the Settlement Trust, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the Settlement Trust. Similarly, taxable loss of the Settlement Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a liquidating distribution of the remaining Settlement Trust Assets.

The tax book value of the Settlement Trust Assets for this purpose shall equal their fair market value on the Effective Date, adjusted in accordance with tax accounting principles prescribed by the Tax Code, applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.  Uncertainties with regard to federal income tax consequences of the Plan may arise due to the inherent nature of estimates of value that will impact tax liability determinations.

Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt by the Settlement Trustee of an IRS private letter ruling if the Settlement Trustee so request one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Settlement Trustee), the Settlement Trustee will (a) elect to treat any Settlement Trust assets allocable to, or retained on account of, Disputed Claims (the "**Settlement Trust Claims Reserve**") as a "disputed ownership fund" governed by Treasury Regulation Section 1.468B-9, and (b) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes. Accordingly, the Settlement Trust Claims Reserve will be subject to tax annually on a separate entity basis on any net income earned with respect to the Settlement Trust assets in such reserves, and all distributions from such reserves will be treated as received by holders in respect of their Claims as if distributed by the Debtors.  All parties (including, without limitation, the Settlement Trustee and the holders of beneficial interests in the Settlement Trust) will be required to report for tax purposes consistently with the foregoing.

The Settlement Trust is intended to qualify as a liquidating trust for federal income tax purposes.  In general, a liquidating trust is not a separate taxable entity but rather is treated for federal income tax purposes as a "grantor" trust (i.e., a pass-through entity).  The IRS, in Revenue Procedure 94-45, 1994.28 I.R.B. 124, set forth the general criteria for obtaining an IRS ruling as to the grantor trust status of a liquidating trust under a chapter 11 plan. The Settlement Trust has been structured with the intention of complying with such general criteria.  Pursuant to the Plan, and in conformity with Revenue Procedure 94-45, supra, all parties (including the Settlement Trustee and the holders of beneficial interests in the Settlement Trust) are required to treat for federal income tax purposes, the Settlement Trust as a grantor trust of which the holders of Allowed Claims are the owners and grantors.  While the following discussion assumes that the

Settlement Trust would be so treated for federal income tax purposes, no ruling has been requested from the IRS concerning the tax status of the Settlement Trust as a grantor trust. Accordingly, there can be no assurance that the IRS would not take a contrary position to the classification of the Settlement Trust as a grantor trust. if the IRS were to challenge successfully such classification, the federal income tax consequences to the Settlement Trust and the holders of Claims could vary from those discussed herein.

In general, each Holder of an Allowed Claim will recognize gain or loss in an amount equal to the difference between (i) the "amount realized" by such Holder in satisfaction of its Claim, and (ii) such Holder's adjusted tax basis in such Claim. The "amount realized" by a Holder will equal the sum of cash and the aggregate fair market value of the property received by such Holder pursuant to the Plan (such as a Holder's undivided beneficial interest in the assets transferred to the Settlement Trust). Where gain or loss is recognized by a Holder in respect of its Allowed Claim, the character of such gain or loss will be determined by a number of factors including the tax status of the Holder, whether the Claim constituted a capital asset in the hands of the Holder and how long it had been held, whether the Claim was originally issued at a discount or acquired at a market discount and whether and to what extent the Holder had previously claimed a bad debt deduction in respect of the Claim.

After the Effective Date, any amount a Holder receives as a distribution from Settlement Trust in respect of its beneficial interest in the Settlement Trust should not be included, for federal income tax purposes, in the Holder's amount realized in respect of its Allowed Claim but should be separately treated as a distribution received in respect of such Holder's beneficial interest in the Settlement Trust.

In general, a Holder's aggregate tax basis in its undivided beneficial interest in the assets transferred to the Settlement Trust will equal the fair market value of such undivided beneficial interest as of the Effective Date and the holder's holding period in such assets will begin the day following the Effective Date. Distributions to any Holder of an Allowed Claim will be allocated first to the original principal portion of such Claim as determined for federal tax purposes, and then, to the extent the consideration exceeds such amount, to the remainder of such Claim. However, there is no assurance that the IRS will respect such allocation for federal income tax purposes.

For all federal income tax purposes, all parties (including the Settlement Trustee and the Holders of beneficial interests in the Settlement Trust) shall treat the transfer of assets to the Settlement Trust, in accordance with the terms of the Plan, as a transfer of those assets directly to the Holders of Allowed Claims followed by the transfer of such assets by such holders to the Settlement Trust. Consistent therewith, all parties shall treat the Settlement Trust as a grantor trust of which such holders are to be owners and grantors. Thus, such Holders (and any subsequent Holders of interests in the Settlement Trust) shall be treated as the direct owners of an undivided beneficial interest in the assets of the Settlement Trust for all federal income tax purposes. Accordingly, each Holder of a beneficial interest in the Settlement Trust will be required to report on its federal income tax return(s) the Holder's allocable share of all income, gain, loss, deduction or credit recognized or incurred by the Settlement Trust.

The Settlement Trust's taxable income will be allocated to the Holders of beneficial interests in the Settlement Trust in accordance with each such Holder's Pro Rata share. The

character of items of income, deduction and credit to any Holder and the ability of such Holder to benefit from any deductions or losses may depend on the particular situation of such Holder.

The federal income tax reporting obligation of a Holder of a beneficial interest in the Settlement Trust is not dependent upon the Settlement Trust distributing any cash or other proceeds. Therefore, a Holder of a beneficial interest in the Settlement Trust may incur a federal income tax liability regardless of the fact that the Settlement Trust have not made, or will not make, any concurrent or subsequent distributions to the Holder. If a Holder incurs a federal tax liability but does not receive distributions commensurate with the taxable income allocated to it in respect of its beneficial interests in the Settlement Trust it holds, the Holder may be allowed a subsequent or offsetting loss.

The Settlement Trustee will each file with the IRS returns for the Settlement Trust as grantor trusts pursuant to Treasury Regulations section 1.671-4(a). The Settlement Trustee will also send to each Holder of a beneficial interest in the Settlement Trust a separate statement setting forth the Holder's share of items of income, gain, loss, deduction or credit and will instruct the Holder to report such items on its federal income tax return.

All payments to Holders are subject to any applicable withholding. Under the Internal Revenue Code, interest, dividends and other reportable payments may, under certain circumstances, be subject to "backup withholding" then in effect. Backup withholding generally applies if the holder (a) fails to furnish his or her social security number or other taxpayer identification number ("**TIN**"), (b) furnishes an incorrect TIN, (c) fails properly to report interest or dividends, or (d) under certain circumstances, fails to provide a certified statement, signed under penalty of perjury, that the TIN provided is his correct number and that he is not subject to backup withholding. Backup withholding is not an additional tax but merely an advance payment, which may be refunded to the extent it results in an overpayment of tax if an appropriate refund claim is filed with the IRS. Certain persons are exempt from backup withholding, including, in certain circumstances, corporations and financial institutions.

Events subsequent to the date of this Disclosure Statement, such as the enactment of additional tax legislation, could also change the federal income tax consequences of the Plan and the transactions contemplated there under.

## 1. Holders of Claims

Generally, a holder of a Claim should in most, but not all circumstances, recognize gain or loss equal to the difference between the "amount realized" by such holder in exchange for its Claim and such holder's adjusted tax basis in the Claim. The "amount realized" is equal to the sum of the cash and the fair market value of any other consideration received under a plan of reorganization in respect of a holder's Claim. The tax basis of a holder in a Claim will generally be equal to the holder's cost therefore. To the extent applicable, the character of any recognized gain or loss (e.g., ordinary income, or short-term or long-term capital gain or loss) will depend upon the status of the holder, the nature of the Claim in the holder's hands, the purpose and circumstances of its acquisition, the holder's holding period of the Claim, and the extent to which the holder previously claimed a deduction for the worthlessness of all or a portion of the Claim. Generally, if the Claim is a capital asset in the holder's hands, any gain or loss realized will generally be characterized as

capital gain or loss, and will constitute long-term capital gain or loss if the holder has held such Claim for more than one year.

A Holder who received Cash (or potentially other consideration) in satisfaction of its Claims may recognize ordinary income or loss to the extent that any portion of such consideration is characterized as accrued interest. A Holder who did not previously include in income accrued but unpaid interest attributable to its Claim, and who receives a distribution on account of its Claim pursuant to the Plan, will be treated as having received interest income to the extent that any consideration received is characterized for United States federal income tax purposes as interest, regardless of whether such Holder realizes an overall gain or loss as a result of surrendering its Claim. A Holder who previously included in its income accrued but unpaid interest attributable to its Claim should recognize an ordinary loss to the extent that such accrued but unpaid interest is not satisfied, regardless of whether such Holder realizes an overall gain or loss as a result of the distribution it may receive under the Plan on account of its Claim.

**U.S. HOLDERS SHOULD CONSULT THEIR TAX ADVISORS REGARDING THE EXTENT TO WHICH CONSIDERATION RECEIVED UNDER THE PLAN SHOULD BE TREATED AS ATTRIBUTABLE TO UNPAID ACCRUED INTEREST**.

### 2. Non-United States Holders

A Non-U.S. Holder generally will not be subject to United States federal income tax with respect to property (including money) received in exchange for such Claim pursuant to the Plan, unless (i) such Holder is engaged in a trade or business in the United States to which income, gain or loss from the exchange is "effectively connected" for United States federal income tax purposes, or (ii) if such Holder is an individual, such Holder is present in the United States for 183 days or more during the taxable year of the exchange and certain other requirements are met.

### 3. Holders of Interests in the Reorganized Debtor

The Plan has no impact on the U.S. federal income tax liability of the Holders of Interests in the Reorganized Debtor.

### ARTICLE XX.

### ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

If the Plan is not confirmed and consummated, the Debtors' alternatives include (i) the liquidation of the Debtors under chapter 7 of the Bankruptcy Code and (ii) the preparation and presentation of an alternative plan or plans of reorganization.

### A. Liquidation Under Chapter 7

If no chapter 11 plan can be confirmed, the Chapter 11 Cases may be converted to cases under chapter 7 of the Bankruptcy Code. In such event, a trustee would be elected or appointed to liquidate the assets of the Debtors. A discussion of the effect that a chapter 7 liquidation would have on recoveries of Holders of Claims and Interests is set forth in <u>Article XVII.B.2</u> titled "Confirmation Standards," of this Disclosure Statement. The Debtors believe that liquidation

under chapter 7 would result in, among other things:  (1) smaller distributions being made to creditors than those provided for in the Plan, due to, among other things, the lack of a Plan Sponsorship Contribution; and (2) additional expenses and claims, some of which would be entitled to priority, that would be generated during the liquidation.  See the Debtors' Liquidation Analysis, attached to this Disclosure Statement as **Exhibit D**.

### B.  Alternative Plan

If the Plan is not confirmed, the Debtors or, assuming exclusivity is terminated or lapses, any other party in interest may attempt to formulate a different plan of reorganization or liquidation.  Such a plan could involve either a reorganization and continuation of the Debtors' business or an orderly liquidation of the Debtors' assets.  The Debtors have concluded that the Plan represents the best alternative to protect the interests of creditors and other parties in interest.

## ARTICLE XXI.

## CONCLUSION AND RECOMMENDATION

The Debtors believe that confirmation and implementation of the Plan is preferable to any of the alternatives described above because it will provide the greatest recoveries to Holders of Claims and Interests and urge all Holders of Claims and Interests to vote to accept the Plan.

Dated: December 11, 2019
     Wilmington, Delaware

**CHIPMAN BROWN CICERO & COLE, LLP**

*/s/ William E. Chipman, Jr.*
William E. Chipman, Jr. (No. 3818)
Mark L. Desgrosseilliers (No. 4083)
Mark D. Olivere (No. 4291)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Telephone:    (302) 295-0191
Facsimile:    (302) 295-0199
Email:    chipman@chipmanbrown.com
    desgross@chipmanbrown.com
    olivere@chipmanbrown.com

*Proposed Counsel to the Debtors and Debtors-In-Possession*

# EXHIBIT A

**(Plan)**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| JUNO USA, LP, *et al.*,[1] | Case No. 19-12484 (MFW) |
| Debtors. | (Jointly Administered) |

## DEBTORS' JOINT PLAN OF REORGANIZATION AND LIQUIDATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

**CHIPMAN BROWN CICERO & COLE, LLP**
William E. Chipman, Jr. (No. 3818)
Mark L. Desgrosseilliers (No. 4083)
Mark D. Olivere (No. 4291)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Telephone:      (302) 295-0191
Facsimile:      (302) 295-0199
Email:           chipman@chipmanbrown.com
                    desgross@chipmanbrown.com
                    olivere@chipmanbrown.com

*Proposed Counsel to the Debtors and*
*Debtors-In-Possession*

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number, are: Juno USA, LP (5772); Sabo One LLC (2759); Juno Oregon LLC (4462); Vulcan Cars LLC (4733); GT Forge, Inc. (1093); and Omaha LLC (8656).  The mailing address for the Debtors listed above is 74 West Long Lake Road, Suite 205, Bloomfield Hills, Michigan 48304.

# TABLE OF CONTENTS

**Page**

**Article I.**  **DEFINED TERMS AND RULES OF INTERPRETATION** ........................... 1

    A.   Defined Terms ................................................................................. 1

    B.   Rules of Interpretation .................................................................. 12

    C.   Computation of Time .................................................................... 13

    D.   Controlling Document .................................................................. 13

**Article II.**  **ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS, UNITED STATES TRUSTEE STATUTORY FEES AND OTHER PRIORITY CLAIMS** ..................................................................................... 13

    A.   Administrative Claims ................................................................. 13

        1.   General Administrative Claims ......................................... 13

        2.   Accrued Professional Compensation Claims ..................... 14

    B.   Priority Tax Claims ...................................................................... 15

    C.   DIP Facility Claims ..................................................................... 15

    D.   United States Trustee Statutory Fees ........................................... 15

    E.   Other Priority Claims ................................................................... 15

**Article III.**  **CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS** ........................................................................ 16

    A.   Summary ...................................................................................... 16

    B.   Classification and Treatment of Claims and Interests .................. 17

        1.   Class 1: Other Secured Claims .......................................... 17

        2.   Class 2:  Secured Guaranty Claims .................................... 18

        3.   Class 3:  General Unsecured Claims .................................. 18

        4.   Class 4:  Subordinated Claims ........................................... 18

        5.   Class 5:  Intercompany Claims .......................................... 19

        6.   Class 6:  GT Forge Interests .............................................. 19

        7.   Class 7:  Liquidating Debtor Interests ............................... 19

    C.   Special Provision Governing Unimpaired Claims ........................ 20

    D.   Voting Classes; Presumed Acceptance by Non-Voting Classes ... 20

    E.   Controversy Concerning Impairment ........................................... 20

    F.   Confirmation Under Section 1129(a)(10) and Section 1129(b) of the Bankruptcy Code ........................................................................ 20

    G.   Subordinated Claims .................................................................... 20

## TABLE OF CONTENTS
(continued)

|  |  |  | Page |
|---|---|---|---|
| | H. | Elimination of Vacant Classes | 20 |
| **Article IV.** | | **MEANS FOR IMPLEMENTATION OF THE PLAN** | **21** |
| | A. | Substantive Consolidation | 21 |
| | B. | Waiver of Gett Claims | 21 |
| | C. | Continued Corporate Existence of the Reorganized Debtor | 22 |
| | D. | Corporate Action and Dissolution of the Liquidating Debtors | 22 |
| | E. | Plan Sponsor Contribution | 23 |
| | F. | Establishment of Settlement Trust and Vesting of Settlement Trust Assets | 23 |
| | G. | Purpose of the Settlement Trust | 24 |
| | H. | Settlement Trustee | 24 |
| | | 1. Generally | 24 |
| | | 2. Responsibilities and Authority of the Settlement Trustee | 24 |
| | | 3. Powers of the Settlement Trustee | 25 |
| | | 4. Compensation of the Settlement Trustee and Professionals | 25 |
| | | 5. Limitations on the Settlement Trustee | 26 |
| | I. | U.S Federal Income Tax Treatment of Settlement Trust | 26 |
| | J. | U.S. Federal Income Tax Treatment of Disputed Ownership Funds | 27 |
| | K. | Retained Causes of Action of the Debtors | 27 |
| | L. | Payment of Plan Expenses | 28 |
| | M. | Dissolution of Official Committees | 28 |
| | N. | Final Decree | 28 |
| **Article V.** | | **TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** | **28** |
| | A. | Assumption of Executory Contracts and Unexpired Leases | 28 |
| | B. | Cure of Defaults; Assignment of Executory Contracts and Unexpired Leases | 29 |
| | C. | Claims on Account of the Rejection of Executory Contracts or Unexpired Leases | 30 |
| | D. | Extension of Time to Assume or Reject | 31 |
| | E. | Modifications, Amendments, Supplements, Restatements, or Other Agreements | 31 |
| | F. | Reservation of Rights | 31 |

