## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| JUNO USA, LP, *et al.*,[1] | Case No. 19-12484 (MFW) |
| Debtors. | (Jointly Administered) |
| | **Proposed Hearing Date: February 20, 2020 at 2:00 p.m.**<br>**Objection Deadline: To Be Determined** |

## DEBTORS' MOTION FOR AN ORDER APPROVING RELEASE, SETTLEMENT AGREEMENT AND PLAN SUPPORT AGREEMENT

Juno USA, LP ("**Juno**") and its affiliated debtors (collectively, the "**Debtors**"), by and through their counsel, Chipman Brown Cicero & Cole, LLP, hereby submit this motion (the "**Motion**"), pursuant to section 105(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), for the entry of an order (the "**Proposed Order**"), substantially in the form attached hereto as <u>**Exhibit A**</u>, approving that certain Release, Settlement Agreement and Plan Support Agreement (the "**Settlement Agreement**")[2] by and among the Debtors, GT Gettaxi Limited ("**Gett**" or the "**Plan Sponsor**"), certain former drivers who have asserted claims against the Debtors in the Bankruptcy Cases (the **"Driver Claimants"**),[3] the Official Committee of Unsecured Creditors appointed in these chapter 11 cases (the "**Committee**"), and Held & Hines LLP, in its capacity as counsel to the Driver Claimants (**"Held & Hines"** and together with the

---

[1]   The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number, are: Juno USA, LP (5772); Sabo One LLC (2759); Juno Oregon LLC (4462); Vulcan Cars LLC (4733); GT Forge, Inc. (1093); and Omaha LLC (8656).  The mailing address for the Debtors listed above is 74 West Long Lake Road, Suite 205, Bloomfield Hills, Michigan 48304.

[2]   Unless otherwise expressly defined herein, capitalized terms shall have the meanings ascribed to them in the Settlement Agreement.

[3]   As used herein, **"Driver Claimants"** shall include all former drivers of Juno or one of its affiliates who (i) are represented by Held & Hines and (ii) whose claims in the Bankruptcy Cases were filed by Held & Hines, including each individual member of the Committee.

Debtors, the Committee, the Driver Claimants and Gett, the "**Parties**") attached to the Proposed

Order as **Exhibit 1**.  In support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the District of Delaware (the "**Court**")

has jurisdiction over these chapter 11 cases, the Debtors, property of the Debtors' estates and this

matter under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the*

*United States District Court for the District of Delaware*, dated as of February 29, 2012.  This is

a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A).  Pursuant to Rule 9013-1(f)

of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court

for the District of Delaware (the "**Local Rules**"), the Debtors consent to the entry of a final

judgment or order with respect to this Motion if it is determined that the Court, absent consent of

the parties, cannot enter final orders or judgments consistent with Article III of the United States

Constitution.

2.      Venue of these cases in this District is proper under 28 U.S.C. §§ 1408 and 1409.

3.      The predicates for the relief requested herein are sections 105 and 363(b) of the

Bankruptcy Code, and Bankruptcy Rule 9019.

## BACKGROUND

A.      **General Background**

4.      On November 19, 2019 (the "**Petition Date**"), each of the Debtors filed with this

Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code, thereby

commencing these cases (the "**Chapter 11 Cases**").

5.      The Debtors continue to oversee their businesses and manage their properties as

debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On

December 3, 2019, the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed the Committee pursuant to section 1102 of the Bankruptcy Code (the "**Committee**") [Docket No. 57].

6.      These Chapter 11 Cases are jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

7.      Additional factual background regarding the Debtors, including their business operations, capital and debt structures, and the events leading to the filing of these Chapter 11 Cases is set forth in detail in the *Declaration of Melissa S. Kibler in Support of First Day Pleadings* (the "**First Day Declaration**") [Docket No. 3], which is incorporated in this Motion by reference.

**B.      Contested Matters**

      **i.      The Pre-Petition Driver Claims**

8.      Prior to the Petition Date, the Debtors and their affiliates were engaged in New York state court litigation with the Driver Claimants in connection with claims relating to the termination of the restricted stock units of Juno, Inc. and certain wage and claim litigation.

