## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| JUNO USA, LP, *et al.*,[1] | Case No. 19-12484 (MFW) |
| Debtors. | (Jointly Administered) |
| | **Related Docket No. 227 and 315** |

### *AMENDED* FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER CONFIRMING THE DEBTORS' FIRST AMENDED JOINT PLAN OF REORGANIZATION AND LIQUIDATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

The *First Amended Joint Plan of Reorganization and Liquidation Under Chapter 11 of the Bankruptcy Code* [Docket No. 227] (as modified, amended, or supplemented from time to time, the "**Plan**"), having been filed with the Bankruptcy Court by the above-captioned debtors and debtors-in-possession (each a "**Debtor**" and, collectively, the "**Debtors**"); and the *Disclosure Statement for the Debtors' First Amended Joint Plan of Reorganization and Liquidation Under Chapter 11 of the Bankruptcy Code* [Docket No. 228] (as modified, amended, or supplemented from time to time, the "**Disclosure Statement**"), having been filed with this Court; and the Disclosure Statement, and appropriate ballots for voting on the Plan having been approved, and transmitted to Holders[2] of Claims against the Debtors in the Voting Classes, pursuant to that certain order approving the Disclosure Statement as containing "adequate information" within the meaning of section 1125 of tile 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number, are: Juno USA, LP (5772); Sabo One LLC (2759); Juno Oregon LLC (4462); Vulcan Cars LLC (4733); GT Forge, Inc. (1093); and Omaha LLC (8656). The mailing address for the Debtors listed above is 74 West Long Lake Road, Suite 205, Bloomfield Hills, Michigan 48304.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Plan, the Disclosure Statement, or the Bankruptcy Code (*each as defined herein*), as applicable. The rules of interpretation set forth in Article 1.B. of the Plan apply.

"**Bankruptcy Code**"), and authorizing the service and solicitation of acceptances and rejections of the Plan, establishing related deadlines and procedures, and setting March 25, 2020 as the Confirmation Hearing (the "**Disclosure Statement Order**") [Docket No. 239]; and the Plan Supplement having been filed on March 11, 2020 [Docket No. 273]; and the affidavits of service filed in respect of the Disclosure Statement Order, the Disclosure Statement, the Plan (appended to the Disclosure Statement) and the Confirmation Hearing Notice [Docket Nos. 242, 245] ("**Affidavits of Service**") each having been filed; and the Debtors having filed the *Debtors' Memorandum of Law in Support of Confirmation of the First Amended Joint Plan of Reorganization and Liquidation Under Chapter 11 of the Bankruptcy Code* [Docket No. 303] (the "**Confirmation Memorandum**"; and the *Declaration of Melissa S. Kibler in Support of Confirmation of the First Amended Joint Plan of Reorganization and Liquidation Under Chapter 11 of the Bankruptcy Code* [Docket No. 304] (the "**Kibler Declaration**") having been filed with this Court prior to the Confirmation Hearing; and the *Declaration of Catherine Nownes-Whitaker Regarding Analysis of Ballots for Accepting or Rejecting the Debtors' First Amended Joint Plan of Reorganization and Liquidation Under Chapter 11 of the Bankruptcy Code* [Docket No. 302] (the "**Voting Report**") having been filed with this Court prior to the Confirmation Hearing that was scheduled for March 25, 2020 (the "**Confirmation Hearing**") after due and sufficient notice was given to Holders of Claims against, and Equity Interests in, the Debtors and other parties-in-interest in accordance with the Disclosure Statement Order, the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and the local rules of the Court (the "**Local Rules**"), in each case as established by the affidavits of service, mailing and/or publication filed with this Court prior to the Confirmation Hearing (collectively, the "**Notice Affidavit**")[3]; and

---

[3] The Notice Affidavit is located at Docket No. 277.

upon all of the proceedings held before this Court and after full consideration of: (i) each of the objections to the Confirmation of the Plan filed with this Court and not subsequently withdrawn, settled or deemed moot (the "**Objections**"); (ii) the Plan Supplement; (iii) the Confirmation Memorandum; (iv) the Voting Report; (v) testimony proffered or presented in support of Confirmation; (vi) the declarations and/or affidavits filed with this Court; and (vii) all other documents comprising the record in these cases, the arguments and representations of counsel, and the evidence proffered and/or adduced in support of Confirmation; and after due deliberation thereon; and good cause appearing therefor; the Court makes and issues the following findings of fact, conclusions of law and Order.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A.       On November 19, 2019 (the "**Petition Date**"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code, thereby commencing these cases (the "**Chapter 11 Cases**").  The Debtors continue to manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

B.       On December 3, 2019, the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "**Creditors' Committee**") [Docket No. 57].

C.       These Chapter 11 Cases are jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Bankruptcy Rules.

D.       Venue, Core Proceeding; Exclusive Jurisdiction.  On the Petition Date, the Debtors commenced these Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The Debtors were qualified and are qualified to be debtors under section 109(d) of the Bankruptcy Code.  Venue was proper as of the Petition Date and continues to be proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.  Confirmation of the Plan

is a core proceeding under 28 U.S.C. § 157(b)(2). The Court has jurisdiction over these Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334, and the Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

E. JUDICIAL NOTICE. The Court takes judicial notice of the docket in these Chapter 11 Cases maintained by Clerk or the Court and/or its duly-appointed agent, including, without limitation, all pleadings and other documents filed, all orders entered, and the transcripts of, and all evidence and arguments made, proffered or adduced at the hearings held before the Court during these Chapter 11 Cases.

F. BURDEN OF PROOF. The Debtors, as proponent of the Plan, have the burden of proving the elements under sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence, and they have met that burden as further found and determined herein.

G. SOLICITATION AND NOTICE. On February 20, 2020, the Court entered the Disclosure Statement Order. The Disclosure Statement Order, among other things, approved the Disclosure Statement as containing "adequate information" of a kind and in sufficient detail to enable hypothetical, reasonable investors typical of the Debtors' creditors to make an informed judgment whether to accept or reject the Plan. Pursuant to the Disclosure Statement Order, the Debtors served the Solicitation Package (as defined in the Disclosure Statement Order) upon: all known Holders of Claims against the Debtors as of the Voting Record Date who were entitled to vote on the Plan (*i.e.*, Classes 2 and 3); (ii) the Securities & Exchange Commission; (iii) the Internal Revenue Service; (iv) the Office of the United States Trustee; and (v) those parties that have requested service under Bankruptcy Rule 2002. The Solicitation Packages consisted of: (i) notice of the Confirmation Hearing and objection deadline; (ii) the Disclosure Statement; (iii) the

Plan (appended to the Disclosure Statement); (iv) an appropriate ballot; (v) the Disclosure Statement Order; and (vi) a pre-addressed return envelope (collectively, the "**Solicitation Package**"). The Solicitation Packages were served in compliance with the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order. As described in the Disclosure Statement Order, and as evidenced by the Voting Report, the certificates of service filed in connection therewith, (i) the service of the Solicitation Packages was adequate and sufficient under the circumstances of these Chapter 11 Cases and (ii) adequate and sufficient notice of the Confirmation Hearing and other requirements, deadlines, hearings, and matters described in the Disclosure Statement Order was timely provided in compliance with the Bankruptcy Code and Bankruptcy Rules, and provided due process and an opportunity to appear and be heard to all parties-in-interest. Pursuant to the Disclosure Statement Order, the Debtors served the Notice of Non-Voting Status on each Holder of a Claim or Interest in the Non-Voting Classes.

