# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------

In re: JUNO USA, LP, et al.,[1]

              Reorganized Debtors.

---------------------------------------------------------

Chapter 11
Case No. 19-12484 (MFW)
(Jointly Administered)

## REPLY TO TRUSTEE'S OPPOSITION TO
## MOTION FOR RELIEF FROM THE AUTOMATIC STAY TO PERMIT
## CITIBANK, N.A. TO SETOFF AMOUNTS PAID ON LETTERS OF CREDIT
## AGAINST SECURED BANK ACCOUNT

Citibank, N.A., ("Citibank") by its undersigned attorneys, hereby replies to the response in opposition (the "Opposition," Dkt. 426) of Peter Hurwitz, in his capacity as Trustee for the Juno Settlement Trust under the confirmed Plan (the "Settlement Trustee"), to Citibank's motion (the "Motion," Dkt. 422) for relief from the automatic stay to permit it to setoff against a secured bank account maintained by Citibank for the benefit of Debtor Juno USA, LP ("Juno USA") to recover amounts paid by Citibank on letters of credit (the "LOCs").[2]

## PRELIMINARY STATEMENT

1.  The Opposition presents no basis for denying the Motion. Citibank's right to setoff all amounts paid on the LOC's from the Secured Account is supported by multiple agreements and non-bankruptcy law. Citibank is entitled to relief from the automatic stay under Section 361(d)(1) for "cause" and under Section 362(d)(2) because the Debtors have no equity in the Secured Account, which is not necessary for an effective reorganization.

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number are: Juno USA, LP (5772); Sabo One LLC (2759); Juno Oregon LLC (4462); Vulcan Cars LLC (4733); GT Forge, Inc. (1092); and Omaha LLC (8656). The mailing address for the Debtors listed above is 74 West Long Lake Road, Suite 205, Bloomfield Hills, Michigan 48304.

[2] Terms defined herein are as defined in the Motion, the Wise Declaration in support of the Motion (the "Wise Dec.," Dkt. 424), and the accompanying Reply Declaration of Deborah Wise (the "Wise Rely Dec.").

## I. CITIBANK HAS DEMONSTRATED CAUSE FOR RELIEF FROM THE AUTOMATIC STAY

2. The Settlement Trustee relies on one case, *In re WL Homes LLC*, 471 B.R. 349, 2012 WL 1766659 (Bankr. D. Del. 2012), which states the test for setoff under the Bankruptcy Code: a party seeking setoff must "first establish its right to setoff by finding an independent right of setoff under non-bankruptcy law. It then must show that the conditions § 553 places on setoff are satisfied." *Id.* at 352. Unlike the *WL Homes* case, Citibank meets both prongs of this test.

**A. Citibank has an independent right of setoff under the LOC Agreements, Bank Deposit Account Agreements, and New York Statutes.**

3. There are multiple sources for Citibank's independent right of setoff under non-bankruptcy law, including the explicit language of the LOC Agreements,[3] the Debtors' Bank Deposit Account Agreements, New York Debtor and Creditor Law, Section 151 and New York Banking Law Section 9(g).

**(1) The LOC Agreements**

4. The first paragraph of each of the LOC Agreements requires the Debtors to reimburse Citibank for each draft or other request for payment, with each reimbursement due on the date Citibank makes payment. LOC Agreements. Wise Dec., Exhibit A (p. 12) and Exhibit B (p. 9). An Event of Default occurs under ¶ 15 of each of the LOC Agreements if the Debtors fail to pay any obligation when due. *Id.* Exhibit A, p. 16, Exhibit B, p. 13. The Settlement Trustee does not contest Citibank paid on both LOC's and an Event of Default occurred on the date of each payment because the Debtors have failed to reimburse Citibank.

---

[3] Defined as the "Agreements" in the Wise Dec.

2

5. Paragraphs 3 and 17 of the LOC Agreements authorize setoff from any account at Citibank for obligations, including reimbursement of LOC draws (the "Obligations"). Paragraph 3 "authorizes Citibank to charge any account of Applicant for any amount when due." Wise Dec., Exhibit A, p. 12, Exhibit B, p. 9. Paragraph 17 of the LOC Agreements, titled "Set-off" states:

> If any Event of Default shall occur and be continuing, Citibank may set off and apply any and all deposits (general or special, time or demand, provisional or final) at any time held and other indebtedness at any time owing by Citibank or any of its affiliates to or for the credit or the account of Applicant *("Deposits")* against any and all of the Obligations, irrespective of whether or not Citibank shall have made any demand under this Agreement and although such Deposits or Obligations may be unmatured or contingent. Citibank's rights under this section are in addition to other rights and remedies (including other rights of set-off) which Citibank may have under this Agreement or applicable law.