# TABLE OF CONTENTS
(continued)

Page

G.    Nonoccurrence of Effective Date ................................................................. 31

**Article VI.    PROVISIONS GOVERNING DISTRIBUTIONS ............................................ 31**

A.    Timing and Calculation of Amounts to Be Distributed ................................ 31

B.    Delivery of Distributions ........................................................................... 32

    1.    Delivery of Distributions by the Distribution Agent ............................. 32

    2.    Minimum Distributions .................................................................... 32

    3.    Distribution Record Date ................................................................. 32

    4.    Delivery of Distributions in General................................................. 33

    5.    Undeliverable Distributions ............................................................. 33

C.    Manner of Payment................................................................................... 33

D.    No Postpetition or Default Interest on Claims ............................................ 33

E.    Setoffs and Recoupments .......................................................................... 34

F.    Rights and Powers of Distribution Agent ................................................... 34

G.    Payment of Fees and Expenses .................................................................. 34

H.    Compliance with Tax Requirements........................................................... 34

**Article VII.    PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS ............................................. 35**

A.    Allowance of Claims and Interests ............................................................ 35

B.    Claims Administration Responsibilities ..................................................... 35

C.    Prosecution of Objections to Claims and Interests ..................................... 36

D.    Estimation of Claims and Interests ............................................................ 36

E.    Deadline to File Objections to Claims ....................................................... 36

F.    Adjustment to Claims Without Objection................................................... 36

G.    Disallowance of Certain Claims ................................................................ 37

H.    No Distributions Pending Allowance ......................................................... 37

I.    Distributions After Allowance .................................................................. 37

J.    No Interest................................................................................................ 37

**Article VIII.    CONDITIONS PRECEDENT TO THE EFFECTIVE DATE..................... 37**

**Article IX.    RELEASE, DISCHARGE, INJUNCTION AND RELATED PROVISIONS........................................................................................... 38**

A.    General .................................................................................................... 38

# TABLE OF CONTENTS
(continued)

| | | | Page |
|---|---|---|---|
| B. | | Release of Claims and Causes of Action | 39 |
| | 1. | Release by the Debtors and Their Estates | 39 |
| | 2. | Release by Third Parties | 40 |
| C. | | Waiver of Statutory Limitations on Releases | 41 |
| D. | | Discharge of GT Forge | 42 |
| E. | | Exculpation | 42 |
| F. | | Preservation of Causes of Action | 43 |
| | 1. | Maintenance of Causes of Action | 43 |
| | 2. | Preservation of All Causes of Action Not Expressly Settled or Released | 43 |
| G. | | Injunction | 44 |
| H. | | Binding Nature of the Plan | 44 |
| I. | | Protection Against Discriminatory Treatment | 45 |
| J. | | Integral Part of Plan | 45 |
| K. | | Preservation of Privilege and Defenses | 45 |
| **Article X.** | | **RETENTION OF JURISDICTION** | **46** |
| **Article XI.** | | **MODIFICATION, REVOCATION, OR WITHDRAWAL OF PLAN** | **47** |
| A. | | Modification of Plan | 47 |
| B. | | Effect of Confirmation on Modifications | 48 |
| C. | | Revocation of Plan | 48 |
| **Article XII.** | | **MISCELLANEOUS PROVISIONS** | **48** |
| A. | | Immediate Binding Effect | 48 |
| B. | | Additional Documents | 48 |
| C. | | Substantial Consummation | 49 |
| D. | | Payment of Statutory Fees; Post-Effective Date Fees and Expenses | 49 |
| E. | | Conflicts | 49 |
| F. | | Successors and Assigns | 49 |
| G. | | Reservation of Rights | 50 |
| H. | | Further Assurances | 50 |
| I. | | Severability | 50 |
| J. | | Service of Documents | 51 |

# TABLE OF CONTENTS
(continued)

| | | Page |
|---|---|---|
| K. | Governing Law | 51 |
| L. | Tax Reporting and Compliance | 51 |
| M. | Schedules | 52 |
| N. | No Strict Construction | 52 |
| O. | Entire Agreement | 52 |
| P. | Closing of Chapter 11 Cases | 52 |
| Q. | 2002 Notice Parties | 52 |
| R. | Section 1125(e) Good Faith Compliance | 52 |

**DEBTORS' JOINT PLAN OF REORGANIZATION AND LIQUIDATION
UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

Juno USA, LP, and certain of its Affiliates and subsidiaries in the above-captioned Chapter 11 Cases, as debtors and debtors in possession (each a "**Debtor**" and collectively, the "**Debtors**") hereby propose this joint plan of reorganization and liquidation for the resolution of outstanding claims against and equity interests in the Debtors.  Capitalized terms used in the Plan and not otherwise defined have the meanings ascribed to such terms in <u>Article I.A</u> of the Plan.

Reference is made to the Disclosure Statement, filed contemporaneously with the Plan, for a discussion of the Debtors' history, businesses, historical financial information, valuation, liquidation analysis, projections, and operations as well as a summary and analysis of the Plan and certain related matters, including distributions to be made under the Plan.

**ALL HOLDERS OF CLAIMS AND INTERESTS ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY.**

## ARTICLE I.

## DEFINED TERMS AND RULES OF INTERPRETATION

*A.    Defined Terms*

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

"*Accrued Professional Compensation Claim*" means, at any date, a Claim for all accrued fees and reimbursable expenses for services rendered by a Retained Professional in the Chapter 11 Cases through and including such date, to the extent that such fees and expenses have not been previously paid whether under a retention order with respect to such Retained Professional or otherwise.  To the extent that there is a Final Order denying some or all of a Retained Professional's fees or expenses, such denied amounts shall no longer be considered an Accrued Professional Compensation Claim.

"*Administrative Claim*" means a Claim for costs and expenses of administration of the Chapter 11 Cases that are Allowed under sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including, without limitation:  (a) any actual and necessary costs and expenses incurred on or after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors; (b) Accrued Professional Compensation Claims and any other compensation for legal, financial, advisory, accounting, and other services and reimbursement of expenses Allowed by the Bankruptcy Court under sections 328, 330, 331 or 503(b) of the Bankruptcy Code to the extent incurred on or after the Petition Date and through the Effective Date; and (c) all fees and charges assessed against the Estates under section 1930, chapter 123, of title 28, United States Code.

"*Affiliate*" means, with respect to any Entity, an "affiliate" as defined in section 101(2) of the Bankruptcy Code as if such entity were a debtor.

"*Allowed*" means, with respect to any Claim, an Allowed Claim in a particular Class or category specified.  Any reference herein to the allowance of a particular Allowed Claim includes both the secured and unsecured portions of such Claim (unless the context indicates to the contrary).

"*Allowed _____ Claim*" means an Allowed Claim of the type described.

"*Allowed Claim*" means any Claim that is not a Disputed Claim or a Disallowed Claim and (a) for which a Proof of Claim has been timely Filed by the applicable Bar Date and as to which no objection to allowance thereof has been timely interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or order of the Bankruptcy Court; (b) that has been listed by the Debtors in their Schedules as liquidated in a specified amount and is not disputed or contingent and for which no contrary Proof of Claim has been timely Filed; or (c) that is expressly Allowed under the terms of the Plan or a Final Order of the Bankruptcy Court. The term "Allowed Claim" shall not, for purposes of computing distributions under the Plan, include interest, fees (including attorneys' fees), costs or charges on such Claim from and after the Petition Date, except as provided in sections 506(b) or 511 of the Bankruptcy Code or as otherwise expressly set forth in the Plan or a Final Order of the Bankruptcy Court.

"*Avoidance Actions*" means any and all avoidance, recovery, subordination or similar actions or remedies that may be brought by and on behalf of the Debtors or their Estates under the Bankruptcy Code or applicable non-bankruptcy law, including, without limitation, actions or remedies arising under chapter 5 of the Bankruptcy Code.

"*Ballots*" means the ballots accompanying the Disclosure Statement, in the form approved by the Disclosure Statement Order.

"*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended from time to time and as applicable to the Chapter 11 Cases.

"*Bankruptcy Court*" means the United States Bankruptcy Court for the District of Delaware, or any other court having original jurisdiction over the Chapter 11 Cases.

"*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure and the Local Rules, in each case as amended from time to time and as applicable to the Chapter 11 Cases.

"*Bar Date*" means the last date for filing a Proof of Claim in these Chapter 11 Cases, as provided in the Bar Date Order.

"*Bar Date Order*" means that certain [*Order Establishing Bar Dates, Approving Form and Manner of Notice, and Approving Procedures for Filing Proofs of Claim*] entered by the Bankruptcy Court on [●] as amended, amended and restated, supplemented or otherwise modified from time to time.

"*Budget*" means the budget in form and substance acceptable to the Plan Sponsor in all respects, as amended or supplemented with the consent of the Plan Sponsor, for the payment of Plan Expenses.

"*Business Day*" means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

"*Cash*" means the legal tender of the United States of America or the equivalent thereof.

"*Causes of Action*" means any claims, causes of action (including Avoidance Actions), demands, rights, actions, suits, obligations, liabilities, cross-claims, counterclaims, offsets, or setoffs of any kind or character whatsoever, in each case whether known or unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, under statute, in contract, in tort, in law, or in equity, or under any other theory of law, federal or state, whether asserted or assertable directly or derivatively in law or equity or otherwise by way of claim, counterclaim, cross-claim, third party action, action for indemnity or contribution or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Cases, including through the Effective Date now owned or hereafter acquired by the Debtors and/or their Estates.

"*Chapter 11 Case(s)*" means (a) when used with reference to a particular Debtor, the case under chapter 11 of the Bankruptcy Code commenced by such Debtor in the Bankruptcy Court, and (b) when used with reference to all Debtors, the jointly administered chapter 11 cases for all of the Debtors.

"*Claim*" is as defined in section 101(5) of the Bankruptcy Code against any Debtor.

"*Claims Register*" means the official register of Claims maintained by the Voting and Claims Agent.

"*Class*" means a category of Holders of Claims or Interests as set forth in Article III hereof under section 1122(a) of the Bankruptcy Code.

"*Collateral*" means any property or interest in property of the Debtors' Estates that is subject to a valid and enforceable Lien to secure a Claim.

"*Confirmation*" means the occurrence of the Confirmation Date, subject to all conditions specified in Article VIII of the Plan having been satisfied or waived.

"*Confirmation Date*" means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court in the Chapter 11 Cases.

"*Confirmation Hearing*" means the hearing held by the Bankruptcy Court under section 1128 of the Bankruptcy Code to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

"*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan under section 1129 of the Bankruptcy Code, including all exhibits, appendices, supplements and related documents.

"*Consummation*" means substantial consummation of the Plan as that term is used in section 1127(b) of the Bankruptcy Code.

"*Creditors' Committee*" means any official committee of unsecured creditors appointed by the United States Trustee in the Chapter 11 Cases under section 1102 of the Bankruptcy Code.

"*Cure Claim Amount*" means the amount payable in Cash to satisfy any default under any Executory Contract or Unexpired Lease, to the extent required by section 365(b)(1) of the Bankruptcy Code or on such other terms as the Bankruptcy Court may order or the parties to such Executory Contract or Unexpired Lease may agree.

"*Debtor Release*" has the meaning set forth in Article IX.B.1 hereof.

"*Debtor Releasing Parties*" has the meaning set forth in Article IX.B.1 hereof.

"*DIP Facility*" means the secured postpetition financing facility provided pursuant to that certain Senior Secured Superpriority Debtor-in-Possession Financing Term Sheet and approved pursuant to the DIP Facility Order, as amended, modified or supplemented from time to time in accordance with the terms of the DIP Facility Documents and the DIP Facility Order.

"*DIP Facility Claim*" means any Claim arising under, or related to, the DIP Facility Documents.

"*DIP Facility Documents*" means, collectively, the DIP Facility and all other agreements, documents and instruments delivered or entered into pursuant thereto or entered into in connection therewith, in each case, as amended supplemented, restated or otherwise modified from time to time.

"*DIP Facility Lender*" means Gett or an affiliate entity thereof.

"*DIP Facility Order*" means the *Final Order Pursuant to §§ 105, 362 and 364, Fed. R. Bankr. P. 2002, 4001, 6003, and 6004 and (i) Authorizing the Debtors to Obtain Postpetition Secured Financing, (ii) Modifying the Automatic Stay, and (iii) Granting Related Relief* [Docket No. ●], dated [●], as may be amended, modified or supplemented from time to time through the Effective Date.

"*Disallowed Claim*" means a Claim, or any portion thereof, that (a) has been disallowed by a Final Order, or (b) (i) is Scheduled at zero, in an unknown amount or as contingent, disputed or unliquidated and (ii) as to which the Bar Date has been established but no Proof of Claim has been timely Filed or deemed timely Filed under applicable law.

"*Disclosure Statement*" means that certain *Disclosure Statement for the Debtors' Joint Plan of Reorganization and Liquidation Under Chapter 11 of the Bankruptcy Code*, dated as of [●], 2019 (as amended, amended and restated, supplemented or otherwise modified from time to time) that was approved by the Disclosure Statement Order.

"*Disclosure Statement Order*" means that certain *Order (I) Approving the Disclosure Statement, (II) Determining Dates, Procedures, and Forms Applicable to Solicitation Process,*

*(III) Establishing Vote Tabulation Procedures, and (IV) Establishing Objection Deadline and Scheduling Plan Confirmation Hearing*, entered by the Bankruptcy Court on [●], as such order may be amended, supplemented, or modified from time to time.

"*Disputed Claim*" means any Claim, or any portion thereof, that is not a Disallowed Claim, that has not been Allowed under the Plan or a Final Order of the Bankruptcy Court, and

(a)     if a Proof of Claim has been timely Filed by the applicable Bar Date, such Claim is designated on such Proof of Claim as unliquidated, contingent or disputed, or in zero or unknown amount, and has not been resolved by written agreement of the parties or a Final Order of the Bankruptcy Court; or

(b)     if either (1) a Proof of Claim has been timely Filed by the applicable Bar Date or (2) a Claim has been listed on the Schedules as other than unliquidated, contingent or disputed, or in zero or unknown amount, a Claim (i) as to which any Debtor has timely Filed an objection or request for estimation in accordance with the Plan, the Bankruptcy Code, the Bankruptcy Rules, and any orders of the Bankruptcy Court or for which such time period to object or File a request for estimation has not yet expired as of the applicable date of determination or (ii) which is otherwise disputed by any Debtor in accordance with applicable law, in each case which objection, request for estimation or dispute has not been withdrawn, overruled or determined by a Final Order; or

(c)     that is the subject of an objection or request for estimation Filed in the Bankruptcy Court and which such objection or request for estimation has not been withdrawn, resolved or overruled by Final Order of the Bankruptcy Court; or

(d)     that is otherwise disputed by any Debtor in accordance with the provisions of the Plan or applicable law, which dispute has not been withdrawn, resolved or overruled by Final Order.

"*Distributable Assets*" means, except as otherwise noted below, any and all real or personal property of the Debtors of any nature, including, without limitation, any real estate, buildings, structures, improvements, privileges, rights, easements, leases, subleases, licenses, goods, materials, supplies, furniture, fixtures, equipment, work in process, inventory, accounts, chattel paper, Cash, deposit accounts, reserves, deposits, contractual rights, intellectual property rights, Claims, Retained Rights of Action, books and records, any other general intangibles of the Debtors, and any and all proceeds of the foregoing, as the case may be, of any nature whatsoever (whether liquidated or unliquidated, matured or unmatured, or fixed or contingent), including, without limitation, property of the Estates within the scope of section 541 of the Bankruptcy Code. Notwithstanding the foregoing, the term "Distributable Assets" does not include any property that has been abandoned by the Estates pursuant to a Final Order of the Bankruptcy Court.

"*Distribution Agent*" means the Debtors or any Entity or Entities chosen by the Debtors, which Entities may include a transfer agent, the Settlement Trustee or the Voting and Claims Agent, to make or facilitate distributions required by the Plan.

"*Distribution Record Date*" means the date for determining which Holders of Claims and Interests) are eligible to receive distributions under the Plan, which date shall be the Effective Date.

"*Effective Date*" means the first Business Day selected by the Debtors on which (a) the conditions specified in <u>Article VIII</u> of the Plan have been satisfied or waived in accordance with the terms of <u>Article VIII</u>, and (b) no stay of the Confirmation Order is in effect.