9.      Specifically, on August 23, 2018, certain of the Driver Claimants, by their counsel Held & Hines, filed their Second Amended Complaint (the **"State Court Action"**) in the Supreme Court of the State of New York, County of New York (the **"New York State Court"**), centered primarily on alleged promises by Juno, Inc., the former parent of Juno USA, LP, to provide drivers with equity, which ultimately took the form of restricted stock units in Juno, Inc.  The Driver Claimants also asserted claims of fraud, fraudulent inducement, false advertising, breach of contract, breach of implied covenant of good faith and fair dealing, unjust enrichment, promissory estoppel, and violation of NY WARN Act.  All of the claims except the

unjust enrichment claim have since been dismissed, however, appeal of such decision remains pending.  The State Court Action has been stayed as to the Debtor defendants by section 362 of the Bankruptcy Code since the Petition Date.

10.    Further, on or about April 25, 2018, June 13, 2019 and August 14, 2019, certain of the Driver Claimants, by their counsel Held & Hines, filed or indicated their intent to file, demands for arbitration (the **"Arbitration Proceedings"**) against Juno, Inc. and Debtors Vulcan Cars LLC and Juno USA, LP (the **"Respondents"**) with the American Arbitration Association (the **"AAA"**).  In the Arbitration Proceedings, the Driver Claimants assert, or indicated their intent to assert, claims against Respondents arising from, or related to, the service of Driver Claimants as drivers for the Juno-brand transportation network, namely: (i) misclassification of Driver Claimants as independent contractors; (ii) breach of contract; (iii) false advertising; (iv) fraudulent inducement; (v) unjust enrichment; and (vi) conversion (the **"Arbitration Claims"** and together with the claims asserted in the State Court Action, the **"Driver Claims"**).  The Arbitration Proceeding that was filed against the Debtor Respondents on August 14, 2019, was administratively closed prior to the Petition Date; however, the parties entered into a tolling agreement preserving the Driver Claimants' right to assert the Arbitration Claims.  The Arbitration Claims have been stayed as to the Debtors by section 362 of the Bankruptcy Code since the Petition Date.

ii.    **Objections to Postpetition Financing**

11.    On November 19, 2019, the Debtors filed the *Motion of the Debtors for Entry of Interim and Final Orders (i) Authorizing Debtors to Obtain Postpetition Secured Financing, (ii) Authorizing the Use of Cash Collateral, (iii) Modifying the Automatic Stay, (iv) Scheduling a Final Hearing, and (v) Granting Related Relief* [Docket No. 14] (the "**DIP Motion**").

12.     On November 21, 2019, the Court entered the *Interim Order (i) Authorizing Debtors to Obtain Postpetition Secured Financing, (ii) Authorizing the Debtors to Use Cash Collateral, (iii) Modifying the Automatic Stay, and (iv) Granting Related Relief* [Docket No. 29] (the "**Interim DIP Order**").

13.     On December 13, 2019, the Committee filed the *Official Committee of Unsecured Creditors' Preliminary Objection to the Motion of the Debtors for Entry of Interim and Final Orders (i) Authorizing Debtors to Obtain Postpetition Secured Financing, (ii) Authorizing the Use of Cash Collateral, (iii) Modifying the Automatic Stay, (iv) Scheduling a Final Hearing, and (v) Granting Related Relief* [Docket No. 73] (the "**DIP Objection**").

14.     On December 16, 2019, the Debtors filed the *Debtors' Statement and Response to the Official Committee of Unsecured Creditors' Preliminary Objection to Debtors' Post-Petition Financing Motion* [Docket No. 81].

15.     As set forth on the record at the December 18, 2019 hearing on the DIP Motion, the Debtors and the Committee agreed to the entry of a second interim order, and to adjourn the DIP Objection to the final hearing on the DIP Motion.

16.     On December 18, 2019, the Court entered the *Second Interim Order (i) Authorizing Debtors to Obtain Postpetition Secured Financing, (ii) Authorizing the Debtors to Use Cash Collateral, (iii) Modifying the Automatic Stay, and (iv) Granting Related Relief* [Docket No. 105] (the "**Second Interim DIP Order**").  A hearing to consider approval of an order granting the DIP Motion on a final basis (the "**Final DIP Order**") is currently scheduled for February 20, 2020.

17.     In connection with the pending DIP Objection and consideration of the proposed Final DIP Order, on January 10, 2020, the Committee served (i) *The Committee's First Set of*

*Requests for Production of Documents Directed to the Debtors* [Docket No. 157]; and (ii) *The Committee's First Set of Requests for Production of Documents Directed to GT Gettaxi Limited* [Docket No. 158] (together, the "**Discovery Requests**").