H. VOTING. The Disclosure Statement Order fixed March 18, 2020, at 5:00 p.m. (EDT) as the Voting Deadline. Votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, the Disclosure Statement, and Disclosure Statement Order. As set forth in the Voting Report, the Plan has been accepted, within the meaning of section 1126(c) of the Bankruptcy Code, by Classes 2 and 3, which are impaired and entitled to vote on the Plan[4]. Classes 1 and 6 are unimpaired and are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, and are therefore, not entitled to vote. Classes 4, 5 and 7 receive no distribution under the

---

[4] Class 2 - Secured Guaranty Claims, consists of a single creditor, Sberbank Investments ("**Sberbank**"). Sberbank, as Security Agent, holds a perfected, first-priority all asset lien against Debtor GT Forge, Inc. ("**GT Forge**"), which is based on a secured guaranty granted by GT Forge, including its partnership interest in Debtor Juno USA, LP, in connection with the Parent's secured financing facility. Sberbank did not vote to accept or reject the Plan. Pursuant to paragraph 23 of the Disclosure Statement Order, "[i]f a Class has members but no votes to accept or reject the Plan are received by any members of a particular Class, such Class shall be deemed to have accepted the Plan."

Plan and are, therefore, conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

I.      PLAN SUPPLEMENT. The Plan Supplement complies with the Bankruptcy Code and the terms of the Plan, and the filing and notice of the documents included in the Plan Supplement are adequate and proper in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Disclosure Statement Order, and the facts and circumstances of the Chapter 11 Cases. No other or further notice is or will be required with respect to the Plan Supplement. All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan. Subject to the terms of the Plan, compliance with the Bankruptcy Code and the Bankruptcy Rules, and, solely with respect to matters that have a material effect on the assets, liabilities, Executory Contracts of the Reorganized Debtor, with the consent of the Plan Sponsor, the Debtors reserve the right to alter, amend, update, or modify the Plan Supplement before the Effective Date.

J.      SATISFACTION OF CONFIRMATION REQUIREMENTS. The Plan satisfies the requirements for confirmation set forth in sections 1129(a) and (b) of the Bankruptcy Code, as set forth below:

(a)    11 U.S.C. § 1129(a)(1): The Plan complies with all applicable provisions of the Bankruptcy Code, including sections 1122 and 1123 of the Bankruptcy Code.

      (i)    11 U.S.C. § 1122: Each Claim or Equity Interest placed in a particular Class under the Plan is substantially similar to the other claims or interests in that Class. In addition, valid business, legal and factual reasons exist for the separate classification of each of the classes of Claims and Equity Interests created under the Plan, and there is no unfair discrimination between or among holders of Claims and Interests.

      (ii)    11 U.S.C. §1123: Pursuant to sections 1122(a) and 1123(a)(1) of the Bankruptcy Code, Articles II and III of the Plan classify Claims and Interests into seven (7) different Classes (except for Administrative Claims, Priority Tax Claims, United States Trustee statutory fees, and Other Priority Claims which are not classified) Pursuant to sections 1123(a)(2) and

1123(a)(3) of the Bankruptcy Code, Article III of the Plan specifies all Claims and Interests that are not impaired and specifies the treatment of all Claims and Interests that are impaired. Article III identifies Classes 1 and 6 as unimpaired, and identifies Classes 2 through 5 and Class 7 as impaired. Pursuant to section 1123(a)(4) of the Bankruptcy Code, the Plan also provides the same treatment for each Claim or Interest within a particular Class. Pursuant to section 1125(a)(5) of the Bankruptcy Code, the Plan provides adequate means for the Plan's implementation, as set forth in Article IV of the Plan. The Debtors will have, immediately upon the effectiveness of the Plan, sufficient cash available to make all payments that are required to be made on the Effective Date pursuant to the terms of the Plan. On the Effective Date, all of the Liquidating Debtors' Distributable Assets will be transferred to the Settlement Trust.

(iii)  The Settlement Trustee will be responsible for liquidating and distributing the Settlement Trust Assets. The Liquidating Debtors shall be deemed to be dissolved on the first Business Day following the Effective Date, subject to the provisions of the Plan, provided, that, notwithstanding such dissolution, the Reorganized Debtor or Plan Sponsor shall remain authorized to continue the wind down of the Liquidating Debtors as outlined herein. Accordingly, the requirements of section 1123(a)(6) of the Bankruptcy Code are inapplicable to the Liquidating Debtors. On the Effective Date, the charters or equivalent organizational documents of the Reorganized Debtor will be amended to prohibit the issuance of nonvoting equity securities. Because the Reorganized Debtor will not have multiple classes of voting equity securities, the provision of section 1123(a)(6) regarding the distribution of voting power is not applicable. Pursuant to section 1123(a)(7) of the Bankruptcy Code, and in accordance with Article VII.D of the Plan as amended herein, on the Effective Date, all then-incumbent officers and directors of the Liquidating Debtors shall be deemed to have been removed and the Liquidating Debtors dissolved on the first Business Day after the Effective Date. The selection of the Settlement Trustee, pursuant to the Settlement Trust Agreement to manage the Settlement Trust is consistent with the interests of Holders of Claims and Interests and public policy. To the extent the standard under section 1123(a)(7) applies to the Reorganized Debtor, the manner of selecting officers, directors, and/or managers of the Reorganized Debtor by the Plan Sponsor also is consistent with the interests of Holders of Claims and Interests and public policy.

(b)    <u>11 U.S.C. § 1129(a)(2)</u>:  As required by 11 U.S.C. § 1129(a)(2) of the Bankruptcy Code, the Debtors, as proponents of the Plan, have complied with all applicable provisions of the Bankruptcy Code, including, without limitation, 11 U.S.C. §§ 1125 and 1126 and Bankruptcy Rules 3017, 3018 and 3019.  In particular, the solicitation of votes to accept or reject the Plan was (i) in compliance with all applicable nonbankruptcy laws, rules, and regulations governing the adequacy of disclosure in connection with such solicitation, and (ii) solicited after disclosure to holders of Claims and Interests.  The Debtors have further complied with all the provisions of the Bankruptcy Code and the Bankruptcy Rules governing notice of the Confirmation Hearing, approval of the Disclosure Statement and all other matters considered by the Court in the Chapter 11 Cases.  The record in the Chapter 11 Cases further discloses that the Debtors have attempted in good faith to comply with the orders of the Court entered during the pendency of the case and that the Debtors have not violated any such orders.