Wise Dec., Exhibit A, p. 17, Exhibit B, p. 14.

6. Based on all of the above, the Debtors' breach of contract as to the LOC Agreements provides an independent right of setoff under New York Law.

**(2) The Deposit Account Agreements**

7. The right to setoff any account is also contained in documents executed by the Debtors upon opening the Secured Account and other bank accounts. The Debtors agreed in the Business Deposit Account Application:

> By signing below, I acknowledge and agree both individually, as applicable, and on behalf of the business identified in this application (the "Business"): (1) to be bound by any agreement governing any account and service for which I am applying for within including the terms and conditions of the CitiBusiness' Client Manual and Schedule of Fees and Charges.

Exhibit G to the Wise Reply Dec., p. 3. The Client Manuals in effect at relevant times state:

> The law allows us to use the money from any account held by the business to pay any overdraft or debt that the business owes us. This is called the "Right of Set-Off." In certain situations, we may also have the Right of Set-Off against your individual accounts. For example, we may debit the personal account of a general partner for an obligation owed to us by the partnership. We are not required to give you advance notice of our intent to exercise our Right of Set-Off; if we do take such action, we will notify you afterwards.

Client Manuals. Exhibit H to the Wise Reply Dec. p. 8.

8. Based on the above, the Bank Deposit Account Agreements provide a second basis for setoff under non-bankruptcy law.

**(3) New York Statutes**

9. Paragraph 25 of each of the LOC Agreements states:

> **THIS AGREEMENT AND THE RIGHTS AND OBLIGATIONS OF APPLICANT AND CITIBANK HEREUNDER SHALL BE GOVERNED BY AND SUBJECT TO THE LAWS OF THE STATE OF NEW YORK AND APPLICABLE UNITED STATES FEDERAL LAWS.**

Exhibit A, p. 18, Exhibit B, p. 15. (Bold, all capitals in original.)

10. In addition to the LOC Agreements and Bank Deposit Account Agreement, two New York statutes support Citibank's right to setoff the amounts in the Secured Account against the Debtors' obligations: Section 151 of New York Debtor and Creditor Law and Section 9(g) of New York Banking Law. Confirming Section 151, *Samuel v. Public Nat'l Bank & Trust Co.*, 151 Misc. 200, 270 N.Y.S. 112 (App. Term, 1st Dep't 1932) states:

> By virtue of the provisions of the agreement between the bank and its depositor, as well as the right given to the bank under section 151 of the Debtor and Creditor Law, the bank was justified in applying the credit balance of the judgment debtor toward the payment of his unmatured indebtedness to the bank.

Similarly, *Fenton v. Ives*, 222 A.D.2d 776, 634 N.Y.S.2d 833 (3d Dep't 1995) confirms a banks' right to setoff under Banking Law 9(g). *Id*. at 778 (under Section 9-(g), bank was justified in exercising its right to setoff and apply funds in borrower's account to debts owed by borrower to bank).

11.     *WL Homes,* the Settlement Trustee's only case*,* is distinguishable because unlike here, there was no agreement permitting setoff and the Court found no basis for setoff under California law. 471 B.R. at 352.

**B.     Citibank meets the conditions for setoff under Section 553 of the Bankruptcy Code**

12.     Citibank also has satisfied the conditions of Section 553 for setoff because it is exercising its right "to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case." The mutual debts of Citibank to the Landlords and the Debtors to Citibank arose prior to the Debtors' bankruptcy petitions. *See In re Elsinore Shores Assoc.*, 67 B.R. 926 (D.N.J. 1986):

> The Bank's claim against [Debtor] ESA is a pre-petition claim upon which the liability of the Bank is absolute, although not presently due, contingent and unliquidated on the date the Chapter 11 petition was filed. It is not necessary that the debt sought to be setoff be due when the bankruptcy case is commenced.

*Id.* at 946.  In the Settlement Trustee's sole case, *In re WL Homes, supra,* the creditor only had an *option* to pay certain insurance funds post-petition, so "not 'all transactions necessary' for a definite liability to accrue occurred as of the petition date." *Id* at *10*. See also In re Young*, 144 B.R. 45, 46-47 (Bankr. N.D. Tex. 1992) (setoff "is permitted when, at the time the bankruptcy petition is filed, the debt is absolutely owing but is not presently due, or when a definite liability has accrued but is not yet liquidated"). Prior to the Petition Date, Citibank had the absolute

obligation to pay upon presentation of the draft under the LOC's, and the Debtors had the absolute obligation to reimburse Citibank for the payment.