"*Entity*" is as defined in section 101(15) of the Bankruptcy Code.

"*Equity Security*" is as defined in section 101(16) of the Bankruptcy Code.

"*Estate(s)*" means, individually, the estate of each of the Debtors and, collectively, the estates of each of the Debtors created under section 541 of the Bankruptcy Code.

"*Exculpated Parties*" means, collectively, and in each case in their capacity as such:  (i) the Debtors and the Reorganized Debtor; (ii) the Creditors' Committee, if any, and the members thereof, solely in such capacity; (iii) the Plan Sponsor; and (iv) with respect to each of the foregoing Entities, each of their respective Related Persons that served in such capacity.

"*Exculpation*" means the exculpation provision set forth in <u>Article IX.E</u> hereof.

"*Executory Contract*" means all contracts and leases to which any Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

"*Exhibit*" means an exhibit annexed to either the Plan or as an appendix to the Disclosure Statement (as such exhibits are amended, modified or otherwise supplemented from time to time).

"*Face Amount*" means (a) when used in reference to a Disputed Claim, the full stated amount of the Claim asserted by the applicable Holder in any Proof of Claim timely Filed with the Bankruptcy Court and (b) when used in reference to an Allowed Claim, the Allowed amount of such Claim.

"*File*" or "*Filed*" or "*Filing*" means file, filed or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

"*Final Order*" means an order or judgment of the Bankruptcy Court, or court of competent jurisdiction with respect to the subject matter, as entered on the docket in any Chapter 11 Case or the docket of any court of competent jurisdiction, and as to which the time to appeal, or seek certiorari or move for a new trial, reargument, or rehearing has expired and no appeal or petition for certiorari or other proceedings for a new trial, reargument, or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be timely Filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument, or rehearing shall have been denied, resulted in no stay pending appeal of such order, or has otherwise been dismissed with prejudice; *provided*, *however*, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not preclude such order from being a Final Order.

"*General Administrative Claim*" means any Administrative Claim, other than an Accrued Professional Compensation Claim and Claims for fees and expenses under 28 U.S.C § 1930(a).

"*General Unsecured Claim*" means, with respect to any Debtor, a Claim against such Debtor that is not (a) a Secured Claim, (b) a Claim entitled to priority under the Bankruptcy Code or any Final Order of the Bankruptcy Court, (c) a Subordinated Claim, or (d) an Intercompany Claim.

"*Gett*" means GT Gettaxi Limited.

"*Governmental Unit*" is as defined in section 101(27) of the Bankruptcy Code.

"*GT Forge*" means GT Forge, Inc.

"*GT Forge Interests*" means all interests in GT Forge immediately prior to the Effective Date.

"*Holder*" means an Entity holding a Claim or Interest.

"*Impaired*" means, when used in reference to a Claim or Interest, a Claim or Interest that is "impaired" within the meaning of section 1124 of the Bankruptcy Code.

"*Initial Distribution Date*" means the date that is as soon as practicable after the Effective Date, but no later than thirty (30) days after the Effective Date, when, subject to the "Treatment" sections in <u>Article III</u> hereof, distributions under the Plan shall commence to Holders of Allowed Claims.

"*Intercompany Claim*" means any Claim against a Debtor held by another Debtor or by a non-Debtor subsidiary of a Debtor.

"*Interest*" means, in respect of any Debtor or the Reorganized Debtor, (i) any Equity Security, including all shares or similar securities, whether or not transferable or denominated "stock" and whether issued, unissued, authorized or outstanding; (ii) any warrant, option, or contractual right to purchase, sell, subscribe or acquire such Equity Securities at any time and all rights arising with respect thereto; and (iii) any similar interest in a Debtor or the Reorganized Debtor.

"*Juno*" means Juno USA, LP.

"*Juno Oregon*" means Juno Oregon LLC.

"*Lien*" means a "lien" as defined in section 101(37) of the Bankruptcy Code, and, with respect to any property or asset, includes, without limitation, any mortgage, deed of trust, lien, pledge, charge, security interest or other encumbrance of any kind, or any other type of preferential arrangement that has the practical effect of creating a security interest, in respect of such property or asset.

"*Liquidating Debtors*" means each of (i) Juno Oregon, (ii) Juno, (iii) Omaha, (iv) Sabo One, and (v) Vulcan.

"*Liquidating Debtor Interests*" means all interests in the Liquidating Debtors immediately prior to the Effective Date.

"*Local Rules*" means the Local Rules of Bankruptcy Practice and Procedure of the Bankruptcy Court.

"*Non-Debtor Releasing Parties*" means, collectively, the following, in each case in their capacity as such unless noted otherwise: (i) the Holders of Unimpaired Claims; (ii) each Holder of an Impaired Claim that (a) votes to accept the Plan or (b) either (1) abstains from voting or (2) votes to reject the Plan and, in the case of either (b)(1) or (2), does not opt out of the voluntary release contained in Article IX.B.2 of the Plan by checking the opt out box on the Ballot, and returning it in accordance with the instructions set forth thereon, indicating that they opt not to grant the releases provided in the Plan; (iii) each member of the Creditors' Committee, if any, and their respective Related Persons.

"*Notice*" has the meaning set forth at Article XII.J.

"*Objection Deadline*" means, with respect to any Claim, the latest of (a) one hundred eighty (180) days after the Effective Date; or (b) such other date as may be specifically fixed by Final Order of the Bankruptcy Court for objecting to Claims.

"*Omaha*" means Omaha LLC.

"*Other Priority Claim*" means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Claim.

"*Other Secured Claim*" means any Secured Claim other than an Administrative Claim, a Secured Tax Claim or a Secured Guaranty Claim.

"*Person*" means a "person" as defined in section 101(41) of the Bankruptcy Code and also includes any natural person, corporation, general or limited partnership, limited liability company, firm, trust, association, government, governmental agency or other Entity, whether acting in an individual, fiduciary or other capacity.

"*Petition Date*" means November 19, 2019, the date on which the Debtors commenced the Chapter 11 Cases.

"*Plan*" means this *Debtors' Joint Plan of Reorganization and Liquidation Under Chapter 11 of the Bankruptcy Code*, dated as [●], including the Exhibits and Plan Schedules and all supplements, appendices, and schedules thereto, either in its present form or as the same may be amended, supplemented, or modified from time to time.

"*Plan Expenses*" means the expenses incurred or payable by the Settlement Trust or the Reorganized Debtor following the Effective Date (including the reasonable fees and costs of

-8-

attorneys and other professionals) in an amount consistent with the Budget relating to implementation of the Plan, for the purpose of (i) prosecuting the Retained Causes of Action, (ii) resolving Administrative Claims and effectuating distributions to Holders of Allowed Claims or Interests under the Plan, (iii) otherwise implementing the Plan and closing the Chapter 11 Cases, or (iv) undertaking any other matter relating to the Plan.

"*Plan Schedule*" means a schedule annexed to the Plan or an appendix to the Disclosure Statement (as amended, supplemented or otherwise modified from time to time), which shall be deemed to include any documents Filed as part of the Plan Supplement.

"*Plan Sponsor*" means the Proposed Plan Sponsor or such other successful bidder approved by the Bankruptcy Court.

"*Plan Sponsor Contribution*" means the contribution by the Plan Sponsor to the Settlement Trust, in Cash, of $[●].

"*Plan Supplement*" means, collectively, the compilation of documents, forms of documents and/or term sheets relevant to the implementation of the Plan, and all exhibits, attachments, schedules, agreements, documents and instruments referred to therein, ancillary or otherwise, including, without limitation, the Exhibits and Plan Schedules, to be Filed with the Bankruptcy Court at least seven (7) days prior to the Confirmation Hearing, all of which are incorporated by reference into, and are an integral part of, the Plan.

"*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

"*Professional Fee Escrow Account*" means an interest-bearing escrow account in an amount equal to the Professional Fee Reserve Amount funded and maintained by the Reorganized Debtor on and after the Effective Date solely for the purpose of paying all Allowed and unpaid fees and expenses of Retained Professionals in the Chapter 11 Cases.

"*Professional Fee Reserve Amount*" means the aggregate Accrued Professional Compensation Claims through the Effective Date as estimated by the Retained Professionals in accordance with Article II.A.2(c) of the Plan.

"*Proof of Claim*" means a proof of Claim Filed against any Debtor in the Chapter 11 Cases.

"*Proposed Plan Sponsor*" means Gett or an affiliate entity thereof.

"*Pro Rata*" means the proportion that (a) the Face Amount of a Claim in a particular Class or Classes (or portions thereof, as applicable) bears to (b) the aggregate Face Amount of all Claims (including Disputed Claims, but excluding Disallowed Claims) in such Class or Classes (or portions thereof, as applicable), unless the Plan provides otherwise.

"*Reinstated*" or "*Reinstatement*" means, with respect to Claims and Interests, that the Claim or Interest shall be rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.

"*Related Persons*" means, with respect to any Person, such Person's predecessors, successors, assigns and present and former Affiliates (whether by operation of law or otherwise) and each of their respective subsidiaries, and each of their respective current and former officers, directors, principals, employees, shareholders, members (including *ex officio* members and managing members), managers, managed accounts or funds, management companies, fund advisors, advisory board members, partners, agents, financial advisors, attorneys, accountants, investment bankers, investment advisors, consultants, representatives, and other professionals, in each case acting in such capacity at any time on or after the Petition Date, and any Person claiming by or through any of them, including such Related Persons' respective heirs, executors, estates, servants, and nominees; *provided*, *however*, that no insurer of any Debtor shall constitute a Related Person of any Debtor or the Reorganized Debtor.

"*Release*" means the release given by the Releasing Parties to the Released Parties as set forth in Article IX.B hereof.

"*Released Party*" and, collectively, the "*Released Parties*" means each of the following, in each case in their capacity as such:  (i) the Debtors; (ii) the Reorganized Debtor; (iii) the Creditors' Committee, if any, and its current and former members; (iv) the Plan Sponsor; and (v) the respective Related Persons of each of the Entities described in each of the foregoing clauses.

"*Releasing Party*" has the meaning set forth in Article IX.B.2 of the Plan.

"*Relevant Books and Records*" means, with respect to each Debtor, the books and records of such Debtor, including without limitation, those books and records with information concerning any General Unsecured Claims and any rights of setoff associated therewith and information concerning Avoidance Actions and any defenses thereto.

"*Reorganized Debtor*" means GT Forge, Inc., as reorganized pursuant to and under the Plan, or any successor thereto by merger, consolidation, or otherwise on or after the Effective Date, including any transferee, assignee, or successor.

"*Restructuring Documents*" means, collectively, the documents and agreements (and the exhibits, schedules, annexes and supplements thereto) necessary to implement, or entered into in connection with, the Plan, which may include, without limitation, the Plan Supplement, the Exhibits, the Plan Schedules and the DIP Facility Documents.

"*Restructuring Transactions*" has the meaning ascribed thereto in Article IV.E of the Plan.

"*Retained Causes of Action*" means all Causes of Action belonging to the Settlement Trust as of the Effective Date, but excluding those Causes of Action specifically released under the Plan.

"*Retained Professional*" and collectively, "Retained Professionals" means any Entity:  (a) employed in the Chapter 11 Cases under a Final Order in accordance with section 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, under sections 327, 328, 329, 330, or 331 of the Bankruptcy Code (other than an ordinary course professional retained under an order of the Bankruptcy Court); or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court under section 503(b)(4) of the Bankruptcy Code.

"*Sabo One*" means Sabo One LLC.

"*Scheduled*" means with respect to any Claim, the status and amount, if any, of such Claim as set forth in the Schedules.

"*Schedules*" means the schedules of assets and liabilities, schedules of Executory Contracts*,* and statement of financial affairs Filed by the Debtors under section 521 of the Bankruptcy Code and the applicable Bankruptcy Rules, as such Schedules may be amended, modified, or supplemented from time to time.

"*Secured Claim*" means a Claim that is secured by a Lien on property in which any of the Debtors' Estates have an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Holder's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined under section 506(a) of the Bankruptcy Code or, in the case of setoff, under section 553 of the Bankruptcy Code.

"*Secured Guaranty Claim*" means a Claim arising under or related to a Debtor's guaranty obligation pursuant to the secured financing facility by and between, among others, Gett, as borrower, and Sberbank Investments LLC, as security agent.

"*Secured Tax Claim*" means any Secured Claim which, absent its secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code.

"*Securities Act*" means the Securities Act of 1933, 15 U.S.C. §§ 77c-77aa, as now in effect or hereafter amended, and any similar federal, state or local law.

"*Settlement Trust*" means the liquidating trust or trusts that may be created under the Plan in respect of the Debtors and governed by the Settlement Trust Agreement.

"*Settlement Trust Agreement*" means the liquidating trust agreement or agreements governing the Settlement Trust that shall be filed as part of the Plan Supplement.

"*Settlement Trust Amount*" has the meaning set forth in Article IV.E of the Plan.

"*Settlement Trust Assets*" has the meaning set forth in Article IV.E of the Plan.

"*Settlement Trustee*" means the person selected to fill the role of trustee of the Settlement Trust in accordance with the Settlement Trust Agreement.

"*Subordinated Claim*" means a Claim that has been subordinated pursuant to section 510(b) of the Bankruptcy Code.

"*Third Party Release*" has the meaning set forth in Article IX.B.2 of the Plan.

"*Trust Claims Reserve*" has the meaning set forth in Article IV.I of the Plan.

"*Unexpired Lease*" means a lease to which any Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

"*Unimpaired*" means, with respect to a Class of Claims or Interests, a Claim or an Interest that is "unimpaired" within the meaning of section 1124 of the Bankruptcy Code.

"*United States Trustee*" means the office of the United States Trustee for Region 3.

"*Voting and Claims Agent*" means Omni Agent Solutions, Inc., in its capacity as solicitation, notice, claims and balloting agent for the Debtors.

"*Voting Classes*" means Classes 2 and 3.

"*Vulcan*" means Vulcan Cars LLC.

B.    *Rules of Interpretation*

1.    For purposes herein:  (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (b) unless otherwise specified, any reference herein to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) unless otherwise specified, any reference herein to an existing document or exhibit having been Filed or to be Filed shall mean that document or exhibit, as it may thereafter be amended, modified, or supplemented; (d) unless otherwise specified, all references herein to "Articles" are references to Articles of the Plan; (e) the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) the words "include" and "including" and variations thereof shall not be deemed to be terms of limitation and shall be deemed to be followed by the words "without limitation"; (g) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws; (h) references to "Proofs of Claim," "Holders of Claims," "Disputed Claims," and the like shall include "Proofs of Interest," "Holders of Interests," "Disputed Interests," and the like, as applicable; (i) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (j) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (k) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; and (l) any effectuating provisions may be interpreted by the Reorganized Debtor in such a manner that is consistent with the overall purpose and intent of the Plan without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity, and such interpretation shall control.

2.     All references in the Plan to monetary figures refer to currency of the United States of America, unless otherwise expressly provided.

3.     Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or to the Reorganized Debtor mean the Debtors and the Reorganized Debtor, as applicable, to the extent the context requires.

*C.*     *Computation of Time*

Unless otherwise specifically stated in the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed in the Plan. If the date on which a transaction may occur under the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day. Any references to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter unless otherwise specified herein.

*D.*     *Controlling Document*

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects. In the event of an inconsistency between the Plan and the Plan Supplement, the Plan shall control. In the event of an inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall control.

## ARTICLE II.

## ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS, UNITED STATES TRUSTEE STATUTORY FEES AND OTHER PRIORITY CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Priority Tax Claims, United States Trustee statutory fees, and Other Priority Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in <u>Article III</u> of the Plan.

*A.*     *Administrative Claims*

1.     <u>General Administrative Claims</u>

Subject to the provisions of sections 328, 330(a), and 331 of the Bankruptcy Code and except to the extent that a Holder of an Allowed General Administrative Claim and the applicable Debtor before the Effective Date or the Reorganized Debtor after the Effective Date, the Plan Sponsor, and DIP Facility Lender have agreed in writing to such other less favorable treatment, each Holder of an Allowed General Administrative Claim will be paid the full unpaid amount of such Allowed General Administrative Claim in Cash: (a) if such Allowed General Administrative Claim is based on liabilities that the Debtors incurred in the ordinary course of business after the Petition Date, in accordance with the terms and conditions of the particular transaction giving rise to such Allowed General Administrative Claim and without any further action by any Holder of such Allowed General Administrative Claim; (b) if such Allowed General Administrative Claim is due, on the Effective Date, or, if such Allowed General Administrative Claim is not due as of

the Effective Date, on the date that such Allowed General Administrative Claim becomes due or as soon as reasonably practicable thereafter; (c) if a General Administrative Claim is not Allowed as of the Effective Date, on the date that is no later than sixty (60) days after the date on which an order allowing such General Administrative Claim becomes a Final Order of the Bankruptcy Court or as soon as reasonably practicable thereafter; or (d) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court.