### iii.    Objections Related to the Plan and Disclosure Statement

18.    On December 11, 2019, the Debtors filed the *Debtors' Joint Plan of Reorganization and Liquidation Under Chapter 11 of the Bankruptcy Code* [Docket No. 66] (including all exhibits thereto and as amended, modified, or supplemented from time-to-time, the "**Plan**").    Concurrently therewith, the Debtors filed the related *Disclosure Statement for the Debtors' Joint Plan of Reorganization and Liquidation Under Chapter 11 of the Bankruptcy Code* [Docket No. 67] (as it may be amended, the "**Disclosure Statement**").

19.    On January 6, 2020, the Debtors filed the *Motion for Entry of an Order (i) Approving Debtors' Disclosure Statement, (ii) Establishing Sponsorship Bid Deadline, (iii) Determining Dates, Procedures, and Forms Applicable to the Solicitation Process, (iv) Establishing Vote Tabulation Procedures, and (v) Establishing Objection Deadline and Scheduling Hearing to Consider Confirmation of the Plan* (the "**Solicitation Procedures Motion**").    The deadline to object or respond to the Solicitation Procedures Motion was January 29, 2020 (the "**DS Objection Deadline**").    A hearing to consider approval of the Solicitation Procedures Motion is currently scheduled for February 20, 2020.

20.    In connection with the pending Solicitation Procedures Motion, on January 8, 2020, the Committee filed its *Motion for an Order Pursuant to Bankruptcy Rule 2004 and Local Bankruptcy Rule 2004-1 Directing the Examination and Production of Documents by the Debtors, GT Gettaxi Limited, Dooboo Holdings Limited, Juno Lab B.V., Juno Lab LLC, and Juno Lab Ltd.* [Docket No. 140] (the "**2004 Motion**"), and a related *Motion for Entry of an*

*Order Shortening the Notice Period With Respect to the Committee's Motion for an Order Pursuant to Bankruptcy Rule 2004 and Local Bankruptcy Rule 2004-1 Directing the Examination and Production of Documents by the Debtors, GT Gettaxi Limited, Dooboo Holdings Limited, Juno Lab B.V., Juno Lab LLC, and Juno Lab Ltd.* [Docket No. 141] (the "**Motion to Shorten**").

21.     On January 9, 2020, the Court entered an Order granting the Motion to Shorten [Docket No. 143], established January 17, 2020 as the deadline to file objections to the 2004 Motion, and scheduled a hearing on the 2004 Motion for January 21, 2020.

22.     In response to the 2004 Motion, on January 17, 2020, the Debtors filed their *Limited Response to the Official Committee of Unsecured Creditors' 2004 Motion* [Docket No. 167].

23.     By agreement of the parties, the deadline for Gett and certain of its foreign non-Debtor affiliates (collectively, the "**Foreign Non-Debtor Affiliates**") was extended to January 20, 2020.  Thereafter, on January 20, 2020, the *Objection and Reservation of Rights of Certain Non-Debtor Affiliates to Creditors' Committee's Rule 2004 Motion* [Docket No. 169] was filed.

24.     On January 21, 2020, the Court entered a modified order granting the 2004 Motion [Docket No. 183].  Pursuant to this Order, the Debtors and the Foreign Non-Debtor Affiliates were ordered and directed to produce certain documents to the Committee and appear for examination by the Committee in advance of the hearing on the Solicitation Procedures Motion.

25.     By agreement of the parties, the DS Objection Deadline was extended for the Committee.  Prior to the DS Objection Deadline, the Committee asserted informal objections to

the Plan, Disclosure Statement and the Solicitation Procedures Motion (the "**DS & Plan Objections**").

C.    **The Settlement Agreement**

26.    Over the past several weeks, the Parties have been engaged in good faith, arm's-length negotiations to resolve all issues related to: (i) the Driver Claims; (ii) the DIP Objection; (iii) the Discovery Requests; (iv) the Plan; (v) the Disclosure Statement; (vi) the Solicitation Procedures Motion; (vii) the 2004 Motion; and (viii) the DS & Plan Objections (collectively, the "**Contested Matters**").    The Parties have reached a global settlement with respect to the Contested Matters, and seek approval of the Settlement Agreement through this Motion.