(c)    <u>11 U.S.C. § 1129(a)(3)</u>:  The Debtors have proposed the Plan in good faith and not by any means forbidden by law.  No person has filed a valid objection to confirmation of the Plan on the grounds that the Plan was not proposed in good faith or by any means forbidden by law.  Accordingly, pursuant to Bankruptcy Rule 3020(b)(2), the Court may determine compliance with section 1129(a)(3) of the Bankruptcy Code without receiving evidence on such issues.  The Court has examined the totality of the circumstances surrounding the formulation of the Plan and the evidence submitted in connection with the Confirmation hearing.  The Plan has been accepted by the requisite holders of Claims in Classes 2 and 3 entitled to vote on the Plan and such acceptance evidences the informed judgment of Creditors that the Plan is in their best interests.  The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtors' Estates and to effectuate a distribution of such value to Creditors.  The Plan was negotiated in good faith and at arms' length among representatives of the Debtors, the Creditors' Committee, the Plan Sponsor, and certain other key creditor constituencies during the Chapter 11 Cases.  Further, based on the evidentiary record adduced at the Confirmation Hearing and the Court's findings and conclusions based thereon, the principal purpose of the Plan is not the avoidance of taxes or the avoidance of section 5 of the Securities Act of 1933 (15 U.S.C. § 77(e), as amended).  Accordingly, the provisions of section 1129(d) of the Bankruptcy Code are met.  Therefore, the Plan has been proposed in good faith, as such term is used in section 1129(a)(3) of the Bankruptcy Code.

(d)    <u>11 U.S.C. § 1129(a)(4)</u>:  The Plan appropriately provides for Court approval of all payments for services in connection with the Chapter 11 Cases and therefore satisfies section 1129(a)(4) of the Bankruptcy Code.

(e)    <u>11 U.S.C § 1129(a)(5)</u>:  Because the Plan provides for the dissolution of the existing board of directors or managers, as applicable, of the Liquidating Debtors and that any remaining directors or officers of the Liquidating Debtors shall be dismissed, section 1129(a)(5) of the Bankruptcy Code does not apply to the Liquidating Debtors.  To the extent section 1129(a)(5) applies to the Settlement Trust, it has satisfied the requirements of this provision by, among other things, disclosing the identity of the

Settlement Trustee. The identity and affiliations of the person proposed to serve as the initial director and officer of the Reorganized Debtor after Confirmation of the Plan have been fully disclosed.

(f) <u>11 U.S.C. § 1129(a)(6)</u>: No governmental regulatory commission has jurisdiction over the rates of the Debtors. Section 1129(a)(6) is inapplicable to confirmation of the Plan.

(g) <u>11 U.S.C. § 1129(a)(7)</u>: With respect to each Impaired Class of Claims or Interests of the Debtors, each holder of a Claim or Interest in such Class has accepted the Plan or will receive or retain under the Plan on account of such Claim or Interest property of a value, as of the Effective Date, that is not less than the amount such holder would receive or retain if the Debtors were liquidated on the Effective Date under chapter 7 of the Bankruptcy Code. A conversion of the Chapter 11 Cases to chapter 7 would likely be accompanied by a decrease in the amount of recovery that Creditors would receive on account of their claims as a result of the elimination of the Plan Sponsor Contribution, as well as the accrual of commissions and additional administrative fees and expenses during a chapter 7 case. Further, a chapter 7 liquidation would result in delay in distributions to Creditors. Thus, the Plan provides a superior recovery to Creditors than conversion of the Chapter 11 Cases, and accordingly, the Plan is in the best interests of creditors under section 1129(a)(7) of the Bankruptcy Code.

(h) <u>11 U.S.C. § 1129(a)(8) / 11 U.S.C. § 1129(b)</u>: Classes 1 and 6 are Unimpaired under the Plan and are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Nevertheless, because the Plan has not been accepted by the Deemed Rejecting Classes, the Debtors seek confirmation under section 1129(b), solely with respect to the Deemed Rejecting Classes, rather than section 1129(a)(8) of the Bankruptcy Code. Although section 1129(a)(8) has not been satisfied with respect to the Deemed Rejecting Classes, the Plan is confirmable because the Plan does not discriminate unfairly and is fair and equitable with respect to the Deemed Rejecting Classes and thus satisfies section 1129(b) of the Bankruptcy Code with respect to such Classes as described further below. As a result, the requirements of section 1129(b) of the Bankruptcy Code are satisfied.

(i) <u>11 U.S.C. § 1129(a)(9)</u>: The treatment of Allowed General Administrative Claims, Other Priority Claims, Allowed Priority Tax Claims, and Secured Tax Claims, under Article II of the Plan, satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.

(j) <u>11 U.S.C. § 1129(a)(10)</u>: The Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code. As evidenced by the Voting Report, the Voting Classes voted to accept the Plan by the requisite numbers and amounts of Claims, determined without including any acceptance of the Plan by any insider (as that term is defined in section 101(31) of the Bankruptcy Code), specified under the Bankruptcy Code.

(k) <u>11 U.S.C. § 1129(a)(11)</u>: The Plan satisfies section 1129(a)(11) of the Bankruptcy Code. The evidence supporting the Plan proffered or adduced by the Debtors at or

before the Confirmation Hearing: (a) is reasonable, persuasive, credible, and accurate as of the dates such evidence was prepared, presented, or proffered; (b) has not been controverted by other persuasive evidence; (c) establishes that the Plan is feasible and Confirmation of the Plan is not likely to be followed by liquidation or the need for further financial reorganization; (d) establishes that the Settlement Trustee will have sufficient funds available to meet its obligations under the Plan; and (e) establishes that the Reorganized Debtor will have the financial wherewithal to satisfy its obligations following the Effective Date.

(l)    11 U.S.C. § 1129(a)(12):  The Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.  Article II.D. of the Plan provides for the payment of all fees due and payable under 28 U.S.C. § 1930 by the Debtors or Reorganized Debtor, as applicable.

(m)   11 U.S.C. § 1129(a)(13):  The requirements of section 1129(a)(13) of the Bankruptcy Code are not applicable to the Plan because the Debtors are not obligated to fund any retiree benefits within the meaning of this statute.

(n)    11 U.S.C. § 1129(a)(14) and (15):  These statutes apply only to individual debtors and thus are inapplicable to confirmation of the Plan.

(o)    11 U.S.C. § 1129(a)(16):  The requirements of section 1129(a)(16) of the Bankruptcy Code are not applicable to confirmation of the Plan because none of the Debtors are a nonprofit entity or trust.

(p)    "Cram Down" Requirements – Section 1129(b)(1) and (2):  The Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code.  Notwithstanding the fact that the Deemed Rejecting Classes have not accepted the Plan, the Plan may be confirmed pursuant to section 1129(b)(1) of the Bankruptcy Code.  First, all of the requirements of section 1129(a) of the Bankruptcy Code other than section 1129(a)(8) have been met.  Second, the Plan is fair and equitable with respect the Deemed Rejecting Classes.  The Plan has been prepared in good faith, is reasonable and meets the requirements that no Holder of any Claim or Interest that is junior to each such Claim will receive or retain any property under the Plan on account of such junior Claim or Interest and no Holder of a Claim or Interest in a Class senior to such Classes is receiving more than payment in full on account of its Claim or Interest.  Accordingly, the Plan is fair and equitable towards all Holders of Claims and Interests in the Deemed Rejecting Classes.  Third, the Plan does not discriminate unfairly with respect to the Deemed Rejecting Classes because similarly situated Claim and Interest Holders will receive substantially similar treatment on account of their Claims or Interests, as applicable, in such class.  Therefore, the Plan may be confirmed despite the fact that not all Impaired Classes have voted to accept the Plan.