**C.     The Secured Account funds are traceable to the LOC Transactions**

13.     The discussion above establishes Citibank's right to setoff the amounts it paid on the LOC's from *any* Citibank account. Although this makes irrelevant the Settlement Trustee's allegation that "evidence is lacking as to whether that the funds in the savings account are part of the collateral underlying the LOCs," Citibank can demonstrate that the funds in the Secured Account are the proceeds of the transactions in the LOC Agreements.

**(1) The $414,419 LOC**

14.     In the first transaction, Citibank opened a $414,419 LOC (the "$414,419 LOC"). LOC Agreement, Exhibit A to the Wise Dec. The Debtors funded that amount on January 14, 2016, by transferring funds from the Debtors' checking account ending in 4324 (the "4324 Account") to their Money Market Account ending in 3936 (i.e., the Secured Account,. as defined in the Wise Dec.). *See* 4324 Account statement for January-February 2016 showing "Transfer to IMMA" of $414,419, and Secured Account (3936) statement for December 2015-January 2016 showing "Transfer Credit" of $414,419, both dated January 14, 2016. Bank Statements annexed as Exhibit F to the Wise Reply Dec.

**(2) The $375,000 LOC**

15.     In the second transaction, Citibank opened a $375,000 LOC (the "375,000 LOC"). LOC Agreement, Exhibit B to the Wise Dec. The Debtors funded that amount on June 14, 2018 through a withdrawal of $375,000 from the 4324 Account and deposit of that amount to the Secured Account. *See* 4324 Account statement for June-July 2018 showing withdrawal of

$375,000 and Secured Account statement for June-July 2018 showing deposit of $375,000, both on June 14, 2018. Bank statements, annexed as Exhibit F to the Wise Reply Dec.

16. For both LOCs, the Debtors' funds moved from the 4324 Account to the Secured Account, for a total of $789,419, which is the amount referenced in the Motion, ¶ 4, and which contained $797,003.68 as of November 13, 2020. Wise Dec., ¶ 6. The Settlement Trustee's statement that "evidence is lacking" on whether the Secured Account funds are part of the collateral is meritless.

## II. RELIEF FROM THE AUTOMATIC STAY IS ALSO APPROPRIATE BECAUSE THE DEBTORS HAVE NO EQUITY IN THE SECURED ACCOUNT AND THE FUNDS ARE NOT NECESSARY FOR AN EFFECTIVE REORGANIZATION

17. Citibank is a secured creditor by virtue of the Bank Deposit Account Agreements, the Secured Account Agreement and the LOC Agreements, which granted Citibank a security interest in the Debtors' funds maintained in the 4324 Account and the Secured Account, and Citibank perfected that security interest through possession of the funds in each of those accounts. The Settlement Trustee fails to address Citibank's right to relief under Section 362(d)(2) except to allege incorrectly that Citibank does not have a secured claim in the Secured Account because it did not file a proof of claim.

18. A secured creditor's lien continues whether a proof of claim is filed or not. *In re Andrews,* 22 B.R. 623, 625 (D. Del. 1982) (filing of proof of claim not necessary to preserve creditor's status as secured; only required if creditor seeks to share in distribution of other debtor's assets). Citibank does not seek to share in this distribution.

19. The Settlement Trustee fails to contest the assertion in paragraph 13-14 of the Motion that the Debtors' obligations to Citibank exceed the amount in the Secured Account,

and in paragraph 15 that the Secured Account is not necessary for an effective reorganization. Relief under Section 362(d)(2) is appropriate.

## CONCLUSION

Citibank has demonstrated that the Settlement Trustee's Opposition based on a purported lack of "cause" for relief from the stay under Section 362(d)(1) has no merit, and that the Settlement Trustee does not even contest Citibank on Section 362(d)(2). Citibank respectfully requests that the Court enter an order granting it relief from the automatic stay under 11 U.S.C. § 362(d)(2) to setoff from the Secured Account all amounts owed under the LOC Agreements and grant such other and further relief as may be appropriate.

Dated: January 7, 2021

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/      Andrew R. Workman*
Derek C. Abbott (No. 3376)
Andrew R. Workman (No. 6710)
1201 N. Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
Email: dabbott@mnat.com
       aworkman@mnat.com

-and-

ZEICHNER ELLMAN & KRAUSE LLP
Nathan Schwed
Peter Janovsky
1211 Avenue of the Americas
New York, New York 10036
Telephone: (212) 223-0400
Email: nschwed@zeklaw.com
       pjanovsky@zeklaw.com

*Counsel to Citibank, N.A.*