       2.    <u>Accrued Professional Compensation Claims</u>

       (a)    Final Fee Applications

All final requests for Accrued Professional Compensation Claims shall be Filed no later than forty-five (45) days after the Effective Date. The amount of Accrued Professional Compensation Claims owed to the Retained Professionals shall be paid in Cash to such Retained Professionals from funds held in the Professional Fee Escrow Account after such Claims are Allowed by a Final Order. To the extent that funds held in the Professional Fee Escrow Account are unable to satisfy the amount of Accrued Professional Compensation Claims owed to the Retained Professionals, such Retained Professionals shall have an Allowed Administrative Claim for any such deficiency, which shall be satisfied in accordance with <u>Article II.A.1</u> of the Plan. After all Allowed Accrued Professional Compensation Claims have been paid in full, any excess amounts remaining in the Professional Fee Escrow Account shall be returned to the Reorganized Debtor.

       (b)    Professional Fee Escrow Account

On the Effective Date, the Debtors or the Reorganized Debtor, as applicable, shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Reserve Amount. The Professional Fee Escrow Account shall be maintained in trust solely for the Retained Professionals. Such funds shall not be considered property of the Estates of the Debtors or the Reorganized Debtor.

       (c)    Professional Fee Reserve Amount

To receive payment for unbilled fees and expenses incurred through the Effective Date, the Retained Professionals shall estimate in good faith their Accrued Professional Compensation Claims (taking into account any retainers) prior to and as of the Effective Date and shall deliver such estimate to the Debtors at least three (3) calendar days prior to the Effective Date; provided that such estimate shall not be considered a limitation with respect to the fees and expenses of such Retained Professional. If a Retained Professional does not provide such estimate, the Reorganized Debtor may estimate the unbilled fees and expenses of such Retained Professional; provided that such estimate shall not be considered an admission or limitation with respect to the fees and expenses of such Retained Professional. The total amount so estimated as of the Effective Date by the Retained Professionals or the Debtors, as applicable, shall comprise the Professional Fee Reserve Amount.

(d)     Post-Effective Date Fees and Expenses

Upon the Effective Date, any requirement that Retained Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate.  Each Debtor or Reorganized Debtor, as applicable, may employ and pay any fees and expenses of any professional, including any Retained Professional, in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court, including with respect to any transaction, reorganization, or success fees payable by virtue of the Consummation of the Plan.

(e)     Substantial Contribution Compensation and Expenses

Except as otherwise specifically provided in the Plan, any Entity that requests compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases under sections 503(b)(3), (4), and (5) of the Bankruptcy Code must File an application and serve such application on counsel for the Debtors or Reorganized Debtor, as applicable, and counsel for the Creditors' Committee, if any, as required by the Bankruptcy Court, the Bankruptcy Code, and the Bankruptcy Rules on or before ten (10) Business Days after the Confirmation Date.

B.     *Priority Tax Claims*

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in exchange for full and final satisfaction, settlement, release, and discharge of each Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim due and payable on or prior to the Effective Date shall be treated under section 1129(a)(9)(C) of the Bankruptcy Code.  To the extent any Allowed Priority Tax Claim is not due and owing on or before the Effective Date, such Claim shall be paid in full in Cash in accordance with the terms of any agreement between the Debtors and such Holder or as may be due and payable under applicable non-bankruptcy law or in the ordinary course of business.

C.     *DIP Facility Claims*

On the Effective Date, all Claims and other required payments, including, without limitation, all fees, costs and expenses due and owing under the DIP Facility shall be indefeasibly paid in Cash in full to the DIP Facility Lender from the proceeds of the Plan Sponsor Contribution.

D.     *United States Trustee Statutory Fees*

The Debtors and the Reorganized Debtor, as applicable, will pay fees payable under 28 U.S.C § 1930(a), including fees, expenses, and applicable interests payable to the United States Trustee, for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.

E.     *Other Priority Claims*

Subject to Article VIII hereof, on, or as soon as reasonably practicable after (i) the Initial Distribution Date, if such Other Priority Claim is an Allowed Other Priority Claim as of the

Effective Date, or (ii) the date on which such Other Priority Claim becomes an Allowed Other Priority Claim, each Holder of an Allowed Other Priority Claim shall receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Other Priority Claim, at the election of the Debtors or the Distribution Agent, as applicable:  (A) Cash equal to the amount of such Allowed Other Priority Claim; (B) such other less favorable treatment as to which the Plan Sponsor, DIP Facility Lender, and the Holder of such Allowed Other Priority Claim shall have agreed upon in writing; or (C) such other treatment such that it will not be Impaired; *provided*, *however*, that Other Priority Claims incurred by any Debtor in the ordinary course of business may be paid in the ordinary course of business by such Debtor in accordance with the terms and conditions of any agreements relating thereto without further notice to or order of the Bankruptcy Court.

## ARTICLE III.

## CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

*A.    Summary*

The Plan is premised upon the substantive consolidation of the Debtors, as set forth in more detail below, solely for the purposes of voting, determining which Claims have accepted the Plan, Confirmation of the Plan, and the resultant treatment of Claims and Interests and distributions under the terms of the Plan.  Accordingly, the Plan shall serve as a motion for entry of a Bankruptcy Court order approving the substantive consolidation of the Debtors for these limited purposes.  In accordance with section 1123(a)(1) of the Bankruptcy Code, the Debtors have not classified Administrative Claims and Priority Tax Claims, as described in Article II.

The categories of Claims and Interests listed below classify Claims and Interests for all purposes, including voting, Confirmation, and distribution pursuant hereto and under sections 1122 and 1123(a)(1) of the Bankruptcy Code.  The Plan deems a Claim or Interest to be classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class.  A Claim or an Interest is in a particular Class only to the extent that any such Claim or Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

**Summary of Classification and Treatment of Claims and Interests**

| Class | Claim | Status | Voting Rights |
|---|---|---|---|
| 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 2 | Secured Guaranty Claims | Impaired | Entitled to Vote |
| 3 | General Unsecured Claims | Impaired | Entitled to Vote |
| 4 | Subordinated Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 5 | Intercompany Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 6 | GT Forge Interests | Unimpaired or Impaired | Not Entitled to Vote (Deemed to Accept or Reject) |
| 7 | Liquidating Debtor Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

B.   *Classification and Treatment of Claims and Interests*

1.   <u>Class 1: Other Secured Claims</u>

   (a)   *Classification*:  Class 1 consists of Other Secured Claims.

   (b)   *Treatment*:  Except to the extent that a Holder of an Allowed Other Secured Claim agrees to less favorable treatment, in exchange for full and final satisfaction, settlement, release, and discharge of each Other Secured Claim, each Holder of an Allowed Other Secured Claim shall receive payment in full in Cash equal to the amount of such Allowed Other Secured Claim.

   (c)   *Voting*:  Class 1 is Unimpaired, and Holders of Class 1 Other Secured Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Other Secured Claims are not entitled to vote to accept or reject the Plan.

2. <u>Class 2:  Secured Guaranty Claims</u>

(a) *Classification*:  Class 2 consists of Secured Guaranty Claims.

(b) *Treatment*:  Except to the extent that a Holder of an Allowed Secured Guaranty Claim agrees to less favorable treatment, in exchange for full and final satisfaction, settlement, release, and discharge of each Secured Guaranty Claim, each Holder of an Allowed Secured Guaranty Claim shall receive the reinstatement of its guaranty by the Reorganized Debtor, secured only by the assets of the Reorganized Debtor.[2]

(c) *Voting*:  Class 2 is Impaired, and the Holders of Class 2 Secured Guaranty Claims are entitled to vote to accept or reject the Plan.

3. <u>Class 3:  General Unsecured Claims</u>

(a) *Classification*:  Class 3 consists of the General Unsecured Claims.

(b) *Allowance*:  The allowance of all General Unsecured Claims shall be subject to section 502 of the Bankruptcy Code and the objection and resolution process set forth in <u>Article VII</u> hereof.

(c) *Treatment*:  Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to less favorable treatment with the Plan Sponsor, in exchange for full and final satisfaction, settlement, release, and discharge of such Holder's rights with respect to and under such Allowed General Unsecured Claim, on the Effective Date, each Holder of an Allowed General Unsecured Claim shall receive its Pro Rata share of the Settlement Trust Amount.

(d) *Voting*:  Class 3 is Impaired, and the Holders of Class 3 Allowed General Unsecured Claims are entitled to vote to accept or reject the Plan.

4. <u>Class 4:  Subordinated Claims</u>

(a) *Classification*:  Class 4 consists of the Subordinated Claims.

(b) *Treatment*:  On the Effective Date, Holders of Subordinated Claims shall receive no distributions on account of such Claims and such Claims shall be extinguished.

(c) *Voting*:  Class 4 is Impaired.  Because the Holders of Subordinated Claims will not receive any distributions under the Plan, they are therefore conclusively deemed, under section 1126(g) of the Bankruptcy Code, to

---

[2] NTD: Discuss whether it is preferable to enter into new guarantees as opposed to reinstating against the Reorganized Debtor only.

have rejected the Plan and are not entitled to vote to accept or reject the Plan.

5.    Class 5:  Intercompany Claims

    (a)    *Classification*:  Class 5 consists of the Intercompany Claims.

    (b)    *Treatment*:  On the Effective Date, Holders of Intercompany Claims shall receive no distributions on account of such Claims and such Claims shall be extinguished.

    (c)    *Voting*:  Class 5 is Impaired.  Because the Holders of Intercompany Claims will not receive any distributions under the Plan, they are therefore conclusively deemed, under section 1126(g) of the Bankruptcy Code, to have rejected the Plan and are not entitled to vote to accept or reject the Plan.

6.    Class 6:  GT Forge Interests

    (a)    *Classification*:  Class 6 consists of the GT Forge Interests.

    (b)    *Treatment*:  On the Effective Date, if the Proposed Plan Sponsor is the Plan Sponsor, Holders of GT Forge Interests shall have left unaltered the legal, equitable, and contractual rights to which each such Holder is entitled on account of such interest.  If the Plan Sponsor is a Person other than the Proposed Plan Sponsor, the GT Forge Interests will be canceled, released and extinguished as of the Effective Date, and will be of no further force or effect.

    (c)    *Voting*:  If the Proposed Plan Sponsor serves as Plan Sponsor, Class 6 is Unimpaired.  If a Person other than the Proposed Plan Sponsor is approved by the Bankruptcy Court to serve as Plan Sponsor, Class 6 is Impaired. Because the Holders of Class 6 GT Forge Interests are (i) conclusively deemed, under section 1126(f) of the Bankruptcy Code, to have accepted the Plan if Class 6 is Unimpaired, or (ii) conclusively deemed, under section 1126(g) of the Bankruptcy Code, to have rejected the Plan if Class 6 is Impaired, they are not entitled to vote to accept or reject the Plan.

7.    Class 7:  Liquidating Debtor Interests

    (a)    *Classification*:  Class 7 consists of the Liquidating Debtor Interests.

    (b)    *Treatment*:  On the Effective Date, Holders of Liquidating Debtor Interests shall receive no distributions or recoveries on account of such interests and such interests shall be extinguished.

    (c)    *Voting*:  Class 7 is Impaired.  Because the Holders of Class 7 Liquidating Debtor Interests are not expected to receive any distributions under the Plan,

they are therefore conclusively deemed, under section 1126(g) of the Bankruptcy Code, to have rejected the Plan and are not entitled to vote to accept or reject the Plan.

C.    *Special Provision Governing Unimpaired Claims*

Except as otherwise provided herein, nothing under the Plan shall affect or limit the Debtors' or the Reorganized Debtor's rights and defenses (whether legal or equitable) in respect of any Unimpaired Claims, including, without limitation, all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims.

D.    *Voting Classes; Presumed Acceptance by Non-Voting Classes*

If a Class contains Claims or Interests eligible to vote, and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Plan shall be deemed accepted by the Holders of such Claims or Interests in such Class.

E.    *Controversy Concerning Impairment*

If a controversy arises as to whether any Claims or Interests or any Class thereof is Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

F.    *Confirmation Under Section 1129(a)(10) and Section 1129(b) of the Bankruptcy Code*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by an Impaired Class of Claims.  The Debtors shall seek Confirmation under section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.

G.    *Subordinated Claims*

The allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan shall take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Under section 510 of the Bankruptcy Code, the Debtors or the Reorganized Debtor, as applicable, reserve the right to re-classify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

H.    *Elimination of Vacant Classes*

Any Class of Claims that is not occupied as of the commencement of the Confirmation Hearing by an Allowed Claim or a claim temporarily allowed under Bankruptcy Rule 3018, or as to which no vote is cast, shall be deemed eliminated from the Plan for purposes of voting to accept

or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class under section 1129(a)(8) of the Bankruptcy Code.

## ARTICLE IV.

## MEANS FOR IMPLEMENTATION OF THE PLAN

*A.      Substantive Consolidation*

Except as expressly provided in this Plan, each Debtor shall continue to maintain its separate corporate existence for all purposes other than the treatment of Claims under this Plan and distributions hereunder.  On the Effective Date, (i) all Intercompany Claims among the Debtors shall be eliminated and there shall be no distributions on account of such Intercompany Claims; (ii) each Claim Filed or to be Filed against more than one Debtor shall be deemed Filed only against one consolidated Debtor and shall be deemed a single Claim against and a single obligation of the Debtors, and (iii) any joint or several liability of the Debtors shall be deemed one obligation of the Debtors, with each of the foregoing effective retroactive to the Petition Date. Except as otherwise set forth in the Plan, on the Effective Date all Claims based upon guarantees of collection, payment or performance made by one Debtor as to the obligations of another Debtor shall be released and of no further force and effect.  Such substantive consolidation shall not (other than for purposes relating to the Plan) affect the legal and corporate structure of the Reorganized Debtor or the Liquidating Debtors.

In the event the Bankruptcy Court does not approve the substantive consolidation of all of the Estates for the purposes set forth herein, the Plan shall be treated as a separate plan of reorganization for each Debtor not substantively consolidated.

The Plan shall serve as, and shall be deemed to be, a motion for entry of an order substantively consolidating the Chapter 11 Cases for the limited purposes set forth herein.  If no objection to substantive consolidation is timely Filed and served by any Holder of an Impaired Claim on or before the deadline to object to the confirmation of the Plan, or such other date as may be fixed by the Bankruptcy Court and the Debtors meet their burden of introducing evidence to establish that substantive consolidation is merited under the standards of applicable bankruptcy law, the Confirmation Order, which shall be deemed to substantively consolidate the Debtors for the limited purposes set forth herein, may be entered by the Court.  If any such objections are timely Filed and served, a hearing with respect to the substantive consolidation of the Chapter 11 Cases and the objections thereto shall be scheduled by the Bankruptcy Court, which hearing shall coincide with the Confirmation Hearing.

*B.      Waiver of Gett Claims*

On the Effective Date, Gett shall be deemed to have conclusively, absolutely, unconditionally and irrevocably provided a waiver and release to each of the Debtors from any Claim by Gett relating to any debts, obligations, rights, suits, damages, actions, remedies and liabilities whatsoever, existing as of the Effective Date, that relate to the prepetition funding of the Debtors' business operations. Any cancellation of debt income resulting from such waiver and release shall be contributed as capital to the Reorganized Debtor.

C.    *Continued Corporate Existence of the Reorganized Debtor*

On and after the Effective Date, the Reorganized Debtor will continue to exist as a separate corporation and shall retain all of the powers of corporations under applicable non-bankruptcy law, and without prejudice to any right to amend its charter, dissolve, merge or convert into another form of business entity, or to alter or terminate its existence.

Except as otherwise provided in the Plan, on and after the Effective Date, all property of GT Forge and its Estate, including any "net operating losses" or similar tax attributes, will vest in the Reorganized Debtor free and clear of all Claims, Liens, charges, other encumbrances and Interests.

On and after the Effective Date, the Reorganized Debtor shall be permitted to conduct its business without supervision by the Bankruptcy Court and free of any restrictions under the Bankruptcy Code or the Bankruptcy Rules. The Reorganized Debtor shall be authorized, without limitation, to use and dispose of the Distributable Assets of GT Forge and its Estate, to acquire and dispose of other property, and to otherwise administer its affairs.