27.    As set forth below, the Settlement Agreement provides a consensual resolution among the Parties, and provides a consensual path for these Chapter 11 Cases to proceed through confirmation of the Plan.[4]  A summary of the material terms of the settlement are as follows:

>    (a)  The Debtors shall, and shall direct their attorneys, advisors and agent to, (i) file a 9019 Motion seeking approval of the Agreement on shortened notice, (ii) file an amended Plan (the **"Amended Plan"**) and Disclosure Statement consistent with the Agreement no later than February 14, 2020, and (iii) do all things reasonably necessary and appropriate in furtherance of the Agreement.
>
>    (b) The Plan's definition of "Plan Sponsor Contribution" shall be revised so as to replace: "$[●]" with "an amount equal to the Allowed DIP Facility Claims, plus $875,000, underlined provided, underlined however, that $37,500 of this amount shall be contributed by the Debtors to the extent of Cash on hand as of the Effective Date, underlined provided, underlined further, that if the Debtors do not have sufficient Cash on hand to pay any of its portion under the foregoing proviso, the Plan Sponsor shall immediately pay the balance of such portion."
>
>    (c) Section IV(E) of the Plan shall be revised so as to state as follows:  "On the Effective Date, the Plan Sponsor shall distribute the Plan Sponsor Contribution as follows: (i) to the Distribution Agent to fund (A) all Allowed DIP Facility Claims, and (B) all outstanding Allowed Administrative Claims

---

[4]    The summary of the Settlement Agreement provided herein is not intended to be a comprehensive recitation of all of the terms of the Settlement Agreement.  The summary is qualified in its entirety by the actual terms of the Settlement Agreement, and to the extent that there is any inconsistency between the summary provided herein and the actual terms of the Settlement Agreement, the actual terms of the Settlement Agreement shall control.

(excluding any Accrued Professional Claims), Priority Tax Claims, and Other Priority Claims not otherwise paid from the proceeds of the DIP Facility in the amount of $100,000 (the "**Priority Amount Contribution**"), with such amount to be held by the Distribution Agent until such time as the Governmental Bar Date and all other applicable objection deadlines have passed (the "**Priority Reserve Date**"); and (ii) to the Settlement Trust in the amount of $775,000, with the balance of the Priority Amount Contribution not otherwise used in accordance with subsection (i)(B) of this paragraph to be transferred and paid to the Settlement Trust as soon as practicable after the Priority Reserve Date, but in no event more than ten (10) Business Days after the occurrence of the Priority Reserve Date. The Plan Sponsor agrees to pay all Allowed Administrative Claims, Priority Tax Claims and Other Priority Claims that in the aggregate exceed $100,000 and that are not otherwise paid from the proceeds of the DIP Facility"

(d) Section IV(H) of the Plan shall be revised so as to replace: "The initial Settlement Trustee shall be designated by the Plan Sponsor, following consultation with the Creditors' Committee, if any, prior to the Confirmation Hearing." with "The initial Settlement Trustee shall be designated by the Creditors' Committee, prior to the Confirmation Hearing."

(e) All fees and expenses of the Committee's Retained Professionals (as defined in the Amended Plan) shall not exceed, in the aggregate, the sum of $375,000 (the "**Committee Professional Fee Cap**"); provided that any amounts that exceed $300,000 shall be paid in equal parts from the DIP Facility and the Debtors' Cash on hand; provided further that if the Debtors do not have sufficient Cash on hand to pay any of its portion under this provision, the Debtors shall draw on the DIP Facility to pay the balance. An amount equal to the Committee Professional Fee Cap less any fees and expenses paid to the Committee's Retained Professionals during the Chapter 11 Cases shall be funded to the Professional Fee Reserve on the Effective Date. Any fees and expenses of the Committee's Retained Professionals in excess of the Committee Professional Fee Cap shall be waived by the Committee's Retained Professionals. The Plan Sponsor or its affiliates shall not challenge or object to the allowance of the fees and expenses of the Committee's Retained Professionals.