(q)    11 U.S.C. § 1129(c):  The Plan is the only plan filed in these Chapter 11 Cases, and accordingly, section 1129(c) of the Bankruptcy Code is inapplicable to these Chapter 11 Cases.

(r)    <u>11 U.S.C. § 1129(d)</u>:  The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933.

(s)    <u>11 U.S.C. § 1129(e)</u>:  The Chapter 11 Cases are not small business cases and, accordingly, section 1129(e) of the Bankruptcy Code does not apply to the Chapter 11 Cases.

(t)    <u>11 U.S.C. § 1125(e)</u>:  The Debtors have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all of their respective activities relating to support and consummation of the Plan, including the solicitation and receipt of acceptances of the Plan, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

K.    <span style="font-variant:small-caps"><u>Satisfaction of Confirmation Requirements</u></span>.  Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

L.    <span style="font-variant:small-caps"><u>Likelihood of Satisfaction of Conditions Precedent to the Effective Date</u></span>.  Each of the conditions precedent to the Effective Date, as set forth in Article VIII of the Plan, has been or is reasonably likely to be satisfied or, as applicable, waived in accordance with Article VIII of the Plan.

M.    <span style="font-variant:small-caps"><u>Implementation</u></span>.  All documents necessary to implement the transactions contemplated by the Plan, including those contained or summarized in the Plan Supplement, and all other relevant and necessary documents have been negotiated in good faith and at arm's length, are in the best interests of the Debtors, and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements and shall not be in conflict with any federal, state, or local law.  The Debtors are authorized to take any action reasonably necessary or appropriate to consummate such agreements and the transactions contemplated thereby.

N.    <span style="font-variant:small-caps"><u>Executory Contracts</u></span>.  The Debtors' decisions to assume and to reject certain Executory Contracts, as provided in Article V of the Plan and in the Plan Supplement, are reasonable exercises of the Debtors' business judgment.  The Debtors have demonstrated adequate

assurance of future performance of the Executory Contracts within the meaning of section 365(b)(1)(C) of the Bankruptcy Code.

O.      GOOD FAITH. The Debtors, the Released Parties, and the Releasing Parties have been and will be acting in good faith if they proceed to: (a) consummate the Plan and the agreements, settlements, transactions, and transfers contemplated thereby, and (b) take the actions authorized and directed by this Confirmation Order.

## ORDER

**NOW, THEREFORE, BASED UPON ALL OF THE FOREGOING, IT HEREBY IS ORDERED THAT:**

1.      **FINDINGS OF FACT AND CONCLUSIONS OF LAW**.  The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein and constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable herein by Bankruptcy Rule 9014.  To the extent that any finding of fact is determined to be a conclusion of law, it is deemed so, and vice versa.

2.      **SOLICITATION**.  To the extent applicable, the solicitation of votes on the Plan complied with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, all other provisions of the Bankruptcy Code, and all other applicable rules, laws, and regulations, and was appropriate and satisfactory and is approved in all respects.

3.      **BALLOTS**.  The forms of Ballots are in compliance with Bankruptcy Rule 3018(c), the Disclosure Statement Order, the Bankruptcy Code and the Local Rules.

4.      **NOTICE OF CONFIRMATION HEARING**.  The Notice of Confirmation Hearing was appropriate and satisfactory and is approved in all respects, and was in compliance with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

5.    **SELECTION OF PLAN SPONSOR**.  The Debtors received no Sponsorship Bid other than that of the Proposed Plan Sponsor prior to the Sponsorship Bid Deadline, as defined in the Solicitation Procedures Motion.  The Debtors' selection of GT Gettaxi Limited (**"Gett"**) as the Plan Sponsor is appropriate and satisfactory, and is approved in all respects.

6.    **CONFIRMATION**.  The Plan and all exhibits thereto, including, without limitation, the Settlement Trust Agreement and the documents contained in the Plan Supplement, are approved in their entirety and confirmed under section 1129 of the Bankruptcy Code.  The terms of the Plan, including the Plan Supplement, are incorporated by reference into and are an integral part of this Confirmation Order.

7.    **OBJECTIONS**.  Any objections to confirmation of the Plan that have not been withdrawn or resolved by stipulation are hereby overruled.

8.    **PROVISIONS OF PLAN AND ORDER NON-SEVERABLE AND MUTUALLY DEPENDENT**.  The provisions of the Plan and this Order, including the findings of fact and conclusions of law set forth herein, are (a) non-severable and mutually dependent; (b) valid and enforceable pursuant to their terms; and (c) integral to the Plan and this Confirmation Order, respectively, and may not be deleted or modified except in accordance with Article XI.A of the Plan.

9.    **RECORD CLOSED**.  The record of the Confirmation Hearing is closed.

10.    **BINDING EFFECT AND VALIDITY**.  The provisions of the Plan and this Order shall bind the Debtors, the Estates, the Reorganized Debtor, the Liquidating Debtors, the Settlement Trustee, and all holders of Claims against and Equity Interests in the Debtors, including their successors and assigns, whether or not the Claims or Equity Interests of these entities are impaired under the Plan, whether or not these entities have voted to accept or reject the Plan, and whether

or not these entities have filed proofs of Claim or proofs of Interest in the Chapter 11 Cases. Each Plan term and provision, as it may be interpreted in accordance with the Plan, is valid and enforceable under its terms.

11. **PLAN CLASSIFICATION CONTROLLING.** The classification of Claims and Interests for purposes of distributions to be made under the Plan shall be governed solely by the terms of the Plan. The classifications set forth on the Ballots tendered to or returned by the Holders of Claims in connection with voting on the Plan (a) were set forth on the Ballots solely for the purposes of voting to accept or reject the Plan, (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims under the Plan for distribution purposes, (c) may not be relied upon by and creditors as representing the actual classification of such Claims under the Plan for distribution purposes, and (d) shall not be binding on the Debtors, the Reorganized Debtor, the Settlement Trust, or the Holders of Claims and Interests for purposes other than voting on the Plan.

12. **SUBSTANTIVE CONSOLIDATION.** On the Effective Date, (a) all Intercompany Claims among the Debtors shall be eliminated and there shall be no distributions on account of such Intercompany Claims; (b) each Claim Filed or to be Filed against more than one Debtor shall be deemed Filed only against one consolidated Debtor and shall be deemed a single Claim against and a single obligation of the Debtors, and (c) any joint or several liability of the Debtors shall be deemed one obligation of the Debtors, with each of the foregoing effective retroactive to the Petition Date. Except as otherwise set forth in the Plan, on the Effective Date all Claims based upon guarantees of collection, payment or performance made by one Debtor as to the obligations of another Debtor shall be released and of no further force and effect. Such deemed substantive consolidation shall not (other than for purposes relating to the Plan) affect the legal and corporate

structure of the Reorganized Debtor or the Liquidating Debtors. *Provided, however*, that such substantive consolidation shall not affect any obligation of any of the Debtors to pay fees due and owing to the United States Trustee.