D.    *Corporate Action and Dissolution of the Liquidating Debtors*

On the Effective Date, the matters under the Plan involving or requiring corporate, partnership or limited liability company action of the Debtors, including but not limited to actions requiring a vote or other approval of the board of directors, shareholders, managers or members of the Debtors or the execution of any documentation incident to or in furtherance of the Plan, shall be deemed to have been authorized by the Confirmation Order and to have occurred and be in effect from and after the Effective Date without any further action by the Bankruptcy Court or the officers, directors, managers or members of the Debtors.

On the Effective Date, all then-incumbent officers and directors of the Liquidating Debtors shall be deemed to have been removed as of such date and replaced with the Settlement Trustee as sole officer and representative for the purpose of winding-up the Liquidating Debtors consistent with the Plan. The Debtors' charters shall be amended to include a provision prohibiting the issuance of nonvoting equity securities and such other provisions as may be required pursuant to section 1123(a)(6) of the Bankruptcy Code. The Debtors may prepare, execute and/or file with the relevant governmental authorities having jurisdiction over the Debtors such amendments of their respective charters as may be necessary or appropriate under applicable non-bankruptcy law to fully effectuate such amendments.

From and after the Effective Date, the Holders of Interests in the Reorganized Debtor may take any and all necessary or appropriate actions to appoint directors, officers, and managers of the Reorganized Debtor consistent with the charter, articles of incorporation, and/or by-laws of the Reorganized Debtor, subject to any limitations in applicable non-bankruptcy law.

Neither the occurrence of the Effective Date, nor the effectiveness of the Plan, nor any provision of applicable non-bankruptcy law requiring the dissolution of any business entity upon the cancellation or extinguishment of all equity interests or the termination of the sole remaining

equity interest holder, shall cause a dissolution of GT Forge, which shall be continued as a corporation immediately following the Effective Date.

On the first Business Day following the Effective Date, the Liquidating Debtors shall each be dissolved without need for further action by any board of directors, shareholders, managers or members.  In connection with the Effective Date, the Settlement Trustee is authorized to (a) execute, acknowledge and/or file with the relevant governmental authorities having jurisdiction over the Liquidating Debtors, any certificate of dissolution for the Liquidating Debtors as may be necessary or appropriate under applicable non-bankruptcy law to cause the dissolution of the Liquidating Debtors to occur and (b) execute any election to dissolve or other instrument as may be necessary or appropriate under applicable non-bankruptcy law to cause the dissolution of the Liquidating Debtors to occur.  Notwithstanding anything to the contrary in the Plan, the Settlement Trustee shall not be liable as a result of any action taken in accordance with the provisions of the Plan.

E.    *Plan Sponsor Contribution*

On the Effective Date, the Plan Sponsor shall distribute the Plan Sponsor Contribution. The Plan Sponsor Contribution shall be distributed: first, to the Distribution Agent to fund (i) all Allowed DIP Facility Claims, and (ii) all outstanding Allowed Administrative Claims (including any Accrued Professional Compensation Claims), Priority Tax Claims, and Other Priority Claims not otherwise paid from the proceeds of the DIP Facility; and second, to the Settlement Trust, to the extent of the balance of the Plan Sponsor Contribution.

If a Person other than the Proposed Plan Sponsor is approved by the Bankruptcy Court to serve as Plan Sponsor, the Reorganized Debtor shall issue new common stock to the Plan Sponsor in accordance with procedures set forth in the Plan Supplement.

F.    *Establishment of Settlement Trust and Vesting of Settlement Trust Assets*

On the Effective Date, the Debtors shall take any and all actions as may be necessary or appropriate to establish a Settlement Trust and, except as otherwise provided in the Plan, to cause the transfer and assignment of (i) solely with respect to the Liquidating Debtors, such Liquidating Debtor's Distributable Assets, (ii) any rights to the commencement, compromise or settlement of any Cause of Action, and (iii) the Relevant Books and Records, (clauses (i), (ii) and (iii) of the foregoing, collectively being the "**Settlement Trust Assets**") to the Settlement Trust.  Upon the Effective Date, the Settlement Trust shall be vested with all right, title and interest in the respective Settlement Trust Assets, and such property shall become the property of the Settlement Trust free and clear of all Claims, Liens, charges, other encumbrances and interests.  It is intended that the Settlement Trust qualifies as a liquidating trust for federal income tax purposes.

The sole beneficiaries of the Settlement Trust shall be the Holders of Allowed General Unsecured Claims.  The proceeds of the Settlement Trust Assets (the "**Settlement Trust Amount**") shall be held in trust by the Settlement Trustee and shall not be considered property of the Settlement Trust or of any Debtor's Estate.  The Settlement Trustee shall be obligated to distribute the Settlement Trust Assets to the Holders of Allowed General Unsecured Claims until such Holders are repaid in full.  The Settlement Trust Assets may be used by the Settlement Trustee

to fund the expenses of the Settlement Trust as determined by the Settlement Trustee in his or her sole discretion.

For federal income tax purposes, the beneficiaries of the Settlement Trust shall be treated as the grantors of the Settlement Trust and deemed to be the owners of the Settlement Trust Assets, and the transfer of Settlement Trust Assets to the Settlement Trust shall be deemed a transfer to such beneficiaries by the Debtors followed by a deemed transfer by such beneficiaries to the Settlement Trust.

G.    *Purpose of the Settlement Trust*

The Settlement Trust shall be established for the primary purpose of liquidating and distributing the Settlement Trust Assets in accordance with Treasury Regulation section 301.7701-4(d).  In particular, this includes:  (i) reviewing and reconciling, including where appropriate objecting to, the Claims of Holders General Unsecured Claims, (ii) reviewing, litigating, settling, dismissing or releasing any Causes of Action; and (iii) distributing the Settlement Trust Assets in accordance with the Plan.  The Settlement Trust shall have no objective to continue or engage in the conduct of a trade or business and shall not be deemed a successor-in-interest of any Debtor or Estate for any purpose other than as specifically set forth herein.

H.    *Settlement Trustee*

1.    <u>Generally</u>

The initial Settlement Trustee shall be designated by the Plan Sponsor, following consultation with the Creditors' Committee, if any, prior to the Confirmation Hearing.  Any successor Settlement Trustee shall be appointed pursuant to the Settlement Trust Agreement and subject to the approval of the Bankruptcy Court.  On the Effective Date, the Settlement Trustee shall be the sole authorized representative and signatory of the Settlement Trust, with authority to render any and all services necessary to effectuate the terms of the Plan as they relate to the Settlement Trust.  From and after the Effective Date, the Settlement Trustee shall be deemed to have been appointed as the representative of each of the Liquidating Debtors' Estates by the Bankruptcy Court pursuant to section 1123(b)(3)(B) of the Bankruptcy Code for purposes of the Settlement Trust Assets.  The powers, authority, responsibilities and duties of the Settlement Trustee shall be governed by the Plan, the Confirmation Order, and the Settlement Trust Agreement.  The Settlement Trustee may execute, deliver, file or record such documents, instruments, releases and other agreements, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan as they relate to the Settlement Trust.

2.    <u>Responsibilities and Authority of the Settlement Trustee</u>

The responsibilities and authority of the Settlement Trustee shall include (a) calculating and implementing all distributions from the Settlement Trust in accordance with the Plan; (b) filing all required tax returns and paying taxes and all other obligations on behalf of the Settlement Trust from funds held by that Settlement Trust; (c) periodic

reporting to the beneficiaries of the Settlement Trust as frequently as the Settlement Trustee reasonably believes is appropriate; (d) distributing the Settlement Trust Assets in accordance with the provisions of the Plan; (e) retaining and paying at normal and customary rates (or on a contingency fee basis) professionals in connection with the Settlement Trustee's duties; (f) reconciling and, if appropriate, objecting to Claims with authority to settle any objections; (g) establishing a reserve for Disputed Claims; (h) analyzing Causes of Action and deciding whether to abandon, pursue, litigate, or settle such claims; and (i) such other responsibilities as may be vested in the Settlement Trustee pursuant to the Plan, the Settlement Trust Agreement or the Confirmation Order or as may be necessary and proper to carry out the provisions of the Plan.  The Settlement Trust and the Settlement Trustee shall not be required to post a bond in favor of the United States.

3.      Powers of the Settlement Trustee

The powers of the Settlement Trustee to administer the Settlement Trust shall, without any need for approval of the Bankruptcy Court in each of the following instances, include *inter alia,* (a) the power to invest Settlement Trust funds as permitted in the Settlement Trust Agreement, withdraw funds, make distributions and pay taxes and other obligations owed by the Settlement Trust from funds held by the Settlement Trustee in accordance with the Plan and the Settlement Trust Agreement, (b) the power to engage and compensate, without prior Bankruptcy Court order or approval, employees and professionals to assist the Settlement Trustee with respect to his or her responsibilities, (c) the power to prosecute, compromise and settle Claims, (d) the power to abandon, pursue, litigate, or settle any Cause of Action, (e) the power to abandon or destroy any of the Relevant Books and Records when they are no longer necessary to administer the Settlement Trust, and (f) such other powers as may be vested in or assumed by the Settlement Trustee pursuant to the Plan, the Settlement Trust Agreement, order of the Bankruptcy Court, or as may be necessary and proper to carry out the provisions of the Plan.  The Settlement Trustee shall have absolute discretion to pursue or not to pursue any and all objections to Claims and any and all Causes of Action, as he or she determines is in the best interests of the beneficiaries and consistent with the purposes of the Settlement Trust, and shall have no liability for the outcome of his or her decision, other than those decisions constituting gross negligence or willful misconduct.  Any determination by the Settlement Trustee as to what actions are in the best interests of the Settlement Trust shall be conclusive.  For the avoidance of doubt, on the Effective Date, the Settlement Trustee, on behalf of the Settlement Trust, shall have standing as the representative of each Liquidating Debtor's Estate pursuant to section 1123(b)(3)(B) of the Bankruptcy Code to commence and prosecute any Cause of Action and/or objections to Claims on behalf of the Debtors' Estates without need for notice or order of the Bankruptcy Court.

4.      Compensation of the Settlement Trustee and Professionals

The Settlement Trustee shall serve on the terms, conditions and rights set forth in the Plan, the Confirmation Order and the Settlement Trust Agreement.  The compensation for the Settlement Trustee shall be set forth in the Settlement Trust Agreement or otherwise disclosed in a filing with the Bankruptcy Court.  The Settlement Trustee shall have the right to retain the services of attorneys, accountants, and other professionals and agents in

the discretion of the Settlement Trustee to assist and advise the Settlement Trustee in the performance of his or her duties and compensate such professionals from the Settlement Trust Assets.  Any professionals retained by the Settlement Trustee shall not be required to file a Fee Application to receive compensation.

5.     Limitations on the Settlement Trustee

The Settlement Trustee, in such capacity, shall not at any time:  (a) enter into or engage in any trade or business (other than the management and disposition of the Settlement Trust Assets), and no part of the Settlement Trust Assets or the proceeds, revenue or income therefrom shall be used or disposed of by the Settlement Trust in furtherance of any trade or business, or (b) except as provided below, reinvest any Settlement Trust Assets.

The Settlement Trustee may only invest funds held in the Settlement Trust consistent with the requirements of the Settlement Trust Agreement, the Bankruptcy Code or any order of the Bankruptcy Court modifying such requirements and, provided that the Settlement Trustee does so, he or she shall have no liability in the event of insolvency of any institution in which he or she has invested any funds of the Settlement Trust. Notwithstanding the above, the Settlement Trustee may only invest funds in the Settlement Trust in investments permitted to be made by a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings, or other controlling authorities.

Other than as provided in the Plan and the Settlement Trust Agreement, the Settlement Trustee is not empowered to incur indebtedness.

The Settlement Trustee shall hold, collect, conserve, protect and administer the Settlement Trust in accordance with the provisions of the Plan and the Settlement Trust Agreement, and pay and distribute amounts as set forth herein for the purposes set forth in the Plan and the Settlement Trust Agreement.  Any determination by the Settlement Trustee as to what actions are in the best interests of the Settlement Trust shall be conclusive.

I.     *U.S Federal Income Tax Treatment of Settlement Trust*

The Settlement Trust (other than the portion which is treated as a disputed ownership fund, which may be subject to different treatment, as described in Article IV.I of the Plan) is intended to qualify as a liquidating trust for federal income tax purposes, treated for federal income tax purposes as a "grantor" trust.  The Settlement Trust has been structured with the intention of complying with such general criteria.  Pursuant to the Plan, all parties (including the Settlement Trustee, and the holders of beneficial interests in the Settlement Trust, as applicable) are required to treat for federal income tax purposes, the Settlement Trust as a grantor trust of which the Holders of Allowed General Unsecured Claims are the owners and grantors.

After the Effective Date, any amount a Holder receives as a distribution from a Settlement Trust in respect of its beneficial interest in such trust should not be included, for federal income tax purposes, in the Holder's amount realized in respect of its Allowed Claim but should be

separately treated as a distribution received in respect of such Holder's beneficial interest in the Settlement Trust.

For all federal income tax purposes, all parties (including the Settlement Trustee and the Holders of beneficial interests in the Settlement Trust) shall treat the transfer of assets to the Settlement Trust as a transfer of those assets directly to the Holders of Allowed General Unsecured Claims followed by the transfer of such assets by such Holders to the Settlement Trust. All parties shall treat the Settlement Trust as a grantor trust of which such Holders are to be owners and grantors. Thus, such Holders (and any subsequent Holders of interests in the Settlement Trust) shall be treated as the direct owners of an undivided beneficial interest in the Settlement Trust Assets for all federal income tax purposes. Accordingly, each Holder of a beneficial interest in the Settlement Trust will be required to report on its federal income tax return(s) the Holder's allocable share of all income, gain, loss, deduction or credit recognized or incurred by the Settlement Trust.

The Settlement Trust's taxable income will be allocated to the Holders Allowed General Unsecured Claims as holders of the beneficial interests in the Settlement Trust in accordance with each Holder's Pro Rata share of the Settlement Trust. The Settlement Trustee will file with the IRS returns for the Settlement Trust as a grantor trust pursuant to Treasury Regulations section 1.671-4(a). The Settlement Trustee will also send to each Holder of a beneficial interest in the Settlement Trust a separate statement setting forth the Holder's share of items of income, gain, loss, deduction or credit and will instruct the Holder to report such items on its federal income tax return.

*J.*      *U.S. Federal Income Tax Treatment of Disputed Ownership Funds*

Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt by the Settlement Trustee of an IRS private letter ruling, if the Settlement Trustee so requests one), or the receipt of an adverse determination by the IRS upon audit if not contested by the Settlement Trustee, the Settlement Trustee will (a) elect to treat any the Settlement Trust Assets allocable to, or retained on account of, Disputed Claims (the "**Trust Claims Reserve**") as a "disputed ownership fund" governed by Treasury Regulation Section 1.468B-9, and (b) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes. Accordingly, the Trust Claims Reserve will be subject to tax annually on a separate entity basis on any net income earned with respect to the Settlement Trust Assets in such reserves, and all distributions from such reserves will be treated as received by Holders in respect of their Claims as if distributed by the Trust Claims Reserve. All parties (including, without limitation, the Settlement Trustee, as applicable, and the Holders of beneficial interests in the Settlement Trust) will be required to report for tax purposes consistently with the foregoing. References to the Settlement Trust in Article IV.H of the Plan shall be interpreted to refer only to that portion of the Settlement Trust that is not treated as a "disputed ownership fund" as described in this paragraph to the extent inconsistent with treatment under this paragraph.

*K.*      *Retained Causes of Action of the Debtors*

Unless a Cause of Action of any Debtor (including the right to object to any Claim asserted against the Estates) is, in writing, expressly waived, relinquished, released, assigned,

compromised, or settled in the Plan, or in a Final Order, all rights of each Debtor's Estates from and after the Effective Date with respect to the Retained Causes of Action are expressly preserved for the benefit of, assigned to, and fully vested in, the Settlement Trust.

The Settlement Trustee, on behalf of the Settlement Trust, shall have standing as the representative of the Debtors' Estates pursuant to section 1123(b)(3)(B) of the Bankruptcy Code to pursue, or decline to pursue, the Retained Causes of Action and objections to Claims, as appropriate, in the business judgment of the Settlement Trustee, on behalf of the Settlement Trust. The Settlement Trustee, subject to the limitations set forth in Article IV.G.5 of the Plan, may settle, release, sell, assign, otherwise transfer, or compromise, Retained Causes of Action, Avoidance Actions, and/or objections to Claims without need for notice or order of the Bankruptcy Court.

L.    *Payment of Plan Expenses*

The Settlement Trustee may pay all reasonable Plan Expenses of the Settlement Trust consistent with the Budget without further notice to any Holders of Claims or Interests or approval of the Bankruptcy Court. The payment of Plan Expenses that are not contemplated by the Budget shall require the consent of the Plan Sponsor.