(f) A hearing on the Disclosure Statement (the "**Disclosure Statement Hearing**") and on the Debtors' post-petition financing motion (the "**DIP Motion**") has been rescheduled for the same date as the 9019 Hearing. The 9019 Motion shall be heard prior to the Bankruptcy Court's consideration of the adequacy of the Disclosure Statement and DIP Motion. Upon approval of the 9019 Motion, subject to the terms and conditions hereof, (i) the Committee shall support approval of the Disclosure Statement at the Disclosure Statement Hearing, (ii) the Committee shall support approval of the DIP Motion, and the Committee's objection to the DIP Motion [Docket No. 73] shall be deemed withdrawn.

(g) All of the Committee's discovery requests shall be stayed pending approval of the 9019 Motion.  Upon entry of the order approving the 9019 Motion, subject to the terms and conditions herein (i) the Committee's discovery requests shall be deemed withdrawn, and (ii) all obligations to comply with the order entered by the Bankruptcy Court at Docket No. 183 regarding the Committee's "Rule 2004" motion shall be tolled pending the Effective Date of the Amended Plan at which time such obligations shall be deemed moot.

(h) Each of the Parties and their respective controlled affiliates shall, and shall direct their respective advisors and attorneys to, take all actions that are reasonably necessary or appropriate to support and achieve approval of the Agreement, confirmation of the Amended Plan and implementation and consummation of the Amended Plan. Each of the Parties and their respective controlled affiliates shall, and shall direct their respective advisors and attorneys to, not propose, pursue or support any other plan or confirmation order that is inconsistent with the Agreement or the Amended Plan or does not incorporate the treatments and settlements provided for hereunder, object to, delay or impede, or take any other action to interfere with the approval of the Agreement and the Disclosure Statement and Amended Plan, or otherwise take any action that could reasonably be expected to or would interfere with, delay, impede or adversely affect the transactions contemplated under the Agreement or the Amended Plan.

(i) Held & Hines represents and warrants that it has the power and has been authorized (i) to file each of the Driver Claims, (ii) to act for the Driver Claimants in all respects relating to, (A) receipt of singular service of notices and other documents in connection with the Bankruptcy Cases, (B) the allowance, disposition and distribution of recoveries in respect of each Driver Claim (including any stipulation of settlement) and (C) with respect to the Amended Plan, to vote a single claim and grant third-party releases on behalf of each of the Driver Claimants.  For the avoidance of doubt, duplicate Driver Claims shall not be counted for voting purposes.

(j) Each Driver Claim shall be classified as General Unsecured Claims (Class 3) under the Amended Plan.

(k) Each Driver Claim shall (i) be allowed in the amount of $1,000 solely for purposes of voting, and (ii) shall not be subject to objection by the Debtors or Plan Sponsor, with such right being reserved solely for the Settlement Trustee.

(l) The Driver Claimants, through Held & Hines, subject to Held & Hines's receipt of the Disclosure Statement as approved by the Bankruptcy Court and other solicitation materials, (i) shall vote and cause to be voted in favor of the Amended Plan, and (ii) shall not opt out of the voluntary release contained in Article IX.B.2 of the Plan.

(m) Within five (5) days of the Effective Date of the Amended Plan, Held & Hines shall cause, on behalf of the Driver Claimants, all litigation (including arbitrations) against the Debtors, Gett, or any of their affiliates (collectively, the "**Debtor Related Entities**") to be dismissed with prejudice solely as to all Debtor Related Entities that are defendants to such litigation.

(n) In addition to those Releases provided in the Amended Plan, the Parties agree that, effective upon the Effective Date of the Amended Plan, each Party (on its own behalf and its successors and assigns) releases all other Parties and their respective predecessors, successors, affiliates, directors, officers, members, employees, partners, managers, agents, professionals, consultants, advisors and representatives, from any and all claims, counterclaims, actions, causes of action, and demands, whether in law or equity, for damages of every kind, character, or description, costs, expenses, compensation, consequential or punitive damages, or any other things whatsoever (collectively, any "**Claims**") related to (a) the formation, negotiation, and implementation of the Agreement, or (b) all matters that arose prior to or during the pendency of the Bankruptcy Cases, <u>provided</u>, <u>however</u>, that nothing in the Agreement shall restrict the rights of (i) any creditor from filing and/or amending a proof of claim in the Bankruptcy Cases (as appropriate under the Bankruptcy Court's relevant orders and otherwise under applicable law), (ii) any Party from enforcing the obligations under the Agreement and the Amended Plan; (iii) the Settlement Trustee from objecting to any filed claim in the Bankruptcy Cases, as provided for under the Amended Plan; or (iv) the Driver Claimants from asserting any and all claims or causes of action against Juno Inc. and Talmon Marco and any of their respective affiliates as permitted under applicable law (which, for the avoidance of doubt, shall not include any of the Debtor Related Entities).  The Plan Sponsor, Reorganized Debtor and the Debtors shall not, nor cause any controlled affiliate to, delay, impede or impair the holders of Drivers Claims from asserting, litigating, prosecuting and settling claims against Juno Inc.  Upon the Effective Date of the Amended Plan, the Debtors also agree to release all claims against any former driver of any Debtor entity, including the Driver Claimants, in connection with such driver's failure to return a "driver device" to such Debtor.