13. **WAIVER OF GETT CLAIMS**. On the Effective Date, Gett shall be deemed to have conclusively, absolutely, unconditionally and irrevocably provided a waiver and release to each of the Debtors from any Claim by Gett relating to any debts, obligations, rights, suits, damages, actions, remedies and liabilities whatsoever, existing as of the Effective Date, that relate to the prepetition funding of the Debtors' business operations. Any cancellation of debt income resulting from such waiver and release shall be contributed as capital to the Reorganized Debtor.

14. **CONTINUED CORPORATE EXISTENCE OF THE REORGANIZED DEBTOR**. On and after the Effective Date, the Reorganized Debtor will continue to exist as a separate corporation and shall retain all of the powers of corporations under applicable non-bankruptcy law, and without prejudice to any right to amend its charter, dissolve, merge or convert into another form of business entity, or to alter or terminate its existence. Except as otherwise provided in the Plan, on and after the Effective Date, all property of GT Forge and its Estate, including any "net operating losses" or similar tax attributes, will vest in the Reorganized Debtor free and clear of all Claims, Liens, charges, other encumbrances and Interests. On and after the Effective Date, the Reorganized Debtor shall be permitted to conduct its business without supervision by the Bankruptcy Court and free of any restrictions under the Bankruptcy Code or the Bankruptcy Rules. The Reorganized Debtor shall be authorized, without limitation, to use and dispose of the Distributable Assets of GT Forge and its Estate, to acquire and dispose of other property, and to otherwise administer its affairs.

15. **CORPORATE ACTION AND DISSOLUTION OF THE LIQUIDATING DEBTORS**. On the Effective Date, the matters under the Plan involving or requiring corporate, partnership or limited liability company action of the Debtors, including but not limited to actions requiring a vote or other approval of the board of directors, shareholders, managers or members of the Debtors or the execution of any documentation incident to or in furtherance of the Plan, shall be deemed to have been authorized by this Order and to have occurred and be in effect from and after the Effective Date without any further action by the Bankruptcy Court or the officers, directors, managers or members of the Debtors. On the Effective Date, all then-incumbent officers and directors of the Liquidating Debtors shall be deemed to have been removed. The Debtors' charters shall be amended to include a provision prohibiting the issuance of nonvoting equity securities and such other provisions as may be required pursuant to section 1123(a)(6) of the Bankruptcy Code. The Debtors may prepare, execute and/or file with the relevant governmental authorities having jurisdiction over the Debtors such amendments of their respective charters as may be necessary or appropriate under applicable non-bankruptcy law to fully effectuate such amendments. From and after the Effective Date, the Holders of Interests in the Reorganized Debtor may take any and all necessary or appropriate actions to appoint directors, officers, and managers of the Reorganized Debtor consistent with the charter, articles of incorporation, and/or by-laws of the Reorganized Debtor, subject to any limitations in applicable non-bankruptcy law and subject to the Plan Supplement. Neither the occurrence of the Effective Date, nor the effectiveness of the Plan, nor any provision of applicable non-bankruptcy law requiring the dissolution of any business entity upon the cancellation or extinguishment of all equity interests or the termination of the sole remaining equity interest holder, shall cause a dissolution of GT Forge, which shall be continued as a corporation immediately following the Effective Date. On the first Business Day following

the Effective Date, the Liquidating Debtors shall each be dissolved without need for further action by any board of directors, shareholders, managers or members provided, however, that the Reorganized Debtor shall remain authorized to and shall: (a) file all tax returns for each of the Debtors for tax obligations that accrued through the Effective Date; (b) coordinate and finalize the termination of the Debtors' employee benefit plans; (c) determine the extent to which driver inquiries must continue to be addressed (including requests for Form 1099) and act in accordance with such determination; (d) continue to maintain (including payment of any costs of) the Voting and Claims Agent's website until such time as Administrative Claims and Priority Claims are paid in accordance with the Plan and this Order; and (e) provide additional information to the Settlement Trustee, as reasonably requested and as necessary, to enable the Settlement Trustee to administer the Settlement Trust (which shall satisfy the requirements under Article IV.F(iv) of the Plan), provided, however, that as of the Effective Date, upon the consent of the Settlement Trustee (which consent shall not be unreasonably withheld), the Reorganized Debtor may dispose of and/or discontinue to maintain its data servers in connection with the Debtors' pre-petition operations, and in no event shall the Reorganized Debtor be obligated to maintain such data servers after April 15, 2020 (collectively (a) through (e), the **"Wind-Down Matters"**); provided, further that the Reorganized Debtor shall be entitled to use the Priority Amount Contribution to satisfy the reasonable and actual third party costs and expenses incurred in connection with the performance of the Wind-Down Matters, other than the costs related to Mr. Ahmed Ezzouhairy's support of the Settlement Trustee from time to time, as approved by the Reorganized Debtor, which shall be paid by the Reorganized Debtor (the **"Wind-Down Costs"**); provided, however, that no portion of the Settlement Trust Payment in excess of the Priority Amount Contribution shall be used by the Reorganized Debtor to satisfy the Wind-Down Matters.

16. **CLOSING OF AFFILIATED CASES**. The Chapter 11 Cases listed on Schedule 1 annexed hereto (the **"Fully Administered Cases"**) are hereby closed. Notwithstanding the closing of the Fully Administered Cases, the case caption for all pleadings shall remain in the form of the case caption used in this Confirmation Order. In lieu of filing individual closing reports in each of the Fully Administered Cases, a consolidated closing report with respect to all of the Chapter 11 Cases shall be filed in the case of Juno USA, LP, Case No. 19-12484 (MFW) (the **"Remaining Case"**) pursuant to the Requirement of Rule 3022-1(c) of the Local Bankruptcy Rules for the District of Delaware.

17. **U.S. TRUSTEE FEES AND POST-CONFIRMATION REPORTS**. After the Effective Date, the Reorganized Debtor shall pay any statutory fees due for the post-Effective Date period pursuant to 28 U.S.C. § 1930(a)(6) (other than such fees due and owing on account of distributions made by the Settlement Trust, which payments shall be made by the Settlement Trustee), and such fees shall be paid until entry of a final decree or an order converting or dismissing the bankruptcy case of the Remaining Case, and (ii) file post-confirmation status reports in the form of a post-confirmation operating report on a quarterly basis up to the entry of a final decree closing the Remaining Case. If the Reorganized Debtor or Plan Sponsor provides written notice to the Settlement Trustee of its intention to close the Remaining Case, the Settlement Trustee may request that the Remaining Case remain open, provided that the Settlement Trust shall thereafter be responsible for all statutory fees relating to the applicable Debtor, until five (5) business days after such time that the Settlement Trustee provides written notice to the Reorganized Debtor that it may close the Remaining Case.