M.    *Dissolution of Official Committees*

As of the Effective Date, all official committees appointed pursuant to section 1102 of the Bankruptcy Code, if any, shall be dissolved. Notwithstanding such dissolution, any professionals retained by such committees may seek payment of any unpaid Accrued Professional Compensation Claims pursuant to the Plan.

N.    *Final Decree*

At any time following the Effective Date, the Settlement Trustee shall be authorized to file a motion for the entry of a final decree closing any or all of the Chapter 11 Cases pursuant to section 350 of the Bankruptcy Code.

## ARTICLE V.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.    *Assumption of Executory Contracts and Unexpired Leases*

On the Effective Date, all Executory Contracts and Unexpired Leases of the Debtors will be rejected by the Debtors in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, except for those Executory Contracts and Unexpired Leases that:

(i)    have already been assumed or rejected by the Debtors by prior order of the Bankruptcy Court;

(ii)    are the subject of a separate assumption motion or motion to reject Filed by the Debtors pending on the Effective Date;

(iii)     are the subject of a pending objection regarding assumption, cure, or "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code); or

(iv)     are assumed or assumed and assigned by the Debtors (with the written consent of the Plan Sponsor) pursuant to the terms of the Plan and Filed as a schedule as part of the Plan Supplement.

Without amending or altering any prior order of the Bankruptcy Court approving the assumption or rejection of any Executory Contract or Unexpired Lease, entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumptions or rejections pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

To the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan or any prior order of the Bankruptcy Court (including, without limitation, any "change of control" provision) prohibits, restricts or conditions, or purports to prohibit, restrict or condition, or is modified, breached or terminated, or deemed modified, breached or terminated by, (i) the commencement of these Chapter 11 Cases or the insolvency or financial condition of any Debtor at any time before the closing of its respective Chapter 11 Case, (ii) any Debtor's or the Reorganized Debtor's assumption or assumption and assignment (as applicable) of such Executory Contract or Unexpired Lease or (iii) the Confirmation or Consummation of the Plan, then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-debtor party thereto to modify or terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights or remedies with respect thereto, and any required consent under any such contract or lease shall be deemed satisfied by the Confirmation of the Plan.

Each Executory Contract and Unexpired Lease assumed by GT Forge pursuant to the Plan shall revest in and be fully enforceable by the Reorganized Debtor or the applicable assignee in accordance with its terms and conditions, except as modified by the provisions of the Plan, any order of the Bankruptcy Court approving its assumption and/or assignment, or applicable law.

The inclusion or exclusion of a contract or lease on any schedule or exhibit shall not constitute an admission by any Debtor that such contract or lease is an Executory Contract or Unexpired Lease or that any Debtor has any liability thereunder.

B.       *Cure of Defaults; Assignment of Executory Contracts and Unexpired Leases*

On the Effective Date, any defaults under each Executory Contract and Unexpired Lease to be assumed, or assumed and assigned, pursuant to the Plan shall be satisfied by payment of the Cure Claim Amount.

The Debtors shall File, as part of the Plan Supplement, if necessary, a schedule of assumed contracts and a list of each applicable Cure Claim Amount, if any.

Any objection by a counterparty to an Executory Contract or Unexpired Lease to a Cure Claim Amount must be Filed, served and actually received by the Debtors on or prior to the later of (i) the Objection Deadline or (ii) seven (7) days after the Filing and service of a Plan Supplement

that first identifies such Executory Contract or Unexpired Lease.  Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed Cure Claim Amount will be deemed to have consented to such matters and will be deemed to have forever released and waived any objection to such Cure Claim Amount.  The Confirmation Order shall constitute an order of the Bankruptcy Court approving each proposed assumption, or proposed assumption and assignment, of Executory Contracts and Unexpired Leases pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.

In the event of a dispute regarding (a) the amount of any Cure Claim Amount, (b) the ability of any Debtor or assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or assumed and assigned or (c) any other matter pertaining to assumption or assignment, the applicable payment of the Cure Claim Amount required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving the dispute and approving such assumption, or assumption and assignment.  If such objection is sustained by Final Order of the Bankruptcy Court, the Debtors may reject such Executory Contract or Unexpired Lease in lieu of assuming it.  The Debtors, the Reorganized Debtor or the Settlement Trustee, as applicable, shall be authorized to effect such rejection by filing a written notice of rejection with the Bankruptcy Court and serving such notice on the applicable counterparty within thirty (30) days of the entry of such Final Order.

Subject to any cure claims Filed with respect thereto, assumption or assumption and assignment of any Executory Contract or Unexpired Lease pursuant to the Plan shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption or assumption and assignment, in each case as provided in section 365 of the Bankruptcy Code.  Any Proofs of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed or assumed and assigned by Final Order shall be deemed disallowed and expunged (subject to any cure claims Filed with respect thereto), without further notice to or action, order, or approval of the Bankruptcy Court.

C.      *Claims on Account of the Rejection of Executory Contracts or Unexpired Leases*

All Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be filed with the Bankruptcy Court within thirty (30) days after service of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection.

Any Entity that is required to file a Proof of Claim arising from the rejection of an Executory Contract or an Unexpired Lease that fails to timely do so shall be forever barred, estopped and enjoined from asserting such Claim, and such Claim shall not be enforceable, against the Debtors, the Reorganized Debtor, or their Estates, and the Debtors, the Reorganized Debtor, and their Estates and their respective assets and property shall be forever discharged from any and all indebtedness and liability with respect to such Claim unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein.  All such Claims shall, as of the Effective Date, be subject to the permanent injunction set forth in Article IX.G hereof.

*D.     Extension of Time to Assume or Reject*

Notwithstanding anything to the contrary set forth in <u>Article V</u> of the Plan, in the event of a dispute as to whether a contract is executory or a lease is unexpired, the right of the Reorganized Debtor to move to assume or reject such contract or lease shall be extended until the date that is thirty (30) days after entry of a Final Order by the Bankruptcy Court determining that the contract is executory or the lease is unexpired.

*E.     Modifications, Amendments, Supplements, Restatements, or Other Agreements*

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed by the Debtors or the Reorganized Debtor pursuant to the Plan shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing has been previously rejected or repudiated or is rejected or repudiated hereunder.  Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

*F.     Reservation of Rights*

Nothing contained in the Plan or the Plan Supplement shall constitute an admission by the Debtors or any other party that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Reorganized Debtor has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption, the Debtors or the Reorganized Debtor, as applicable, shall have thirty (30) calendar days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease, including by rejecting such contract or lease *nunc pro tunc* to the Confirmation Date.

*G.     Nonoccurrence of Effective Date*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases under section 365(d)(4) of the Bankruptcy Code, unless such deadline(s) have expired.

## ARTICLE VI.

## PROVISIONS GOVERNING DISTRIBUTIONS

*A.     Timing and Calculation of Amounts to Be Distributed*

Except as otherwise provided in the "Treatment" sections in <u>Article III</u> hereof or as ordered by the Bankruptcy Court, initial distributions to be made on account of Claims that are Allowed Claims as of the Effective Date or GT Forge Interests shall be made on the Initial Distribution Date

or as soon thereafter as is practicable.  Any payment or distribution required to be made under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day. Distributions on account of Disputed Claims that first become Allowed Claims after the Effective Date shall be made under <u>Article VII</u> hereof.

B.     *Delivery of Distributions*

1.     <u>Delivery of Distributions by the Distribution Agent</u>

Other than as specifically set forth below, the Settlement Trustee or other Distribution Agent shall make all distributions required to be distributed under the Plan.  The Distribution Agent may employ or contract with other entities to assist in or make the distributions required by the Plan and may pay the reasonable fees and expenses of such entities and the Distribution Agents in the ordinary course of business.  No Distribution Agent shall be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

From and after the Effective Date, any Distribution Agent, solely in its capacity as Distribution Agent, shall be exculpated by all Persons and Entities, including, without limitation, Holders of Claims and Interests and other parties in interest, from any and all claims, Causes of Action, and other assertions of liability arising out of the discharge of the powers and duties conferred upon such Distribution Agent by the Plan or any order of the Bankruptcy Court entered under or in furtherance of the Plan, or applicable law, except for actions or omissions to act arising out of the Distribution Agent's gross negligence, willful misconduct, fraud, malpractice, criminal conduct, or *ultra vires* acts.  No Holder of a Claim or Interest or other party in interest shall have or pursue any claim or Cause of Action against a Distribution Agent, solely in its capacity as Distribution Agent, for making payments in accordance with the Plan or for implementing provisions of the Plan, except for actions or omissions to act arising out of such Distribution Agent's gross negligence, willful misconduct, fraud, malpractice, criminal conduct, or *ultra vires* acts.

2.     <u>Minimum Distributions</u>

Notwithstanding anything herein to the contrary, the Distribution Agents shall not be required to make distributions or payments of less than $100 (whether Cash or otherwise) and shall not be required to make partial distributions or payments of fractions of dollars.  With respect to any Impaired Claims, whenever any payment or distribution of a fraction of a dollar would otherwise be called for, the actual payment or distribution will reflect a rounding of such fraction to the nearest whole dollar, with half dollars or less being rounded down.

3.     <u>Distribution Record Date</u>

At the close of business on the Distribution Record Date, the Claims Register shall be closed.  Accordingly, neither the Debtors nor Distribution Agent will have any obligation to recognize the assignment, transfer or other disposition of, or the sale of any participation in, any Allowed Claim or GT Forge Interest that occurs after the close of business on the Distribution Record Date, and will be entitled for all purposes herein to recognize and distribute securities,

property, notices and other documents only to those Holders of Allowed Claims or GT Forge Interests who are Holders of such Claims or Interests, or participants therein, as of the close of business on the Distribution Record Date.  The Distribution Agent shall be entitled to recognize and deal for all purposes under the Plan with only those record holders stated on the Claims Register, or their books and records, as of the close of business on the Distribution Record Date.

4.     Delivery of Distributions in General

Except as otherwise provided herein, the Distribution Agent shall make distributions to Holders of Allowed Claims or Interests (to the extent set forth in the Plan), or in care of their authorized agents or designated affiliates as designated before the Effective Date, as appropriate, at the address for each such Holder or agent as indicated on the Distribution Agent's books and records as of the date of any such distribution; *provided*, that the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in the latest Proof of Claim Filed by such Holder under Bankruptcy Rule 3001 as of the Distribution Record Date unless otherwise specified by such Holder.

5.     Undeliverable Distributions

If any distribution to a Holder of an Allowed Claim or Interest made in accordance herewith is returned to the Distribution Agent as undeliverable, no further distributions shall be made to such Holder unless and until the Distribution Agent is notified in writing of such Holder's then-current address or other necessary information for delivery, at which time such undelivered distribution shall be made to such Holder within ninety (90) days of receipt of such Holder's then-current address or other necessary information; *provided*, *however*, that any such undelivered distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six (6) months from the later of (a) the Effective Date and (b) the date of the initial attempted distribution.  After such date, all unclaimed property or interests in property shall revert to the Settlement Trust automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable non-bankruptcy escheat, abandoned, or unclaimed property laws to the contrary), and the right, title, and interest of any Holder to such property or interest in property shall be discharged and forever barred.

C.     *Manner of Payment*

At the option of the Distribution Agent, any Cash payment to be made under the Plan may be made by check or wire transfer or as otherwise required or provided in applicable agreements.

D.     *No Postpetition or Default Interest on Claims*

Unless otherwise specifically provided for in the Plan or the Confirmation Order and notwithstanding any documents that govern the Debtors' prepetition indebtedness to the contrary, (1) postpetition and/or default interest shall not accrue or be paid on any Claims, and (2) no Holder of a Claim shall be entitled to (a) interest accruing on or after the Petition Date on any such Claim or (b) interest at the contract default rate, each as applicable.

E.      *Setoffs and Recoupments*

Each Debtor or the Reorganized Debtor, as applicable, or such Entity's designee, may, under section 553 of the Bankruptcy Code or other applicable nonbankruptcy law, offset or recoup against any Allowed Claim and the distributions to be made under the Plan on account of such Allowed Claim any and all Claims, rights, and Causes of Action that such Debtor or Reorganized Debtor or its successors may hold against the Holder of such Allowed Claim; provided, however that neither the failure to effect a setoff or recoupment nor the allowance of any Claim hereunder will constitute a waiver or release by a Debtor or the Reorganized Debtor or its successor of any Claims, rights, or Causes of Action that the Reorganized Debtor or its successor or assign may possess against such Holder.

F.      *Rights and Powers of Distribution Agent*

The Distribution Agent shall be empowered to  (i) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (ii) make all applicable distributions or payments provided for under the Plan; (iii) employ professionals to represent it with respect to its responsibilities; and (iv) exercise such other powers (A) as may be vested in the Distribution Agent by order of the Bankruptcy Court (including any order issued after the Effective Date) or under the Plan or (B) as deemed by the Distribution Agent to be necessary and proper to implement the provisions of the Plan.

G.      *Payment of Fees and Expenses*

Except as otherwise ordered by the Bankruptcy Court, subject to the Budget, the amount of any reasonable fees and expenses incurred by the Distribution Agent on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement Claims (including for reasonable attorneys' and other professional fees and expenses) made by the Distribution Agent shall be paid in Cash from the Settlement Trust.  The payment of any fees and expenses incurred by the Distribution Agent that are not contemplated by the Budget shall require the consent of the Plan Sponsor.

H.      *Compliance with Tax Requirements*

In connection with the Plan, to the extent applicable, the Debtors, Reorganized Debtor, Settlement Trustee, Distribution Agent, and other applicable withholding and reporting agents shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Debtors, the Reorganized Debtor, Distribution Agent, and other applicable withholding and reporting agents shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate.  The Debtors, Reorganized Debtor, Settlement Trustee, Distribution Agent, and other applicable withholding agents reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage

garnishments, alimony, child support and other spousal awards, liens, and encumbrances.  For tax purposes, distributions in full or partial satisfaction of Allowed Claims shall be allocated first to the principal amount of Allowed Claims, with any excess allocated to unpaid interest that accrued on such Claims.

Notwithstanding the above, each Holder of an Allowed Claim that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any Governmental Unit, including income, withholding, and other tax obligations, on account of such distribution.  The Distribution Agent shall have the right, but not the obligation, to not make a distribution until such Holder has made arrangements satisfactory to any issuing or distribution party for payment of any such tax obligations.

The Distribution Agent may require, as a condition to receipt of a distribution, that the Holder of an Allowed Claim provide any information necessary to allow the distributing party to comply with any such withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority.  If the Distribution Agent makes such a request and the Holder fails to comply before the date that is 180 days after the request is made, the amount of such distribution shall irrevocably revert to the Settlement Trust and any Claim in respect of such distribution shall be discharged and forever barred from assertion against the Reorganized Debtor, the Settlement Trust, or its respective property.

## ARTICLE VII.

## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS

A.      *Allowance of Claims and Interests*

After the Effective Date, the Settlement Trustee shall have and retain any and all rights and defenses applicable to the Debtors with respect to any Claim or Interest immediately prior to the Effective Date (unless such Claim is deemed Allowed pursuant to the Plan or the Confirmation Order).  All settled Claims approved prior to the Effective Date by a Final Order of the Bankruptcy Court under Bankruptcy Rule 9019 or otherwise shall be binding on all parties.

B.      *Claims Administration Responsibilities*

Except as otherwise specifically provided in the Plan, after the Effective Date, the Settlement Trustee shall have the sole authority to (1) file, withdraw, or litigate to judgment, any objections to Claims or Interests and (2) settle or compromise any Disputed Claim or Interest without any further notice to or action, order, or approval by the Bankruptcy Court.  For the avoidance of doubt, except as otherwise provided in the Plan, from and after the Effective Date, the Settlement Trustee shall have and retain any and all rights and defenses of the applicable Debtors immediately prior to the Effective Date with respect to any Disputed Claim or Interest, including the Causes of Action retained under the Plan.

C.      *Prosecution of Objections to Claims and Interests*

Before or after the Effective Date, the Debtors or the Settlement Trustee, as applicable, shall have the authority to File objections to Claims and Interests (other than Claims or Interests that are Allowed under the Plan) and settle, compromise, withdraw or litigate to judgment objections to any and all such Claims or Interests, regardless of whether such Claims are in an Unimpaired Class or otherwise; *provided*, *however*, this provision shall not apply to Accrued Professional Compensation Claims, which may be objected to by any party-in-interest in these Chapter 11 Cases.  From and after the Effective Date, the Settlement Trustee may settle or compromise any Disputed Claim or Interest without any further notice to or action, order or approval of the Bankruptcy Court.  The Debtors or the Settlement Trustee, as applicable, shall have the sole authority to administer and adjust the Claims Register and their books and records to reflect any such settlements or compromises without any further notice to or action, order or approval of the Bankruptcy Court.