## RELIEF REQUESTED

28.    By this Motion, the Debtors request the Court to enter the Proposed Order, approving the Settlement Agreement, and waiving the stay imposed by Bankruptcy Rule 6004(h) to the extent applicable.

## BASIS FOR RELIEF REQUESTED

I.    **THE SETTLEMENT AGREEMENT IS FAIR AND REASONABLE AND IN THE BEST INTERESTS OF THE DEBTORS' ESTATES AND CREDITORS**

29.     Section 105(a) of the Bankruptcy Code provides, in pertinent part, that the "[c]ourt may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code.  11 U.S.C. § 105(a).

30.     Bankruptcy Rule 9019 governs the procedural prerequisites to approval of a settlement to which a debtor is party and provides that "[o]n motion by the [debtor-in-possession] and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).  Together, section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019(a) grant a bankruptcy court the power to approve a proposed compromise and settlement when such settlement is in the best interests of the debtor's estate and its creditors. *See In re Marvel Entm't Grp., Inc.*, 222 B.R. 243, 249 (D. Del. 1998); *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997).  The Third Circuit has emphasized that "[t]o minimize litigation and expedite the administration of a bankruptcy estate, [c]ompromises are favored in bankruptcy." *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (internal quotation marks omitted) (quoting 9 COLLIER ON BANKRUPTCY ¶ 9019.03[1] (15th ed. 1993)); *see also In re World Health Alts., Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006) (finding that settlements are "generally favored in bankruptcy").  Furthermore, the decision to accept or reject a compromise or settlement is within the sound discretion of the Court.  *In re Capmark Fin. Grp. Inc.*, 438 B.R. 471, 515 (Bankr. D. Del. 2010); *In re Coram Healthcare Corp.*, 315 B.R. 321, 329 (Bankr. D. Del. 2004).

31.     Before approving a settlement under Bankruptcy Rule 9019, a court must determine whether "the compromise is fair, reasonable, and in the interest of the estate." *In Marvel Entm't Grp., Inc.*, 222 B.R. at 249 (quoting *In re Louise's, Inc.*, 211 B.R. at 801).  The court does not need to be convinced that the settlement is the best possible compromise in order

to approve it. *In re Coram Healthcare Corp.*, 315 B.R. at 330. Rather, the court's obligation is to "canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *Travelers Cas. & Sur. Co. v. Future Claimants Representative*, 2008 WL 821088, at *5 (D. N.J. Mar. 25, 2008) (citing *Aetna Cas. & Sur. Co. v. Jasmine, Ltd. (In re Jasmine, Ltd.)*, 258 B.R. 119 (D.N.J. 2000)); *see also In re Coram Healthcare Corp.*, 315 B.R. at 330.

32.    When determining whether a settlement falls within the range of reasonableness, courts in this district generally consider the following four factors (the "**Martin Factors**"): "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *In re Martin*, 91 F.3d at 393 (citing *In re Neshaminy Office Bldg. Assocs.*, 62 B.R. 798, 803 (E.D. Pa. 1986)); *see also Fry's Metals, Inc. v. Gibbons (In re RFE Indus., Inc.)*, 283 F.3d 159, 165 (3d Cir. 2002); *In re eToys, Inc.*, 331 B.R. 176, 198 (Bankr. D. Del. 2005).