18. **PLAN SPONSOR CONTRIBUTION**. On the Effective Date, the Plan Sponsor shall distribute the Plan Sponsor Contribution as follows: (i) to the Distribution Agent (whose identity

shall be agreed to in writing by the Plan Sponsor and the Settlement Trustee prior to the Effective Date) to fund (A) all Allowed DIP Facility Claims, and (B) the Wind-Down Costs, and all outstanding Allowed Administrative Claims (excluding any Accrued Professional Claims), Priority Tax Claims, and Other Priority Claims not otherwise paid from the proceeds of the DIP Facility in the amount of $100,000.00 (the "**Priority Amount Contribution**"), with such amount to be held by the Distribution Agent until such time as the Governmental Bar Date and all other applicable objection deadlines have passed (the "**Priority Reserve Date**"); and (ii) to the Settlement Trust in the amount of $775,000.00, with the balance of the Priority Amount Contribution not otherwise used in accordance with subsection (i)(B) of this paragraph to be transferred and paid to the Settlement Trust as soon as practicable after the Priority Reserve Date, but in no event more than ten (10) Business Days after the occurrence of the Priority Reserve Date (the "**Settlement Trust Payment**"). The Plan Sponsor agrees to pay all Allowed Administrative Claims, Priority Tax Claims and Other Priority Claims that in the aggregate exceed $100,000.00 and that are not otherwise paid from the proceeds of the DIP Facility.

19. **ESTABLISHMENT OF SETTLEMENT TRUST AND VESTING OF SETTLEMENT TRUST ASSETS**. On the Effective Date, the Settlement Trust will be established pursuant to and in accordance with the terms of the Plan and the Settlement Trust Agreement. [Peter Hurwitz], is appointed as the Settlement Trustee. The Settlement Trustee shall have such powers, duties, and responsibilities as is provided for in the Plan and the Settlement Trust Agreement and shall be compensated in accordance with the Settlement Trust Agreement. On the Effective Date, the Debtors, Creditors' Committee and the Settlement Trustee shall take any and all actions as may be necessary or appropriate to establish a Settlement Trust, including entry into the Settlement Trust Agreement, and to cause the transfer and assignment of (i) the Settlement Trust Payment, (ii) solely

with respect to the Liquidating Debtors, such Liquidating Debtor's Distributable Assets, (iii) any rights to the commencement, compromise or settlement of any Retained Cause of Action, and (iv) the Relevant Books and Records, (clauses (i), (ii), (iii), and (iv) of the foregoing, collectively being the "**Settlement Trust Assets**") to the Settlement Trust. Upon the Effective Date, the Settlement Trust shall be vested with all right, title and interest in the respective Settlement Trust Assets, and such property shall become the property of the Settlement Trust free and clear of all Claims, Liens, charges, other encumbrances and interests. It is intended that the Settlement Trust qualifies as a liquidating trust for federal income tax purposes. The sole beneficiaries of the Settlement Trust shall be the Holders of Allowed General Unsecured Claims. The proceeds of the Settlement Trust Assets (the "**Settlement Trust Amount**") shall be held in trust by the Settlement Trustee and shall not be considered property of the Settlement Trust or of any Debtor's Estate. The Settlement Trustee shall be obligated to distribute the Settlement Trust Assets to the Holders of Allowed General Unsecured Claims until such Holders are repaid in full. Notwithstanding the foregoing, the Settlement Trust Assets, including the Settlement Trust Payment, may be used by the Settlement Trustee to fund the Trust Expenses as determined by the Settlement Trustee in his or her sole discretion. For federal income tax purposes, the beneficiaries of the Settlement Trust shall be treated as the grantors of the Settlement Trust and deemed to be the owners of the Settlement Trust Assets, and the transfer of Settlement Trust Assets to the Settlement Trust shall be deemed a transfer to such beneficiaries by the Debtors followed by a deemed transfer by such beneficiaries to the Settlement Trust. For the avoidance of doubt, the Settlement Trust and/or Settlement Trustee is not obligated to take any actions other than those outlined in the Settlement Trust Agreement and this Order.

20.    **PURPOSE OF THE SETTLEMENT TRUST**.  The Settlement Trust shall be established for the primary purpose of liquidating and distributing the Settlement Trust Assets in accordance with Treasury Regulation section 301.7701-4(d).  In particular, this includes: (i) reviewing and reconciling, including where appropriate objecting to, the Claims of Holders General Unsecured Claims, (ii) reviewing, litigating, settling, dismissing or releasing any Retained Causes of Action; and (iii) distributing the Settlement Trust Assets in accordance with the Plan.  The Settlement Trust shall have no objective to continue or engage in the conduct of a trade or business and shall not be deemed a successor-in-interest of any Debtor or Estate for any purpose other than as specifically set forth herein.

21.    **RETAINED CAUSES OF ACTION OF THE DEBTORS**.  Unless a Cause of Action of any Debtor (including the right to object to any Claim asserted against the Estates) is, in writing, expressly waived, relinquished, released, assigned, compromised, or settled in the Plan, or in a Final Order, all rights of each Debtor's Estates from and after the Effective Date with respect to the Retained Causes of Action are expressly preserved for the benefit of, assigned to, and fully vested in, the Settlement Trust.  The Settlement Trustee, on behalf of the Settlement Trust, shall have standing as the representative of the Debtors' Estates pursuant to section 1123(b)(3)(B) of the Bankruptcy Code to pursue, or decline to pursue, the Retained Causes of Action and objections to Claims, as appropriate, in the business judgment of the Settlement Trustee, on behalf of the Settlement Trust, provided, however that the Reorganized Debtor shall be entitled to settle (in consultation with the Settlement Trust) or object to Administrative Claims and Priority Claims until such time as the aforementioned claims, in the aggregate, total less than $100,000.  The Settlement Trustee, subject to the limitations set forth in the Plan, may settle, release, sell, assign,

otherwise transfer, or compromise, Retained Causes of Action, Avoidance Actions, and/or objections to Claims without need for notice or order of the Bankruptcy Court.

22. **PAYMENT OF EXPENSES**. The Debtors, Reorganized Debtor, Plan Sponsor or Distribution Agent may pay all reasonable Plan Expenses consistent with the Budget without further notice to Holders of Claims or Interests or approval of the Bankruptcy Court, *provided, however*, that no portion of the Settlement Trust Payment in excess of the Priority Amount Contribution shall be used by the Distribution Agent to satisfy any Plan Expenses. The payment of Plan Expenses that are not contemplated by the Budget shall require the consent of the Plan Sponsor. The Settlement Trustee may, in the ordinary course of business and without the necessity for any application to, or approval of, the Bankruptcy Court, pay any accrued but unpaid Trust Expenses. All Trust Expenses shall be charged against and paid from the Settlement Trust Assets.

23. **DISSOLUTION OF CREDITORS' COMMITTEE**. On the first (1st) Business Date following the Effective Date, and provided that the Settlement Trust has become effective pursuant to the Plan, the Creditors' Committee shall be dissolved and the Creditors' Committee, its members, and Creditors' Committee's Retained Professionals in accordance with section 1103 of the Bankruptcy Code will be released and discharged from their respective fiduciary obligations, duties, and responsibilities arising from or related to the Chapter 11 Cases, *except* with respect to (i) prosecuting applications for Accrued Professional Compensation Claims; (ii) asserting, disputing, challenging and participating in the resolution of Accrued Professional Compensation Claims; and (iii) prosecuting or participating in any appeal of this Order or any request for reconsideration thereof. Upon the conclusion of (i) through (iii), the Creditors' Committee shall be immediately dissolved, released, and discharged. The Creditors' Committee's Retained Professionals and the members thereof shall not be entitled to compensation or reimbursement of

expenses for any services rendered or expenses incurred after the first (1st) Business Day following the Effective Date on behalf of the Creditors' Committee, *except* for services rendered and expenses incurred, as approved by the Court, in connection with (i) through (iii) above.