D.      *Estimation of Claims and Interests*

Before or after the Effective Date, the Debtors, the Reorganized Debtor or the Settlement Trustee, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim or Interest that is contingent or unliquidated under section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest or during the appeal relating to such objection.  Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged but that either is subject to appeal or has not been the subject of a Final Order shall be deemed to be estimated at zero ($0.00) dollars unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim or Interest, that estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under the Plan (including for purposes of distributions), and the Reorganized Debtor or Settlement Trustee, as applicable, may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim or Interest.

E.      *Deadline to File Objections to Claims*

Any objections to Claims shall be Filed by no later than the Objection Deadline; provided that nothing contained herein shall limit the right of the Settlement Trustee to object to Claims, if any, Filed or amended after the Objection Deadline.  Moreover, notwithstanding the expiration of the Objection Deadline, the Settlement Trustee shall continue to have the right to amend any claims or other objections and to File and prosecute supplemental objections and counterclaims to a Disputed Claim until such Disputed Claim is or becomes Allowed by Final Order of the Bankruptcy Court.

F.      *Adjustment to Claims Without Objection*

Any duplicate Claim or Interest or any Claim or Interest that has been paid, satisfied, amended, or superseded may be adjusted or expunged by the Reorganized Debtor or Settlement

Trustee without the Reorganized Debtor or Settlement Trustee having to file an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest, and without any further notice to or action, order, or approval of the Bankruptcy Court.

G.      *Disallowance of Certain Claims*

Any Claims held by Entities from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be deemed disallowed under section 502(d) of the Bankruptcy Code unless expressly Allowed under the Plan, and Holders of such Claims may not receive any distributions on account of such Claims and Interests until such time as such Causes of Action against that Entity have been settled or a Final Order of the Bankruptcy Court with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Settlement Trust.

H.      *No Distributions Pending Allowance*

Notwithstanding any other provision hereof, if any portion of a Claim or Interest is a Disputed Claim or Interest, as applicable, no payment or distribution provided hereunder shall be made on account of such Claim or Interest unless and until such Disputed Claim or Interest becomes an Allowed Claim or Interest.

I.      *Distributions After Allowance*

To the extent that a Disputed Claim or Interest ultimately becomes an Allowed Claim or Interest, distributions (if any) shall be made to the Holder of such Allowed Claim or Interest in accordance with the provisions of the Plan.  As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim or Interest becomes a Final Order, the Distribution Agent shall provide to the Holder of such Claim or Interest the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any interest to be paid on account of such Claim or Interest.

J.      *No Interest*

Interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Disputed Claim if and when such Disputed Claim becomes an Allowed Claim.

## ARTICLE VIII.

## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

The following are conditions precedent to the Effective Date that must be satisfied:[3]

---

[3]   NTD: if there are additional CPs that can be waived, insert waiver provision and reference.

1.       the Bankruptcy Court shall have approved the Disclosure Statement as containing adequate information with respect to the Plan within the meaning of section 1125 of the Bankruptcy Code;

2.       the Confirmation Order shall have been entered and shall be in full force and effect and such Confirmation Order shall be a Final Order;

3.       all Accrued Professional Compensation Claims and expenses of Retained Professionals required to be approved by the Bankruptcy Court shall have been paid in full or amounts sufficient to pay such fees and expenses after the Effective Date shall have been placed in the Professional Fee Escrow Account pending approval by the Bankruptcy Court, in accordance with Article II.A.2 hereto; and

4.       the Debtors and the Reorganized Debtor, as applicable, shall have implemented the restructuring in a manner consistent in all respects with the Plan.

## ARTICLE IX.

## RELEASE, DISCHARGE, INJUNCTION AND RELATED PROVISIONS

*A.       General*

Under section 1123 of the Bankruptcy Code, and in consideration for the classification, distributions, releases and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and Interests and controversies resolved under the Plan.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests and controversies, as well as a finding by the Bankruptcy Court that any such compromise or settlement is in the best interests of the Debtors, their Estates, and any Holders of Claims and Interests and is fair, equitable and reasonable.

Notwithstanding anything contained herein to the contrary, the allowance, classification and treatment of all Allowed Claims and Interests and their respective distributions (if any) and treatments hereunder, takes into account the relative priority and rights of the Claims and the Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code or otherwise.  As of the Effective Date, any and all contractual, legal and equitable subordination rights, whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code or otherwise, relating to the allowance, classification and treatment of all Allowed Claims and Interests and their respective distributions (if any) and treatments hereunder, are settled, compromised, terminated and released pursuant hereto; *provided*, *however*, that nothing contained herein shall preclude any Person or Entity from exercising their rights under and consistent with the terms of the Plan and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with the Plan.

*B.      Release of Claims and Causes of Action*

    1.      **Release by the Debtors and Their Estates**.

        **Under section 1123(b) and any other applicable provisions of the Bankruptcy Code, and except as otherwise expressly provided in the Plan, effective as of the Effective Date, for good and valuable consideration provided by each of the Released Parties, the adequacy and sufficiency of which is hereby confirmed, the Debtors and the Reorganized Debtor, in their respective individual capacities and as debtors in possession, and on behalf of themselves and their respective Estates, including, without limitation, any successor to the Debtors or any Estate representative appointed or selected under section 1123(b)(3) of the Bankruptcy Code (collectively, the "__Debtor Releasing Parties__") and their respective assets and properties will be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full discharge, waiver and release to each of the Released Parties (and each such Released Party so released shall be deemed forever released, waived and discharged by the Debtor Releasing Parties) (the "__Debtor Release__") from any and all Claims, Causes of Action and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, whether directly or derivatively held, existing as of the Effective Date or thereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to any of (i) the Debtors, the Chapter 11 Cases, the marketing of any of the Debtors' assets, the Disclosure Statement, the Plan and the Restructuring Documents, (ii) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, (iii) the business or contractual arrangements between any Debtor and any Released Parties, (iv) the negotiation, formulation or preparation of the Plan, the Disclosure Statement, the Restructuring Documents, or related agreements, instruments or other documents, (v) the restructuring of Claims or Interests prior to or during the Chapter 11 Cases, (vi) the purchase, sale, or rescission of the purchase or sale of any Claim or Interest of the Debtors or the Reorganized Debtor, and/or (vii) the Confirmation or Consummation of the Plan or the solicitation of votes on the Plan that such Debtor Releasing Party would have been legally entitled to assert (whether individually or collectively) or that any Holder of a Claim or Interest or other Entity would have been legally entitled to assert for, or on behalf or in the name of, any Debtor, its respective Estate or the Reorganized Debtor (whether directly or derivatively) against any of the Released Parties; *provided*, *however*, that the foregoing provisions of this Debtor Release shall not operate to waive, release or otherwise impair:  (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Released Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction and/or (ii) the rights of such Debtor Releasing Party to enforce the Plan and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with the Plan or assumed under the Plan or assumed under Final Order of the Bankruptcy Court.**

        **The foregoing release shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order,**

or rule or the vote, consent, authorization or approval of any Person and the Confirmation Order will permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action or liabilities released under this Debtor Release. Notwithstanding the foregoing, nothing in this **Article IX.B** shall or shall be deemed to prohibit the Debtors or the Reorganized Debtor from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Person that is based upon an alleged breach of a confidentiality or non-compete obligation owed to the Debtors or the Reorganized Debtor, unless otherwise expressly provided for in the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, under Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (i) in exchange for the good and valuable consideration provided by the Released Parties; (ii) a good faith settlement and compromise of the Claims released by the Debtor Release; (iii) in the best interest of the Debtors and their Estates; (iv) fair, equitable and reasonable; and (v) given and made after due notice and opportunity for hearing.

2. **Release by Third Parties**.

Except as otherwise expressly provided in the Plan, effective as of the Effective Date, to the fullest extent permitted by applicable law, for good and valuable consideration provided by each of the Released Parties, the adequacy and sufficiency of which is hereby confirmed, and without limiting or otherwise modifying the scope of the Debtor Release provided by the Debtor Releasing Parties above, each Non-Debtor Releasing Party (together with the Debtor Releasing Parties, the "**Releasing Parties**") will be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full discharge, waiver and release to each of the Released Parties (and each such Released Party so released shall be deemed forever released, waived and discharged by the Non-Debtor Releasing Parties) (the "**Third Party Release**") from any and all Claims, Causes of Action and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, whether directly or derivatively held, existing as of the Effective Date or thereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to any of (i) the Debtors, the Chapter 11 Cases, the marketing of any of the Debtors' assets, the Disclosure Statement, the Plan and the Restructuring Documents, (ii) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, (iii) the business or contractual arrangements between any Debtor and any Released Parties, (iv) the negotiation, formulation or preparation of the Plan, the Disclosure Statement, the Restructuring Documents, or related agreements, instruments or other documents, (v) the restructuring of Claims or Interests prior to or during the Chapter 11 Cases, (vi) the purchase, sale or rescission of the purchase or sale of any Claim or Interest of the Debtors or the Reorganized Debtor, and/or (vii) the Confirmation or Consummation

**of the Plan or the solicitation of votes on the Plan that such Non-Debtor Releasing Party would have been legally entitled to assert (whether individually or collectively) against any of the Released Parties;** *provided*, *however*, **that the foregoing provisions of this Third Party Release shall not operate to waive, release or otherwise impair:  (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Released Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; (ii) any of the indebtedness and obligations of the Debtors and/or the Reorganized Debtor incurred under the Plan and the contracts, instruments, releases, indentures, and other agreements and documents delivered under or in connection with the Plan or assumed under the Plan or assumed under Final Order of the Bankruptcy Court; (iii) the rights of such Non-Debtor Releasing Party to enforce the Plan and the contracts, instruments, releases, indentures, and other agreements and documents delivered under or in connection with the Plan or assumed under the Plan or assumed under Final Order of the Bankruptcy Court; and/or (iv) any objections with respect to any Retained Professional's final fee application or Accrued Professional Compensation Claims in these Chapter 11 Cases.**

**The foregoing release shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person and the Confirmation Order will permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action or liabilities released under this Third Party Release.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Third Party Release, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the Third Party Release is:  (i) in exchange for the good and valuable consideration provided by the Released Parties; (ii) a good faith settlement and compromise of the Claims released by the Third Party Release; (iii) in the best interest of the Debtors and all Holders of Claims and Interests; (iv) fair, equitable and reasonable; and (v) given and made after due notice and opportunity for hearing.**

C.    *Waiver of Statutory Limitations on Releases*

Each of the Releasing Parties in each of the releases contained above expressly acknowledges that although ordinarily a general release may not extend to Claims which the Releasing Party does not know or suspect to exist in its favor, which if known by it may have materially affected its settlement with the party released, they have carefully considered and taken into account in determining to enter into the above releases the possible existence of such unknown losses or claims.  Without limiting the generality of the foregoing, each Releasing Party expressly waives any and all rights conferred upon it by any statute or rule of law which provides that a release does not extend to claims which the claimant does not know or suspect to exist in its favor at the time of providing the release, which if known by it may have materially affected its settlement with the Released Party.  The releases contained in the Plan are effective regardless of

whether those released matters are presently known, unknown, suspected or unsuspected, foreseen or unforeseen.

D.      *Discharge of GT Forge*

To the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code, except as otherwise expressly provided by the Plan or the Confirmation Order, effective as of the Effective Date, all consideration distributed under the Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims, Interests and Causes of Action of any kind or nature whatsoever against GT Forge or any of its respective assets or properties, including any interest accrued on such Claims or Interests from and after the Petition Date, and regardless of whether any property shall have been abandoned by order of the Bankruptcy Court, distributed or retained under the Plan on account of such Claims, Interests or Causes of Action.

Except as otherwise expressly provided by the Plan or the Confirmation Order, upon the Effective Date, GT Forge shall be deemed discharged and released under and to the fullest extent provided under sections 524 and 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code from any and all Claims of any kind or nature whatsoever, including, but not limited to, demands and liabilities that arose before the Confirmation Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code.  Such discharge shall void any judgment obtained against GT Forge or the Reorganized Debtor at any time, to the extent that such judgment relates to a discharged Claim.

E.      *Exculpation*

Effective as of the Effective Date, the Exculpated Parties shall neither have nor incur any liability to any Entity for any claims or Causes of Action arising prior to or on the Effective Date for any act taken or omitted to be taken in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming or effecting the Confirmation or Consummation of the Plan, the Disclosure Statement, the Restructuring Documents or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan or any other postpetition act taken or omitted to be taken in connection with the liquidation or restructuring, as applicable, of the Debtors, the Disclosure Statement or Confirmation or Consummation of the Plan; *provided*, *however*, that the foregoing provisions of this exculpation shall not operate to waive, release or otherwise impair:  (i) any Causes of Action expressly set forth in and preserved by the Plan or the Plan Supplement; (ii) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Exculpated Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; (iii) any of the indebtedness or obligations of the Debtors and/or the Reorganized Debtor incurred under the Plan and the contracts, instruments, releases, indentures, and other agreements and documents delivered under or in connection with the Plan or assumed under the Plan or assumed under Final Order of the Bankruptcy Court, (iv) the rights of any Entity to enforce the Plan and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with the Plan or assumed under the Plan or assumed under Final Order of the Bankruptcy Court; and/or (v) any objections with respect to any Retained Professional's final fee application or Accrued Professional Compensation Claims in these Chapter

11 Cases; *provided*, *further*, that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning its respective duties under, or in connection with, the above-referenced documents, actions or inactions.

The foregoing exculpation shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person. Notwithstanding the foregoing, nothing in this Article IX.E shall or shall be deemed to prohibit the Debtors or the Reorganized Debtor or the Settlement Trustee, as applicable, from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Person that is based upon an alleged breach of a confidentiality or non-compete obligation owed to the Debtors or the Reorganized Debtor, in each case unless otherwise expressly provided for in the Plan.

F.      *Preservation of Causes of Action*

1.      Maintenance of Causes of Action

Except as otherwise provided in this Article IX or elsewhere in the Plan or the Confirmation Order, after the Effective Date, the Settlement Trust shall retain all rights to commence, pursue, litigate or settle, as appropriate, any and all Causes of Action, whether existing as of the Petition Date or thereafter arising, in any court or other tribunal including, without limitation, in an adversary proceeding Filed in the Chapter 11 Cases; *provided*, *however*, that the foregoing shall not be deemed to include any claims or Causes of Action (i) released under Article IX.B.1 hereof or (ii) exculpated under Article IX.E hereof to the extent of any such exculpation. The Settlement Trust, as the successor-in-interest to the Debtors and the Estates, shall have the exclusive right to, enforce, sue on, settle, compromise, transfer or assign (or decline to do any of the foregoing) any or all of such Causes of Action, in each case solely to the extent of the Debtors' or their Estates' interest therein, without notice to or approval from the Bankruptcy Court. Notwithstanding the foregoing, the Settlement Trust shall retain all claims and defenses to any Allowed Claims that are Reinstated or Unimpaired pursuant to the Plan. A further description of the retained causes of action shall be filed with the Plan Supplement.