33.    The Debtors respectfully submit that the Settlement Agreement more than adequately satisfies the standard for approval under Bankruptcy Rule 9019. The Settlement Agreement is proposed in the Debtors' business judgment as a good faith means to mitigate the risk, expense, and uncertainty of litigating issues related to the Contested Matters and allows for a consensual path forward for confirmation of the Plan. The proposed settlement provides a fair and practical resolution of the Contested Matters, which, if litigated, would consume the Debtors' limited resources, to the detriment of their bankruptcy estates and their creditors. The Settlement Agreement was the product of substantial good-faith discussions and negotiations among the Parties culminating in a settlement that falls well within the range of reasonable

litigation outcomes as to each of the issues encompassed by the Settlement Agreement.  If the Parties were to continue to litigate the Contested Matters, the Debtors would be forced to expend substantial time and resources while the ultimate outcome of such litigation (as with any litigation) would be uncertain.  Furthermore, absent approval of the Settlement Agreement, the Debtors would not have access to DIP financing and would be unable to move forward towards confirmation of the Plan, to the detriment of all parties-in-interest.  The Debtors, therefore, in a sound exercise of their business judgement, have agreed to settle the Contested Matters in the manner and upon the terms set forth in the Settlement Agreement, to fully and finally resolve the Contested Matters in a timely and efficient manner.

34.    In addition, as discussed below, several of the applicable *Martin* factors weigh in favor of approving the Settlement Agreement.[5]

**A.  The Probability of Success in Litigation**

35.    Had the Parties failed to reach a consensual resolution with respect to the various issues addressed by the Settlement Agreement, the Debtors would have been forced to litigate, at a significant cost, uncertainty and risk to them and their estates.  By contrast, the Settlement Agreement provides for a cost-effective resolution of the Contested Matters, as well as finality and certainty for Debtors, their estates and creditors and other parties in interest in these Chapter 11 Cases.  In light of the foregoing, the first *Martin* factor weighs significantly in favor of approving the Settlement Agreement.

---

[5] The second *Martin* factor—the likely difficulties in collection—is not applicable here, as the Debtors have not sought an affirmative recovery in connection with the Contested Matters.

**B. The Complexity of the Litigation Involved, and the Expense, Inconvenience and Delay Necessarily Attending It**

36.    Absent the Parties' entry into the Settlement Agreement, resolving the issues among the Parties would continue to involve extensive discovery and litigation.  Such litigation, and the uncertainty necessarily associated with it, would be at a considerable expense to the Debtors' estates and creditors, as the litigation would involve, among other things, numerous legal and factual issues.  Moreover, even after incurring the significant expense, inconvenience and delay associated with the litigation, as with any litigation, there would be no guarantee that the Debtors would succeed or that the Debtors would have the resources available to fund such litigation.  By fully and finally resolving the Contested Matters as provided for in the Settlement Agreement, the Debtors, their estates and creditors and other parties in interest in these Chapter 11 Cases are afforded certainty with respect to the Contested Matters without the need for the Debtors and their estates to incur the costs necessarily associated with further litigation. Accordingly, the third *Martin* factor weighs in favor of approving the Settlement Agreement.

**C.  The Paramount Interest of Creditors**

37.    Here, the paramount interest of creditors (and other parties in interest in these Chapter 11 Cases) will be best served by approving the Settlement Agreement.  As noted above, the Settlement Agreement will allow the Debtors to avoid further litigation and focus their limited resources on their reorganizational efforts and confirming their proposed Plan in a timely and efficient manner resulting in a substantial recovery to unsecured creditors.  Absent approval of the Settlement Agreement, the Debtors would not have access to DIP financing and would be unable to move forward towards confirmation of the Plan, to the detriment of all parties-in-interest.  Thus, the Court's approval of the Settlement Agreement is in the best interest of the

estates' creditors, and as a result, this *Martin* factor weighs in favor of approving the Settlement

Agreement.

**II.    ENTRY INTO THE SETTLEMENT AGREEMENT IS A SOUND EXERCISE OF THE DEBTORS' BUSINESS JUDGMENT UNDER SECTION 363 OF THE BANKRUPTCY CODE**

38.    A settlement of claims and causes of action by a debtor in possession constitutes a

use of property of the estate. *See* 11 U.S.C. § 541(a); *Northview Motors, Inc. v. Chrysler Motors

Corp.*, 186 F.3d 346, 350-51 (3d Cir. 1999). Under section 363(b)(1) of the Bankruptcy Code,

the debtor in possession may use property of the estate "other than in the ordinary course of

business" after notice and a hearing. 11 U.S.C. § 363(1)(1). Section 363 of the Bankruptcy

Code applies when an agreement involves the disposition of the estate's assets in such a way that

it ventures beyond an ordinary course transaction. *See In re Martin*, 91 F.3d at 394-95.