24.     **EXECUTORY CONTRACTS**.  On the Effective Date, all Executory Contracts of the Debtors will be rejected by the Debtors in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, except for those Executory Contracts that: (i) have already been assumed or rejected by the Debtors by prior order of the Bankruptcy Court; (ii) are the subject of a separate assumption motion or motion to reject Filed by the Debtors pending on the Effective Date; (iii) are the subject of a pending objection regarding assumption, cure, or "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code); or (iv) are assumed or assumed and assigned by the Debtors (with the written consent of the Plan Sponsor) pursuant to the terms of the Plan and Filed as a schedule as part of the Plan Supplement.  Without amending or altering any prior order of the Bankruptcy Court approving the assumption or rejection of any Executory Contract, entry of this Order by the Bankruptcy Court shall constitute approval of such assumptions or rejections pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  To the extent any provision in any Executory Contract assumed pursuant to the Plan or any prior order of the Bankruptcy Court (including, without limitation, any "change of control" provision) prohibits, restricts or conditions, or purports to prohibit, restrict or condition, or is modified, breached or terminated, or deemed modified, breached or terminated by, (i) the commencement of these Chapter 11 Cases or the insolvency or financial condition of any Debtor at any time before the closing of its respective Chapter 11 Case, (ii) any Debtor's or the Reorganized Debtor's assumption or assumption and assignment (as applicable) of such Executory Contract or (iii) the Confirmation or Consummation of the Plan,

then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-debtor party thereto to modify or terminate such Executory Contract or to exercise any other default-related rights or remedies with respect thereto, and any required consent under any such contract or lease shall be deemed satisfied by the Confirmation of the Plan. Each Executory Contract assumed by GT Forge pursuant to the Plan shall revest in and be fully enforceable by the Reorganized Debtor or the applicable assignee in accordance with its terms and conditions, except as modified by the provisions of the Plan, any order of the Bankruptcy Court approving its assumption and/or assignment, or applicable law.

25. **CLAIMS ON ACCOUNT OF THE REJECTION OF EXECUTORY CONTRACTS**. All Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts, pursuant to the Plan or this Order, if any, must be filed with the Bankruptcy Court within thirty (30) days after service of an order of the Bankruptcy Court (including this Order) approving such rejection. Any Entity that is required to file a Proof of Claim arising from the rejection of an Executory Contract that fails to timely do so shall be forever barred, estopped, and enjoined from asserting such Claim, and such Claim shall not be enforceable, against the Debtors, the Reorganized Debtor, or their Estates, and the Debtors, the Reorganized Debtor, and their Estates and their respective assets and property shall be forever discharged from any and all indebtedness and liability with respect to such Claim unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein. All such Claims shall, as of the Effective Date, be subject to the permanent injunction set forth in Article IX.F of the Plan.

26. **EFFECTUATION OF THE PLAN**. The Estates, the Debtors, Reorganized Debtor, the Liquidating Debtors, the Creditors' Committee and the Settlement Trustee, are authorized to execute and deliver any and all documents and instruments and take any and all actions necessary

or desirable to implement the Plan and this Order and to effect any other transactions contemplated therein or thereby. To effectuate the Plan and such transactions, the officers or responsible representatives of the Debtors, Reorganized Debtor, the Liquidating Debtors, Creditors' Committee and the Settlement Trustee are authorized - without further noticed or application to or order of the Court - to execute, deliver, file, or record such agreements or documents, and to take such other actions as any such individual may determine to be necessary or desirable to effectuate the Plan and such transactions, regardless of whether such actions or documents are specifically referred to in the Plan or this Order. To the extent that, under applicable non-bankruptcy law, any of these actions otherwise would require the consent or approval of the shareholders or boards of directors of the Debtors, this Order constitutes such consent and approval.

27. **TREATMENT IS IN FULL SATISFACTION.** Except as otherwise agreed in writing and approved by the Court, the treatment set forth in the Plan for each Class of Claims and Equity Interests is in full and complete satisfaction of the legal, contractual, and equitable rights (including any liens) that each Entity holding a Claim or an Equity Interest may have in or against the Debtors, their Estates, the Reorganized Debtor, the Liquidating Debtors, the Settlement Trustee, or their respective property. This treatment supersedes and replaces any agreements or rights those Entities may have in or against the Debtors, their Estates, the Reorganized Debtor, the Liquidating Debtors, the Settlement Trustee, or their respective property.

28. **RELEASES AND EXCULPATION.** The releases and exculpation provisions contained in the Plan, including, but not limited to, those provided in Article IX of the Plan, are hereby authorized, approved and binding on all Persons and Entities described therein, EXCEPT as follows:

a. Notwithstanding any conflicting language in the Plan, only those parties who have affirmatively consented to the proposed Third-Party Releases by voting on the Plan

- 25 -

and not opting out of the Releases shall be bound by the terms of the Releases. *See, e.g., In re Emerge Energy Servs., LP*, 2019 Bankr. LEXIS 3717 at *53 (Bankr. D. Del. Dec. 5, 2019) (failure to return a ballot or opt-out form does not show intention to provide a third-party release); *In re Washington Mutual, Inc.*, 442 B.R. 314, 355 (Bankr. D. Del. 2011) (an opt out mechanism is not sufficient to support third-party releases).

b. The Exculpations shall only apply to parties who served in a fiduciary capacity to the Debtors or the estate during the bankruptcy case. *See, e.g., Walton v. Houlihan, Lokey, Howard & Zukin (In re UA Theatre Co.)*, 315 F.3d 217, 229-34 (3d Cir. 2003) (parties who, under applicable state law, would be entitled to indemnity from a company – typically directors and officers or others who owe a fiduciary duty to the company – may be exculpated under a plan of reorganization); *In re Tribune Company*, 464 B.R. 126, 189 (Bankr. D. Del. 2011) (exculpation clauses must exclude parties who did not serve in a fiduciary capacity); *Washington Mutual*, 442 B.R. at 350-51 (exculpation clauses must be limited to those who serve the estate or the debtor in a fiduciary capacity).

29. **DISCHARGE OF GT FORGE.** Pursuant to Article IX.C of the Plan, to the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code, except as otherwise expressly provided by the Plan or this Order, effective as of the Effective Date, all consideration distributed under the Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims, Interests and Causes of Action of any kind or nature whatsoever against GT Forge or any of its respective assets or properties, including any interest accrued on such Claims or Interests from and after the Petition Date, and regardless of whether any property shall have been abandoned by order of the Bankruptcy Court, distributed or retained under the Plan on account of such Claims, Interests or Causes of Action. Except as otherwise expressly provided by the Plan or this Order, upon the Effective Date, GT Forge shall be deemed discharged and released under and to the fullest extent provided under sections 524 and 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code from any and all Claims of any kind or nature whatsoever, including, but not limited to, demands and liabilities that arose before the Confirmation Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code. Such discharge shall void any judgment

obtained against GT Forge or the Reorganized Debtor at any time, to the extent that such judgment relates to a discharged Claim.