2.      Preservation of All Causes of Action Not Expressly Settled or Released

The Debtors expressly reserve all Causes of Action for later adjudication by the Settlement Trust (including, without limitation, Causes of Action not specifically identified or of which the Debtors may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time or facts or circumstances that may change or be different from those the Debtors now believe to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such Causes of Action upon or after the Confirmation or Consummation of the Plan based on the Disclosure Statement, the Plan or the Confirmation Order, except in each case where such Causes of Action have been expressly waived, relinquished, released, compromised or settled in the Plan, the Confirmation Order or any other Final Order, including, without limitation or any other claims or Causes of Action (i) released under Article IX.B.1 hereof or (ii) exculpated under Article IX.E

hereof to the extent of any such exculpation.  In addition, the Settlement Trust expressly reserves the right to pursue or adopt any claims alleged in any lawsuit in which any of the Debtors are a plaintiff, defendant or an interested party, against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

G.    *Injunction*

**EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, FROM AND AFTER THE EFFECTIVE DATE, ALL PERSONS AND ENTITIES ARE, TO THE FULLEST EXTENT PROVIDED UNDER SECTION 524 AND OTHER APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE, PERMANENTLY ENJOINED FROM (I) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY SUIT, ACTION OR OTHER PROCEEDING; (II) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING IN ANY MANNER ANY JUDGMENT, AWARD, DECREE, OR ORDER; (III) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE; (IV) ASSERTING A SETOFF OR RIGHT OF SUBROGATION OF ANY KIND; OR (V) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND, IN EACH CASE ON ACCOUNT OF OR WITH RESPECT TO ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, EQUITY INTEREST, OR REMEDY RELEASED OR TO BE RELEASED, SETTLED OR TO BE SETTLED OR DISCHARGED OR TO BE DISCHARGED UNDER THE PLAN OR THE CONFIRMATION ORDER AGAINST ANY PERSON OR ENTITY SO RELEASED OR DISCHARGED (OR THE PROPERTY OR ESTATE OF ANY PERSON OR ENTITY SO RELEASED, DISCHARGED).  ALL INJUNCTIONS OR STAYS PROVIDED FOR IN THE CHAPTER 11 CASES UNDER SECTION 105 OR SECTION 362 OF THE BANKRUPTCY CODE, OR OTHERWISE, AND IN EXISTENCE ON THE CONFIRMATION DATE, SHALL REMAIN IN FULL FORCE AND EFFECT UNTIL THE EFFECTIVE DATE.**

H.    *Binding Nature of the Plan*

**ON THE EFFECTIVE DATE, AND EFFECTIVE AS OF THE EFFECTIVE DATE, THE PLAN SHALL BIND, AND SHALL BE DEEMED BINDING UPON, THE DEBTORS, THE REORGANIZED DEBTOR, ANY AND ALL HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTORS, ALL PERSONS AND ENTITIES THAT ARE PARTIES TO OR ARE SUBJECT TO THE SETTLEMENTS, COMPROMISES, RELEASES, DISCHARGES, AND INJUNCTIONS DESCRIBED IN THE PLAN, EACH PERSON ACQUIRING PROPERTY UNDER THE PLAN, ANY AND ALL NON-DEBTOR PARTIES TO EXECUTORY CONTRACTS AND UNEXPIRED LEASES WITH THE DEBTORS AND THE RESPECTIVE SUCCESSORS AND ASSIGNS OF EACH OF THE FOREGOING, TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, AND NOTWITHSTANDING WHETHER OR NOT SUCH PERSON OR ENTITY (I) WILL RECEIVE OR RETAIN ANY PROPERTY, OR INTEREST IN PROPERTY, UNDER THE PLAN, (II) HAS FILED A PROOF OF CLAIM OR INTEREST IN THE CHAPTER 11 CASES OR (III) FAILED TO VOTE TO ACCEPT OR REJECT THE**

**PLAN, AFFIRMATIVELY VOTED TO REJECT THE PLAN OR IS CONCLUSIVELY PRESUMED TO REJECT THE PLAN.**

I.      *Protection Against Discriminatory Treatment*

To the extent provided by section 525 of the Bankruptcy Code and the Supremacy Clause of the United States Constitution, all Persons and Entities, including Governmental Units, shall not discriminate against the Reorganized Debtor or deny, revoke, suspend or refuse to renew a license, permit, charter, franchise or other similar grant to, condition such a grant to, discriminate with respect to such a grant, against the Reorganized Debtor, or another Person or Entity with whom the Reorganized Debtor have been associated, solely because GT Forge has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtors are granted or denied a discharge) or has not paid a debt that is dischargeable in the Chapter 11 Cases.

J.      *Integral Part of Plan*

Each of the provisions set forth in the Plan with respect to the settlement, release, discharge, exculpation, and injunction of, for or with respect to Claims and/or Causes of Action are an integral part of the Plan and essential to its implementation.  Accordingly, each Entity that is a beneficiary of such provision shall have the right to independently seek to enforce such provision and such provision may not be amended, modified, or waived after the Effective Date without the prior written consent of such beneficiary.

K.      *Preservation of Privilege and Defenses*

No action taken by the Debtors or Reorganized Debtor in connection with the Plan shall be (or be deemed to be) a waiver of any privilege or immunity of the Debtors or Reorganized Debtor, as applicable, including any attorney-client privilege or work-product privilege attaching to any documents or communications (whether written or oral).  The Confirmation Order shall provide that, notwithstanding the Reorganized Debtor providing any privileged information to the Distribution Agent or any party or person associated with the Distribution Agent, such privileged information shall be without waiver in recognition of the joint and/or successorship interest in prosecuting any Claim or Cause of Action on behalf of the Estates and shall remain privileged. The Debtors or the Reorganized Debtor retain the right to waive their own privileges.  The Distribution Agent shall have no right to any privileged information or analysis of the Debtors or the Reorganized Debtor.

# ARTICLE X.

## RETENTION OF JURISDICTION

Under sections 105(c) and 1142 of the Bankruptcy Code and notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, on and after the Effective Date, retain exclusive jurisdiction over the Chapter 11 Cases and all Entities with respect to all matters related to the Chapter 11 Cases, the Debtors and the Plan as legally permissible, including, without limitation, jurisdiction to:

1. Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest, including, without limitation, the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of any such Claim or Interest;

2. Decide and resolve all matters related to the granting or denial, in whole or in part, of any applications for allowance of compensation or reimbursement of expenses authorized under the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date; *provided*, *however*, that, from and after the Effective Date, the Reorganized Debtor and Settlement Trustee shall pay Retained Professionals in the ordinary course of business for any work performed after the Effective Date and such payment shall not be subject to the approval of the Bankruptcy Court;

3. Resolve any matters related to the assumption, assignment or rejection of any Executory Contract or Unexpired Lease and to adjudicate and, if necessary, liquidate, any Claims arising therefrom, including, without limitation, those matters related to any amendment to the Plan after the Effective Date to add Executory Contracts or Unexpired Leases to the list of Executory Contracts and Unexpired Leases to be assumed or rejected (as applicable);

4. Resolve any issues related to any matters adjudicated in the Chapter 11 Cases;

5. Ensure that distributions to Holders of Allowed Claims are accomplished under the provisions of the Plan;

6. Decide or resolve any motions, adversary proceedings, contested or litigated matters and any other Causes of Action that are pending as of the Effective Date or that may be commenced in the future, and grant or deny any applications involving the Debtors that may be pending on the Effective Date or instituted by the Reorganized Debtor or Settlement Trustee after the Effective Date, *provided*, *however*, that the Reorganized Debtor and Settlement Trustee shall reserve the right to commence actions in all appropriate forums and jurisdictions;

7. Enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all other contracts, instruments, releases, indentures and other agreements or documents adopted in connection with the Plan, the Plan Supplement or the Disclosure Statement;

8.      Resolve any cases, controversies, suits or disputes that may arise in connection with the Consummation, interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

9.      Hear and determine all Causes of Action that are pending as of the Effective Date or that may be commenced in the future, except for those claims or Causes of Action (i) released under Article IX.B.1 hereof or (ii) exculpated under Article IX.E hereof to the extent of any such exculpation;

10.     Issue injunctions and enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

11.     Enforce the terms and conditions of the Plan, the Confirmation Order, and the Restructuring Documents;

12.     Resolve any cases, controversies, suits or disputes with respect to the Release, the Exculpation, and any other provisions contained in Article IX hereof and enter such orders or take such others actions as may be necessary or appropriate to implement or enforce all such provisions;

13.     Enter and implement such orders or take such other actions as may be necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

14.     Resolve any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any release or exculpation adopted in connection with the Plan; and

15.     Enter one or more final decrees closing the Chapter 11 Cases.

Notwithstanding the foregoing, if the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Cases, including the matters set forth in this Article of the Plan, the provisions of this Article X shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

## ARTICLE XI.

## MODIFICATION, REVOCATION, OR WITHDRAWAL OF PLAN

*A.     Modification of Plan*

Subject to the limitations contained in the Plan, the Debtors reserve the right, in accordance with the Bankruptcy Code, the Bankruptcy Rules (1) to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code, and (2) after the entry of the Confirmation Order, the Debtors, the

Reorganized Debtor, or the Settlement Trustee, as the case may be, may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

B.    *Effect of Confirmation on Modifications*

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved under section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

C.    *Revocation of Plan*

Subject to the conditions to the Effective Date, the Debtors reserve the right to revoke or withdraw the Plan prior to the entry of the Confirmation Order and to File subsequent plans of reorganization.  If the Debtors revoke or withdraw the Plan, or if the Effective Date does not occur, then (1) the Plan shall be null and void in all respects, (2) any settlement or compromise embodied in the Plan, assumption of Executory Contracts or leases effected by the Plan, and any document or agreement executed pursuant hereto shall be deemed null and void, and (3) nothing contained in the Plan shall (a) constitute a waiver or release of any claims by or against or any Interests in such Debtor or any other Entity, (b) prejudice in any manner the rights of the Debtors or any other Entity, or (c) constitute an admission of any sort by the Debtors or any other Entity.

## ARTICLE XII.

## MISCELLANEOUS PROVISIONS

A.    *Immediate Binding Effect*

Notwithstanding Bankruptcy Rules 3020(e), 6004(g), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the documents and instruments contained in the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtor, and any and all Holders of Claims and Interests (irrespective of whether such Holders of Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan and any and all non-Debtor parties to Executory Contracts and Unexpired Leases.  The Confirmation Order shall contain a waiver of any stay of enforcement otherwise applicable, including under Bankruptcy Rule 3020(e), 6004(g), and 7062.

B.    *Additional Documents*

On or before the Effective Date and in accordance with <u>Article I.B</u> of the Plan, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors or the Reorganized Debtor, as applicable, and all Holders of Claims or Interests receiving distributions under the Plan and all other parties in interest shall, from time to time, prepare,

execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

C.     *Substantial Consummation*

"Substantial Consummation" of the Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

D.     *Payment of Statutory Fees; Post-Effective Date Fees and Expenses*

All fees due and payable under section 1930 of title 28 of the U.S. Code prior to the Effective Date shall be paid by the Debtors.  On and after the Effective Date, the Reorganized Debtor and Settlement Trustee shall, as applicable, pay any and all such fees when due and payable, and shall file with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the United States Trustee.  Except as provided in Article II.D herein, each Debtor shall remain obligated to pay quarterly fees to the United States Trustee until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code.

The Reorganized Debtor and the Settlement Trustee shall, as applicable, subject to the Budget, pay the liabilities and charges that they incur on or after the Effective Date for Retained Professionals' fees, disbursements, expenses, or related support services (including reasonable fees, costs and expenses incurred by Retained Professionals relating to the preparation of interim and final fee applications and obtaining Bankruptcy Court approval thereof) in the ordinary course of business and without application or notice to, or order of, the Bankruptcy Court, including, without limitation, the reasonable fees, expenses, and disbursements of the Distribution Agent and the fees, costs and expenses incurred by Retained Professionals in connection with the implementation, enforcement and Consummation of the Plan and the Restructuring Documents. The payment of any fees and expenses incurred by the Settlement Trustee or Distribution Agent that are not contemplated by the Budget shall require the consent of the Plan Sponsor.

E.     *Conflicts*

In the event that a provision of the Restructuring Documents or the Disclosure Statement (including any and all exhibits and attachments thereto) conflicts with a provision of the Plan or the Confirmation Order, the provision of the Plan and the Confirmation Order (as applicable) shall govern and control to the extent of such conflict.  In the event that a provision of the Plan conflicts with a provision of the Confirmation Order, the provision of the Confirmation Order shall govern and control to the extent of such conflict.

F.     *Successors and Assigns*

The Plan shall be binding upon and inure to the benefit of the Debtors, the Reorganized Debtor, all present and former Holders of Claims and Interests, other parties-in-interest, and their respective heirs, executors, administrators, successors, and assigns.  The rights, benefits, and obligations of any Person or Entity named or referred to in the Plan shall be binding on, and shall

inure to the benefit of, any heir, executor, administrator, successor, or assign of such Person or Entity.

G.      *Reservation of Rights*

Except as expressly set forth herein, the Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order and the Plan is consummated.  Neither the Filing of the Plan, any statement or provision contained herein, nor the taking of any action by the Debtors or any other Entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of:  (1) the Debtors with respect to the Holders of Claims or Interests or other Entity; or (2) any Holder of a Claim or an Interest or other Entity prior to the Effective Date.

H.      *Further Assurances*

The Debtors or the Reorganized Debtor, as applicable, all Holders of Claims receiving distributions hereunder and all other Entities shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

I.      *Severability*

If, prior to the Confirmation Date, any term or provision of the Plan is determined by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order will constitute a judicial determination and will provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable under its terms.

J.      *Service of Documents*

Any notice, direction or other communication given to the Debtors regarding the matters contemplated by the Plan (each, a "**Notice**") must be in writing, sent by personal delivery, electronic mail, or courier and addressed as follows:

> *Juno USA, LP*
> Attn: Melissa S. Kibler
> 74 W. Long Lake Road, Suite 205
> Bloomfield Hills, Michigan 48304

with a copy to:

> *Chipman Brown Cicero & Cole, LLP*
> Attn: William E. Chipman, Jr.
> Hercules Plaza
> 1313 North Market Street, Suite 5400
> Wilmington, Delaware 19801

A Notice is deemed to be given and received (a) if sent by personal delivery or courier, on the date of delivery if it is a Business Day and the delivery was made prior to 4:00 p.m. (local time in place of receipt) and otherwise on the next Business Day, or (b) if sent by electronic mail, when the sender receives an email from the recipient acknowledging receipt, provided that an automatic "read receipt" does not constitute acknowledgment of an email for purposes of this Article XII.J. Any party may change its address for service from time to time by providing a Notice in accordance with the foregoing. Any element of a party's address that is not specifically changed in a Notice will be assumed not to be changed. Sending a copy of a Notice to a party's legal counsel as contemplated above is for information purposes only and does not constitute delivery of the Notice to that party. The failure to send a copy of a Notice to legal counsel does not invalidate delivery of that Notice to a party.

K.      *Governing Law*

Except to the extent that the Bankruptcy Code, the Bankruptcy Rules or other federal law is applicable, or to the extent that a Restructuring Document or an exhibit or schedule to the Plan provides otherwise, the rights, obligations, construction and implementation of the Plan and any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan, shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflicts of law of such jurisdiction that would require or permit the application of the law of another jurisdiction.

L.      *Tax Reporting and Compliance*

The Reorganized Debtor is hereby authorized to request an expedited determination under section 505(b) of the Bankruptcy Code of the tax liability of the Debtors for all taxable periods ending after the Petition Date through and including the Effective Date.

M.      *Schedules*

All exhibits and schedules to the Plan, including the Exhibits and Plan Schedules, are incorporated herein and are a part of the Plan as if set forth in full herein.

N.      *No Strict Construction*

The Plan is the product of extensive discussions and negotiations between and among, *inter alia*, the Debtors and their respective professionals.  Each of the foregoing was represented by counsel of its choice who either participated in the formulation and documentation of, or was afforded the opportunity to review and provide comments on, the Plan, the Disclosure Statement, the Exhibits and the Plan Schedules, and the agreements and documents ancillary or related thereto.  Accordingly, unless explicitly indicated otherwise, the general rule of contract construction known as "*contra proferentem*" or other rule of strict construction shall not apply to the construction or interpretation of any provision of the Plan, the Disclosure Statement, the Exhibits or the Plan Schedules, or the documents ancillary and related thereto.

O.      *Entire Agreement*

Except as otherwise provided herein or therein, the Plan and the Restructuring Documents supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan and the Restructuring Documents.

P.      *Closing of Chapter 11 Cases*

The Settlement Trustee shall, promptly after the full administration of the Chapter 11 Cases, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases.

Q.      *2002 Notice Parties*

After the Effective Date, the Reorganized Debtor and the Settlement Trustee, as applicable, are authorized to limit the list of Entities receiving documents under Bankruptcy Rule 2002 to those Entities who have Filed a renewed request after the Confirmation Hearing to receive documents under Bankruptcy Rule 2002.

R.      *Section 1125(e) Good Faith Compliance*

The Debtors, the Reorganized Debtor and the Creditors' Committee, if any, and each of their respective Related Persons shall be deemed to have acted in "good faith" under section 1125(e) of the Bankruptcy Code.

Dated: December 11, 2019
       Wilmington, Delaware

**CHIPMAN BROWN CICERO & COLE, LLP**

*/s/ William E. Chipman, Jr.*

William E. Chipman, Jr. (No. 3818)
Mark L. Desgrosseilliers (No. 4083)
Mark D. Olivere (No. 4291)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Telephone:    (302) 295-0191
Facsimile:    (302) 295-0199
Email:        chipman@chipmanbrown.com
              desgross@chipmanbrown.com
              olivere@chipmanbrown.com

*Proposed Counsel to the Debtors and*
*Debtors-In-Possession*

# EXHIBIT B

## (Disclosure Statement Order)

# EXHIBIT C

## (Liquidation Analysis)