39.    In determining whether to authorize the use or transfer of estate property under

section 363(b)(1) of the Bankruptcy Code, a court must find that such use or transfer is supported

by a "sound business purpose." *In re Decora Indus., Inc.*, 2002 WL 32332749, at *2 (D. Del.

May 20, 2002); *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re

Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999); *In re Del. & Hudson Ry.

Co.*, 124 B.R. 169, 175-76 (D. Del. 1991). A court determining whether a sound business

purpose justifies the transaction "should consider all salient factors pertaining to the proceeding

and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders,

alike." *In re Montgomery Ward Holding Corp.*, 242 B.R. at 153-54 (quoting *Comm. of Equity

Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983)). In

addition, a debtor must show that the transaction has been proposed in good faith, that adequate

and reasonable notice has been provided, and that the debtor is receiving fair and reasonable

value in exchange. *See In re Decora Indus., Inc.*, 2002 WL 32332749, at *2; *In re Del. & Hudson Ry. Co.*, 124 B.R. at 176.

40.     The sound business purpose test under section 363(b)(1) of the Bankruptcy Code shields a debtor from judicial second-guessing. *See Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 149-50 (3d Cir. 1986) (applying good faith standard to transaction by debtor); *Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("a presumption of reasonableness attaches to a debtor's management decisions"). "In evaluating whether a sound business purpose justifies the use, sale or lease of property under Section 363(b), courts consider a variety of factors, which essentially represent a 'business judgment test.'" *In re Montgomery Ward Holding Corp.*, 242 B.R. at 153. Where a debtor "articulates a reasonable basis for its business decisions . . . , courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. at 616.

41.     The Debtors believe that entry into the Settlement Agreement represents a proper exercise of their business judgment. In exchange for releasing any Claims, as well as any claims against any former driver of any Debtor entity in connection with such driver's failure to return a "driver device" to such Debtor, the Debtors will receive the benefits from the Settlement Agreement, which resolves the Contested Matters that would otherwise hinder the Debtors' Chapter 11 Cases from proceeding towards confirmation of a Plan that provides a meaningful recovery for creditors.

42.     Accordingly, the Debtors submit that the relief requested in this Motion represents a sound exercise of their business judgment and is in the best interests of the Debtors' estates and creditors and other parties in interest and will, among other things, allow the Debtors to realize a

significant benefit that paves the way for a resolution of these Chapter 11 Cases, without the risk, delay, and expense associated with litigating the Contested Matters.

## **BANKRUPTCY RULE 6004(h)**

43.     The Debtors also request that this Court waive the requirements of Bankruptcy Rule 6004(h), which stays orders authorizing the use of property by fourteen (14) days "unless the court orders otherwise."  *See* Fed. R. Bank. P. 6004(h).  Here, the immediate implementation of the Settlement Agreement is important to facilitating a swift conclusion to the Debtors' Bankruptcy Cases.  Accordingly, the Debtors respectfully request that this Court waive the stay imposed by Bankruptcy Rule 6004(h), to the extent applicable, as the exigent nature of the relief sought herein justifies immediate relief.

## **NOTICE**

44.     Notice of this Motion will be provided to: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel for the Committee; (c) counsel to the DIP Lender; and (d) any party that has requested notice under Bankruptcy Rule 2002.  The Debtors respectfully submit that no further notice of this Motion is required.

**WHEREFORE**, for the reasons set forth herein, the Debtors respectfully request that the Court (i) enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested in this Motion and (ii) grant such other and further relief as this Court deems just and proper.

Dated: February 14, 2020
      Wilmington, Delaware

**CHIPMAN BROWN CICERO & COLE, LLP**

_/s/ William E. Chipman, Jr._

William E. Chipman, Jr. (No. 3818)
Mark L. Desgrosseilliers (No. 4083)
Mark D. Olivere (No. 4291)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Telephone:    (302) 295-0191
Facsimile:    (302) 295-0199
Email:    chipman@chipmanbrown.com
          desgross@chipmanbrown.com
          olivere@chipmanbrown.com

_Counsel to the Debtors and Debtors-In-Possession_