30.     **INJUNCTION.**  Pursuant to Article IX.F of the Plan, except as otherwise expressly provided in the Plan or this Order, from and after the Effective Date, all Persons and Entitles are, to the fullest extent provided under section 524 and other applicable provisions of the Bankruptcy Code, permanently enjoined from (i) commencing or continuing, in any manner or in any place, any suit, action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any Lien or encumbrance; (iv) asserting a setoff or right of subrogation of any kind; or (v) commencing or continuing in any manner any action or other proceeding of any kind, in each case on account of or with respect to any claim, demand, liability, obligation, debt, right, cause of action, equity interest, or remedy released or to be released, settled or to be settled or discharged or to be discharged under the Plan or this Order against any person or entity so released or discharged (or the property or estate of any person or entity so released, discharged).  All injunctions or stays provided for in the Chapter 11 Cases under section 105 or section 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

31.     **BINDING NATURE OF THE PLAN**.  Pursuant to Article IX.G of the Plan, on the Effective Date, and effective as of the Effective Date, the Plan shall bind, and shall be deemed binding upon, the Debtors, the Reorganized Debtor, any and all Holders of Claims against and Equity Interests in the Debtors, all persons and entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each person acquiring property under the Plan, any and all non-debtor parties to Executory Contracts and

Unexpired Leases with the Debtors and the respective successors and assigns of each of the foregoing, to the maximum extent permitted by applicable law, and notwithstanding whether or not such person or entity (i) will receive or retain any property, or interest in property, under the Plan, (ii) has filed a proof of claim or interest in the Chapter 11 Cases or (iii) failed to vote to accept or reject the Plan, affirmatively voted to reject the Plan or is conclusively presumed to reject the Plan; *provided however*, that the discharge shall not apply to those Debtors that are liquidating under this Plan, in accordance with section 1131(d)(3) of the Bankruptcy Code.

32. **NOTICE OF ENTRY OF CONFIRMATION ORDER AND EFFECTIVE DATE.** In accordance with Bankruptcy Rules 2002 and 3020(c), as soon as reasonably practicable on or after the Effective Date, the Debtors or Reorganized Debtor shall provide notice of the entry of this Confirmation Order and of the occurrence of the Effective Date by serving a Notice of Effective Date, on all known creditors, equity security holders, the U.S. Trustee and other parties-in-interest in these Chapter 11 Cases; *provided, however*, that such notice need not be given or served under or pursuant to the Bankruptcy Code, the Bankruptcy Rules, the Local Rules or this Confirmation Order to any Person or Entity to whom the Debtors mailed a notice of the Confirmation Hearing, but received such notice returned marked "undeliverable as addressed," "moved-left no forwarding address" or "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Person or Entity of that Person's or Entity's new mailing address. The notice described herein is adequate and appropriate under the particular circumstances and no other or further notice is necessary or required. The Notice of Effective Date shall constitute sufficient notice of the entry of this Confirmation Order to such filing and recording officers and shall be a recordable instrument notwithstanding any contrary provision of applicable non-bankruptcy law.

33. **REVERSAL OR MODIFICATION OF CONFIRMATION ORDER.** Except as otherwise provided in this Confirmation Order, if any or all of the provisions of this Confirmation Order are hereafter reversed, modified, vacated or stayed by subsequent order of the Bankruptcy Court, or any other court of competent jurisdiction, such reversal, stay, modification or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority or lien incurred or undertaken by the Debtors, the Reorganized Debtor or the Settlement Trustee, as applicable, prior to the date that the Debtors or the Reorganized Debtor received actual written notice of the effective date of such reversal, stay, modification or vacatur. Notwithstanding any such reversal, stay, modification or vacatur of this Confirmation Order, any such act, obligation, indebtedness, liability, priority or Lien incurred or undertaken pursuant to, or in reliance on, this Confirmation Order prior to the date that the Debtors, the Reorganized Debtor or Settlement Trustee received actual written notice of the effective date of such reversal, stay, modification or vacatur shall be governed in all respects by the original provisions of this Confirmation Order and the Plan, or any amendments or modifications thereto, in each case in effect immediately prior to the date that the Debtors, the Reorganized Debtor or Settlement Trustee received such actual written notice.

34. **INCONSISTENCY.** In the event of any inconsistency between the Plan and this Order, this Order shall govern.

35. **PRESERVATION OF PRIVILEGE AND DEFENSES.** The Reorganized Debtor, Plan Sponsor and Distribution Agent shall provide reasonable and timely cooperation to effectuate the provisions of the Plan as the Settlement Trustee might otherwise reasonably request. To the extent necessary for the Settlement Trustee to act in accordance with the terms of the Plan and Settlement Trust Agreement, all Privileges shall be extended to the Settlement Trustee, or shall remain with

the Reorganized Debtor, as applicable, without waiver or release. The Settlement Trustee shall be the beneficiary of all Privileges and be entitled to assert all Privileges relate to the Causes of Action. No Privilege shall be waived by disclosure to the Settlement Trustee of the Debtors' documents, information or communications subject to attorney-client privileges, work product protections or immunities or protections from disclosure held by the Debtors. No action taken by the Debtors, Reorganized Debtor or Settlement Trustee in connection with the Plan shall be (or be deemed to be) a waiver of any privilege or immunity of the Debtors or Reorganized Debtor, as applicable, including any attorney-client privilege or work-product privilege attaching to any documents or communications (whether written or oral). Notwithstanding the Reorganized Debtor or Settlement Trustee providing any privileged information to the Distribution Agent or any party or person associated with the Distribution Agent, such privileged information shall be without waiver in recognition of the joint and/or successorship interest in prosecuting any Claim or Cause of Action on behalf of the Estates and shall remain privileged. The Debtors or the Reorganized Debtor retain the right to waive their own privileges. The Distribution Agent shall have no right to any privileged information or analysis of the Debtors or the Reorganized Debtor.

36. **RESOLUTION OF THE U.S. TRUSTEE'S OBJECTIONS**. The Plan Sponsor and DIP Lender are hereby removed as "Exculpated Parties" under the Plan. Article IX A. of the Plan is stricken in its entirety, provided, however, that the Court's prior orders approving settlements under Bankruptcy Rule 9019 shall remain in full force and effect.

37. **RETENTION OF JURISDICTION**. The Court shall retain jurisdiction as provided in Article X of the Plan.

38. **STAY OF CONFIRMATION ORDER SHORTENED**. The 14-day stay otherwise applicable to this Order under Federal Rule of Bankruptcy Procedure 3020(e) shall be shortened from fourteen (14) days to three (3) days following entry of this Order.

Dated: March 25th, 2020
Wilmington, Delaware

**MARY F. WALRATH**
**UNITED STATES BANKRUPTCY JUDGE**